Exhibit A



## Office of NAFTA and Inter-American Affairs
International Trade Administration · Market Access and Compliance

| Home | About Us | Hot News | Export Assistance | Contact Us | Additional Resources |

## PART Five: Investment, Services and Other Matters

◄ Back to NAFTA Text Index

### Chapter Eleven: Investment

| | | | | | |
|---|---|---|---|---|---|
| Article 1101 | Article 1102 | Article 1103 | Article 1104 | Article 1105 | Article 1106 |
| Article 1107 | Article 1108 | Article 1109 | Article 1110 | Article 1111 | Article 1112 |
| Article 1113 | Article 1114 | Article 1115 | Article 1116 | Article 1117 | Article 1118 |
| Article 1119 | Article 1120 | Article 1121 | Article 1122 | Article 1123 | Article 1124 |
| Article 1125 | Article 1126 | Article 1127 | Article 1128 | Article 1129 | Article 1130 |
| Article 1131 | Article 1132 | Article 1133 | Article 1134 | Article 1135 | Article 1136 |
| Article 1137 | Article 1138 | Article 1139 | Annex 1120.1 | Annex 1137.2 | Annex 1137.4 |
| Article 1138.2 | | | | | |

### Section A - Investment

#### *Article 1101: Scope and Coverage*

1. This Chapter applies to measures adopted or maintained by a Party relating to:

   (a) investors of another Party;

   (b) investments of investors of another Party in the territory of the Party; and

   (c) with respect to Articles 1106 and 1114, all investments in the territory of the Party.

2. A Party has the right to perform exclusively the economic activities set out in Annex III and to refuse to permit the establishment of investment in such activities.
3. This Chapter does not apply to measures adopted or maintained by a Party to the extent that they are covered by Chapter Fourteen (Financial Services).
4. Nothing in this Chapter shall be construed to prevent a Party from providing a service or performing a function such as law enforcement, correctional services, income security or insurance, social security or insurance, social welfare, public education, public training, health, and child care, in a manner that is not inconsistent with this Chapter.

### *Article 1102:National Treatment*

1. Each Party shall accord to investors of another Party treatment no less favorable than that it accords, in like circumstances, to its own investors with respect to the establishment, acquisition, expansion, management, conduct, operation, and sale or other disposition of investments.

2. Each Party shall accord to investments of investors of another Party treatment no less favorable than that it accords, in like circumstances, to investments of its own investors with respect to the establishment, acquisition, expansion, management, conduct, operation, and sale or other disposition of investments.

3. The treatment accorded by a Party under paragraphs 1 and 2 means, with respect to a state or province, treatment no less favorable than the most favorable treatment accorded, in like circumstances, by that state or province to investors, and to investments of investors, of the Party of which it forms a part.

4. For greater certainty, no Party may:

   (a) impose on an investor of another Party a requirement that a minimum level of equity in an enterprise in the territory of the Party be held by its nationals, other than nominal qualifying shares for directors or incorporators of corporations; or

   (b) require an investor of another Party, by reason of its nationality, to sell or otherwise dispose of an investment in the territory of the Party.

### *Article 1103:Most-Favored-Nation Treatment*

1. Each Party shall accord to investors of another Party treatment no less favorable than that it accords, in like circumstances, to investors of any other Party or of a non-Party with respect to the establishment, acquisition, expansion, management, conduct, operation, and sale or other disposition of investments.

2. Each Party shall accord to investments of investors of another Party treatment no less favorable than that it accords, in like circumstances, to investments of investors of any other Party or of a non-Party with respect to the establishment, acquisition, expansion, management, conduct, operation, and sale or other disposition of investments.

### *Article 1104:Standard of Treatment*

Each Party shall accord to investors of another Party and to investments of investors of another Party the better of the treatment required by Articles 1102 and 1103.

### Article 1105:Minimum Standard of Treatment

1. Each Party shall accord to investments of investors of another Party treatment in accordance with international law, including fair and equitable treatment and full protection and security.
2. Without prejudice to paragraph 1 and notwithstanding Article 1108(7)(b), each Party shall accord to investors of another Party, and to investments of investors of another Party, non-discriminatory treatment with respect to measures it adopts or maintains relating to losses suffered by investments in its territory owing to armed conflict or civil strife.
3. Paragraph 2 does not apply to existing measures relating to subsidies or grants that would be inconsistent with Article 1102 but for Article 1108(7)(b).

### Article 1106:Performance Requirements

1. No Party may impose or enforce any of the following requirements, or enforce any commitment or undertaking, in connection with the establishment, acquisition, expansion, management, conduct or operation of an investment of an investor of a Party or of a non-Party in its territory:

   (a) to export a given level or percentage of goods or services;

   (b) to achieve a given level or percentage of domestic content;

   (c) to purchase, use or accord a preference to goods produced or services provided in its territory, or to purchase goods or services from persons in its territory;

   (d) to relate in any way the volume or value of imports to the volume or value of exports or to the amount of foreign exchange inflows associated with such investment;

   (e) to restrict sales of goods or services in its territory that such investment produces or provides by relating such sales in any way to the volume or value of its exports or foreign exchange earnings;

   (f) to transfer technology, a production process or other proprietary knowledge to a person in its territory, except when the requirement is imposed or the commitment or undertaking is enforced by a court, administrative tribunal or competition authority to remedy an alleged violation of competition laws or to act in a manner not inconsistent with other provisions of this Agreement; or

   (g) to act as the exclusive supplier of the goods it produces or services it provides to a specific region or world market.

