# Exhibit C

# ALLEGATIONS COMMON TO THE THREE CLAIMS CROSS-REFERENCED WITH SPECIFIC PROVISIONS OF NAFTA CHAPTER ELEVEN

## NAFTA Article 1102

| Canfor | Tembec | Terminal |
|---|---|---|
| **Cross-Border Benchmarks** | | |
| "In total disregard of the requirements of United States law, . . . the DOC declined to use 'in-country' benchmarks . . . and instead used a 'cross-border' benchmark." SOC ¶ 113. *See also* SOC ¶¶ 25, 84. | "Commerce compared prices in Canada to prices in the United States, so-called "cross-border benchmarks.'" SOC ¶ 86(a).[1] | Commerce "arbitrarily and capriciously us[ed] a cross-border analysis previously rejected by it, to determine the existence of a 'benefit.'" NOA ¶ 23(b).[2] |
| **Zeroing** | | |
| "[Commerce] utilized a technique called zeroing, thereby skewing the average dumping margins when it knew that the use of that technique violated the Respondent's obligations under the WTO Anti-Dumping Agreement." SOC ¶ 122(4). *See also* SOC ¶ 133(2). | Commerce erred in "calculat[ing] an average dumping margin . . . by [zeroing]. Zeroing skews the weighted average margin calculations toward a higher dumping margin, and thus violates U.S. and international law." SOC ¶ 46(b). | Commerce "us[ed] the principle of 'zeroing' which unfairly inflates the size of the all others' dumping margin." NOA ¶ 26(c). |
| **Unfair Price Comparison** | | |
| "[T]he DOC continued to use an unfair comparison as between products allegedly being dumped and the products allegedly injured or threatened with injury." SOC ¶ 95. *See also* SOC ¶ 48, 55, 114(4). | "Commerce compared prices of different products with different sizes. Commerce made no adjustment for differences in physical characteristics." SOC ¶ 46(d). | Commerce "fail[ed] to conduct its analysis on the basis of a fair comparison, thereby wholly undermining the integrity of the AD investigation." NOA ¶ 24(b). |

[1] Tembec makes many of its allegations in the "Statement of Facts" section of its Statement of Claim without reference to specific NAFTA articles. Those allegations, however, are incorporated *in toto* into each of Tembec's claims under NAFTA Articles 1102, 1105 and 1110. *See* Tembec SOC ¶¶ 101, 106, 110.

[2] Terminal's Notice of Arbitration incorporates all of the allegations made under Article 1105 into Terminal's claims under Article 1102. *See* Terminal Notice of Arbitration ¶ 32 ("the treatment therein [described under Article 1105] violates the United States' obligations under NAFTA Article 1102.").

# NAFTA Article 1102

| Canfor | Tembec | Terminal |
|---|---|---|
| **Sufficiency of Petition** | | |
| "[Commerce] initiated the investigations in response to the Petitions without . . . ensur[ing] objectively the existence of sufficient support for the Petitions by the United States softwood lumber industry." SOC ¶ 135 (7). *See also* SOC ¶ 129(1). | "Commerce unlawfully initiated the antidumping and countervailing duty investigations based upon a deficient petition." SOC ¶ 101 (a). | Commerce "fail[ed] to ensure that the Petition had sufficient support of the United States' domestic industry." NOA ¶ 26(b). |
| **Effect of Softwood Lumber Agreement** | | |
| "[Commerce] fail[ed] to take account of the effect of the SLA on the price of logs in the United States and Canada." SOC ¶ 114(15). *See also* SOC ¶ 119(5). | "Commerce declined to take into account any of the trade distortions created by the SLA . . ." SOC ¶ 46(a). | Commerce erred in "its consideration of the impact of the Softwood Lumber Agreement." NOA ¶ 23(c)(i). |
| **Insufficient Consideration of Evidence** | | |
| Commerce erred in "making its determination without any, or any sufficient, consideration of the arguments and evidence on the record before it." SOC ¶ 111(5). *See also* SOC ¶¶ 125(1), 129(2), 135(7). | "In its final antidumping and countervailing duty determinations, Commerce made findings that were not supported by the evidence and were contrary to law." SOC ¶ 101(d). *See also* SOC ¶ 101 (d), (c), (e), (f). | Commerce "ma[de] an arbitrary and unreasonable decision without any, or sufficient, consideration of the evidence before it." NOA ¶ 25(b). *See also* NOA ¶ 27(a). |
| **Political Influence on Investigations** | | |
| "A review of the treatment received by the Canadian softwood lumber industry over the past 20 years demonstrates a pattern of conduct designed to ensure a predetermined, politically motivated and results-driven outcome to the investigations." SOC ¶ 20. | "[T]he ITC was improperly influenced by U.S. political considerations to protect domestic U.S. producers from legitimate competition." SOC ¶ 30. *See also* SOC ¶¶ 5, 25, 33, 37, 56. | "[T]he entirety of the United States' conduct in targeting the Canadian softwood lumber industry and proceeding with the Petitions in the manner in which it did has been permeated throughout with political interference." NOA ¶ 29. |

