# Exhibit V

MAY 20 2005 20:50 FR BAKER HOSTETLER LLP    TO #1287768481    P.02/15

# BAKER & HOSTETLER LLP
## COUNSELLORS AT LAW

WASHINGTON SQUARE, SUITE 1100 • 1050 CONNECTICUT AVENUE, N.W. • WASHINGTON, D.C. 20036-5304 • (202) 861-1500
FAX (202) 861-1783

ELLIOT J. FELDMAN
WRITER'S DIRECT DIAL NUMBER (202) 861-1679
E-MAIL: EFELDMAN@BAKERLAW.COM

May 20, 2005

**VIA FACSIMILE**

Mr. Gonzalo Flores
ICSID
1818 H Street, N.W.
Washington, D.C. 20433

Re: *Tembec Inc. v. United States of America; Canfor Corp. v. United States of America; Terminal Forest Products Ltd. v. United States of America*

Dear Mr. Flores:

On behalf of Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc. (collectively, "Tembec"), and in accordance with NAFTA Article 1126(1) and Article 11 of the UNCITRAL Arbitration Rules, we submit this challenge to the appointment of Davis R. Robinson to the NAFTA Article 1126 tribunal. Mr. Robinson's family relationship to President George Walker Bush; his political appointment to the Office of Legal Adviser when his wife's first cousin was Vice-President of the United States; his service in that capacity as counsel to the United States in international legal disputes and head of the legal office now representing the United States in this arbitration; are all circumstances that, in the particular context of Tembec's claim against the United States, give rise to justifiable doubts that Mr. Robinson could be impartial in this arbitration.

## The Applicable Conflict Of Interest Standard

The establishment of a tribunal under NAFTA Article 1126 is governed by the UNCITRAL Arbitration Rules. See Article 1126(1). Article 10(1) of the UNCITRAL Rules states: "Any arbitrator may be challenged if circumstances exist that give rise to justifiable doubts as to the arbitrator's impartiality or independence." The "justifiable doubts" standard is not defined in the UNCITRAL Rules, but is explained in the *IBA Guidelines on Conflicts of Interest*, which adopted the same standard from the UNCITRAL Rules. See Explanation (b) to General Standard 2.

CINCINNATI • CLEVELAND • COLUMBUS • COSTA MESA • DENVER • HOUSTON • LOS ANGELES • NEW YORK • ORLANDO • WASHINGTON, D.C.
International Affiliates — SAO PAULO, BRAZIL • JUAREZ, MEXICO
www.bakerlaw.com

Mr. Gonzalo Flores
May 20, 2005
Page 2

The *IBA Guidelines* use an "appearance test" to determine whether there are justifiable doubts about an arbitrator's ability to be impartial. *See id.* Thus, whether the circumstances give rise to justifiable doubts must be considered "from a reasonable third person's point of view having knowledge of the relevant facts." See General Standard 2(b).[1] General Standard 2(c) of the *IBA Guidelines* explains:

> (c) Doubts are justifiable if a reasonable and informed third party would reach the conclusion that there was a likelihood that the arbitrator may be influenced by factors other than the merits of the case as presented by the parties in reaching his or her decision.

The *IBA Guidelines* also provide a non-exclusive list of examples of potential conflicts to provide guidance as to the practical application of conflict of interest questions. Two of those examples pertinent here are found on the "Waivable Red List" of the *IBA Guidelines*:

> 2.2 Arbitrator's direct or indirect interest in the dispute
>
> > 2.2.3 The arbitrator or a close family member of the arbitrator has a close relationship with a third party who may be liable to recourse on the part of the unsuccessful party in the dispute.
>
> 2.3 Arbitrator's relationship with the parties or counsel
>
> > 2.3.8 The arbitrator has a close family relationship with one of the parties or with a manager, director or member of the supervisory board or any person having a similar controlling influence in one of the parties or an affiliate of one of the parties or with a counsel representing a party.

These principles under the "justifiable doubts" standard, when applied to the circumstances of Tembec's claim against the United States and the circumstances of Mr. Robinson's appointment, warrant the replacement of Mr. Robinson on the Article 1126 tribunal with a different arbitrator.

