# Exhibit X

MAY. 27. 2005 6:15PM  WORLD BANK                             TO :NO. 169322eP. 7/15    P.02

# BAKER
&
# HOSTETLER LLP
COUNSELLORS AT LAW

WASHINGTON SQUARE, SUITE 1100 • 1050 CONNECTICUT AVENUE, N.W. • WASHINGTON, D.C. 20036-5304 • (202) 861-1500
FAX (202) 861-1783

ELLIOT J. FELDMAN
WRITER'S DIRECT DIAL NUMBER (202) 861-1679
E-MAIL: EFELDMAN@BAKERLAW.COM

May 26, 2005

**VIA FACSIMILE**

Mr. Roberto Dañino
Secretary-General
ICSID
1818 H Street, N.W.
Washington D.C. 20433

Re: *Tembec Inc. et al. v. United States of America;*
*Canfor Corp. v. United States of America;* and
*Terminal Forest Products Ltd. v. United States of America*

Dear Secretary Dañino:

We write on behalf of Tembec Inc., Tembec Investments Inc, and Tembec Industries Inc. ("Tembec") in reply to the United States' letter of May 24, 2005 regarding Tembec's challenge of the appointment of Mr. Davis Robinson to the Article 1126 tribunal.

Tembec's challenge of Mr. Robinson is not untimely, nor has the United States claimed that it has suffered any prejudice from the timing of Tembec's challenge. Mr. Robinson apparently had not disclosed his relationship to President Bush and the nature of that relationship was not known until Mr. Robinson provided that information, on May 6, 2005, also the day that ICSID deemed the Article 1126 tribunal to be established. Had the information been disclosed previously, Tembec would not have had to request it. Tembec at that time was relying only, as the United States acknowledges, on an Internet search of unknown reliability indicating someone named "Davis R. Robinson" was purported to be a close relation to President Bush. It would have been imprudent, based on such information, for Tembec to have asserted a challenge before receiving the information Mr. Robinson subsequently disclosed.

Under Article 11(1) of the UNCITRAL Arbitration Rules, Tembec had until Saturday, May 21, 2005 to challenge Mr. Robinson's appointment, and Article 2(2) would have extended that deadline to the next business day, Monday May 23, 2005. Tembec challenged the appointment of Mr. Robinson on May 20, 2005 before the deadline under the Rules had expired.

CINCINNATI • CLEVELAND • COLUMBUS • COSTA MESA • DENVER • HOUSTON • LOS ANGELES • NEW YORK • ORLANDO • WASHINGTON, D.C.
International Affiliates — SÃO PAULO, BRAZIL • JUÁREZ, MEXICO
www.bakerlaw.com

Secretary General Robert Dañino
May 26, 2005
Page 2

That other former officers of the U.S. State Department have been appointed arbitrators for other claims against the United States is not a reason to reject Tembec's challenge of Mr. Robinson's appointment. There is a unique combination of facts and circumstances in this case, including Mr. Robinson's close relation to the President, the intense political nature of the softwood lumber dispute, and the potential impact on that dispute of Tembec's claims.

The only relevant inference to be drawn from the appointment of former State Department officials to arbitrations is that five different times (including this case) the United States has followed a pattern of preferring that former members of its own Legal Adviser's office—the very office that defends the United States in these cases—adjudicate claims against the United States.[1] The implications of that pattern for the appearance of a tribunal's impartiality or independence weigh against Mr. Robinson's service on this tribunal.

Tembec has recognized the potential appearance, if not existence, of conflicts of interest among candidates for the Article 1126 tribunal, and has either objected or accepted the objections of the United States as to those candidates, even where the potential conflict might have favored Tembec. The United States, by conspicuous contrast, has fought to retain two arbitrators for this tribunal (Greenwood and now Robinson) where there appeared to be a conflict of interest in its favor, and initially did not object to an American candidate (Johnson) in circumstances similar to those applicable to one of the Canadian candidates whom the United States successfully opposed.