2. A measure that requires an investment to use a technology to meet generally

applicable health, safety or environmental requirements shall not be construed to be inconsistent with paragraph 1(f). For greater certainty, Articles 1102 and 1103 apply to the measure.

3. No Party may condition the receipt or continued receipt of an advantage, in connection with an investment in its territory of an investor of a Party or of a non-Party, on compliance with any of the following requirements:

   (a) to achieve a given level or percentage of domestic content;

   (b) to purchase, use or accord a preference to goods produced in its territory, or to purchase goods from producers in its territory;

   (c) to relate in any way the volume or value of imports to the volume or value of exports or to the amount of foreign exchange inflows associated with such investment; or

   (d) to restrict sales of goods or services in its territory that such investment produces or provides by relating such sales in any way to the volume or value of its exports or foreign exchange earnings.

4. Nothing in paragraph 3 shall be construed to prevent a Party from conditioning the receipt or continued receipt of an advantage, in connection with an investment in its territory of an investor of a Party or of a non-Party, on compliance with a requirement to locate production, provide a service, train or employ workers, construct or expand particular facilities, or carry out research and development, in its territory.

5. Paragraphs 1 and 3 do not apply to any requirement other than the requirements set out in those paragraphs.

6. Provided that such measures are not applied in an arbitrary or unjustifiable manner, or do not constitute a disguised restriction on international trade or investment, nothing in paragraph 1(b) or (c) or 3(a) or (b) shall be construed to prevent any Party from adopting or maintaining measures, including environmental measures:

   (a) necessary to secure compliance with laws and regulations that are not inconsistent with the provisions of this Agreement;

   (b) necessary to protect human, animal or plant life or health; or

   (c) necessary for the conservation of living or non-living exhaustible natural resources.

### Article 1107: Senior Management and Boards of Directors

1. No Party may require that an enterprise of that Party that is an investment of an investor of another Party appoint to senior management positions individuals of any particular nationality.

2. A Party may require that a majority of the board of directors, or any committee thereof, of an enterprise of that Party that is an investment of an investor of another Party, be of a particular nationality, or resident in the territory of the Party, provided that the requirement does not materially impair the ability of the investor to exercise control over its investment.

### Article 1108:Reservations and Exceptions

1. Articles 1102, 1103, 1106 and 1107 do not apply to:

   (a) any existing non-conforming measure that is maintained by

       (i) a Party at the federal level, as set out in its Schedule to Annex I or III,

       (ii) a state or province, for two years after the date of entry into force of this Agreement, and thereafter as set out by a Party in its Schedule to Annex I in accordance with paragraph 2, or

       (iii)a local government;

   (b) the continuation or prompt renewal of any non-conforming measure referred to in subparagraph (a); or

   (c) an amendment to any non-conforming measure referred to in subparagraph (a) to the extent that the amendment does not decrease the conformity of the measure, as it existed immediately before the amendment, with Articles 1102, 1103, 1106 and 1107.

2. Each Party may set out in its Schedule to Annex I, within two years of the date of entry into force of this Agreement, any existing non-conforming measure maintained by a state or province, not including a local government.
3. Articles 1102, 1103, 1106 and 1107 do not apply to any measure that a Party adopts or maintains with respect to sectors, subsectors or activities, as set out in its Schedule to Annex II.
4. No Party may, under any measure adopted after the date of entry into force of this Agreement and covered by its Schedule to Annex II, require an investor of another Party, by reason of its nationality, to sell or otherwise dispose of an investment existing at the time the measure becomes effective.
5. Articles 1102 and 1103 do not apply to any measure that is an exception to, or derogation from, the obligations under Article 1703 (Intellectual Property - National Treatment) as specifically provided for in that Article.
6. Article 1103 does not apply to treatment accorded by a Party pursuant to agreements, or with respect to sectors, set out in its Schedule to Annex IV.
7. Articles 1102, 1103 and 1107 do not apply to:

(a) procurement by a Party or a state enterprise; or

(b) subsidies or grants provided by a Party or a state enterprise, including government-supported loans, guarantees and insurance.

8. The provisions of:

(a) Article 1106(1)(a), (b) and (c), and (3)(a) and (b) do not apply to qualification requirements for goods or services with respect to export promotion and foreign aid programs;

(b) Article 1106(1)(b), (c), (f) and (g), and (3)(a) and (b) do not apply to procurement by a Party or a state enterprise; and

(c) Article 1106(3)(a) and (b) do not apply to requirements imposed by an importing Party relating to the content of goods necessary to qualify for preferential tariffs or preferential quotas.