# NAFTA Article 1102

| Canfor | Tembec | Terminal |
|---|---|---|
| **Byrd Amendment Distorts Industry Support** | | |
| "[The Byrd Amendment] artificially distorts the support for any particular petition." SOC ¶ 144(4). *See also* SOC ¶ 144(1), (2), (3) and (6). | "U.S. industry support was unlawfully influenced by the Byrd Amendment." SOC ¶ 101(a). *See also* SOC ¶ 26. | The Byrd Amendment "artificially distorts the support for any particular petition." NOA ¶ 45(d). |
| **Byrd Amendment Over-Remedies Duties** | | |
| "[The Byrd Amendment] ensures that any anti-dumping or countervailing duties imposed to remedy any proven dumping or to neutralize the impact of countervailable subsidies is overremedied . . . ." SOC ¶ (5). | "The Byrd Amendment constitutes a double penalty on foreign importers: while the antidumping of countervailing duties theoretically offset any unlawful foreign competition, the disbursement of the duties to domestic producers then subsidizes the competitors' operations unfairly." SOC ¶ 26. | The Byrd Amendment "ensures that any anti-dumping or countervailing duties imposed to remedy any proven dumping or to neutralize the impact of countervailable subsidies is over-remedied . . . ." NOA ¶ 45(e). |
| **Prohibition on Selling at Full Cost** | | |
| "Canfor can only sell its products into the United States at full cost, whereas a United States Competitor of Canfor is lawfully entitled to sell its products into the United States market at its incremental cost." SOC ¶ 130. | No analogous claim. | Commerce "impos[ed] anti-dumping duties such that a Canadian importer to the United States can only sell its products into the United States at full cost, whereas a United States competitor is lawfully entitled to sell its product at incremental cost." NOA ¶ 24 (d). |
| **Improper Subsidy Determination** | | |
| Commerce improperly "determined that a subsidy program employed by the Province of Quebec . . . was an export subsidy" despite that it "at best benefited only .0029% of all softwood lumber exports to the United States . . . ." SOC ¶¶ 89-90. | No analogous claim. | Commerce improperly "reli[ed] on a single export subsidy from the Province of Quebec (that had benefited only three companies and amounted to only 0.0029 percent of total sales to the United States) to identify a subsidy . . . ." NOA ¶ 23(c)(ii). |

# NAFTA Article 1103

| Canfor | Tembec | Terminal |
|---|---|---|
| **Incorporation of Article 1102 and Article 1105 Claims** | | |
| Alleges that the U.S. measures at issue violate Articles 1103, 1102 and 1105 in the same manner. *See* SOC ¶¶ 110, 111, 114, 115, 120, 123, 124, 127, 128, 141, 144. | No analogous claim. | Incorporates its allegations of violation of Articles 1102 and 1105 by reference. *See* NOA ¶¶ 35-37. |
| **Discriminatory Enforcement Against Canadian Producers** | | |
| No analogous claim. | "The United States breached its obligation under Article 1103 by bringing trade proceedings against the Canadian softwood lumber industry while not bringing proceedings against softwood lumber producers from other countries." SOC ¶ 104. | "[C]ompetitors of Terminal from countries other than Canada and the United States that have not been subject to the arbitrary and discriminatory treatment described herein have increased their market share of the United States market, at the expense of Terminal." NOA¶ 37. |