**The Context Of Tembec's Claim Against The United States**

The circumstances of Mr. Robinson's appointment must be considered in light of the particular claims and issues upon which he would pass judgment. Unlike other investor-state arbitrations arising from disputes with state or municipal governments, Tembec's claim directly challenges the protectionist trade policies of the

---

[1] The UNCITRAL Rules also require that ICSID "shall have regard to such considerations as are likely to secure the appointment of an independent and impartial arbitrator...." Article 6(4) of the UNCITRAL Rules; *see also* Articles 7(3), 11(3) and 12(1) and (2) incorporating the requirement in Article 6.

Mr. Gonzalo Flores
May 20, 2005
Page 3

Bush Administration in the current round of *Softwood Lumber from Canada* antidumping and countervailing duty proceedings (commonly referred to as "*Lumber IV*"). *Lumber IV*, by many accounts, has been the most contentious and the most politically charged of all trade disputes. Tembec has alleged in its claims against the United States, *inter alia*, that the final antidumping and countervailing duty determinations and orders in *Softwood Lumber from Canada* were the products of political pressure from the Bush Administration, the United States House of Representatives and Senate, and the U.S. lumber industry discriminating against Canada, rather than of fair and impartial proceedings as required by law.[2] Tembec has alleged that the policy of the Bush Administration has been to ignore the decisions of multiple international tribunals – formed under NAFTA and the WTO -- that have found no legal basis for the imposition of duties on Canadian softwood lumber, and to both flout and delay resolution of those proceedings to the detriment of Tembec and its investments in the United States.[3]

Tembec has cited examples of political pressure, such as: the public acknowledgement by former Undersecretary of Commerce Grant Aldonas that President Bush and former Secretary of Commerce, Donald Evans, carry out the administration's wishes regarding Canadian lumber;[4] legal findings have been reached by the Department of Commerce at the suggestion of the President's Trade Representative;[5] a letter from 51 U.S. Senators urging the International Trade Commission to make a final determination against Canadian lumber producers was designed to yield politically-sensitive rather than strictly legal outcomes;[6] and a preliminary determination by the U.S. Commerce Department was made at the urging of a U.S. Senator against Canadian producers.[7]

Since Tembec submitted its claim, President Bush has continued to be involved directly in the United States' fight to retain unlawful duties on Canadian softwood lumber, and has carried that fight to Canada's Prime Minister, Paul Martin. Earlier this year, Republican Senator Larry Craig reported on the floor of the U.S. Senate:

> President Bush was well prepared to answer the Canadian Prime Minister when they last met. The President told the Prime Minister that the problem of subsidies and dumping is caused by Canada, and the solution lies with Canada, unless Canada wants the solution to be permanent duties to offset the subsidies and dumping.[8]

---

[2] *See, e.g.*, Tembec Statement of Claim at 2-3, 17, 21.
[3] *See id.* at 29-33.
[4] *See id.* at 21-22.
[5] *See id.* at 17.
[6] *See id.* at 22.
[7] *See id.* at 16.
[8] 151 Cong. Rec. S136 (daily ed. Jan 24, 2005) (statement of Sen. Craig).

Mr. Gonzalo Flores
May 20, 2005
Page 4

Republican Senator Michael Crapo explained that the President's policy in response to adverse decisions by the WTO and by NAFTA Chapter 19 binational panels was not to comply with the rulings:

> The Bush Administration has concluded that duty deposits amounting to approximately $3 billion and growing daily, cannot and will not be returned absent a negotiated settlement between the Canadian and U.S. Governments. ... There is zero likelihood that the countervailing duty, antisubsidy, order will disappear absent settlement of the lumber subsidy and dumping issues, no matter how often a NAFTA panel tries to achieve this outcome.[9]

$3 billion in duty deposits—over $250 million from Tembec—have been collected as a result of final determinations by the Department of Commerce and International Trade Commission that were rejected by multiple panels of the WTO and NAFTA Chapter 19. The Bush Administration's policies to retain these funds and continue this dispute is being made at the highest level and with President Bush's personal involvement.

The United States recognized in December 2004, in testimony before the *Canfor* tribunal that "...antidumping and countervailing duty matters are a very politically sensitive topic...."[10] This political sensitivity is especially apparent in Tembec's case, where improper political influence in the *Softwood Lumber* proceedings plays a central part in Tembec's claims against the United States.