The United States also continues to distort facts with hyperbole. By any normal genealogy, Mr. Robinson is not five steps removed from President Bush. In fact, his wife is as close as the President's middle name, a first cousin once removed. The United States appears determined to replace tribunals ultimately created by consensus with a tribunal mired in controversy.

ICSID must be sensitive to the nexus of circumstances in which Mr. Robinson's nomination is placed: the close relative of a President himself personally engaged in the issues at stake, former head of the very office defending the President's government. These circumstances and facts raise justifiable doubts about Mr. Robinson's role as arbitrator on this Article 1126 tribunal. Surely ICSID could identify an American arbitrator free of such disqualifying characteristics. Tembec must respectfully request that Mr. Robinson withdraw from the Article 1126 tribunal. Tembec renews its concerns about the formation of this tribunal and its first decisions, inviting again the

---

[1] In one instance the United States named a former Secretary of State, but we note that he, as well as former Legal Adviser Conrad Harper, did not complete service on his tribunal, instead withdrawing when potential conflict of interest concerns were raised.

Secretary General Robert Dañino
May 26, 2005
Page 3

alternative suggested in its letter of May 20, 2005—a tribunal already created by consensus—but at a minimum requests that ICSID, should Mr. Robinson not withdraw, appoint another arbitrator in his place.

Respectfully submitted,

Elliot J. Feldman
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington D.C. 20036

Counsel to Tembec Inc.
Tembec Investments Inc.
Tembec Industries Inc.

cc:  Mark Clodfelter
     Andrea J. Menaker
     P. John Landry
     Keith E. W. Mitchell
     Gonzalo Flores
     Professor Albert Jan van den Berg (c/o Mr. Flores)
     Mr. Davis R. Robinson (c/o Mr. Flores)
     Professor Armand de Mestral (c/o Mr. Flores)
     Jose Antonio Rivas
     Florentino P. Feliciano (c/o Mr. Rivas)
     James R. Crawford (c/o Mr. Rivas)
     Kenneth W. Dam (c/o Mr. Rivas)

**Davis R. Robinson**
5789 Fordham Road, N.W.
Washington, D.C. 20016
Office Telephone: (202) 966-8040
Office Facsimile: (202) 966-8108
Office E-Mail: drrobins@llgm.com

June 3, 2005

<u>*VIA FACSIMILE AND MAIL*</u>

Antonio R. Parra, Esq.
Deputy Secretary-General
International Centre for Settlement of
 Investment Disputes
1818 H Street, N.W.
Washington, D.C. 20433

Re: Canfor Corporation v. United States of America; Terminal Forest Products Ltd. v. United States of America; Tembec et al. v. United States of America; <u>NAFTA Article 1126 Consolidation Proceedings</u>

Dear Mr. Parra:

Thank you for your letter of June 2, 2005 inviting me to submit observations on the challenge that has been raised in connection with my appointment to the NAFTA Article 1126 Consolidation Tribunal established in the referenced proceedings. In this regard, I refer you to my letter dated May 6, 2005 to Gonzalo Flores, Esq., Senior Counsel of ICSID, a copy of which is attached hereto as Exhibit A (the "May 6 Letter").

I have reviewed with care (i) the May 20, 2005 letter from counsel to Tembec raising the challenge; (ii) the May 24, 2005 letter from counsel to the United States of America disagreeing with the challenge; (iii) the May 24, 2005 letter from counsel to Canfor and Terminal Forest Products joining the challenge; and (iv) the May 26, 2005 letter from counsel to Tembec replying to the May 24, 2005 letter of the United States of America.

Having considered the contents of these letters, I hereby respectfully refuse the request to withdraw as an arbitrator in this matter. Furthermore, I hereby confirm the May 6 Letter and specifically reaffirm that I am not aware (a) of any conflict of interest that would result from my acceptance of this appointment or (b) of any fact or circumstance that would give rise to any justifiable doubts as to my impartiality or independence.