### Article 1109:Transfers

1. Each Party shall permit all transfers relating to an investment of an investor of another Party in the territory of the Party to be made freely and without delay. Such transfers include:

(a) profits, dividends, interest, capital gains, royalty payments, management fees, technical assistance and other fees, returns in kind and other amounts derived from the investment;

(b) proceeds from the sale of all or any part of the investment or from the partial or complete liquidation of the investment;

(c) payments made under a contract entered into by the investor, or its investment, including payments made pursuant to a loan agreement;

(d) payments made pursuant to Article 1110; and

(e) payments arising under Section B.

2. Each Party shall permit transfers to be made in a freely usable currency at the market rate of exchange prevailing on the date of transfer with respect to spot transactions in the currency to be transferred.

3. No Party may require its investors to transfer, or penalize its investors that fail to transfer, the income, earnings, profits or other amounts derived from, or attributable to, investments in the territory of another Party.

4. Notwithstanding paragraphs 1 and 2, a Party may prevent a transfer through the equitable, non-discriminatory and good faith application of its laws relating to:

(a) bankruptcy, insolvency or the protection of the rights of creditors;

(b) issuing, trading or dealing in securities;

(c) criminal or penal offenses;

(d) reports of transfers of currency or other monetary instruments; or

(e) ensuring the satisfaction of judgments in adjudicatory proceedings.

5. Paragraph 3 shall not be construed to prevent a Party from imposing any measure through the equitable, non-discriminatory and good faith application of its laws relating to the matters set out in subparagraphs (a) through (e) of paragraph 4.
6. Notwithstanding paragraph 1, a Party may restrict transfers of returns in kind in circumstances where it could otherwise restrict such transfers under this Agreement, including as set out in paragraph 4.


### Article 1110:Expropriation and Compensation

1. No Party may directly or indirectly nationalize or expropriate an investment of an investor of another Party in its territory or take a measure tantamount to nationalization or expropriation of such an investment ("expropriation"), except:

(a) for a public purpose;

(b) on a non-discriminatory basis;

(c) in accordance with due process of law and Article 1105(1); and

(d) on payment of compensation in accordance with paragraphs 2 through 6.

2. Compensation shall be equivalent to the fair market value of the expropriated investment immediately before the expropriation took place ("date of expropriation"), and shall not reflect any change in value occurring because the intended expropriation had become known earlier. Valuation criteria shall include going concern value, asset value including declared tax value of tangible property, and other criteria, as appropriate, to determine fair market value.
3. Compensation shall be paid without delay and be fully realizable.
4. If payment is made in a G7 currency, compensation shall include interest at a commercially reasonable rate for that currency from the date of expropriation until the date of actual payment.
5. If a Party elects to pay in a currency other than a G7 currency, the amount paid on the date of payment, if converted into a G7 currency at the market rate of exchange prevailing on that date, shall be no less than if the amount

of compensation owed on the date of expropriation had been converted into that G7 currency at the market rate of exchange prevailing on that date, and interest had accrued at a commercially reasonable rate for that G7 currency from the date of expropriation until the date of payment.

6. On payment, compensation shall be freely transferable as provided in Article 1109.

7. This Article does not apply to the issuance of compulsory licenses granted in relation to intellectual property rights, or to the revocation, limitation or creation of intellectual property rights, to the extent that such issuance, revocation, limitation or creation is consistent with Chapter Seventeen (Intellectual Property).

8. For purposes of this Article and for greater certainty, a non-discriminatory measure of general application shall not be considered a measure tantamount to an expropriation of a debt security or loan covered by this Chapter solely on the ground that the measure imposes costs on the debtor that cause it to default on the debt.

### Article 1111:Special Formalities and Information Requirements

1. Nothing in Article 1102 shall be construed to prevent a Party from adopting or maintaining a measure that prescribes special formalities in connection with the establishment of investments by investors of another Party, such as a requirement that investors be residents of the Party or that investments be legally constituted under the laws or regulations of the Party, provided that such formalities do not materially impair the protections afforded by a Party to investors of another Party and investments of investors of another Party pursuant to this Chapter.

2. Notwithstanding Articles 1102 or 1103, a Party may require an investor of another Party, or its investment in its territory, to provide routine information concerning that investment solely for informational or statistical purposes. The Party shall protect such business information that is confidential from any disclosure that would prejudice the competitive position of the investor or the investment. Nothing in this paragraph shall be construed to prevent a Party from otherwise obtaining or disclosing information in connection with the equitable and good faith application of its law.

### Article 1112:Relation to Other Chapters

1. In the event of any inconsistency between this Chapter and another Chapter, the other Chapter shall prevail to the extent of the inconsistency.

2. A requirement by a Party that a service provider of another Party post a bond or other form of financial security as a condition of providing a service into its territory does not of itself make this Chapter applicable to the provision of that cross-border service. This Chapter applies to that Party's treatment of the posted bond or financial security.