# NAFTA Article 1105

| Canfor | Tembec | Terminal |
|---|---|---|
| | **Cross-Border Benchmarks** | |
| "In total disregard of the requirements of United States law, . . . the DOC declined to use 'in-country' benchmarks . . . and instead used a 'cross-border' benchmark." SOC ¶ 113. *See also* SOC ¶¶ 25, 84. | "Commerce compared prices in Canada to prices in the United States, so-called 'cross-border benchmarks.'" SOC ¶ 86(a). | Commerce "arbitrarily and capriciously us[ed] a cross-border analysis previously rejected by it, to determine the existence of a 'benefit.'" NOA ¶ 23(b). |
| | **Zeroing** | |
| "(Commerce) utilized a technique called zeroing, thereby skewing the average dumping margins when it knew that the use of that technique violated the Respondent's obligations under the WTO Anti-Dumping Agreement." SOC ¶ 122(4). *See also* SOC ¶ 133(2). | Commerce erred in "calculat[ing] an average dumping margin . . . by [zeroing]. Zeroing skews the weighted average margin calculations toward a higher dumping margin, and thus violates U.S. and international law." SOC ¶ 46(b). | Commerce "us[ed] the principle of 'zeroing' which unfairly inflates the size of the all others' dumping margin." NOA ¶ 26(c). |
| | **Unfair Price Comparison** | |
| "[T]he DOC continued to use an unfair comparison as between products allegedly being dumped and the products allegedly injured or threatened with injury." SOC ¶ 95. *See also* SOC ¶¶ 48, 55, 114(4). | "Commerce compared prices of different products with different sizes. Commerce made no adjustment for differences in physical characteristics." SOC ¶ 46(d). | Commerce "fail[ed] to conduct its analysis on the basis of a fair comparison, thereby wholly undermining the integrity of the AD investigation." NOA ¶ 24(b). |

# NAFTA Article 1105

| Canfor | Tembec | Terminal |
|---|---|---|
| **Insufficiency of Petition** | | |
| "[Commerce] initiated the investigations in response to the Petitions without . . . ensur[ing] objectively the existence of sufficient support for the Petitions by the United States softwood lumber industry." SOC ¶ 135 (7). *See also* SOC ¶ 129(1). | "Commerce unlawfully initiated the antidumping and countervailing duty investigations based upon a deficient petition." SOC ¶ 101 (a). | Commerce "fail[ed] to ensure that the Petition had sufficient support of the United States' domestic industry." NOA ¶ 26(b). |
| **Effect of Softwood Lumber Agreement** | | |
| "[Commerce] fail[ed] to take account of the effect of the SLA on the price of logs in the United States and Canada." SOC ¶ 114(15). *See also* SOC ¶ 119(5). | "Commerce declined to take into account any of the trade distortions created by the SLA . . ." SOC ¶ 46(a). | Commerce erred in "its consideration of the impact of the Softwood Lumber Agreement." NOA ¶ 23(c)(i). |
| **Insufficient Consideration of Evidence** | | |
| Commerce erred in "making its determination without any, or any sufficient, consideration of the arguments and evidence on the record before it." SOC ¶ 111(5). *See also* SOC ¶¶ 125(1), 129(2), 135(7). | "In its final antidumping and countervailing duty determinations, Commerce made findings that were not supported by the evidence and were contrary to law." SOC ¶ 101(d). *See also* SOC ¶ 101 (d), (c), (e), (f). | Commerce "ma[de] an arbitrary and unreasonable decision without any, or sufficient, consideration of the evidence before it." NOA ¶ 25(b). *See also* NOA ¶ 27(a). |