In light of the political sensitivities surrounding *Lumber IV*, the United States has raised objections to potential arbitrators who, because of their own or their law firms' representation of Canadian softwood lumber producers—not even necessarily in the *Lumber IV* disputes—arguably might be sympathetic to allegations of political caprice and arbitrariness by the United States Government. The United States objected to the nominations of Messrs. Rowley and Fortier on the Article 1126 tribunal presumably on this principle. Neither Tembec nor Canfor protested the objection to Mr. Fortier, and sympathized with the objection to Mr. Rowley, even though Tembec thought the connection of these distinguished Canadians to the issues in Tembec's Chapter 11 claims were tenuous.[11] But some connection to lumber producers cannot be the only

---

[9] 151 Cong. Rec. S136-7 (daily ed. Jan. 24, 2005) (statement of Sen. Crapo). Through a "colloquy" on the Senate floor, Senators Crapo, Larry Craig (R-ID), and Max Baucus (D-MT) advised Tembec and other parties that the United States Government would not live up to its legal obligations under NAFTA Chapter 19, nor its international obligations arising from the WTO rejection of the Byrd Amendment.
[10] Transcript of Jurisdictional hearing in the matter of *Canfor Corporation v. United States of America*, Arbitration under NAFTA Chapter 11, Vol 2, December 8, 2004 at page 583.
[11] As the United States' April 22, 2005 letter suggested, the lawyers principally responsible for the *Softwood Lumber* representations at Mr. Fortier's firm, Ogilvy Renault, had already departed. Two lawyers remained who, according to the United States, had "represented Canada in the WTO proceeding

MAY 20 2005 20:51 FR BAKER HOSTETLER LLP          TO #1287768481          P.06/15

Mr. Gonzalo Flores
May 20, 2005
Page 5

test. As a matter of fairness to the parties, extra care should be taken to ensure that the arbitrators of the Article 1126 tribunal have no ties to the United States Government or to key policy-makers in position to control the very policies and measures being complained of by Tembec.

**The Existing Circumstances That Give Rise To Justifiable Doubts**

Mr. Robinson's familial relationship with President Bush raises justifiable doubts about his impartiality and independence to decide this dispute. Mr. Robinson's wife, Suzanne Walker Robinson, is a cousin once removed of the President of the United States, George Walker Bush, whose governance of agencies and policies will be directly at issue in Tembec's claim against the United States. It seems inconceivable to Tembec that someone with a close family relationship to the President would sit in judgment of Tembec's claim.

Mr. Robinson's career has also included high political appointment in a Republican administration. He served as the Legal Adviser to the United States—appointed when his wife's first cousin, George Herbert Walker Bush, was Vice-President of the United States—and represented the United States in international legal disputes. He was the chief of the same legal office at the Department of State responsible for presenting the United States' arguments to the Article 1126 tribunal.

Applying the standards in the UNCITRAL Rules and the *IBA Guidelines* to these circumstances, the question presented is whether a reasonable third person would have justifiable doubts about an arbitrator's impartiality or independence where:

(1) the arbitrator is related by marriage to the current Chief Executive of one of the parties;

(2) the arbitrator previously served as the General Counsel for that same party, although not during the tenure of the Chief Executive to whom the arbitrator is related; and

(3) the office of the current General Counsel for that same party, who ultimately reports to the Chief Executive to whom the arbitrator is related, is presenting the arguments before the arbitrator.

Two practical examples of conflicts from the *IBA Guidelines* also are implicated by the existing circumstances. Mr. Robinson's appointment implicates example 2.2.3 of the *IBA Guidelines*. Mr. Robinson's wife, Suzanne Walker Robinson,

---

challenging the antidumping determination," but there was no suggestion that they or the firm continued that representation of the Government of Canada, who is not a party here. The United States' objection to Mr. Fortier, therefore, relied primarily on the firm's "continued promotion of those relationships on its website" and its prior connections to *Lumber IV*.

Mr. Gonzalo Flores
May 20, 2005
Page 6

is the cousin of former Vice-President and President George Herbert Walker Bush, who is the father of the current President of the United States, George Walker Bush. Mrs. Robinson is a close family member to the named arbitrator, Mr. Robinson. President Bush, in his capacity as the Chief Executive of the United States, would be responsible for administering the payment of damages were the United States to lose its dispute with Tembec.

Mr. Robinson's appointment also implicates example 2.3.8 of the *IBA Guidelines*. Mr. Robinson has a close family relationship with President Bush, who has a controlling influence over the United States Government and particularly its policies on softwood lumber duties.