Very truly yours,

*[signature]*

Davis R. Robinson

Attachment

**Davis R. Robinson**
5729 Fordham Road, N.W.
Washington, D.C. 20016
Office Telephone: (202) 986-8049
Office Facsimile: (202) 986-8102
Office E-Mail: drrobins@llgm.com

May 6, 2005

<u>*VIA FACSIMILE AND MAIL*</u>

Gonzalo Flores, Esq.
Senior Counsel
International Centre for Settlement of Investment
    Disputes (ICSID)
The World Bank Group
1818 H Street, N.W.
Washington, D.C. 20433

    Re:    Canfor Corporation v. United States of America; Terminal Forest Products Ltd. v. United States of America; Tembec et al. v. United States of America; Request for the Establishment of a Consolidation Tribunal Pursuant to NAFTA Article 1126

Dear Mr. Flores:

    Thank you for today's e-mail message requesting my acceptance to appointment as an arbitrator to serve on a Consolidation Tribunal to be established pursuant to a request submitted under Article 1126 of the North American Free Trade Agreement (NAFTA). I hereby formally accept this appointment, and it is a privilege to do so.

    As we have discussed by telephone, I have had no prior involvement or association with Canfor Corporation, Terminal Forest Products Ltd. or the Tembec affiliates to which you made reference in earlier telephone conversations. Furthermore, I am not aware (a) of any conflict of interest that would result from my acceptance of this appointment or (b) of any fact or circumstance that could give rise to any justifiable doubts as to my impartiality and independence. I have, of course, until today's e-mail message from you requesting my acceptance of this appointment, had no occasion or responsibility to make any statement or disclosure to the parties or their counsel.

    I wish to comment in this regard upon the contents of one attachment to your May 6, 2005 e-mail message, to wit, a letter dated May 2, 2005 from Elliot J. Feldman of Baker & Hostetler L.L.P., counsel to Tembec et al. (the "May 2 Letter"). In the May 2 Letter to Mr. Jose Antonio Rivas of ICSID, Mr. Feldman wrote in pertinent part: "We

Gonzalo Flores, Esq.
May 6, 2005
Page 2 of 2

understand that Mr. Robinson may have a familial relationship to the President of the United States ... Tembec's concerns about the appearance of such a relationship are heightened by Mr. Robinson's prior service as a political appointee in two Republic Administrations." For the information of ICSID, the parties and their counsel, my wife, Suzanne, is a first cousin, once removed, of the President.[1] As such, I have no personal family blood relationship with the President whatsoever. Since the President assumed office in 2001, I have had the privilege of shaking hands with him on two occasions, once at a reception attended by approximately 500 people and on another occasion at a luncheon attended by approximately 250 people. I have had no further personal, direct contact with the President, and have held no substantive conversations with him on any subject, during this period.

With regard to the reference in the May 2 Letter regarding "prior service as a political appointee in two Republican Administrations," this reference is incorrect. My sole non-career appointment that required confirmation by the United States Senate was by President Ronald Reagan (a Republican) in 1981 to serve as the Legal Adviser to the United States Department of State. My prior Federal Government service during the 1960's followed my appointment by President John F. Kennedy (a Democrat) in 1961 as a junior career Foreign Service Officer, for which career position I was among the few selected following a nationwide and score-based examination process in which neither politics nor politicians played any role.

In further response to the May 2 Letter, I might add that, a number of years after the end in 1985 of my tenure as the Legal Adviser to the United States Department of State, I was chosen in 1992 to serve on a binational panel established to decide certain questions arising from a dispute between the United States and Canada pursuant to Chapter 18 of the Canada-United States Free Trade Agreement. The Final Report of the Panel dated February 8, 1993 in the matter styled "The Interpretation of, and Canada's Compliance with, Article 701.3 with Respect to Durum Wheat Sales" was adopted unanimously, and generally in favor of the position argued by Canada.

Please let me know if you, the parties or their counsel have any further questions or require any further information.

Very truly yours,

Davis R. Robinson

---

[1] As you may know, the President's larger family is sizeable, and she is one of twenty or more who fit this designation.