### *Article 1113:Denial of Benefits*

1. A Party may deny the benefits of this Chapter to an investor of another Party that is an enterprise of such Party and to investments of such investor if investors of a non-Party own or control the enterprise and the denying Party:

   (a) does not maintain diplomatic relations with the non-Party; or

   (b) adopts or maintains measures with respect to the non-Party that prohibit transactions with the enterprise or that would be violated or circumvented if the benefits of this Chapter were accorded to the enterprise or to its investments.

2. Subject to prior notification and consultation in accordance with Articles 1803 (Notification and Provision of Information) and 2006 (Consultations), a Party may deny the benefits of this Chapter to an investor of another Party that is an enterprise of such Party and to investments of such investors if investors of a non-Party own or control the enterprise and the enterprise has no substantial business activities in the territory of the Party under whose law it is constituted or organized.

### *Article 1114:Environmental Measures*

1. Nothing in this Chapter shall be construed to prevent a Party from adopting, maintaining or enforcing any measure otherwise consistent with this Chapter that it considers appropriate to ensure that investment activity in its territory is undertaken in a manner sensitive to environmental concerns.
2. The Parties recognize that it is inappropriate to encourage investment by relaxing domestic health, safety or environmental measures. Accordingly, a Party should not waive or otherwise derogate from, or offer to waive or otherwise derogate from, such measures as an encouragement for the establishment, acquisition, expansion or retention in its territory of an investment of an investor. If a Party considers that another Party has offered such an encouragement, it may request consultations with the other Party and the two Parties shall consult with a view to avoiding any such encouragement.

### Section B - Settlement of Disputes between a Party and an Investor of Another Party

### *Article 1115:Purpose*

Without prejudice to the rights and obligations of the Parties under Chapter Twenty (Institutional Arrangements and Dispute Settlement Procedures), this Section establishes a mechanism for the settlement of investment disputes that assures both equal treatment among investors of the Parties in accordance with the

principle of international reciprocity and due process before an impartial tribunal.

### Article 1116:Claim by an Investor of a Party on Its Own Behalf

1. An investor of a Party may submit to arbitration under this Section a claim that another Party has breached an obligation under:

   (a) Section A or Article 1503(2) (State Enterprises), or

   (b) Article 1502(3)(a) (Monopolies and State Enterprises) where the monopoly has acted in a manner inconsistent with the Party's obligations under Section A,

   and that the investor has incurred loss or damage by reason of, or arising out of, that breach.

2. An investor may not make a claim if more than three years have elapsed from the date on which the investor first acquired, or should have first acquired, knowledge of the alleged breach and knowledge that the investor has incurred loss or damage.

### Article 1117:Claim by an Investor of a Party on Behalf of an Enterprise

1. An investor of a Party, on behalf of an enterprise of another Party that is a juridical person that the investor owns or controls directly or indirectly, may submit to arbitration under this Section a claim that the other Party has breached an obligation under:

   (a) Section A or Article 1503(2) (State Enterprises), or

   (b) Article 1502(3)(a) (Monopolies and State Enterprises) where the monopoly has acted in a manner inconsistent with the Party's obligations under Section A,

   and that the enterprise has incurred loss or damage by reason of, or arising out of, that breach.

2. An investor may not make a claim on behalf of an enterprise described in paragraph 1 if more than three years have elapsed from the date on which the enterprise first acquired, or should have first acquired, knowledge of the alleged breach and knowledge that the enterprise has incurred loss or damage.

3. Where an investor makes a claim under this Article and the investor or a non- controlling investor in the enterprise makes a claim under Article 1116 arising out of the same events that gave rise to the claim under this Article,

and two or more of the claims are submitted to arbitration under Article 1120, the claims should be heard together by a Tribunal established under Article 1126, unless the Tribunal finds that the interests of a disputing party would be prejudiced thereby.

4. An investment may not make a claim under this Section.


### Article 1118:Settlement of a Claim through Consultation and Negotiation

The disputing parties should first attempt to settle a claim through consultation or negotiation.


### Article 1119:Notice of Intent to Submit a Claim to Arbitration

The disputing investor shall deliver to the disputing Party written notice of its intention to submit a claim to arbitration at least 90 days before the claim is submitted, which notice shall specify:

(a) the name and address of the disputing investor and, where a claim is made under Article 1117, the name and address of the enterprise;

(b) the provisions of this Agreement alleged to have been breached and any other relevant provisions;

(c) the issues and the factual basis for the claim; and

(d) the relief sought and the approximate amount of damages claimed.


### Article 1120:Submission of a Claim to Arbitration

1. Except as provided in Annex 1120.1, and provided that six months have elapsed since the events giving rise to a claim, a disputing investor may submit the claim to arbitration under:

(a) the ICSID Convention, provided that both the disputing Party and the Party of the investor are parties to the Convention;

(b) the Additional Facility Rules of ICSID, provided that either the disputing Party or the Party of the investor, but not both, is a party to the ICSID Convention; or

(c) the UNCITRAL Arbitration Rules.

2. The applicable arbitration rules shall govern the arbitration except to the

extent modified by this Section.