# NAFTA Article 1105

| Canfor | Tembec | Terminal |
|---|---|---|
| **Political Influence on Investigations** | | |
| "A review of the treatment received by the Canadian softwood lumber industry over the past 20 years demonstrates a pattern of conduct designed to ensure a predetermined, politically motivated and results-driven outcome to the investigations." SOC ¶ 20. | "[T]he ITC was improperly influenced by U.S. political considerations to protect domestic U.S. producers from legitimate competition." SOC ¶ 30. *See also* SOC ¶¶ 5, 25, 33, 37, 56. | "[T]he entirety of the United States' conduct in targeting the Canadian softwood lumber industry and proceeding with the Petitions in the manner in which it did has been permeated throughout with political interference." NOA ¶ 29. |
| **Byrd Amendment Distorts Industry Support** | | |
| "[The Byrd Amendment] artificially distorts the support for any particular petition." SOC ¶ 144(4). *See also* SOC ¶¶ 144(1), (2), (3) and (6). | "U.S. industry support was unlawfully influenced by the Byrd Amendment." SOC ¶ 101(a). *See also* SOC ¶ 26. | The Byrd Amendment "artificially distorts the support for any particular petition." NOA ¶ 45(d). |
| **Byrd Amendment Over-Remedies Duties** | | |
| "[The Byrd Amendment] ensures that any anti-dumping or countervailing duties imposed to remedy any proven dumping or to neutralize the impact of countervailable subsidies is overremedied . . . ." SOC ¶ (5). | "The Byrd Amendment constitutes a double penalty on foreign importers: while the antidumping of countervailing duties theoretically offset any unlawful foreign competition, the disbursement of the duties to domestic producers then subsidizes the competitors' operations unfairly." SOC ¶ 26. | The Byrd Amendment "ensures that any anti-dumping or countervailing duties imposed to remedy any proven dumping or to neutralize the impact of countervailable subsidies is over-remedied . . . ." NOA ¶ 45(e). |
| **Denial of Due Process** | | |
| "DOC breached the Respondent's obligations under NAFTA Chapter 11 to accord substantive and procedural justice to Canfor and its investments . . . . " SOC ¶ 131. | "[Commerce] denied Tembec procedural due process." SOC ¶ 63. *See also* SOC ¶ 106 (g). | "[Commerce failed] to provide adequate substantive and procedural protections to Terminal." NOA ¶ 23(d). |

## NAFTA Article 1105

| Canfor | Tembec | Terminal |
|---|---|---|
| **Refusal to Grant Company-Specific Rate** | | |
| Commerce erred by "arbitrarily determining that a countrywide rate would be utilized… ignoring Canfor's request for an individual rate." SOC ¶ 140. *See also* ¶¶ 92, 137-39. | "Commerce acted unlawfully by refusing to grant Tembec a lower company-specific rate . . . ." SOC ¶ 48. | No analogous claim. |
| ***Nondisclosure of Ex Parte* Communications** | | |
| Commerce "held *ex parte* meetings with the Petitioner without disclosing to Canfor specific details of the meetings in order to allow Canfor a fair and reasonable opportunity to respond." SOC ¶ 135. | "*Ex parte* meeting memoranda were not created and placed on the record as required by law . . . ." SOC ¶¶ 57, 5, 58, 77-82. | No analogous claim. |
| **Improper Subsidy Determination** | | |
| Commerce improperly "determined that a subsidy program employed by the Province of Quebec . . . was an export subsidy" despite that it "at best benefited only .0029% of all softwood lumber exports to the United States . . . ." SOC ¶¶ 89-90. | No analogous claim. | Commerce improperly "reli[ed] on a single export subsidy from the Province of Quebec (that had benefited only three companies and amounted to only 0.0029 percent of total sales to the United States) to identify a subsidy . . . ." NOA ¶ 23(c)(ii). |