Tembec does not believe that the United States would accept an arbitrator with such close ties to Tembec, especially in light of the United States' own objections to arbitrators who have been affiliated with individuals representing companies completely distinct from, and in competition with, Tembec in the *Softwood Lumber* proceedings. But Tembec does not need to prove that much. The standard only requires justifiable doubts which, according to the IBA Guidelines, mean that a "reasonable and informed third party would reach the conclusion that there was a likelihood that the arbitrator may be influenced by factors other than the merits of the case...." *See* General Standard 2(c).

We would like to make plain that Tembec's challenge to Mr. Robinson should in no way be construed as a condemnation of his political affiliation, his service at the State Department as the United States' legal representative in international disputes, or his family's relationship with the current and former Presidents of the United States. Nor should Tembec's challenge be construed as questioning Mr. Robinson's integrity.

Tembec submits only that the circumstances of Mr. Robinson's appointment cannot be ignored for their potential to influence the judgment of an arbitrator who is to decide (a) whether the United States is entitled to consolidate the *Tembec* case after Tembec has spent very substantial sums of money, over many months, to form tribunals cooperatively with the United States and to respond to the United States' various procedural and jurisdictional defenses; and possibly (b) whether the Bush Administration's conduct of the antidumping and countervailing duty proceedings in *Softwood Lumber from Canada* breached the United States' obligations under NAFTA Chapter 11, such that the United States Government should pay Tembec $250 million or more in damages. A reasonable third party would have justifiable doubts that, in light of the existing circumstances, someone with a close family relationship to the United States President, and who is the former head of the legal office representing the United States in this very proceeding, should sit in judgment of such matters.

Mr. Gonzalo Flores
May 20, 2005
Page 7

       Articles 11(3) and 12 of the UNCITRAL Rules outline the procedures for challenges to the appointment of an arbitrator. Article 11(3) provides:

> When an arbitrator has been challenged by one party, the other party may agree to the challenge. The arbitrator may also, after the challenge, withdraw from his office. In neither case does this imply acceptance of the validity of the grounds for the challenge. ...

In the event that the United States does not agree to the challenge or Mr. Robinson does not agree to withdraw from the Article 1126 tribunal, Tembec is entitled to request that ICSID decide the challenge under Article 12(1).

       The circumstances tying Mr. Robinson to the United States Government, and specifically to President Bush and the State Department's Office of the Legal Adviser, would not convey to Tembec or to the public in general the appearance of an independent and impartial tribunal. Tembec therefore requests, in accordance with Article 11(3) of the UNCITRAL Rules, that the United States agree to Tembec's challenge of Mr. Robinson's appointment, or that Mr. Robinson withdraw from the Article 1126 tribunal.

Respectfully submitted,

Elliot J. Feldman
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington D.C. 20036

Counsel to Tembec Inc.
Tembec Investments Inc.
Tembec Industries Inc.

cc:    Davis R. Robinson, Esq. (c/o Mr. Flores)
      Professor Albert Jan van den Berg (c/o Mr. Flores)
      Professor Armand de Mestral (c/o Mr. Flores)
      Mark A. Clodfelter
      Andrea J. Menaker
      P. John Landry
      Keith E. W. Mitchell

# BAKER & HOSTETLER LLP

COUNSELLORS AT LAW

WASHINGTON SQUARE, SUITE 1100 • 1050 CONNECTICUT AVENUE, N.W. • WASHINGTON, D.C. 20036-5304 • (202) 861-1500
FAX (202) 861-1783

ELLIOT J. FELDMAN
WRITER'S DIRECT DIAL NUMBER (202) 861-1679
E-MAIL: EFELDMAN@BAKERLAW.COM

May 20, 2005

**VIA FACSIMILE**

Professor Albert Jan van den Berg
Mr. Davis R. Robinson
Professor Armand de Mestral
c/o
Mr. Gonzalo Flores
ICSID
1818 H Street, N.W.
Washington D.C. 20433

Re: Tembec Inc. v. United States; Canfor Corp. v. United States, Terminal Forest Products Ltd. v. United States

Dear Sirs:

On behalf of Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc. (collectively "Tembec"), we have received your instructions through Mr. Flores regarding the schedule respecting the question of consolidation. We were surprised that the Tribunal would take action to stay the Article 1120 proceedings while time remained under the UNCITRAL Rules, which govern the establishment of this Tribunal, for parties to review potential conflicts of interest and to challenge the appointment of arbitrators, especially after Tembec had written on May 9 and May 12, 2005 expressing its intent to consider information provided about potential conflicts within the time provided by the rules. Today, only after the Tribunal had already stayed the Article 1120 proceedings, did we receive Professor de Mestral's communication responding to potential conflict of interest concerns. The Tribunal's action to stay proceedings while potential conflict issues remain open and challengeable under the Rules is improper, *ultra vires* and should be withdrawn. Furthermore, we inform you that Tembec challenges the appointment of Mr. Robinson under Article 10 of the UNCITRAL Rules. The basis for that challenge will be set forth in a separate letter. We have yet to complete our evaluation of the information disclosed for the first time today by Professor de Mestral.