# BAKER & HOSTETLER LLP
### COUNSELLORS AT LAW

WASHINGTON SQUARE, SUITE 1100 • 1050 CONNECTICUT AVENUE, N.W. • WASHINGTON, D.C. 20036-5304 • (202) 861-1500
FAX (202) 861-1783

**June 9, 2005**

**VIA FACSIMILE**

Mr. Antonio R. Parra
Deputy Secretary-General
ICSID
1818 H Street, N.W.
Washington, D.C. 20433

    Re:   Tembec Inc. *et. al.* v. United States of America;
           Canfor Corp. v. United States of America; and
           <u>Terminal Forest Products Ltd. v. United States of America</u>

Dear Deputy Secretary-General Parra:

       On behalf of Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc. (collectively, "Tembec"), we write in response to the Deputy Secretary-General's letter of June 6, 2005, seeking our "further observations" regarding Tembec's outstanding challenge to the appointment of Mr. Davis R. Robinson to the Article 1126 Tribunal. The Deputy Secretary-General's June 6, 2005 letter also provided us a copy of Mr. Robinson's letter of June 3, 2005 addressed to ICSID. Mr. Robinson in that letter refused to withdraw as an arbitrator in this proceeding.

       Mr. Robinson's June 3, 2005 letter confirmed and relied upon his letter of May 6, 2005 as support for his decision not to withdraw. He offered no other explanations or grounds to support his continued appointment to the Tribunal.

**I.   Tembec Has Raised Justifiable Doubts About Mr. Robinson's Impartiality**

       Tembec reiterates all of its concerns about Mr. Robinson that were expressed to the Tribunal in its letters of May 2, 2005, May 20, 2005, and May 26, 2005. Tembec raised in those letters serious questions about the appearance of Mr. Robinson's

Deputy Secretary-General Parra
June 9, 2005
Page 2

impartiality, particularly in reference to Mr. Robinson's close familial relationship to George Walker Bush, President of the United States, and in reference to Mr. Robinson's previous tenure as Director of the Office of Legal Adviser to the Department of State, the office that now represents the United States in these proceedings.

### A. Mr. Robinson Has A Close Familial Relationship With President Bush And The Bush Family

Mr. Robinson's familial relationship with George Walker Bush and the Bush family is one of the circumstances that could "give rise to justifiable doubts as to the arbitrator's impartiality and independence" in these proceedings.[1] Tembec has explained that Mr. Robinson's ability to be impartial in this proceeding may be compromised by the fact that his wife, Suzanne Walker Robinson, is a first cousin to former Vice President and former President George Herbert Walker Bush, who is also the father of the current President of the United States, George Walker Bush. Mr. Robinson's wife is, therefore, the first cousin, once removed, to the President of the United States.[2]

This close familial relationship creates justifiable doubt about impartiality in light of the facts and circumstances unique to this case.[3] President Bush, cabinet officers, and senior advisers have engaged directly in the *softwood lumber* dispute, which is one of the largest and most contentious trade disputes on record. President Bush himself has advised the Prime Minister of Canada that he would personally intervene only to assist his domestic industry, and the President's negotiators have demanded during the past two years that the NAFTA Chapter 11 claims, the subject of this arbitration, be withdrawn as a condition of any negotiated settlement of the *softwood lumber* dispute. Therefore, the Administration is particularly intent on the disposal of these Chapter 11 claims, which seek damages caused by the conduct of the Administration.

Tembec's claim in these proceedings includes the coordinated and systematic application of political pressure to influence the outcome of the *softwood lumber* dispute. Notwithstanding that an Executive Branch agency, the Department of

---

[1] See UNCITRAL RULES Article 10.1; see also Standard 2(b), (Conflicts of Interest), IBI Guidelines on Conflicts in International Arbitration (suggesting disqualification where "facts or circumstances exist . . . that, from a reasonable third person's point of view having knowledge of the relevant facts, give rise to justifiable doubts as to the arbitrator's impartiality or independence . . . ").

[2] Suzanne Walker Robinson is as close to the President as his middle name, and so, therefore, is her spouse. See Letter from Elliot J. Feldman to Roberto Danino (May 26, 2005) at 2.