### *Article 1121:Conditions Precedent to Submission of a Claim to Arbitration*

1. A disputing investor may submit a claim under Article 1116 to arbitration only if:

   (a) the investor consents to arbitration in accordance with the procedures set out in this Agreement; and

   (b) the investor and, where the claim is for loss or damage to an interest in an enterprise of another Party that is a juridical person that the investor owns or controls directly or indirectly, the enterprise, waive their right to initiate or continue before any administrative tribunal or court under the law of any Party, or other dispute settlement procedures, any proceedings with respect to the measure of the disputing Party that is alleged to be a breach referred to in Article 1116, except for proceedings for injunctive, declaratory or other extraordinary relief, not involving the payment of damages, before an administrative tribunal or court under the law of the disputing Party.

2. A disputing investor may submit a claim under Article 1117 to arbitration only if both the investor and the enterprise:

   (a) consent to arbitration in accordance with the procedures set out in this Agreement; and

   (b) waive their right to initiate or continue before any administrative tribunal or court under the law of any Party, or other dispute settlement procedures, any proceedings with respect to the measure of the disputing Party that is alleged to be a breach referred to in Article 1117, except for proceedings for injunctive, declaratory or other extraordinary relief, not involving the payment of damages, before an administrative tribunal or court under the law of the disputing Party.

3. A consent and waiver required by this Article shall be in writing, shall be delivered to the disputing Party and shall be included in the submission of a claim to arbitration.

4. Only where a disputing Party has deprived a disputing investor of control of an enterprise:

   (a) a waiver from the enterprise under paragraph 1(b) or 2(b) shall not be required; and

   (b) Annex 1120.1(A)(b) shall not apply.

### *Article 1122:Consent to Arbitration*

1. Each Party consents to the submission of a claim to arbitration in accordance with the procedures set out in this Agreement.
2. The consent given by paragraph 1 and the submission by a disputing investor of a claim to arbitration shall satisfy the requirement of:

   (a) Chapter II of the ICSID Convention (Jurisdiction of the Centre) and the Additional Facility Rules for written consent of the parties;

   (b) Article II of the New York Convention for an agreement in writing; and

   (c) Article I of the Inter-American Convention for an agreement.

### *Article 1123:Number of Arbitrators and Method of Appointment*

Except in respect of a Tribunal established under Article 1126, and unless the disputing parties otherwise agree, the Tribunal shall comprise three arbitrators, one arbitrator appointed by each of the disputing parties and the third, who shall be the presiding arbitrator, appointed by agreement of the disputing parties.

### *Article 1124:Constitution of a Tribunal When a Party Fails to Appoint an Arbitrator or the Disputing* Parties Are Unable to Agree on a Presiding Arbitrator

1. The Secretary-General shall serve as appointing authority for an arbitration under this Section.
2. If a Tribunal, other than a Tribunal established under Article 1126, has not been constituted within 90 days from the date that a claim is submitted to arbitration, the Secretary- General, on the request of either disputing party, shall appoint, in his discretion, the arbitrator or arbitrators not yet appointed, except that the presiding arbitrator shall be appointed in accordance with paragraph 3.
3. The Secretary-General shall appoint the presiding arbitrator from the roster of presiding arbitrators referred to in paragraph 4, provided that the presiding arbitrator shall not be a national of the disputing Party or a national of the Party of the disputing investor. In the event that no such presiding arbitrator is available to serve, the Secretary-General shall appoint, from the ICSID Panel of Arbitrators, a presiding arbitrator who is not a national of any of the Parties.
4. On the date of entry into force of this Agreement, the Parties shall establish, and thereafter maintain, a roster of 45 presiding arbitrators meeting the qualifications of the Convention and rules referred to in Article 1120 and experienced in international law and investment matters. The roster members shall be appointed by consensus and without regard to nationality.

### *Article 1125:Agreement to Appointment of Arbitrators*

For purposes of Article 39 of the ICSID Convention and Article 7 of Schedule C to the ICSID Additional Facility Rules, and without prejudice to an objection to an arbitrator based on Article 1124(3) or on a ground other than nationality:

> (a) the disputing Party agrees to the appointment of each individual member of a Tribunal established under the ICSID Convention or the ICSID Additional Facility Rules;

> (b) a disputing investor referred to in Article 1116 may submit a claim to arbitration, or continue a claim, under the ICSID Convention or the ICSID Additional Facility Rules, only on condition that the disputing investor agrees in writing to the appointment of each individual member of the Tribunal; and

> (c) a disputing investor referred to in Article 1117(1) may submit a claim to arbitration, or continue a claim, under the ICSID Convention or the ICSID Additional Facility Rules, only on condition that the disputing investor and the enterprise agree in writing to the appointment of each individual member of the Tribunal.

### *Article 1126:Consolidation*

1. A Tribunal established under this Article shall be established under the UNCITRAL Arbitration Rules and shall conduct its proceedings in accordance with those Rules, except as modified by this Section.
2. Where a Tribunal established under this Article is satisfied that claims have been submitted to arbitration under Article 1120 that have a question of law or fact in common, the Tribunal may, in the interests of fair and efficient resolution of the claims, and after hearing the disputing parties, by order:

> (a) assume jurisdiction over, and hear and determine together, all or part of the claims; or

> (b) assume jurisdiction over, and hear and determine one or more of the claims, the determination of which it believes would assist in the resolution of the others.