# NAFTA Article 1110

| Canfor | Tembec | Terminal |
|---|---|---|
| | **Cross-Border Benchmarks** | |
| "In total disregard of the requirements of United States law, . . . the DOC declined to use 'in-country' benchmarks . . . and instead used a 'cross-border' benchmark." SOC ¶ 113. *See also* SOC ¶¶ 25, 84.[3] | "Commerce compared prices in Canada to prices in the United States, so-called 'cross-border benchmarks.'" SOC ¶ 86(a).[4] | Commerce "arbitrarily and capriciously us[ed] a cross-border analysis previously rejected by it, to determine the existence of a 'benefit.'" NOA ¶ 23(b).[5] |
| | **Zeroing** | |
| "(Commerce) utilized a technique called zeroing, thereby skewing the average dumping margins when it knew that the use of that technique violated the Respondent's obligations under the WTO Anti-Dumping Agreement." SOC ¶ 122(4). *See also* SOC ¶ 133(2). | Commerce erred in "calculat[ing] an average dumping margin . . . by [zeroing]. Zeroing skews the weighted average margin calculations toward a higher dumping margin, and thus violates U.S. and international law." SOC ¶ 46(b). | Commerce "us[ed] the principle of 'zeroing' which unfairly inflates the size of the all others' dumping margin." NOA ¶ 26(c). |
| | **Unfair Price Comparison** | |
| "[T]he DOC continued to use an unfair comparison as between products allegedly being dumped and the products allegedly injured or threatened with injury." SOC ¶ 95. *See also* SOC ¶¶ 48, 55, 114(4). | "Commerce compared prices of different products with different sizes. Commerce made no adjustment for differences in physical characteristics." SOC ¶ 46(d). | Commerce "fail[ed] to conduct its analysis on the basis of a fair comparison, thereby wholly undermining the integrity of the AD investigation." NOA ¶ 24(b). |

[3] Canfor's Statement of claim incorporates all the allegations made under Articles 1102, 1103 and 1105 into Canfor's claim under Article 1110. *See* Canfor SOC ¶ 109 ("the ultimate effect of the Respondents' improper conduct outlined herein has been an expropriation of the United States business operations of Canfor.").

[4] Tembec's Statement of Claim also incorporates all the allegations made under Articles 1102, 1103 and 1105 into Tembec's claim under Article 1110. *See* Tembec SOC ¶ 101 ("Through the acts and omissions stated more fully above, the United States breached its obligations under Article 1110.").

[5] Terminal's Notice of Arbitration likewise incorporates all the allegations made under Articles 1102, 1103 and 1105 into Terminal's claim under Article 1110. *See* Terminal Notice of Arbitration ¶ 39 ("The effect of the conduct of the United States described herein, [is] an expropriation without compensation, contrary to NAFTA Article 1110.").

# NAFTA Article 1110

| Canfor | Tembec | Terminal |
|---|---|---|
| **Sufficiency of Petition** | | |
| "[Commerce] initiated the investigations in response to the Petitions without sufficient evidence of a subsidy or injury and without taking any, or sufficient, steps to ensure objectively the existence of sufficient support for the Petitions by the United States softwood lumber industry." SOC ¶ 135 (7). *See also* SOC ¶ 129(1). | "Commerce unlawfully initiated the antidumping and countervailing duty investigations based upon a deficient petition." SOC ¶ 101 (a). | Commerce "fail[ed] to ensure that the Petition had sufficient support of the United States' domestic industry." NOA ¶ 26(b). |
| **Effect of Softwood Lumber Agreement** | | |
| "[Commerce] fail[ed] to take account of the effect of the SLA on the price of logs in the United States and Canada." SOC ¶ 114(15). *See also* SOC ¶ 119(5). | "Commerce declined to take into account any of the trade distortions created by the SLA . . ." SOC ¶ 46(a). | Commerce erred in "its consideration of the impact of the Softwood Lumber Agreement." NOA ¶ 23(c)(i). |
| **Insufficient Consideration of Evidence** | | |
| Commerce erred in "making its determination without any, or any sufficient, consideration of the arguments and evidence on the record before it." SOC ¶ 111(5). *See also* SOC ¶¶ 125(1), 129(2), 135(7). | "In its final antidumping and countervailing duty determinations, Commerce made findings that were not supported by the evidence and were contrary to law." SOC ¶ 101(d). *See also* SOC ¶ 101 (d), (c), (e), (f). | Commerce "ma[de] an arbitrary and unreasonable decision without any, or sufficient, consideration of the evidence before it." NOA ¶ 25(b). *See also* NOA ¶ 27(a). |