Tembec objects to the timing and prejudicial nature of the schedule offered by the Tribunal. The United States argued that an immediate stay of the Article

Professor Albert Jan van den Berg
Mr. Davis R. Robinson
Professor Armand de Mestral
May 20, 2005
Page 2

1120 proceedings was necessary because it was too burdensome on the United States to prepare for the June 2, 2005 jurisdictional hearing in *Tembec* that had been scheduled since December 2004 and for which the parties had completed four months of briefs, on issues that the United States contends are the same issues it already had briefed and argued in a previous hearing for *Canfor*. The June 2 date, moreover, had been dictated by objections from the United States against an earlier date.

      The Tribunal's decision to stay the Article 1120 proceedings would alleviate the United States' burden of preparing during the next two weeks for the Tembec hearing, but impose instead on all of the parties the burden of submitting arguments about the legal situs of the arbitration in two business days, then briefing the question of consolidation—a subject that the parties have not briefed before—in two weeks, on June 2, 2005, to be followed by two weeks' preparation for a hearing on that question. The parties are significantly more burdened by the Tribunal's stay than they would have been had the Tribunal waited until Tembec's jurisdictional hearing had taken place.[1] Expedition of the United States' demand for consolidation does not cure the consequences of delay in deciding issues already briefed, and the expedited deadlines given by the Tribunal will not allow fair and thorough briefing of the consolidation question.

      The Tribunal's request that briefs on consolidation be submitted simultaneously prejudices the parties opposed to consolidation. The United States is the moving party requesting consolidation and should bear the burden of presenting its case in favor of that motion. Presumably it has studied consolidation before moving for it. Having offered assurances to all parties that it did not intend to move for consolidation, parties other than the United States had no reason to devote resources to this subject. The parties in opposition, therefore, should be permitted to see what factual grounds and legal arguments the United States offers in favor of its motion so they may respond. It is unfair to ask the parties in opposition to respond to facts and arguments that they have not seen from the moving party, and therefore to brief simultaneously issues they have not raised.

      The *Tembec* Tribunal conferred with the parties to set out briefing and hearing schedules and to deal with procedures. This Tribunal, not even properly

---

[1] Tembec has spent hundreds of thousands of dollars and endured an eight-month delay in the resolution of its claim to arrive at a hearing and decision on the United States' objections to jurisdiction. Now, on the eve of the hearing, the United States wants to defer, to brief other issues on consolidation, and to reargue its jurisdictional objections in front of a new tribunal. To the extent that this Tribunal proceeds to hear the United States' arguments on consolidation, it should be mindful of the burden that a stay of Article 1120 proceedings has on Tembec, to say nothing of the burdens that a decision to consolidate might impose. The goal of Article 1126 is "fair and efficient resolution of the claims." The Tribunal should allow the Article 1120 tribunals to complete their adjudication of the United States' objections to jurisdiction before deciding whether there are any efficiencies to be gained by consolidating on the merits.

Professor Albert Jan van den Berg
Mr. Davis R. Robinson
Professor Armand de Mestral
May 20, 2005
Page 3

constituted, has ordered procedures and schedules without consultation with the parties, not even discussing whether the parties and their counsel are available on the proposed hearing date. While Tembec appreciates a prompt disposition of the consolidation issue so that it may return to the merits of a case that already has been delayed enough by the United States, the Tribunal must not structure briefing and hearing on the consolidation question in such a fashion that the parties are prejudiced by the expedited procedures.

      Should the Tribunal agree with Tembec that the stay of Article 1120 proceedings was issued prematurely, the Tribunal should withdraw the stay and wait until questions regarding the establishment of the Tribunal have been finally resolved in accordance with the Rules before taking any further action. Should the Tribunal insist on going forward, it should (a) allow the parties in opposition to consolidation the opportunity to read and respond to the United States' arguments; and (b) allow the parties to agree among themselves to an expedited schedule for arguments on consolidation and any issues relating to it. Should the parties be unable to agree mutually to an expedited schedule, the Tribunal may then establish a schedule after due consideration for the concerns raised by the different parties.