[3] See IBA Guidelines on Conflicts in International Arbitration, 2.3.8 (stating that justifiable doubts about an arbitrator's impartiality arise when "the arbitrator has a close family relationship with one of the parties or with a manager, director or member of the supervisory board or any person having a similar controlling influence in one of the parties or with a counsel representing the parties.")

Deputy Secretary-General Parra
June 9, 2005
Page 3

Commerce, is required to be a neutral arbiter in trade disputes, the Bush Administration has not been neutral, and the International Trade Commission, which is controlled by Congress, has been very much controlled by Congress in the *softwood lumber* proceedings before it. In the Executive Branch, Tembec has identified hundreds of unlawful *ex parte* communications between executive agencies and the domestic U.S. industry, brought to light by a Freedom of Information Act suit initiated by this law firm, as well as Executive Branch disregard of numerous decisions of international tribunals, both NAFTA and WTO, that have found no legal basis for the U.S. Government's continued imposition of antidumping and countervailing duties on Canadian softwood lumber.[4] The Bush Administration has taken the position that this dispute will be resolved only by a settlement in which the U.S. domestic industry will receive a substantial portion of the $4 billion in unlawfully collected duties, no matter how many international tribunals rule against the United States. The conduct and policies of President Bush and his Administration is thus central to Tembec's claim.

Mr. Robinson's response of June 6 to Tembec's justifiable doubts about impartiality relies entirely on the very same May 6 letter that prompted Tembec's challenge. Mr. Robinson thereby has dismissed Tembec's claims without comment, as if they were not to be taken seriously or were not worthy of response.

Mr. Robinson asserts he is not conflicted because he has "no personal family blood relationship with the President."[5] This statement appears to be crafted with too many modifiers. The UNCITRAL Rules recognize no distinction between blood and in-law relationships. The concept of "family," after all, is not limited to "blood" relations.[6] The Family Research Council (FRC), an organization known to be influential in the Bush White House,[7] says in a published policy paper that, "Each marriage is also a covenant between the couple and their kin. In marriage, two families merge in a manner that

---

[4] *See, e.g.*, Letter from Elliot J. Feldman to Gonzalo Flores. (May 20, 2005) at 2, 3 (citing Tembec's Statement of Claim at 2, 3, 16, 17, 21, 22, 29-33).

[5] *See* Letter from Davis R. Robinson to Gonzalo Flores (May 6, 2005) at 2.

[6] The modern concept of "family" is broad enough to encompass parents, children living at home, children that have married, their spouses, and their offspring, as well as elderly dependents. *See Family*, Encyclopedia Britannica Premium Service (2005) http://www.britannica.com (follow "members" search for "family"). Studies suggest that the Industrial Revolution "increased the importance of relatives beyond the nuclear family" because the changes brought about by urbanization "enabled individuals to receive help from their kinsman in times of hardship." *Id.* The United Nations takes an even broader view of what constitutes a "family," defining it without regard to "blood" or marriage as "the natural and fundamental group unit of society, and is entitled to legal protection." *See* Art. 16(3) of The *Universal Declaration of Human Rights*, G. A. Res. 217, U.N. Doc. A/RES/217 (Dec. 10, 1948).

[7] *See* John Nicols, *Karl Rove's Legal Tricks*, The Nation, Jul. 22, 2002. *Available* at http://www.thenation.com/doc.mhtml?i=20020722&s=nichols.

Deputy Secretary-General Parra
June 9, 2005
Page 4

perpetuates and invigorates both. . . . [T]he great chain of being, binding the living to ancestors and to posterity, remains as important as ever."[8]  Mr. Robinson is a close member of the President's family.

Mr. Robinson has confirmed a close familial relationship, trying to qualify it by adding a meaningless "blood" to the adjectives. He does not deny that he and his wife maintain contact with President Bush or the rest of the Bush family, but has provided no details about the exact nature of his and his wife's relationship with them.