3. A disputing party that seeks an order under paragraph 2 shall request the Secretary- General to establish a Tribunal and shall specify in the request:

> (a) the name of the disputing Party or disputing investors against which the order is sought;

(b) the nature of the order sought; and

(c) the grounds on which the order is sought.

4. The disputing party shall deliver to the disputing Party or disputing investors against which the order is sought a copy of the request.

5. Within 60 days of receipt of the request, the Secretary-General shall establish a Tribunal comprising three arbitrators. The Secretary-General shall appoint the presiding arbitrator from the roster referred to in Article 1124(4). In the event that no such presiding arbitrator is available to serve, the Secretary-General shall appoint, from the ICSID Panel of Arbitrators, a presiding arbitrator who is not a national of any of the Parties. The Secretary-General shall appoint the two other members from the roster referred to in Article 1124(4), and to the extent not available from that roster, from the ICSID Panel of Arbitrators, and to the extent not available from that Panel, in the discretion of the Secretary-General. One member shall be a national of the disputing Party and one member shall be a national of a Party of the disputing investors.

6. Where a Tribunal has been established under this Article, a disputing investor that has submitted a claim to arbitration under Article 1116 or 1117 and that has not been named in a request made under paragraph 3 may make a written request to the Tribunal that it be included in an order made under paragraph 2, and shall specify in the request:

(a) the name and address of the disputing investor;

(b) the nature of the order sought; and

(c) the grounds on which the order is sought.

7. A disputing investor referred to in paragraph 6 shall deliver a copy of its request to the disputing parties named in a request made under paragraph 3.

8. A Tribunal established under Article 1120 shall not have jurisdiction to decide a claim, or a part of a claim, over which a Tribunal established under this Article has assumed jurisdiction.

9. On application of a disputing party, a Tribunal established under this Article, pending its decision under paragraph 2, may order that the proceedings of a Tribunal established under Article 1120 be stayed, unless the latter Tribunal has already adjourned its proceedings.

10. A disputing Party shall deliver to the Secretariat, within 15 days of receipt by the disputing Party, a copy of:

(a) a request for arbitration made under paragraph (1) of Article 36 of the ICSID Convention;

(b) a notice of arbitration made under Article 2 of Schedule C of the ICSID Additional Facility Rules; or

(c) a notice of arbitration given under the UNCITRAL Arbitration Rules.

11. 1A disputing Party shall deliver to the Secretariat a copy of a request made under paragraph 3:

    (a) within 15 days of receipt of the request, in the case of a request made by a disputing investor;

    (b) within 15 days of making the request, in the case of a request made by the disputing Party.

12. A disputing Party shall deliver to the Secretariat a copy of a request made under paragraph 6 within 15 days of receipt of the request.

13. The Secretariat shall maintain a public register of the documents referred to in paragraphs 10, 11 and 12.

### Article 1127:Notice

A disputing Party shall deliver to the other Parties:

    (a) written notice of a claim that has been submitted to arbitration no later than 30 days after the date that the claim is submitted; and

    (b) copies of all pleadings filed in the arbitration.

### Article 1128:Participation by a Party

On written notice to the disputing parties, a Party may make submissions to a Tribunal on a question of interpretation of this Agreement.

### Article 1129:Documents

1. A Party shall be entitled to receive from the disputing Party, at the cost of the requesting Party a copy of:

    (a) the evidence that has been tendered to the Tribunal; and

    (b) the written argument of the disputing parties.

2. A Party receiving information pursuant to paragraph 1 shall treat the information as if it were a disputing Party.

### Article 1130:Place of Arbitration

Unless the disputing parties agree otherwise, a Tribunal shall hold an arbitration in the territory of a Party that is a party to the New York Convention, selected in accordance with:

> (a) the ICSID Additional Facility Rules if the arbitration is under those Rules or the ICSID Convention; or

> (b) the UNCITRAL Arbitration Rules if the arbitration is under those Rules.

### Article 1131:Governing Law

1. A Tribunal established under this Section shall decide the issues in dispute in accordance with this Agreement and applicable rules of international law.
2. An interpretation by the Commission of a provision of this Agreement shall be binding on a Tribunal established under this Section.

### Article 1132:Interpretation of Annexes

1. Where a disputing Party asserts as a defense that the measure alleged to be a breach is within the scope of a reservation or exception set out in Annex I, Annex II, Annex III or Annex IV, on request of the disputing Party, the Tribunal shall request the interpretation of the Commission on the issue. The Commission, within 60 days of delivery of the request, shall submit in writing its interpretation to the Tribunal.
2. Further to Article 1131(2), a Commission interpretation submitted under paragraph 1 shall be binding on the Tribunal. If the Commission fails to submit an interpretation within 60 days, the Tribunal shall decide the issue.