# NAFTA Article 1110

| Canfor | Tembec | Terminal |
|---|---|---|
| **Political Influence on Investigations** | | |
| "A review of the treatment received by the Canadian softwood lumber industry over the past 20 years demonstrates a pattern of conduct designed to ensure a predetermined, politically motivated and results-driven outcome to the investigations." SOC ¶ 20. | "[T]he ITC was improperly influenced by U.S. political considerations to protect domestic U.S. producers from legitimate competition." SOC ¶ 30. *See also* SOC ¶¶ 5, 25, 33, 37, 56. | "[T]he entirety of the United States' conduct in targeting the Canadian softwood lumber industry and proceeding with the Petitions in the manner in which it did has been permeated throughout with political interference." NOA ¶ 29. |
| **Byrd Amendment Distorts Industry Support** | | |
| "[The Byrd Amendment] artificially distorts the support for any particular petition." SOC ¶ 144(4). *See also* SOC ¶¶ 144(1), (2), (3) and (6). | "U.S. industry support was unlawfully influenced by the Byrd Amendment." SOC ¶ 101(a). *See also* SOC ¶ 26. | The Byrd Amendment "artificially distorts the support for any particular petition." NOA ¶ 45(d). |
| **Byrd Amendment Over-Remedies Duties** | | |
| "[The Byrd Amendment] ensures that any anti-dumping or countervailing duties imposed to remedy any proven dumping or to neutralize the impact of countervailable subsidies is overremedied . . . ." SOC ¶ (5). | "The Byrd Amendment constitutes a double penalty on foreign importers: while the antidumping of countervailing duties theoretically offset any unlawful foreign competition, the disbursement of the duties to domestic producers then subsidizes the competitors' operations unfairly." SOC ¶ 26. | The Byrd Amendment "ensures that any anti-dumping or countervailing duties imposed to remedy any proven dumping or to neutralize the impact of countervailable subsidies is over-remedied . . . ." NOA ¶ 45(e). |

# NAFTA Article 1110

| Canfor | Tembec | Terminal |
|---|---|---|
| **Denial of Due Process** | | |
| "DOC breached the Respondent's obligations under NAFTA Chapter 11 to accord substantive and procedural justice to Canfor and its investments . . . ." SOC ¶ 131. | "[Commerce] denied Tembec procedural due process and accorded unlawful procedural advantages to the Executive Committee." SOC ¶ 63. *See also* SOC ¶ 106 (g). | "[Commerce failed] to provide adequate substantive and procedural protections to Terminal." NOA ¶ 23(d). |
| **Refusal to Grant Company-Specific Rate** | | |
| Commerce erred by "arbitrarily determining that a countrywide rate would be utilized… ignoring Canfor's request for an individual rate." SOC ¶ 140. *See also* ¶¶ 92, 137-39. | "Commerce acted unlawfully by refusing to grant Tembec a lower company-specific rate . . . ." SOC ¶ 48. | No analogous claim. |
| ***Ex Parte* Communications** | | |
| Commerce "held *ex parte* meetings with the Petitioner without disclosing to Canfor specific details of the meetings in order to allow Canfor a fair and reasonable opportunity to respond." SOC ¶ 135. | "*Ex parte* meeting memoranda were not created and placed on the record as required by law . . . ." SOC ¶¶ 57, 5, 58, 77-82. | No analogous claim. |

# NAFTA Article 1110

| Canfor | Tembec | Terminal |
|---|---|---|
| **Improper Subsidy Determination** | | |
| Commerce improperly "determined that a subsidy program employed by the Province of Quebec . . . was an export subsidy" despite that it "at best benefited only .0029% of all softwood lumber exports to the United States . . . ." SOC ¶¶ 89-90. | No analogous claim. | Commerce improperly "reli[ed] on a single export subsidy from the Province of Quebec (that had benefited only three companies and amounted to only 0.0029 percent of total sales to the United States) to identify a subsidy . . . ." NOA ¶ 23(c)(ii). |
| **Prohibition on Selling at Full Cost** | | |
| "Canfor can only sell its products into the United States at full cost, whereas a United States Competitor of Canfor is lawfully entitled to sell its products into the United States market at its incremental cost." SOC ¶ 130. | No analogous claim. | Commerce "impos[ed] anti-dumping duties such that a Canadian importer to the United States can only sell its products into the United States at full cost, whereas a United States competitor is lawfully entitled to sell its product at incremental cost." NOA ¶ 24 (d). |