      Respectfully submitted,

Elliot J. Feldman
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington D.C. 20036

Counsel to Tembec Inc.
Tembec Investments Inc. and
Tembec Industries Inc.

cc:    Mark A. Clodfelter
       Andrea J. Menaker
       P. John Landry
       Keith E. W. Mitchell
       Jose Antonio Rivas
       Florentino P. Feliciano (c/o Mr. Rivas)
       James R. Crawford (c/o Mr. Rivas)
       Kenneth W. Dam (c/o Mr. Rivas)

# BAKER & HOSTETLER LLP
## COUNSELLORS AT LAW

WASHINGTON SQUARE, SUITE 1100 • 1050 CONNECTICUT AVENUE, N.W. • WASHINGTON, D.C. 20036-5304 • (202) 861-1500
FAX (202) 861-1783

ELLIOT J. FELDMAN
WRITER'S DIRECT DIAL NUMBER (202) 861-1679
E-MAIL: EFELDMAN@BAKERLAW.COM

May 20, 2005

**VIA FACSIMILE**

Mr. Roberto Dañino
Secretary-General
ICSID
1818 H Street, N.W.
Washington D.C. 20433

Re:   *Tembec Inc. et al. v. United States of America*;
      *Canfor Corp. v. United States of America*; and
      *Terminal Forest Products Ltd. v. United States of America*

Dear Secretary Dañino:

We wrote to you on May 12, 2005 expressing our concerns that the members of the Article 1126 arbitration tribunal had been appointed and empowered to act before Tembec had received the time permitted under the UNCITRAL Rules to object to the appointments based on conflicts of interest. You will recall that Professor Armand de Mestral had been named just two days before ICSID declared the Article 1126 tribunal established, and that Mr. Davis R. Robinson disclosed information about a potential conflict of interest contemporaneously with ICSID's declaration. UNCITRAL Rule 11 gives the parties 15 days to challenge an arbitrator.

ICSID's Deputy-Secretary General, Antonio Parra, responded to us, apparently on your behalf, on May 13, 2005, saying: "In any event, I wish to assure you that it is also our understanding that the appointments are entirely without the prejudice to the right of the parties to avail themselves of the challenge provisions of the UNCITRAL Arbitration Rules." Unfortunately, we already have been prejudiced because the consolidation tribunal has acted before Tembec's time to challenge the arbitrators has expired.

Yesterday we received a letter from Gonzalo Flores, Secretary of the Consolidation Tribunal, informing us that the Consolidation Tribunal of Dr. Albert Jan van den Berg, Prof. Armand de Mestral, and Mr. Davis R. Robinson had ruled, granting the United States' request to stay the arbitration proceedings in *Tembec v. United States*. This action contradicts Mr. Parra's letter (a tribunal acting while its very

CINCINNATI  •  CLEVELAND  •  COLUMBUS  •  COSTA MESA  •  DENVER  •  HOUSTON  •  LOS ANGELES  •  NEW YORK  •  ORLANDO  •  WASHINGTON, D.C.
*International Affiliates* — SÃO PAULO, BRAZIL  •  JUAREZ, MEXICO
www.bakerlaw.com

Secretary General Robert Dañino
May 20, 2005
Page 2

constitution remains subject to dispute is acting prejudicially); is *ultra vires* (we question how the tribunal could be empowered to act at all with its legitimacy in question); violates the UNCITRAL Rules regarding the establishment of the tribunal (the United States used its full complement of time to object to two Canadian national nominees; Tembec, after receipt of new information about a second American national nominee, was given no time at all to object); and prejudices our right to proceed with the jurisdictional hearing scheduled for June 2 and 3, for which Tembec has waited almost 18 months and has already filed with the tribunal two complete rounds of briefing.

Today, after the stay of Article 1120 proceedings had been issued, we received a letter from Mr. Flores containing an e-mail from Professor de Mestral explaining why he has no conflict of interest to sit as an arbitrator for the Article 1126 tribunal. The timestamp of the e-mail from Professor de Mestral indicates that ICSID did not have Professor de Mestral's explanation about his potential conflict when it released to us that tribunal's decision to stay Tembec's proceedings. The procedure for these decisions—the stay, the scheduling, the very scheme for briefing—is highly improper and prejudicial.