Mr. Robinson states in his May 6, 2005 letter that he has had the privilege of shaking hands with the President only twice "since the President assumed office in 2001."[9] Mr. Robinson fails, however, to divulge the nature of his relationship with the President over the many years he has been a close member of the Bush family.[10] Acknowledgment of two personal handshakes reports nothing about family relations, kinship and loyalty, which are the source of Tembec's justifiable doubts

Mr. Robinson states that he has "had no further personal, direct contact with the President," nor has he held any "substantive conversations with him" on any subject "during this period."[11]  The issue here, however, is not whether Mr. Robinson has discussed *softwood lumber* or Tembec with the President. Instead, the issue is whether, because of a very close family relationship, Mr. Robinson would feel loyalty to the President that could affect his impartiality when confronted with allegations about the President's conduct. Mr. Robinson, after two opportunities and a month of deliberation, has not addressed these justifiable doubts and concerns at all.

### B.  Mr. Robinson Has A Personal Relationship With The Legal Office Representing The United States In These Proceedings

Mr. Robinson is the former Director of the very same legal office that represents the United States in these proceedings,[12] and Tembec has questioned whether Mr. Robinson can be impartial toward arguments advanced by attorneys from that office.

---

[8]  See Allan C. Carlson, *Speak Now or Forever Hold Your Peace: On the Communal Nature of Marriage*, Family Research Council Policy Paper (Feb. 18, 2004), http://www.frc.org/get.cfm?i=PL04C04.

[9]  See Letter from Davis R. Robinson to Gonzalo Flores (May 6, 2005) at 2.

[10]  Both of the Robinsons apparently have traveled overseas with former President George Herbert Walker Bush as members of official United States delegations.  See Christopher Connell, *Bush Makes Global Relations a Family Affair: Having a Relative in the White House has its Privileges*, Associated Press, (Dec. 1, 1991).

[11]  See Letter from Davis R. Robinson to Gonzalo Flores (May 6, 2005) at 2.

[12]  See Letter from Elliot J. Feldman to Jose Antonio Rivas (May 2, 2005).

Deputy Secretary-General Parra
June 9, 2005
Page 5

Mr. Robinson was appointed to that position, moreover, when his first cousin, George Herbert Walker Bush, was Vice President of the United States.

Mr. Robinson may feel no loyalty to the office he once directed, and perhaps is not inclined to perceive that its lawyers are superior or more reliable or trustworthy than opposing counsel bringing suit against the United States and his cousin's Administration. Nevertheless, it is not unreasonable to raise questions regarding this relationship. Mr. Robinson's June 3 letter does not address these concerns, other than to state generally that he is not aware of any conflict of interest that would result from his acceptance of this appointment, or any fact or circumstance that could give rise to justifiable doubts as to his impartiality or independence.[13]

To date, Mr. Robinson's only direct response to concerns about his former employment is a brief statement in his May 6 letter that he was appointed to serve as the Legal Adviser to the U.S. Department of State by then President Reagan (thus not acknowledging that his wife's first cousin was Vice President); that subsequent to that time he was chosen to serve on a binational panel under Chapter 18 of the Canada – U.S. Free Trade Agreement; and that the panel issued a unanimous decision "generally in favor of the position argued by Canada."[14] Of course, the Office of the Legal Adviser would not have been counsel in a Chapter 18 NAFTA dispute.[15] Mr. Robinson has said nothing as to whether he could be entirely impartial when judging arguments advanced by lawyers of the very office he used to direct.

Tembec's concerns grow when the only persons in this proceeding not calling for Mr. Robinson's removal are the lawyers in his former office. To date, all parties to this proceeding have now called for Mr. Robinson to step down from these proceedings, except the United States.

II. **Mr. Robinson's Participation In Decisions While Under Challenge Creates An Appearance Of Partiality**

All three claimants have expressed justifiable doubts and have asked reasonably for Mr. Robinson to withdraw. Since he was challenged, however, Mr. Robinson has been making important decisions affecting substantive matters in this case. He joined in issuing a stay that prevented Tembec from proceeding with a hearing or, alternatively, receiving a Tribunal decision without a hearing on jurisdiction. He has issued briefing schedules and a hearing agenda. All of these steps have been

---

[13] See Letter from Davis R. Robinson to Antonio R. Parra (June 3, 2005).