### Article 1133:Expert Reports

Without prejudice to the appointment of other kinds of experts where authorized by the applicable arbitration rules, a Tribunal, at the request of a disputing party or, unless the disputing parties disapprove, on its own initiative, may appoint one or more experts to report to it in writing on any factual issue concerning environmental, health, safety or other scientific matters raised by a disputing party in a proceeding, subject to such terms and conditions as the disputing parties may agree.

### Article 1134:Interim Measures of Protection

A Tribunal may order an interim measure of protection to preserve the rights of a disputing party, or to ensure that the Tribunal's jurisdiction is made fully effective, including an order to preserve evidence in the possession or control of a disputing party or to protect the Tribunal's jurisdiction. A Tribunal may not order attachment or enjoin the application of the measure alleged to constitute a breach referred to in Article 1116 or 1117. For purposes of this paragraph, an order includes a recommendation.

### Article 1135:Final Award

1. Where a Tribunal makes a final award against a Party, the Tribunal may award, separately or in combination, only:

   (a) monetary damages and any applicable interest;

   (b) restitution of property, in which case the award shall provide that the disputing Party may pay monetary damages and any applicable interest in lieu of restitution,

   A tribunal may also award costs in accordance with the applicable arbitration rules.

2. Subject to paragraph 1, where a claim is made under Article 1117(1):

   (a) an award of restitution of property shall provide that restitution be made to the enterprise;

   (b) an award of monetary damages and any applicable interest shall provide that the sum be paid to the enterprise; and

   (c) the award shall provide that it is made without prejudice to any right that any person may have in the relief under applicable domestic law.

3. A Tribunal may not order a Party to pay punitive damages.

### Article 1136:Finality and Enforcement of an Award

1. An award made by a Tribunal shall have no binding force except between the disputing parties and in respect of the particular case.
2. Subject to paragraph 3 and the applicable review procedure for an interim award, a disputing party shall abide by and comply with an award without delay.
3. A disputing party may not seek enforcement of a final award until:

   (a) in the case of a final award made under the ICSID Convention

(i) 120 days have elapsed from the date the award was rendered and no disputing party has requested revision or annulment of the award, or

(ii) revision or annulment proceedings have been completed; and

(b) in the case of a final award under the ICSID Additional Facility Rules or the UNCITRAL Arbitration Rules

(i) three months have elapsed from the date the award was rendered and no disputing party has commenced a proceeding to revise, set aside or annul the award, or

(ii) a court has dismissed or allowed an application to revise, set aside or annul the award and there is no further appeal.

4. Each Party shall provide for the enforcement of an award in its territory.
5. If a disputing Party fails to abide by or comply with a final award, the Commission, on delivery of a request by a Party whose investor was a party to the arbitration, shall establish a panel under Article 2008 (Request for an Arbitral Panel). The requesting Party may seek in such proceedings:

(a) a determination that the failure to abide by or comply with the final award is inconsistent with the obligations of this Agreement; and

(b) a recommendation that the Party abide by or comply with the final award.

6. A disputing investor may seek enforcement of an arbitration award under the ICSID Convention, the New York Convention or the Inter-American Convention regardless of whether proceedings have been taken under paragraph 5.
7. A claim that is submitted to arbitration under this Section shall be considered to arise out of a commercial relationship or transaction for purposes of Article I of the New York Convention and Article I of the Inter-American Convention.

### Article 1137:General

*Time when a Claim is Submitted to Arbitration*

1. A claim is submitted to arbitration under this Section when:

(a) the request for arbitration under paragraph (1) of Article 36 of the ICSID Convention has been received by the Secretary-General;

(b) the notice of arbitration under Article 2 of Schedule C of the ICSID Additional Facility Rules has been received by the Secretary-General; or

(c) the notice of arbitration given under the UNCITRAL Arbitration Rules is received by the disputing Party.

**Service of Documents**

2. Delivery of notice and other documents on a Party shall be made to the place named for that Party in Annex 1137.2.

*Receipts under Insurance or Guarantee Contracts*

3. In an arbitration under this Section, a Party shall not assert, as a defense, counterclaim, right of setoff or otherwise, that the disputing investor has received or will receive, pursuant to an insurance or guarantee contract, indemnification or other compensation for all or part of its alleged damages.

**Publication of an Award**

4. Annex 1137.4 applies to the Parties specified in that Annex with respect to publication of an award.

### Article 1138:Exclusions

1. Without prejudice to the applicability or non-applicability of the dispute settlement provisions of this Section or of Chapter Twenty (Institutional Arrangements and Dispute Settlement Procedures) to other actions taken by a Party pursuant to Article 2102 (National Security), a decision by a Party to prohibit or restrict the acquisition of an investment in its territory by an investor of another Party, or its investment, pursuant to that Article shall not be subject to such provisions.
2. The dispute settlement provisions of this Section and of Chapter Twenty shall not apply to the matters referred to in Annex 1138.2.