Please be advised that Tembec challenges the appointment of Mr. Robinson for conflict of interest. The basis for this challenge will be set forth in a separate letter. As to Professor de Mestral, Tembec must now evaluate the new disclosures it has received today.

It is prejudicial to Tembec that ICSID would appoint the members of the consolidation tribunal and empower them to take action to stay Tembec's Article 1120 proceedings before those members have made disclosures about potential conflicts of interest, and before the parties have had opportunity to examine potential conflicts of interest. Providing parties an opportunity to challenge an arbitrator's appointment only *after* the arbitrator has taken prejudicial action against that party is meaningless.

It is also contrary to the UNCITRAL Rules which govern the establishment of the tribunal. As stated in our May 12, 2005 letter to you, the UNCITRAL Rules require that ICSID "shall have regard to such considerations as are likely to secure the appointment of an independent and impartial arbitrator..."[1] Moreover, the parties are entitled to 15 days under Article 11(1) to evaluate information regarding an arbitrator's potential conflicts of interest. NAFTA Article 1126(5), which requires establishment of a consolidation tribunal within 60 days of request, is no more obligatory than Article 1126(1), which requires consolidation tribunals to be established in accordance with the UNCITRAL Rules.

---

[1] *See* Article 6(4) of the UNCITRAL Arbitration Rules.

Secretary General Robert Dañino
May 20, 2005
Page 3

ICSID acted within the 60 days required by Article 1126. The United States and the other parties objected to several of these appointments. The 60-day requirement was satisfied and ICSID should have respected fully the 15-day rule for challenges. Satisfaction of the 60-day obligation under Article 1126(5) cannot be used as an excuse for denying the parties' rights under the UNCITRAL Rules, or for prejudice to the parties' rights under Article 1120.

We ask that ICSID withdraw its letter of May 6, 2005 deeming the consolidation tribunal established, and withdraw the order of May 19, 2005 to stay proceedings in *Tembec v. United States*. As this tribunal already has proceeded *ultra vires* and apparently without due regard for the UNCITRAL Rules, we ask that ICSID start over in establishing an Article 1126 tribunal, and we have a suggestion that the United States previously, albeit informally, had embraced.

When the question of consolidation was first presented, the United States agreed that the tribunal in *Tembec v. United States*—Judge Florentino P. Feliciano, Professor James R. Crawford, and Professor Kenneth W. Dam—would be suitable for hearing the question of consolidation as an Article 1126 tribunal. Even today the *Tembec* tribunal is fully constituted and there are no pending objections as to potential conflicts of interest. The *Tembec* tribunal has shown itself to be deliberate, respecting the interests of the different parties. In light of the existing conflict of interest with Mr. Robinson, and "in the interests of fair and efficient resolution of the claims," Tembec suggests that ICSID ask the tribunal in *Tembec v. United States* to serve as the Article 1126 tribunal and rule on the question of consolidation.

Inasmuch as the *Tembec* tribunal has already planned to be in Washington D.C. on June 2-3, 2005 to complete the process of hearing the United States' objections to jurisdiction, we suggest that the *Tembec* tribunal proceed with the hearing on jurisdiction but set aside time in that hearing to concurrently entertain the United States' application to stay Article 1120 proceedings pending a hearing on consolidation. Only in this way could the motion for stay properly be heard. The United States' request to be heard on consolidation would be expedited while the hearing on jurisdictional questions in *Tembec* could be completed without rupture at the eleventh hour, and all parties could properly address the status of proceedings going forward

Secretary General Robert Dañino
May 20, 2005
Page 4

without unnecessarily expending further time and energy to resolve the conflicts and procedural dilemmas presented by the Article 1126 tribunal named so far by ICSID.

Respectfully submitted,

Elliot J. Feldman
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington D.C. 20036

Counsel to Tembec Inc.
Tembec Investments Inc.
Tembec Industries Inc.

cc: Mark Clodfelter
Andrea J. Menaker
P. John Landry
Keith E. W. Mitchell
Gonzalo Flores
Professor Albert Jan van den Berg (c/o Mr. Flores)
Mr. Davis R. Robinson (c/o Mr. Flores)
Professor Armand de Mestral (c/o Mr. Flores)
Jose Antonio Rivas
Florentino P. Feliciano (c/o Mr. Rivas)
James R. Crawford (c/o Mr. Rivas)
Kenneth W. Dam (c/o Mr. Rivas)