[14] See Letter from Davis R. Robinson to Gonzalo Flores (May 6, 2005) at 2.

[15] Mr. Robinson does not say, but the dispute may also not have involved claims about the conduct of a Bush Administration.

Deputy Secretary-General Parra
June 9, 2005
Page 6

prejudicial and contrary to Tembec's interests, and all have occurred since Mr. Robinson's *bona fides* as an impartial arbitrator have been challenged. Tembec believes that the very decision to take part in important decisions, while being challenged, creates an appearance that Mr. Robinson is dismissive of Tembec's concerns and legal arguments and is not impartial.

Mr. Robinson's refusal to withdraw from this proceeding has forced Tembec and the other parties into an escalated, adversarial relationship with Mr. Robinson. It also may have prejudiced Tembec with other Tribunal members with whom Mr. Robinson has improperly shared decision-making for more than a month. Mr. Robinson should not have permitted this development, which we, certainly, regret.

It is not unusual for arbitrators to step aside voluntarily when confronted with a request to do so, even when the person challenged maintains in all sincerity and confidence that there is no valid reason for withdrawal.[16] A challenge cannot automatically translate into withdrawal, and there must, of course, be full and fair consideration. Mr. Robinson, however, has chosen not to respond to detailed concerns, and his choice of language suggests a certain defiance inappropriate for the judicial appointment involved here. When three of four parties independently conclude that there are justifiable doubts about impartiality, the doubts more likely than not are justifiable. Having carried this dispute in this manner forward for more than a month, while making decisions Tembec perceives to be prejudicial and adverse to its interests, Mr. Robinson could now reasonably be thought to be in circumstances where "animus may arise."[17] Whether perceived or real, Tembec believes that the potential for such animus further requires that Mr. Robinson now step down from these proceedings.

## Conclusion

Should Mr. Robinson not now withdraw, we respectfully request that ICSID replace him. We also ask that these proceedings be suspended until this matter is fully resolved, a proper tribunal is properly constituted, and all concerns arising from

---

[16] See, e.g., Response of Arbitrator Warren Christopher to Notice of Challenge, Methanex Corp. v. United States (Sep. 20 2002) (withdrawing as arbitrator notwithstanding his belief that there is no justifiable basis to question his independence or impartiality, so as to "avoid the continuing distractions of this issue for the tribunal and the parties.") See also In the Arbitration Under Chapter 11 of the North American Free Trade Agreement and the UNCITRAL Arbitration Rules Between: Canfor Corporation, Tembec Inc., Tembec Investments Inc., Tembec Industries Inc., Terminal Forest Products Ltd., and the United States, (wherein Mr. Frank McKenna resigned from the tribunal in the face of challenges to his impartiality by the United States).

[17] See, e.g., Riahi v. Gov't of the Islamic Republic of Iran, Iran – U.S., Cl. Trib., Dec. 133-485-1 (2004) (dissenting opinion of Judge Charles N. Brower).

Deputy Secretary-General Parra
June 9, 2005
Page 7

prejudice that may have been created through this dispute over Mr. Robinson have been satisfactorily addressed.

                                              Respectfully submitted,

                                              Elliot J. Feldman
                                              BAKER & HOSTETLER LLP
                                              1050 Connecticut Avenue, N.W.
                                              Suite 1100
                                              Washington, D.C. 20036

                                              Counsel to Tembec Inc.
                                              Tembec Investments Inc.
                                              Tembec Industries Inc.

cc:    Mark Clodfelter
        Andrea J. Menaker
        P. John Landry
        Keith E.W. Mitchell
        Gonzalo Flores
        Professor Albert Jan van den Berg (c/o Mr. Flores)
        Mr. Davis R. Robinson (c/o Mr. Flores)
        Professor Armand de Mestral (c/o Mr. Flores)
        Jose Antonio Rivas
        Florentino P. Feliciano (c/o Mr. Rivas)
        James R. Crawford (c/o Mr. Rivas)
        Kenneth W. Dam (c/o Mr. Rivas)