## Section C - Definitions

### Article 1139:Definitions

For purposes of this Chapter:

**disputing investor** means an investor that makes a claim under Section B;

**disputing parties** means the disputing investor and the disputing Party;

**disputing party** means the disputing investor or the disputing Party;

**disputing Party** means a Party against which a claim is made under Section B;

**enterprise** means an "enterprise" as defined in Article 201 (Definitions of General Application), and a branch of an enterprise;

**enterprise of a Party** means an enterprise constituted or organized under the law of a Party, and a branch located in the territory of a Party and carrying out business activities there.

**equity or debt securities** includes voting and non-voting shares, bonds, convertible debentures, stock options and warrants;

**G7 Currency** means the currency of Canada, France, Germany, Italy, Japan, the United Kingdom of Great Britain and Northern Ireland or the United States;

**ICSID** means the International Centre for Settlement of Investment Disputes;

**ICSID Convention** means the Convention on the Settlement of Investment Disputes between States and Nationals of other States, done at Washington, March 18, 1965;

**Inter-American Convention** means the Inter-American Convention on International Commercial Arbitration, done at Panama, January 30, 1975;

**investment** means:

> (a) an enterprise;

> (b) an equity security of an enterprise;

> (c) a debt security of an enterprise

>> (i) where the enterprise is an affiliate of the investor, or

>> (ii) where the original maturity of the debt security is at least three years,

> but does not include a debt security, regardless of original maturity, of a state enterprise;

> (d) a loan to an enterprise

>> (i) where the enterprise is an affiliate of the investor, or

>> (ii) where the original maturity of the loan is at least three years,

> but does not include a loan, regardless of original maturity, to a state enterprise;

> (e) an interest in an enterprise that entitles the owner to share in

income or profits of the enterprise;

(f) an interest in an enterprise that entitles the owner to share in the assets of that enterprise on dissolution, other than a debt security or a loan excluded from subparagraph (c) or (d);

(g) real estate or other property, tangible or intangible, acquired in the expectation or used for the purpose of economic benefit or other business purposes; and

(h) interests arising from the commitment of capital or other resources in the territory of a Party to economic activity in such territory, such as under

(i) contracts involving the presence of an investor's property in the territory of the Party, including turnkey or construction contracts, or concessions, or

(ii) contracts where remuneration depends substantially on the production, revenues or profits of an enterprise;

but investment does not mean,

(i) claims to money that arise solely from

(i) commercial contracts for the sale of goods or services by a national or enterprise in the territory of a Party to an enterprise in the territory of another Party, or

(ii) the extension of credit in connection with a commercial transaction, such as trade financing, other than a loan covered by subparagraph (d); or

(j) any other claims to money,

that do not involve the kinds of interests set out in subparagraphs (a) through (h);

**investment of an investor of a Party** means an investment owned or controlled directly or indirectly by an investor of such Party;

**investor of a Party** means a Party or state enterprise thereof, or a national or an enterprise of such Party, that seeks to make, is making or has made an investment;

**investor of a non-Party** means an investor other than an investor of a Party, that seeks to make, is making or has made an investment;

**New York Convention** means the United Nations Convention on the Recognition

and Enforcement of Foreign Arbitral Awards, done at New York, June 10, 1958;

**Secretary-General** means the Secretary-General of ICSID;

**transfers** means transfers and international payments;

**Tribunal** means an arbitration tribunal established under Article 1120 or 1126; and

**UNCITRAL Arbitration Rules** means the arbitration rules of the United Nations Commission on International Trade Law, approved by the United Nations General Assembly on December 15, 1976.


*Annex 1120.1*
**Submission of a Claim to Arbitration**

**Mexico**

With respect to the submission of a claim to arbitration:

> (a) an investor of another Party may not allege that Mexico has breached an obligation under:

>> (i) Section A or Article 1503(2) (State Enterprises), or

>> (ii) Article 1502(3)(a) (Monopolies and State Enterprises) where the monopoly has acted in a manner inconsistent with the Party's obligations under Section A,

both in an arbitration under this Section and in proceedings before a Mexican court or administrative tribunal; and

> (b) where an enterprise of Mexico that is a juridical person that an investor of another Party owns or controls directly or indirectly alleges in proceedings before a Mexican court or administrative tribunal that Mexico has breached an obligation under:

>> (i) Section A or Article 1503(2) (State Enterprises), or

>> (ii) Article 1502(3)(a) (Monopolies and State Enterprises) where the monopoly has acted in a manner inconsistent with the Party's obligations under Section A,

the investor may not allege the breach in an arbitration under this Section.


*Annex 1137.2*

**Service of Documents on a Party Under Section B**

Each Party shall set out in this Annex and publish in its official journal by

January 1, 1994, the place for delivery of notice and other documents under this Section.

### *Annex 1137.4*
### Publication of an Award

**Canada**

Where Canada is the disputing Party, either Canada or a disputing investor that is a party to the arbitration may make an award public.

**Mexico**

Where Mexico is the disputing Party, the applicable arbitration rules apply to the publication of an award.

**United States**

Where the United States is the disputing Party, either the United States or a disputing investor that is a party to the arbitration may make an award public.

### *Annex 1138.2*