# Exhibit BB

In the matter of:
The North American Free Trade Agreement (NAFTA)
and
A Request for Consolidation by the United States of America of the Claims in:

CANFOR CORPORATION
v.
UNITED STATES OF AMERICA

AND

TEMBEC *ET AL*
v.
UNITED STATES OF AMERICA

AND

TERMINAL FOREST PRODUCTS LTD.
v.
UNITED STATES OF AMERICA

# ORDER OF THE CONSOLIDATION TRIBUNAL

Before the Arbitral Tribunal established under Article 1126 of the NAFTA and comprised of:

Professor Armand L.C. de Mestral, Arbitrator

Davis R. Robinson, Esq., Arbitrator

Professor Albert Jan van den Berg, Presiding Arbitrator

Secretary of the Tribunal: Mr. Gonzalo Flores, ICSID

Washington, D.C., 7 September 2005

**Representing the United States
of America:**
Mr. Mark A. Clodfelter
  *Assistant Legal Adviser*
  *Office of the Legal Adviser*
Ms. Andrea J. Menaker
  *Chief, NAFTA Arbitration Division*
Mr. Mark S. McNeill
  *Office of International Claims
  and Investment Disputes*
UNITED STATES DEPARTMENT OF STATE
Washington, DC 20520
United States of America

**Representing Canfor Corporation
  and
Terminal Forests Products, Ltd.:**
Mr. P. John Landry
DAVIS & COMPANY LLP
2800-666 Burrard Street
Vancouver, British Columbia
Canada V6C 2Z7
  and
Mr. Keith E. W. Mitchell
HARRIS & COMPANY
1400 – 550 Burrard Street
Vancouver, British Columbia
Canada V6C 2B5


**Representing Tembec Inc.,
Tembec Investements Inc.,
  and
Tembec Industries, Inc.:**
Mr. Elliot J. Feldman
Mr. Mark A. Cymrot
Mr. Michael S. Snarr
Mr. Ronald J. Baumgarten
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5304
United States of America

2

# Table of Contents

I.    INTRODUCTION ................................................................................................ 4

II.   PROCEDURE ..................................................................................................... 4

III.  FACTS .............................................................................................................. 8

    A.   Proceedings in Canfor ............................................................................... 8

    B.   Proceedings in Tembec ............................................................................. 9

    C.   Proceedings in Terminal .......................................................................... 10

IV.   SUMMARY OF THE PARTIES' POSITIONS .......................................................... 11

    A.   Position of the United States .................................................................... 11

    B.   Position of Canfor ................................................................................... 13

    C.   Position of Tembec ................................................................................. 14

    D.   Position of Terminal ............................................................................... 18

V.    CONSIDERATIONS OF THE CONSOLIDATION TRIBUNAL ..................................... 20

    A.   Article 1126 of the NAFTA ..................................................................... 21

        (a)   Legislative history ........................................................................ 22

        (b)   Rationale .................................................................................... 27

        (c)   Consensual nature ....................................................................... 29

        (d)   Alleged structural problems inherent in Article 1126 ........................... 31

        (e)   Discretionary power ..................................................................... 34

        (f)   Burden of proof ........................................................................... 35

        (g)   The term "jurisdiction" .................................................................. 38

        (h)   The terms "all or part of the claims" and "one or more of the claims" ...................................................................................... 40

        (i)   The term "a question of law or fact in common" .................................. 42

        (j)   Anticipated questions .................................................................... 45

        (k)   The term "in the interests of fair and efficient resolution of the claims" ...................................................................................... 46

        (l)   Seriatim consolidation .................................................................. 56

        (m)   Where consolidated proceedings are to begin ..................................... 57

        (n)   The position of the Article 1120 Tribunals ........................................ 59

    B.   Conduct of the Present Proceedings ........................................................... 60

    C.   Alleged Laches and Estoppel against the United States ................................... 62

    D.   Commonality ......................................................................................... 65

        (a)   Jurisdiction ................................................................................ 66

        (b)   Liability .................................................................................... 70

        (c)   Damages .................................................................................... 77

    E.   Fair and Efficient Resolution of the Claims ................................................. 77

    F.   Conclusion ............................................................................................ 81

VI.   DECISION OF THE CONSOLIDATION TRIBUNAL ................................................. 84

3

## I.    INTRODUCTION

1.    Presently before the Consolidation Tribunal is a request by the Government of the United States of America ("United States") to consolidate, pursuant to Article 1126(2) of the North American Free Trade Agreement ("NAFTA"), the claims submitted to three arbitrations under Article 1120 of the NAFTA:  *Canfor Corporation v. United States of America, Tembec Inc., Tembec Investments Inc. and Tembec Industries Inc. v. The United States of America*, and *Terminal Forest Products Ltd. v. The United States of America*.  The claims in all three proceedings were submitted to arbitration under the UNCITRAL Arbitration Rules.

2.    The Consolidation Tribunal grants the request of the United States for the reasons set forth below and in the manner set forth in Section VI of this Order.

## II.    PROCEDURE

3.    The claims filed against the United States by Canfor Corporation ("Canfor"), Tembec Inc., Tembec Investments Inc. and Tembec Industries Inc. (collectively referred to as "Tembec"), and Terminal Forest Products Ltd. ("Terminal"),[1] all Canadian producers of softwood lumber, concern a number of countervailing duty and antidumping measures adopted by the United States relating to Canadian softwood lumber products.

4.    By letter dated 7 March 2005, the United States requested that the Secretary-General of the International Centre for the Settlement of Investment Disputes ("ICSID") establish a tribunal in accordance with Article 1126(5) of the NAFTA.[2] Pursuant to Article 1126(5), the Secretary-General appointed Mr. Davis R. Robinson, Esq., a United States national residing in the United States, Professor

---

[1]    In this Order collectively referred to as "Claimants."

[2]    Available at http://www.state.gov/documents/organization/43492.pdf.

Armand de Mestral, a Canadian national residing in Canada, as arbitrators, and Professor Albert Jan van den Berg, a Dutch national residing in Belgium, as presiding arbitrator.  This Consolidation Tribunal was established on 6 May 2005.

5.    On 9 May 2005, the United States applied to the Consolidation Tribunal for a stay of the *Canfor* and *Tembec* proceedings pursuant to Article 1126(9) of the NAFTA.[3] Canfor, Tembec and Terminal objected to the request by letters dated 9, 10 and 12 May 2005.  On 19 May 2005, after due consideration, the Consolidation Tribunal ordered, pursuant to Article 1126(9), a stay of proceedings in the *Canfor* and *Tembec* arbitrations, pending the Consolidation Tribunal's decision on the United States' request to consolidate.[4]  The Tribunal confirmed its stay order on 1 June 2005.  It adopted an expedited schedule concerning the question of request for consolidation.

6.    The United States' submission in support of its request for consolidation, dated 3 June 2005, was received by ICSID on 4 June 2005 and by the Consolidation Tribunal on 5 June 2005.  In that submission, the United States particularized its request:

> For the foregoing reasons, the United States respectfully requests that this Tribunal assume jurisdiction over, and hear and determine together, the entirety of the claims submitted by Canfor Corp., Tembec Inc. *et al.* and Terminal Forests Products Ltd.  The United States further requests that, pursuant to Article

---

[3]    Article 1126(9) provides: "On application of a disputing party, a Tribunal established under this Article, pending its decision under paragraph 2, may order that the proceedings of a Tribunal established under Article 1120 be stayed, unless the latter Tribunal has already adjourned its proceedings."

[4]    Unlike Article 1126(2), which requires an Article 1126 Tribunal to hear the parties prior to deciding on a request under Article 1126(2), Article 1126(9) does not contain a requirement for hearing the parties.  Nonetheless, when considering the United States' request for a stay, the Consolidation Tribunal has had due regard to the observations expressed by all parties on the request for a stay.  The request required an expeditious ruling in view of the hearing that was scheduled in the *Tembec* arbitration (i.e., 2 - 3 June 2005).

> 40 of the UNCITRAL Arbitration Rules, claimants be required to bear all costs of the arbitration, including costs and expenses of counsel.

7.  Submissions in opposition to the United States' request by Canfor, Tembec and Terminal were received by ICSID on 10 June 2005, and transmitted to the Consolidation Tribunal on 11 June 2005.

8.  On 20 May 2005, Tembec instituted challenge proceedings against Mr. Davis R. Robinson.  By a decision dated 15 June 2005, the Secretary-General of ICSID rejected the challenge.

9.  The disputing parties through their counsel presented oral arguments and responded to the Tribunal's inquiries at a hearing held at the seat of ICSID in Washington, D.C., the place of the arbitration as agreed by the parties, on 16 June 2005.[5]

10. On 27 June 2005, Tembec submitted a motion requesting that:

> [T]he Tribunal make a preliminary decision on whether the United States' request for consolidation should be dismissed for lack of jurisdiction pursuant to Rule 21(3) of the UNCITRAL Arbitration Rules,[6] or in the alternative because of the ethical problems arising from Article 1126 of NAFTA in this particular proceeding that the motion for consolidation be denied for lack of jurisdiction before this Tribunal.

---

[5]    The transcript of the hearing is referred to in this Order as "Tr."  The (uncorrected) transcript is available at http://www.state.gov/documents/organization/48508.pdf.

[6]    Article 21(3) of the UNCITRAL Arbitration Rules provides: "A plea that the arbitral tribunal does not have jurisdiction shall be raised not later than in the statement of defence or, with respect to a counter-claim, in the reply to the counter-claim."

11.    Tembec further requested that:

>  [T]he Tribunal stay briefing on the merits of the United States'
>  request for consolidation (currently scheduled for July 22 and
>  August 8 [*sic*], 2005[7]) pending resolution of this motion.

12.    As requested by the Consolidation Tribunal, Canfor, Terminal and the United
States submitted observations on Tembec's motion on 12 July 2005.

13.    By letter dated 14 July 2005, the Consolidation Tribunal ruled:

>  Having considered Tembec's motion and the observations by
>  Canfor, Terminal and the United States as well as the expediency
>  required by Article 1126 of NAFTA, the Tribunal denies
>  Tembec's motion to make a preliminary decision and will
>  consider and rule on the matters raised by Tembec in the Order
>  on the merits of the United States' request for consolidation (*cf.*
>  Rule 21(4) of the UNCITRAL Arbitration Rules[8]). Accordingly,
>  the Tribunal also denies Tembec's request for a stay of the
>  briefing on the merits of the United States' request for
>  consolidation.[9]

14.    Post-hearing briefs were simultaneously submitted by agreement of the parties on
22 July 2005. In those briefs, the parties answered a number of questions put to
them by the Consolidation Tribunal at the hearing.

---

[7]    The date was 12 August 2005 pursuant to the agreement of the parties reached at the hearing
of 16 June 2005.

[8]    Article 21(4) of the UNCITRAL Arbitration Rules provides: "In general, the arbitral tribunal
should rule on a plea concerning its jurisdiction as a preliminary question. However, the arbitral
tribunal may proceed with the arbitration and rule on such a plea in their final award."

[9]    The arguments raised by Tembec in its Motion to Dismiss are addressed at various places in
this Order.

15.     On 28 and 29 July 2005, the Governments of Canada and Mexico advised the Consolidation Tribunal that they will not file a NAFTA Article 1128 Submission.[10]

16.     Reply post-hearing briefs were simultaneously submitted by agreement of the parties on 12 August 2005.

17.     The Consolidation Tribunal deliberated in Washington, D.C., on various occasions.

## III.    FACTS

### A.    Proceedings in Canfor

18.     After filing a Notice of Intent on 5 November 2001, Canfor, a forest-products company incorporated in British Columbia, Canada, filed on 9 July 2002, a Notice of Arbitration under Chapter 11 of the NAFTA and the UNCITRAL Arbitration Rules against the United States. The Notice of Arbitration also served as a Statement of Claim. Canfor alleges that the United States adopted in May 2002 certain countervailing duty and antidumping measures on Canadian imports of softwood lumber to the United States, in breach of the NAFTA Articles 1102 (National Treatment), 1103 (Most-Favored-Nation Treatment), 1105 (Minimum Standard of Treatment), and 1110 (Expropriation). Canfor also claims damages for losses caused by the allegedly illegal Byrd Amendment, enacted into United States law in 2000, which provides that duties assessed pursuant to countervailing duty or antidumping orders shall be distributed annually to affected U.S. domestic

---

[10]     Article 1128 (Participation by a [State] Party) provides: "On written notice to the disputing parties, a Party may make submissions to a Tribunal on a question of interpretation of this Agreement."

producers.  Canfor seeks damages of not less than US$250 million and an award of costs.

19.     The *Canfor* Tribunal was constituted on 22 July 2003, consisting of Professor Emmanuel Gaillard, as presiding arbitrator, and Professor Joseph H. H. Weiler and Mr. Conrad Harper, Esq., as arbitrators.  The first organizational hearing was held on 16 October 2003.  Two weeks prior to the organizational hearing, the United States submitted an objection to the Tribunal's jurisdiction and sought bifurcation of the proceedings to address its objection.  Canfor opposed the United States' request for bifurcation, seeking to have any jurisdictional objection addressed with the merits.  After briefing the issue of, *inter alia*, bifurcation, the *Canfor* Tribunal ordered on 23 January 2004 the bifurcation with respect to the jurisdictional objection.  The parties briefed the jurisdictional issue and a hearing was held in Washington, D.C., on 7-9 December 2004.

20.     While the *Canfor* Tribunal was deliberating the jurisdictional issue, arbitrator Harper resigned from the Tribunal on 2 March 2005, citing an alleged conflict of interest.  Shortly thereafter, on 7 March 2005, the United States filed the request for consolidation.  As mentioned, the United States then made an application for a stay of the *Canfor* proceedings pursuant to NAFTA Article 1126(9) on 11 May 2005, which the Consolidation Tribunal granted on 19 May 2005, pending its decision under NAFTA Article 1126(2).

B.     Proceedings in Tembec

21.     After filing a Notice of Intent on 3 May 2002, Tembec, consisting of three forest products corporations organized under the laws of Canada, filed on 3 December 2004 a Notice of Arbitration against the United States under Chapter 11 of the NAFTA and UNCITRAL Arbitration Rules, alleging damages from measures also challenged in *Canfor*.  Tembec seeks damages of at least US$200 million and an award of costs.  The Notice of Arbitration also served as a Statement of Claim.

22.    The *Tembec* Tribunal was constituted on 4 August 2004, consisting of Judge Florentino Feliciano as presiding arbitrator, and Professors James Crawford and Kenneth W. Dam as arbitrators.  An organizational meeting by telephone was held on 30 November 2004.  A jurisdictional challenge was raised by the United States in the *Tembec* proceeding as well (i.e., on 4 February 2005).  The *Tembec* Tribunal scheduled a hearing on the jurisdictional issue for 2 - 3 June 2005.

23.    After the parties had filed their initial submissions on jurisdiction, but before filing their reply and rejoinder, the United States filed the request to consolidate on 7 March 2005.  The United States informed the *Tembec* Tribunal of its request to consolidate and applied to that tribunal for a stay of proceedings.  The *Tembec* Tribunal held the request for a stay in abeyance, and the parties completed briefing the jurisdictional issues.  As mentioned, the United States then made an application to the Consolidation Tribunal on 11 May 2005 for a stay of the *Tembec* proceedings pursuant to NAFTA Article 1126(9).  The Consolidation Tribunal granted the United States' request on 19 May 2005, pending its decision under NAFTA Article 1126(2).

C.    Proceedings in Terminal

24.    Having filed a Notice of Intent on 12 June 2003, Terminal, a forest products corporation organized under the laws of British Columbia, Canada, filed on 31 March 2004 a Notice of Arbitration under Chapter 11 of the NAFTA and the UNCITRAL Arbitration Rules against the United States on measures also challenged in the *Canfor* and *Tembec* arbitrations.  Terminal seeks damages of at least US$90 million.  Since filing its Notice of Arbitration, Terminal has not taken further steps to prosecute its claim.  Terminal's Notice of Arbitration does not serve as a

Statement of Claim, considering that Terminal stated in its Notice that it "will more fully articulate its basis for the claim in its Statement of Claim when filed."[11]

## IV.  SUMMARY OF THE PARTIES' POSITIONS

### A.  Position of the United States

25.  In its request for consolidation of 7 March 2005 and its submission of 3 June 2005, the United States contends that common issues of law and fact call for consolidation.

26.  With respect to the issues of law, the United States points out that it objects to the jurisdiction of all three claims on the basis that NAFTA Article 1901(3) expressly bars the submission of claims regarding antidumping and countervailing duty law to arbitration under Chapter 11 of the NAFTA. The United States also objects to jurisdiction on the basis that the claims do not "relate to" Claimants or their U.S.-based investments as required by NAFTA Article 1101(1). Finally the United States contends that jurisdiction is lacking over Tembec's and Canfor's claims because those Claimants filed claims before NAFTA Chapter 19 bi-national panels with respect to the same measures at issue here, in violation of the NAFTA Article 1121(1).

27.  Furthermore, according to the United States, all three Claimants allege that the same measures breach the same provisions of the NAFTA, namely, Articles 1102 (National Treatment), 1103 (Most-Favored-Nation Treatment), 1105 (Minimum Standard of Treatment), and 1110 (Expropriation), and assert the same factual bases for those alleged breaches.  The United States anticipates that, if the cases reach the merits, it would raise many of the same legal defenses to the claims of all three Claimants.

---

[11]  Terminal's Notice of Arbitration ¶ 19.

28.     With respect to the issues of fact, the United States asserts that Claimants are all Canadian softwood lumber producers that export softwood lumber to the U.S. market.  The United States contends that Claimants base their claims on the same U.S. government measures, including (i) the U.S. Department of Commerce's ("Commerce") August 2001 preliminary countervailing duty determination; (ii) Commerce's August 2001 preliminary critical circumstances determination; (iii) Commerce's October 2001 preliminary antidumping determination; (iv) Commerce's March 2002 final countervailing duty determination; (v) Commerce's March 2002 final antidumping determination; (vi) the International Trade Commission's ("ITC") May 2002 final material injury determination; and (vii) the Continued Dumping and Subsidy Offset Act of 2000 (the "Byrd Amendment"), enacted by the U.S. Congress in October 2000.

29.     The United States further contends that considerations of fairness and efficiency favor consolidation because consolidation conserves resources, will result in an expeditious resolution of the claims, and is the only way to eliminate the risk and unfairness of inconsistent results.

30.     In its post-hearing brief of 22 July 2005, the United States responded to the questions of the Consolidation Tribunal raised at the hearing ("United States PHB").  Those responses will be considered in the analysis of the Tribunal below.

31.     In its reply post-hearing brief of 12 August 2005, the United States responds to a number of arguments by Claimants in their post-hearing briefs ("United States R-PHB").  The United States contends that consolidation for purposes of jurisdiction should be granted; consolidation on the merits is warranted; the United States' application is not time-barred; and Claimants' attempt to vitiate Article 1126(2) should be rejected.

B.     Position of Canfor

32.     Canfor objects to the United States' request for consolidation.

33.     In its submission of 10 June 2005, Canfor contends that the United States has failed to satisfy Article 1126(3) of the NAFTA. It further asserts that the United States has failed to establish the existence of common questions of fact or law. It also contends that it is not necessary for the fair and efficient resolution of the claims for consolidation to occur because: the cases raise different issues; the softwood lumber industry is intensely competitive; consolidation proceedings will be unworkable; the United States' conduct in bringing an application for consolidation at a late date justifies denying the application; Canfor should not be required to reargue the jurisdictional objection; cost considerations warrant denying the consolidation application; consolidation will result in delay; the parties ought to be able to choose their own arbitrators; and there is no risk of inconsistent decisions.

34.     In its post-hearing brief of 22 July 2005, Canfor contends with respect to common questions of law or fact that: the United States has not satisfied the test set out in Article 1126; NAFTA requires commonality, not similarity; the United States misstates the test of commonality; and the United States has not established commonality.

35.     With respect to the fair and efficient resolution of the claims, Canfor asserts that: the United States is not entitled to seek consolidation simply because risks it anticipated, but was prepared to accept, have materialized; the United States brings this application for tactical reasons; the withdrawal of arbitrator Harper does not have the effect that the United States contends; consolidation in these circumstances is not fair and efficient; the United States acknowledges the efficiency of allowing the Canfor proceedings to continue; the United States has not raised an Article 1121 objection against Canfor, and has already deferred its

13

"conditional" Article 1101 objection to the merits; the Consolidation Tribunal should not consolidate either jurisdiction or the merits; the risk of disclosure of confidential information argues against consolidation; and reducing the risk of inconsistent decisions is not the Tribunal's overriding goal.

36.     In its post-hearing brief of 22 July 2005 (which is the same as Terminal's post-hearing brief, except where expressly noted), Canfor responded to the questions of the Consolidation Tribunal raised at the hearing ("Canfor & Terminal PHB"). Those responses will be considered in the analysis of the Tribunal below.

37.     In its reply post-hearing brief of 12 August 2005 (which was also filed on behalf of Terminal), Canfor responded to a number of the answers given by the United States to the Tribunal questions in its post-hearing brief (Canfor & Terminal R-PHB"). Those responses will also be considered in the analysis of the Tribunal below.

C.      Position of Tembec

38.     Tembec also objects to the United States' request to consolidate.

39.     In its submission of 10 June 2005, Tembec contends that the Consolidation Tribunal should deny the request for consolidation as untimely and prejudicial under the UNCITRAL Arbitration Rules and principles of international law because: the request is untimely under Article 21(3) of the UNCITRAL Arbitration Rules; jurisdiction should be settled by the Article 1120 Tribunals before this Consolidation Tribunal considers whether to consolidate on the merits; and the doctrines of laches and estoppel are applicable.

40.     Tembec also contends that the United States' objections to jurisdiction and the claims on the merits lack commonality to justify consolidation.

14

41.     Tembec further asserts that consolidation is not in the interests of fair or efficient resolution of the claims because: the United States' request for consolidation imposed more delay on the resolution of Tembec's claims; the United States should not be given another "bite at the apple" on jurisdiction; the Claimants are prejudiced by the request for consolidation; the parties' autonomy to present their claims would be compromised by consolidation; consolidation proceedings would be inefficient during arguments, discovery, and procedural issues unique to the Claimants; consolidation would not be efficient even were commonality found among claims for liability; and Tembec should not bear through consolidation the burdens of the United States' frustration with Canfor and Terminal.

42.     Finally, Tembec contends that the alleged risk of inconsistent results is no basis for consolidation because: the risk of inconsistent decisions is immaterial to the question of consolidation; consolidation will not obviate the risk of inconsistent decisions; all of the parties already have assumed the "risk" of inconsistent decisions; and the *CME/Lauder v. The Czech Republic* cases and accompanying literature cited by the United States are irrelevant where there is no affiliation among the Claimants.

43.     In its post-hearing brief of 22 July 2005 ("Tembec PHB"), Tembec contends that the request for consolidation is untimely, in accordance with the ordinary meaning of Article 1126(2) and (8) of the NAFTA, Article 21 of the UNCITRAL Arbitration Rules, and principles of international law relating to the doctrines of laches and estoppel.  In that context, Tembec asserts that the United States continues to withhold information with respect to *Corn Products International, Inc. v. United Mexican States*, and *Archer Daniels Midland Company and Tate & Lyle*

15

*Ingredients Americas, Inc. v. United Mexican States*, Order of the Consolidation Tribunal (20 May 2005, hereafter the "*Corn Products* case").[12]

44.    Tembec also contends that the Consolidation Tribunal has no authority to consolidate the jurisdictional questions presented to the Article 1120 Tribunals.

45.    Tembec further asserts that the purpose and rationale of Article 1120 do not allow consolidation in this case because: the text of the NAFTA provides the test for consolidation; the purpose and rationale of Article 1126 are derived primarily from the text of the NAFTA; consolidation of phases of the cases is impossible where the parties are direct competitors; consolidation was not meant to give "two bites at the apple;" and this case contrasts with examples where consolidation would be appropriate under Article 1126.

46.    Tembec then argues that there are insufficient common questions of law or fact to warrant consolidation because: common questions of law or fact must be material to the disposition of an award to warrant consolidation; the United States has not met its burden of showing that the questions material to disposition of an award are in common; and the material questions of law and fact in these cases are distinct.

47.    Tembec also asserts that consolidation of these cases is not in the interests of fairness or efficiency because: the fairness and efficiency of Article 1126 consolidation must be compared to the Article 1120 proceedings; the direct business competition between Tembec and Canfor makes it unfair and inefficient to consolidate the claims (arguing that: Tembec could not present its claims were it required to disclose confidential business information before its competitors;

---

[12]    Available at http://www.economia-snci.gob.mx/sphp_pages/importa/sol_contro/consultoria/Casos_Mexico/Consolidacion/acuerdos/050520_Orden_de_Tribunal_de_Acumulacion.pdf.

procedures to guarantee non-disclosure of proprietary business information could not be instituted and enforced with fairness or efficiency; and the competitive nature of the Claimants creates other procedural problems and inefficiencies, including the incentive for the Claimants to undermine each others' claims that is not present in separate proceedings, and questions of Claimants' procedural rights with respect to each others' claims); and Tembec has incurred, and may continue to incur, additional unnecessary expenses.

48.    Finally, Tembec contends that the Consolidation Tribunal should exercise its discretion not to consolidate these cases because the United States has approached the consolidation issue unfairly as a means of advancing a negotiated settlement in the softwood lumber dispute.

49.    In its post-hearing brief of 22 July 2005, Tembec also responded to the questions of the Consolidation Tribunal raised at the hearing.  Those responses will be considered in the analysis of the Tribunal below.

50.    In its reply post-hearing brief of 12 August 2005 ("Tembec R-PHB"), Tembec submits that the Tribunal may not consolidate the cases to decide the jurisdiction of the Claimants' claims because: the jurisdictional objections of the United States are not claims; the United States waived consolidation under Article 21(3) of the UNCITRAL Arbitration Rules; the jurisdictional objections are not common amongst Claimants; estoppel is part of the "governing law" under Article 1131 of the NAFTA and bars consolidation here; and fairness and efficiency require that the Article 1120 Tribunals finish their decisions on jurisdiction.  Tembec also submits that the United States has not established commonality, arguing: the burden rests with the United States; common laws or facts are not common questions of law or fact; and the dispositive questions of law and fact are not common.  Tembec further submits that consolidation would be unfair and inefficient, not merely inconvenient, because: submission of confidential

information will be unavoidable in the merits and damages phases; fairness requires protection of confidential information, but protection in a consolidated proceeding here would make adjudication unfair and inefficient; confidentiality concerns may make consolidation rare, but not "obsolete;" these and any subsequent consolidation proceedings before this Tribunal are unfair because the United States has a party-appointed arbitrator while the Claimants do not; and, by the United States' own absolute fairness/efficiency standard, these cases should not be consolidated. Tembec also contends that the cost estimates by the United States are inaccurate and unreliable. It then contends that the United States has not met the high standard for consolidation because: the NAFTA Parties drafted other high threshold procedural standards; and no claims have ever been consolidated, even when in dispute was a single measure of a single government. Tembec also argues that none of the United States' arguments regarding the "risk" of inconsistent decisions supports consolidation. Finally, Tembec submits that NAFTA Article 1126 does not grant the Tribunal broad discretion to consolidate without consent of the disputing parties.

D.    Position of Terminal

51.    Terminal opposes the application of the United States for consolidation of the proceedings for the reasons set forth by Canfor.

52.    In addition to the arguments advanced by Canfor, Terminal argues that the fact that it has common counsel with Canfor weighs against consolidation. Canfor and Terminal agreed to common counsel on the condition that counsel not share confidential information, including confidential business information, about either Canfor or Terminal with the other company. As long as the claims are separate, Terminal contends that there is no need for separate counsel because there is little likelihood of any conflict arising from the mere fact that the two parties have the same counsel. However, if the proceedings were consolidated, then separate

counsel may need to be retained to represent Terminal's interests, which differ from Canfor's interests.

53.     Terminal reiterates Claimants' concern with consolidating proceedings among Claimants who are competitors and who will have to disclose confidential information during the proceedings. Terminal is concerned that it will not be able to obtain a fair hearing under the circumstances.

54.     With respect to the United States' contention that Terminal has merely filed a Notice of Arbitration but failed to prosecute its claims, Terminal points out that the United States has not filed any objections to Terminal's conduct in the arbitration or requested that it take any action. Likewise, since there have been no filings in this proceeding other than the Notice of Arbitration, including an objection to jurisdiction on behalf of the United States, Terminal objects to the United States' contention that commonality of the jurisdictional issue exists with respect to all three Claimants.

55.     Further, Terminal argues that the United States has failed to establish the existence of common questions of fact or law, particularly because Terminal is focused almost entirely upon the high-value Western Red Cedar market. According to Terminal, the characteristics of that market are fundamentally different from the SPF (Spruce, Pine, Fir) market, on which Canfor and Tembec focus. Terminal explains that it is not in the commodity market and that many of the issues and much of the conduct of the United States as it relates to Terminal are significantly different from the issues and conduct relating to the other commodity producers of softwood lumber.

56.     Finally, Terminal contends that consolidation will, if so determined, result in delay. Terminal will need to determine whether it needs separate counsel, will have to retain counsel, brief counsel on the case, and prepare a statement of claim.

Then Terminal may have to brief any jurisdictional issue that the United States may advance.

57.     In its post-hearing brief (which is the same as Canfor's post-hearing brief, except where expressly noted), Terminal responded to the questions of the Consolidation Tribunal raised at the hearing ("Canfor & Terminal PHB").  Those responses will be considered in the analysis of the Tribunal below.

58.     In its reply post-hearing brief of 12 August 2005 (which was also filed on behalf of Canfor), Terminal responded to a number of the answers given by the United States in its post-hearing brief to the Tribunal questions ("Canfor & Terminal R-PHB").  Those responses will also be considered in the analysis of the Tribunal below.

## V.     CONSIDERATIONS OF THE CONSOLIDATION TRIBUNAL

59.     As required by Article 1131(1) of the NAFTA, the Tribunal shall apply "this Agreement [the NAFTA] and the applicable rules of international law." Accordingly, the Tribunal will also apply the rules of interpreting treaties as set forth in Articles 31 and 32 of the Vienna Convention on the Law of Treaties of 1969.[13]  While the 1969 Vienna Convention is not in force among the three

---

[13]     Article 31 – General rule of interpretation

1.     A treaty shall be interpreted in good faith in accordance with the ordinary meaning to be given to the terms of the treaty in their context and in the light of its object and purpose.

2.     The context for the purpose of the interpretation of a treaty shall comprise, in addition to the text, including its preamble and annexes:

(a) any agreement relating to the treaty which was made between all the parties in connection with the conclusion of the treaty;

(b) any instrument which was made by one or more parties in connection with the conclusion of the treaty and accepted by the other parties as an instrument related to the treaty.

(footnote cont'd)

NAFTA State Parties (the United States has never ratified it), Articles 31 and 32 are regarded as reflective of established customary international law.

60.    In the analysis below, the Tribunal has not only considered the positions of the parties as summarized in the preceding Section but also their numerous detailed arguments in support of those positions as well as the arguments made at the hearing.  To the extent that these arguments are not referred to expressly, they must be deemed to be subsumed in the analysis.

### A.    Article 1126 of the NAFTA

61.    The question before this Tribunal is whether the NAFTA Chapter 11 claims,[14] submitted by Canfor, Tembec and Terminal to arbitrations under Article 1120 of the NAFTA, should be consolidated in whole or in part.  Where the claims of several parties to separate Article 1120 arbitrations have "a question of law or fact in common," the Tribunal may, "in the interests of fair and efficient resolution of

---

3.    There shall be taken into account, together with the context:

(a) any subsequent agreement between the parties regarding the interpretation of the treaty or the application of its provisions;

(b) any subsequent practice in the application of the treaty which establishes the agreement of the parties regarding its interpretation;

(c) any relevant rules of international law applicable in the relations between the parties.

4.    A special meaning shall be given to a term if it is established that the parties so intended.

Article 32 – Supplementary means of interpretation

Recourse may be had to supplementary means of interpretation, including the preparatory work of the treaty and the circumstances of its conclusion, in order to confirm the meaning resulting from the application of article 31, or to determine the meaning when the interpretation according to article 31:

(a) leaves the meaning ambiguous or obscure; or

(b) leads to a result which is manifestly absurd or unreasonable.

[14]    *See* Sub-section V.A(h) (page 40) *infra*, discussing the meaning of "claims" in Article 1126(2).

the claims," issue an order pursuant to Article 1126(2) of the NAFTA, which provides:

> Where a Tribunal established under this Article is satisfied that claims have been submitted to arbitration under Article 1120 that have a question of law or fact in common, the Tribunal may, in the interests of fair and efficient resolution of the claims, and after hearing the disputing parties, by order
>
> (a) assume jurisdiction over, and hear and determine together, all or part of the claims; or
>
> (b) assume jurisdiction over, and hear and determine one or more of the claims, the determination of which it believes would assist in the resolution of the others.

62. The provisions of Article 1126 of the NAFTA pose a number of questions, which require analysis in order to determine the request of the United States.

### (a) Legislative history

63. As of the first draft (December 1991) of what has become Chapter 11 of the NAFTA, investor-State arbitration was contemplated.[15]

64. After some ten published drafts, the draft dated 4 June 1992 (called "Virginia Composite") contained a proposal made by Canada that is relevant for the present Article 1126. The proposal was bracketed, which meant that it had not yet been accepted by Mexico and the United States.

---

[15] Draft of December 1991, Article XX07. The legislative history ("rolling texts" only) is published on the websites of the State Parties to NAFTA:

Government of Canada, International Trade, NAFTA Chapter 11 website: http://www.dfait-maeci.gc.ca/tna-nac/NAFTA-en.asp

Government of Mexico, Secretary of Economy, NAFTA website: http://www.economia-snci.gob.mx/sic_php/ls23al.php?s=18&p=1&l=1

(footnote cont'd)

65.     Article XX07.9 of the draft of 4 June 1992 provided that a State Party only was
        permitted to request the Secretary of the International Chamber of Commerce
        ("ICC") to establish a panel of three arbitrators (all to be appointed by the
        Secretary).  The State Party had to do so, within 90 days after an investor had
        given its notice of intent to arbitrate, "if it considers that the dispute, or the dispute
        and other investment disputes in which it is a disputing Party, raises important
        issues of public policy or that the dispute and other investment disputes in which it
        is a disputing Party should be consolidated."[16]     The claimants and their
        governments were allowed to participate in the proceedings.  The moving State
        Party was allowed "to refer to the arbitration panel such issues as it considers
        appropriate."  The mission of the panel appeared to be mandatory: "[T]he panel
        shall determine and dispose of those issues."  It was further provided: "The
        determination and disposition of the arbitral panel, or the settlement by the [State]
        Parties on the issue or issues before it, is binding on the parties to the proceedings
        before the panel and on any arbitral panel or tribunal established pursuant to
        paragraph 4, 8 or 10 to which the same issue or issues is or have [*sic*] been referred
        for arbitration."

66.     Although not entirely clear, the draft of 4 June 1992 seems to provide for two
        types of proceedings.  First, another tribunal (to be appointed by the Secretary of
        the ICC) could be required by a State Party to act as a tribunal in which two or
        more investment disputes were heard and determined in a consolidated fashion.
        Second, another tribunal could be required by a State Party to determine issues
        irrespective of whether there were one or more arbitrations pending on those

---

US Department of State, International Claims and Investment Disputes website:
http://www.state.gov/s/l/index.cfm?id=3439.

[16]     Draft of 4 June 1992, Article XX07.7(b).

issues.  The determination of those issues would be binding on the other tribunal or tribunals.

67.     The Canadian proposal remained in the subsequent drafts until two drafts of 4 August 1992 (called "Watergate Daily Update").  The first draft mentioned beneath the caption "Article 2119: Dispute Settlement": "[SEE SUBGROUP TEXT]," which text is not publicly available but seems to be inserted in a second draft of the same date.  The second draft contained a Section headed: "Settlement of Disputes between a Party and an Investor of Another Party," under which were set forth Articles 2119 – 2123.  Most of them were not bracketed, which indicates that the State Parties had reached agreement in principle on those provisions.  The non-bracketed Article 2129, captioned "Consolidation," differed in various respects from the (Canadian) draft of 4 June 1992.  Both a respondent State and an investor could request the constitution of another tribunal.  That tribunal was to be established by the Secretary-General of ICSID (rather than the Secretary of the ICC).  There was no longer a period of time specified for making the request.  The tribunal was no longer mandatorily required to determine and dispose of the issues brought before it.  Rather, "[w]here it appears to the arbitration tribunal that arbitrations that have been initiated under Article 2125 that have questions of law or fact in common, the tribunal may, in the interests of fair and efficient resolution of the disputes, . . , order . . ."  It could issue an order to (a) "hear and determine together, all or part of the investment disputes," or (b) "hear and determine, one or more of the investment disputes the determination of which it believes would assist in the resolution of the others."[17]  Article 2129 provided that an arbitral tribunal shall not have jurisdiction to decide an investment dispute, or a part of an

---

[17]     Second draft of 4 August 1992, Article 2129(4).

investment dispute, over which the tribunal established under that article had assumed jurisdiction.[18]

68.     It is common knowledge that, on 12 August 1992, Canada, Mexico and the United States announced the completion of the negotiations of the NAFTA, it being understood that "further legal drafting and review are required to implement the understandings reached by the negotiators."[19] Thus, on 12 August 1992, the three States reached agreement in principle on the substance of the NAFTA, subject to a "scrubbing" of the text by their lawyers, ensuring, *inter alia*, consistency of the texts of the many chapters negotiated by various teams.[20]

69.     The draft of the "consolidation" provisions remained the same until 4 September 1992. The first draft of that day (called "Lawyers' Revision," and time stamped 1:30) was still the same, but the second draft (also called "Lawyers' Revision," and time stamped 6:00) contained various amendments (now Article 1125). One of those amendments replaced the term "investment disputes" by the word "claims." Thus, the terminology was no longer "all or part of the investment disputes" or "one or more of the investment disputes the determination of which it believes would assist in the resolution of the others," but had rather become "all or

---

[18]     Second draft of 4 August 1992, Article 2129(5).

[19]     President George H.W. Bush, Statement released by the White House, Office of the Press Secretary, Washington, D.C., 12 August 1992.

[20]     US Trade Representative Ambassador Carla Hills made a NAFTA presentation on 13 August1992 before the US Chamber of Commerce in Washington. As reported by the Federal News Service, she said in response to a question: "We got out very detailed summaries yesterday, and we will continue to add data to those summaries. What we're doing now is scrubbing the text and drafting the text to capture the agreement . . . . what we don't want to do is to get out a text and then have the lawyers say that there is language inconsistent with another part of the agreement . . . ." President Bush is also quoted as staying: "[the text] had to be 'scrubbed' by lawyers into proper legal language . . . ," Journal of Commerce, 19 August 1992 p. 5A ("Citizens Group wants copy of NAFTA text").

part of the claims" or "one or more of the claims, the determination of which it believes would assist in the resolution of the others."[21]

70.    A subsequent revision of the provisions occurred in a draft of 2 October 1992 (in which Article 1125 was renumbered Article 1126).  The draft of 4 September 1992 had mentioned in a footnote that paragraph 8 "does not address as what would be the status of an Article 1120 Tribunal pending decision on whether to consolidate by a Consolidation Tribunal, and does not address the effect of an order under paragraph 2(b)."   The draft of 2 October 1992 dealt with that question by providing that, on the application of a disputing party,[22] an Article 1126 Tribunal may by order stay the proceedings of the Article 1120 Tribunal pending its decision on consolidation.[23]

71.    After the revision in the draft of 2 October 1992, no further amendments were made and Article 1126 in that draft became the final text.

72.    There is very little contemporaneous commentary by the drafters of Article 1126 of the NAFTA.   Mr. Daniel Price (one of the US lawyers involved in the negotiations) noted: "The chapter does not resolve all the questions that may occur during consolidation. Many issues will need to be worked out by the tribunal in consultation with the disputing parties."[24] Mr. Price does not identify those questions but, as it appears from the analysis below, there are some that require interpretation by this Consolidation Tribunal and, if consolidation is ordered,

---

[21]    Draft of 4 September 1992 (6:00), Article 1125(2) and (8).

[22]    The drafts are "case-sensitive": a "disputing Party" with a capitalized "P" means a State Party against which a claim is made, and a "disputing party" with a lower "p" means a State Party or a disputing investor.  *See* draft of 4 September 1992 (6:00), Article 1138 (Definitions).   That distinction has remained in the final text (Article 1139).

[23]    Draft of 2 October 1992, Article 1126(9).

[24]    Daniel M. Price, *An Overview of the NAFTA Chapter: Substantive Rules and Investor-State Dispute Settlement*, 27 INT'L LAWYER 727, 734 (1993).

consultation with the parties. Mr. Jonathan Fried (one of the Canadian lawyers involved in the negotiations) noted: "Special and novel procedures provide an effective means for the 'consolidation' of cases [footnote omitted], to avoid procedural harassment [footnote omitted] . . ."[25]

###### (b)    Rationale

73.    The just quoted observation by Mr. Fried concerning avoidance of procedural harassment appears to be the main rationale of the provisions set forth in Article 1126 of the NAFTA. The initial proposal by Canada provided that a State Party only could make a request under what has become Article 1126. The initial, main concern seemed to have been that a State Party would be faced with a multitude of claims by investors arising out of the same event or related to the same measure by that State. In such a situation, procedural economy may be served by consolidating multiple proceedings. The latter concern is also reflected in the text of Article 1126(2) which refers to "*efficient* resolution of the claims" (emphasis added). Mr. Henri Alvarez observes: "it may be assumed that this consolidation provision is intended to relieve a State Party from the hardship of having to defend multiple claims arising from the same measure . . ."[26]

74.    In the subsequent drafts, the right of a State Party to request the establishment of a separate tribunal was extended to disputing investors as well. Moreover, the mission of the tribunal was no longer mandatory, but instead became discretionary. These changes indicate that the drafters wished to balance the procedural rights of State Parties and disputing investors.

---

[25]    Jonathan T. Fried, *Two Paradigms for the Rule of International Trade Law*, 20 CAN-U.S. L.J. 39, 49 (1994).

[26]    Henri C. Alvarez, *Arbitration under the North American Free Trade Agreement*, 16 ARB'N INT'L 393, 414 (2000).

75.    However, the enlargement of parties that may make a request under Article 1126, and of the powers of an Article 1126 Tribunal, does not take away its intended purpose and object, as have become clear from the referenced legislative history, which are procedural economy in the light of the position of State Parties in particular.  That objective includes considerations of saving costs and time for a State Party, while simultaneously taking into account and balancing the interests of the disputing investors.

76.    The term "procedural economy" is used here advisedly in the sense of an effective administration of justice.  The Tribunal has purposely rejected the term "judicial economy," given the various meanings that the term carries in both national and international law.  It can be said that, in certain national laws, judicial economy involves deciding a claim on the narrowest possible ground, or not deciding issues that need not be addressed once a dispute has been resolved on a different ground. This meaning has on occasion been used in the international arena.  However, "judicial economy" has also been used differently in international cases.[27]  In any event, in this instance, the Consolidation Tribunal means to refer in particular to the goal of alleviating the resources of the State Parties in defending against multiple claims, as opposed to conserving the resources of the Article 1120 Tribunals empanelled to hear the individual disputes.

77.    Finally, with respect to the rationale of Article 1126, it is to be noted that consolidation is well known in many domestic court procedures, including in

---

[27]    *See*, *e.g.*, International Court of Justice's Decision to Render an Opinion in Response to the Request under General Assembly Resolution 49/75K, *Legality of the Threat or Use of Nuclear Weapons*, Dissenting Opinion of Judge Oda, Part Two, ¶ 53 (referring to "judicial economy" in the sense of using the ICJ's judicial resources to provide solutions to inter-State disputes of a contentious nature instead of rendering advisory opinions on legal questions of a general nature as to whether a specific action would or would not be in conformity with the application of treaty law or of customary law). The WTO has applied the term "judicial economy" differently.  *See* ¶ 182 *infra*.

Canada, Mexico and the United States.[28]  It is a procedural device combining two or more proceedings into one proceeding.

  (c)    *Consensual nature*

78.  Claimants contest consolidation on the grounds that it would be against the consensual nature of arbitration (or the principle of party autonomy).  However, the dispute settlement mechanism contained in Section B of Chapter 11 of the NAFTA is the result of an international treaty negotiated by three States.  They provided for dispute settlement between them and investors by means of arbitration governed by international law.  In doing so, the State Parties to the treaty are entitled as sovereigns to set certain conditions.[29]  In the case of the NAFTA, the States wished to ensure procedural economy in the case of multiple claims arising out of the same event or related to the same measure.  As it is pointed out by Mr. Henri Alvarez:

---

[28]      Canada: *Federal Rules of Court*, Rule 105; *Code de procédure civile du Québec* L.R.Q. c. C-25, Article 270; Ontario *Courts of Justice Act* R.S.O. 1990 c. C-43 as am'd Section 107; Ontario *Rules of Civil Procedure* Rule 6.  Mexico: *Codigo de Procedimientos Civiles* Article 72; *Ley de Amparo* Article 57.  United States: *Federal Rules of Civil Procedure* ("FRCP") Rule 42.  A review of these texts shows that the language of Article 1126(2) of the NAFTA bears some similarities with Rule 42(a) of the US FRCP, which provides: "Consolidation.  When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated, and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Article 1126(2) of the NAFTA also shows some similarities with Rule 23 of the US FRCP, which deals with the subject of "class actions."  A "class action" allows for a member of a class, under specified circumstances, to "sue or be sued as representative" of all in the class.  One of the specified conditions of Rule 23 appears in Rule 23(B)(3) which refers to whether there are "questions of law or fact common to the members of the class" as well as to whether the institution of a class action would benefit "the fair and efficient adjudication of the controversy."

[29]      Those conditions, however, should always be subject to the fundamental requirements of due process.  *See also* Article 1115: ". . . this Section establishes a mechanism for the settlement of investment disputes that assures both equal treatment among investors of the [State] Parties in accordance with the principle of international reciprocity and due process before an impartial tribunal."

> Although mandatory consolidation is not widely accepted in private commercial arbitration, it makes good sense in the case of Chapter 11 of NAFTA, which is not the usual private, consensual context of international commercial arbitration. Rather, Chapter 11 creates a broad range of claims which may be brought by an equally broad range of claimants who have mandatory access to a binding arbitration process without the requirement of an arbitration agreement in the conventional sense nor even the need for a contract between the disputing parties. In view of this, some compromise of the principles of private arbitration may be justified.[30]

79. Claimants' argument that, if consolidation is ordered, their claims will be adjudicated by a tribunal to which they have not consented, can, therefore, not be accepted either. The possibility of an order under Article 1126(2) forms part and parcel of Section B of Chapter 11 of the NAFTA. If a disputing investor opts for arbitration under Section B, it can only do so if "the investor consents to arbitration *in accordance with the procedures set forth in this Agreement*" (emphasis added; Article 1121). By consenting to arbitration within the confines of Article 1121, the disputing investor accordingly also consents to Article 1126, with the potential consequence that its claims will be adjudicated by a tribunal that is composed of persons different from those who formed part of the original Article 1120 Tribunal. This result is also explicitly stated in the exception formulated in Article 1123 of the NAFTA:

> *Except in respect of a Tribunal established under Article 1126*, and unless the disputing parties otherwise agree, the Tribunal shall comprise three arbitrators, one arbitrator appointed by each of the disputing parties and the third, who shall be the presiding arbitrator, appointed by agreement of the disputing parties. (emphasis added) [31]

---

[30]    *See* n. 26 *supra* at 414.

[31]    Reference may also be made to the possibility of consolidation under Article 1117(3):

(footnote cont'd)

80.     It may be added that the aforementioned consent includes the agreement that, if the arbitration is consolidated under Article 1126, that arbitration is to be conducted in accordance with the UNCITRAL Arbitration Rules "*except as modified* by this Section [B of Chapter 11 of the NAFTA]" (emphasis added; Article 1126(1)). That circumstance is also the case when the disputing investors initially opted for arbitration under the Additional Facility Rules of ICSID pursuant to Article 1120(1)(b).[32]     In the present case, however, all Claimants have opted for arbitration on the basis of the UNCITRAL Arbitration Rules in respect of the Article 1120 proceedings.

### (d)     Alleged structural problems inherent in Article 1126

81.     In the context of the question concerning the consensual nature of Article 1126 as analyzed in the preceding Sub-section, certain arguments raised by Tembec, in particular in its Motion to Dismiss of 27 June 2005, need also to be considered. Tembec asserts that unique problems inherent in the procedural structure of Article 1126 counsel against the Consolidation Tribunal proceeding as constituted.   It argues: (i) that Article 1126 places members of the Tribunal in the position of deciding a question in which they have a financial interest, including the contention that Article 1126 presents "unique" conflicts for arbitrators and that the

---

> Where an investor makes a claim under this Article [i.e., Claim by an investor of a Party on behalf of an enterprise] and the investor or a non-controlling investor in the enterprise makes a claim under Article 1116 arising out of the same events that gave rise to the claim under this Article, and two or more of the claims are submitted to arbitration under Article 1120, the claims should be heard together by a Tribunal established under Article 1126, unless the Tribunal finds that the interests of a disputing party would be prejudiced thereby.

It is further to be pointed out that an arbitral tribunal established under Section B of Chapter 11 of the NAFTA may be bound by an interpretation by the Free Trade Commission of a provision of the NAFTA.  *See* Articles 1131(2) and 1132 as well as Chapter 20 of the NAFTA.

[32]     The same would have applied to arbitration under the ICSID Convention of 1965 (*see* Article 1120(1)(a)), but only the United States is party to that Convention and not Canada and Mexico.

parties in the *Corn Products* case recognized the ethical problems of Article 1126; and (ii) that consolidation under Article 1126 eliminates Tembec's right to select even one arbitrator to review the merits of the case.[33]  The Consolidation Tribunal rejects these arguments for the following reasons.

82.     With respect to the alleged incentive for members of an Article 1126 Tribunal, that situation is not uncommon in arbitration.  Indeed, any arbitral tribunal that is faced with an objection to its jurisdiction would have the purported conflict.  If this contention were correct, either no arbitral tribunal could decide on an objection to jurisdiction or every arbitral tribunal should always decide to decline jurisdiction. Yet, modern arbitration treaties, laws and rules require an arbitral tribunal to decide on any objection to jurisdiction.[34]  In that respect, there is no difference between an Article 1120 Tribunal and an Article 1126 Tribunal.[35]  For the reasons set forth above, Article 1126 Tribunals also derive their jurisdiction and legitimacy through consent of the parties.[36]

---

[33]     Tembec's Motion to Dismiss at 12-20.

[34]     A general principle in international arbitration, referred to as "*compétence de la compétence*," provides that an arbitral tribunal has the power to determine its own jurisdiction over claims.  *E.g.*, ICSID Convention of 1965, Article 41(1); UNCITRAL Model Law on International Commercial Arbitration of 1985, Article 16 (providing for the competence of an arbitral tribunal to rule on its jurisdiction); and UNCITRAL Arbitration Rules of 1976, Article 21 (providing that an arbitral tribunal shall have the power to rule on objections that it has no jurisdiction).

[35]     Technically, an Article 1126 Tribunal does not decide on jurisdiction but rather gives a decision of an administrative nature.  *See* Sub-section V.A(g) (page 38) *infra*.

[36]     Tembec's reliance on Section 1.3 of the IBA Guidelines on Conflicts of Interest in International Arbitration of 2004 is not correct.  Under the caption "Non-Waivable Red List," the Guidelines include the instance where: "The arbitrator has a significant financial interest in one of the parties or the outcome of the case."  A situation appearing on the Non-Waivable Red List means that a prospective arbitrator must always decline an appointment.  However, the "financial interest in . . . the outcome of the case" does not apply to the arbitrator's remuneration as arbitrator, but applies to situations such as sharing in the amount awarded on the merits.

83.   It is conjecture to state that: "Presumably arbitrators will be more likely than courts to find jurisdiction, since arbitrators get paid if they hear a dispute."[37] There are reported cases in which an arbitral tribunal has declined jurisdiction.[38]

84.   The perceived ethical conflict would apply to many professionals.  To take two examples: a lawyer is to advise his or her client to bring a legal action; or a surgeon is to advise his or her patient about heart surgery.  The lawyer is to advise his or her client about the strengths and weaknesses of the case and the chances of success; the surgeon is to advise the patient about the condition of the heart and the chances of success of the surgery.  That is what the deontology of these professionals requires them to do.  This situation basically is not any different for an arbitrator.  He or she is to analyze the claims, and the factual and legal arguments in support thereof, and to make a determination in a professional, impartial and independent manner.

85.   As to the agreement concluded in conjunction with the *Corn Products* case, parties are free under the NAFTA to determine by advance agreement the method of constituting an arbitral tribunal, which power also applies in connection with an Article 1126 Tribunal.  *See* Article 1123 quoted at ¶ 79 above.  But here, the parties did not so agree.

---

[37]   William W. Park, *Bridging the Gap in Forum Selection: Harmonizing Arbitration and Court Selection*, 8 TRANSNAT'L L. & CONTEMP. PROBS. 19, 50, (1999), quoted by Tembec, *id.* at 16.

[38]   *See*, *e.g.*, *Waste Management, Inc. v. the United Mexican States*, Case No. ARB(AF)/98/2, Award on Jurisdiction of 2 June 2000, available at http://www.worldbank.org/icsid/cases/waste_award.pdf; *Joy Mining Machinery Limited v. Arab Republic of Egypt*, ICSID Case No. ARB/03/11, Award on Jurisdiction of 6 August 2004, available at http://www.worldbank.org/icsid/cases/joy-mining-award.pdf; *Consortium Groupement L.E.S.I. - DIPENTA v. Algeria*, ICSID Case No. ARB/03/8, Award of 10 January 2005, available at http://www.worldbank.org/icsid/cases/lesi-sentence-fr.pdf; *Lucchetti S.A. and Lucchetti Peru, S.A. v. Republic of Peru*, ICSID Case No. ARB/03/4, Award of 7 February 2005, available at http://www.worldbank.org/icsid/cases/lucchetti-award.pdf; *Hussein Nuaman Soufraki v. United Arab Emirates*, ICSID Case No.

(footnote cont'd)

86.     Tembec seems to contend that the provisions relating to the constitution of an Article 1126 Tribunal are defective and in all cases should necessitate an agreement among the parties on the constitution of the Tribunal.  However, no such agreement is required by the text of Article 1126.  In the absence of a special advance agreement, members of an Article 1126 Tribunal are appointed by a neutral person, i.e., the Secretary-General of ICSID, a method to which all parties have consented as a result of Articles 1121 and 1123 of the NAFTA.  If a party believes that an arbitrator lacks impartiality or independence, that party can challenge such an arbitrator under the applicable arbitration rules.[39]   To accept the proposed interpretation of Article 1126 would be contrary to the principle of effectiveness, which, under the terms of the 1969 Vienna Convention, requires that meaning be given to the words of a treaty.

87.     Furthermore, as it becomes evident from the present Order, while the text of Article 1126 in some instances demands interpretation, that does not mean that its provisions are defective or that they cannot be applied without a further agreement of the parties.

        *(e)     Discretionary power*

88.     An Article 1126 Tribunal has discretionary power to make an order under Article 1126(2) of the NAFTA, subject to the requirements set forth below.  The text of Article 1126(2) of the NAFTA uses the expression "*may . . . order*" (emphasis added).  The discretionary power is also confirmed by the legislative history which

---

ARB/02/7, Award of 7 July 2004, available at http://www.investmentclaims.com/decisions/Soufraki-UAE-Award-7Jul2004.pdf.

[39]     Tembec did challenge one of the members of the present Tribunal, which challenge was rejected.  *See* ¶ 8 *supra.*

shows a difference between the first (Canadian) draft that provided for mandatory determination,[40] and the subsequent drafts that abandoned that requirement.

89.    The power to make an order under Article 1126(2) is circumscribed by the express conditions (i) that "claims have been submitted to arbitration under Article 1120," (ii) that these claims have "a question of law or fact in common," (iii) that the order is "in the interests of fair and efficient resolution of the claims," and (iv) that the disputing parties have been heard.  This power is further circumscribed by what an Article 1126 Tribunal may order pursuant to sub-paragraphs (a) and (b) of Article 1126(2) of the NAFTA.  A number of those conditions will be examined in the Sub-sections that follow.

90.    The Consolidation Tribunal disagrees with the argument that: "The text of NAFTA Article 1126 intentionally sets a high bar to consolidation" and that "such a high bar would make consolidation a rarity . . ."[41]  A "high bar" or "high threshold procedural standards" are neither expressed nor implied in the text of Article 1126.

91.    It may be added that the discretionary power of an Article 1126 Tribunal to make an order under Article 1126(2) is also to be used to reign-in any frivolous requests for consolidation.

        *(f)     Burden of proof*

92.    Claimants argue that the party requesting an order under Article 1126(2) of the NAFTA has the burden of proof that a question of law or fact is in common and that the order is in the interests of fair and efficient resolution of the claims.  The

---

[40]     *See* ¶ 64 *supra*.

[41]     Tembec R-PHB at 35.

United States denies that such a burden of proof is imposed on an applicant under Article 1126.

93.    The rules concerning burden of proof in international law are well established.[42] However, those rules have a limited relevance in the context of an application for an order under Article 1126(2).

94.    Paragraph 3 of Article 1126 requires that a disputing party that seeks an order under paragraph 2 shall specify in the request: (a) the name of the disputing Party or disputing investors against which the order is sought; (b) the nature of the order sought; and (c) the grounds on which the order is sought.  Paragraph 3 does not impose a specific burden of proof on the party seeking an order under Article 1126(2) other than furnishing elements for setting into motion the proceedings for a possible consolidation under Article 1126(2).

95.    According to the English text of Article 1126(2), the Tribunal must be "satisfied that claims have been submitted to arbitration under Article 1120 that have a question of law or fact in common."  The equally authentic French text is slightly different: "*Un tribunal établi aux termes du présent article qui est convaincu que les plaintes soumises à l'arbitrage en vertu de l'article 1120 portent sur un même point de droit ou de fait*."  The also equally authentic Spanish text leaves out the Spanish counterpart for the word "satisfied" or "*convaincu*" altogether: "*Cuando un tribunal establecido conforme a este artículo determine que las reclamaciones*

---

[42]    *See*, *generally*, Mojtaba Kazazi, BURDEN OF PROOF AND RELATED ISSUES. A STUDY OF EVIDENCE BEFORE INTERNATIONAL TRIBUNALS (1996). *See also Asian Agricultural Products Ltd. (AAPL) (Hong Kong) v. The Republic of Sri Lanka*, Final award of 27 June 1990 in ICSID Case No. ARB/87/3, at ¶ 56, available at http://www.investmentclaims.com/decisions/Asian Agricultural-SriLanka-FinalAward-27Jun1990.pdf, *reprinted in* XVII YB Comm. Arb'n (1992) 106 at 122-124. *United States - Measure Affecting Imports of Woven Wool Shirts and Blouses from India*, adopted 23 May 1997, WT/DS33/AB/R and Corr. 1, p. 14, available at http://www.wto.org/english/tratop_e/dispu_e/ab_reports_e.htm, quoted approvingly in *Marvin Feldman v. Mexico* (NAFTA), ARB(AF)/99/1, 16 December 2002, available at http://www.investmentclaims.com/decisions/Feldman-Mexico-Award-16Dec2002-Eng.pdf.

*sometidas a arbitraje de acuerdo con al Articulo 1120 plantean cuestiones en común de hecho o de derecho.*" A combined reading of these texts, pursuant to Article 33(4) of the Vienna Convention on the Law of Treaties of 1969,[43] indicates that an Article 1126 Tribunal has discretionary power in determining whether there is a question of law or fact in common. Correspondingly, in addition to fulfilling the requirements of Article 1126(3), quoted above, a party seeking an order under Article 1126(2) has to show to the satisfaction of the Tribunal that there is a question of law or fact in common in the Article 1120 arbitrations in respect of which that party seeks consolidation. It is to that extent only that a party seeking an order under Article 1126(2) has a burden of proof.

96.     On the other hand, the condition that the order be "in the interests of fair and efficient resolution of the claims" pertains to the need for argument of the parties on this issue. The appreciation of that condition, which is prospective in nature, is again within the discretion of an Article 1126 Tribunal, having to take into account the positions of all parties.

---

[43]     Article 33 – Interpretation of treaties authenticated in two or more languages

1.     When a treaty has been authenticated in two or more languages, the text is equally authoritative in each language, unless the treaty provides or the parties agree that, in case of divergence, a particular text shall prevail.

2.     A version of the treaty in a language other than one of those in which the text was authenticated shall be considered an authentic text only if the treaty so provides or the parties so agree.

3.     The terms of the treaty are presumed to have the same meaning in each authentic text.

4.     Except where a particular text prevails in accordance with paragraph 1, when a comparison of the authentic texts discloses a difference of meaning which the application of articles 31 and 32 does not remove, the meaning which best reconciles the texts, having regard to the object and purpose of the treaty, shall be adopted.

### (g)    The term "jurisdiction"

97.    Article 1126(2) provides that the Tribunal may issue an order to "assume jurisdiction over" all or part of the claims, or one or more of the claims, that have been submitted to arbitration under Article 1120.  Article 1126(8) provides in turn: "A Tribunal established under Article 1120 shall not have jurisdiction to decide a claim, or a part of a claim, over which a Tribunal established under this Article has assumed jurisdiction."    The meaning of the term "jurisdiction"[44] in those provisions is examined below in the context of various arguments made with respect to that term.

98.    It is argued that this wording in Article 1126 means that an Article 1126 Tribunal cannot decide on objections to jurisdiction and, in the alternative, that, if a party requests consolidation, it waives the right to object to jurisdiction.[45]    The Consolidation Tribunal disagrees with those arguments for the following reasons.

99.    If a party commences arbitration, an arbitral tribunal has jurisdiction to hear and to determine the dispute submitted to it.  It is when a party timely raises a plea as to the jurisdiction of a tribunal that the tribunal is called upon to decide on its own jurisdiction.  Until the tribunal has ruled on the plea as to jurisdiction, its jurisdiction remains in force and effect.  Thus, Article 21(1) of the UNCITRAL Arbitration Rules provides: "The arbitral tribunal shall have the power to rule on objections that it has no jurisdiction . . . ." Article 21(4) provides: "In general, the arbitral tribunal should rule on a plea concerning its jurisdiction as a preliminary question. However, the arbitral tribunal may proceed with the arbitration and rule on such plea in their final award."

---

44    *See* ¶ 100 *infra* for a discussion of the term "assume."

45    Tembec Submission of 10 June 2005 at 25-26; Motion to Dismiss at 4-12; PHB at 3-7; R-PHB at 5 *et seq.*

100.    In the case of an order for consolidation under Article 1126(2), the term "assume jurisdiction" in Article 1126(2) and (8) means nothing else than that the Article 1126 Tribunal takes over the proceedings, in the capacity of an arbitral tribunal, to hear and to determine the disputes from the respective Article 1120 Tribunals. That action is of a procedurally administrative nature, in which two or more arbitral tribunals are replaced by one arbitral tribunal with respect to the same disputes.[46]

101.    The assumption of jurisdiction in such a context does not have any relevance for the question of whether the jurisdiction of the Article 1120 Tribunals or of the Article 1126 Tribunal is justified. That question has to be addressed in the context of Article 21 of the UNCITRAL Rules, either by the Article 1120 Tribunal or, if the proceedings of the Article 1120 Tribunal have not reached the stage of a ruling on a plea as to jurisdiction, by the Article 1126 Tribunal. A request under Article 1126, therefore, cannot be considered a waiver of the right to object to the jurisdiction of an arbitral tribunal, whether it be the Article 1120 one or the Article 1126 one, to hear and to determine a dispute.[47]

102.    For the same reasons, the Consolidation Tribunal rejects the argument that having submitted its statement of defense in *Canfor* and *Tembec* without raising any objection to the Article 1120 Tribunals' jurisdiction based on Article 1126, the United States' plea that jurisdiction over the Claimants' claims properly lies with

---

[46]    *See* Tr. at 174-75 (United States arguing that consolidation under Article 1126 results in a "transfer" of jurisdiction but does not act as a ground for objecting to jurisdiction); Tr. at 225 (Tembec pointing out the apparent inconsistency of the United States arguing that the Consolidation Tribunal should assume jurisdiction under Article 1126, but that such a transfer of jurisdiction overcomes the requirements of Article 21(3), providing: "A plea that the arbitral tribunal does not have jurisdiction shall be raised not later than in the statement of defence or, with respect to a counter-claim, in the reply to the counter-claim."). *See also* ¶ 103 *supra.*

[47]    A different question is whether the United States' request is barred by the doctrines of laches and estoppel, *see* Section V.C (page 62) *infra.*

the Article 1126 Tribunal is untimely under the UNCITRAL Arbitration Rules. The invocation by a disputing party of Article 1126 is not, by the ordinary meaning of its terms, a jurisdictional objection to an Article 1120 Tribunal. The issue of whether to consolidate is, as such, separate and apart from the issue of jurisdiction.

103.   A different question is whether a party can no longer raise a plea as to the jurisdiction in the Article 1126 proceedings if it has not timely raised such a plea in the Article 1120 arbitration. According to Article 21(3) of the UNCITRAL Arbitration Rules, the plea should have been raised not later than in the statement of defense. Although Article 1126 of the NAFTA (and the UNCITRAL Rules for that matter) are silent on this different question, the Consolidation Tribunal is of the opinion that this question must in principle be answered in the affirmative. Thus, if a party has failed to raise the plea as to jurisdiction in the Article 1120 arbitration at the latest in the statement of defense (assuming that the Article 1120 arbitration has reached that stage), a party is in principle barred from raising the plea in the consolidation proceedings.[48]

       (h)   *The terms "all or part of the claims" and "one or more of the claims"*

104.   Sub-paragraphs (a) and (b) of Article 1126(2) provide for the assumption of jurisdiction by an Article 1126 Tribunal of "all or part of the claims," or "one or more claims, the determination of which it believes will assist in the resolution of the others."

105.   The Consolidation Tribunal notes that the request of the United States in the present case is one pursuant to sub-paragraph (a) of Article 1126(2) since it seeks

---

[48]   The bar is what the text of Article 21(3) of the UNCITRAL Arbitration Rules of 1976 provides. *Cf.* UNCITRAL Model Law on International Commercial Arbitration of 1985, which adds in the corresponding Article 16(2) *in fine*: "The arbitral tribunal may . . . admit a later plea if it considers the delay justified."

the consolidation of the entirety of all three Article 1120 arbitrations together, in respect of which the United States submits that they have questions of law and fact in common.

106.    In order to place the United States' request in context, the question concerning the difference between sub-paragraphs (a) and (b) of Article 1126(2) needs to be addressed.  That difference is indicated by the expression "hear and determine together" in sub-paragraph (a), while sub-paragraph (b) uses the expression "hear and determine" without the qualifier "together."  The qualifier shows that sub-paragraph (a) contemplates claims in two or more Article 1120 arbitrations to be heard and determined in whole or in part in a single proceeding.  In contrast, under sub-paragraph (b), claims in one or more of the Article 1120 arbitrations, but not in all, may be singled out by an Article 1126 Tribunal from the total of the Article 1120 arbitrations that have a question of law or fact in common so that a decision on the claims in the Article 1120 arbitration(s) that has (have) been singled out by the Article 1126 Tribunal would assist the other Article 1120 Tribunal(s) in the resolution of the claims before them.

107.    A question is whether the term "claims" in Article 1126(2) also includes jurisdictional (and/or admissibility) objections raised against the bringing of one or more claims.[49]  It must indeed be deemed to be so.  Article 1126 refers to "claims . . . that have a question of law or fact in common."  As will be explained below, that phrase connotes a factual or legal issue that requires a finding to dispose of a claim.[50]  If a jurisdictional objection is raised against a claim, the claim can be disposed of only if the jurisdictional objection is also disposed of.  The legislative history reviewed above does not indicate that, in the successive drafts, the

---

[49]    Tembec R-PHB at 5-7.

[50]    *See* Sub-section V.A(i) (page 42) *infra.*

41

negotiators intended to narrow the scope of an Article 1126 Tribunal's competence. Moreover, if it were otherwise, Article 1126 would lose its object and purpose of procedural economy because an Article 1126 proceeding could then take place only after each of the Article 1120 Tribunals has ruled on jurisdictional objections.

108.    In conclusion, an Article 1126 Tribunal can order many forms of consolidation under, in particular, sub-paragraph (a) of Article 1126(2). For example, an Article 1126 Tribunal can order the consolidation of all issues relating to liability, leaving damages to the Article 1120 Tribunals. An Article 1126 Tribunal may also order consolidation of a National Treatment claim under Article 1102 and/or a Most-Favored-Nation Treatment claim under Article 1103 and/or a Minimum Standard of Treatment claim under Article 1105, and leave an Expropriation claim under Article 1110 to the Article 1120 Tribunals.[51] Further, an Article 1126 Tribunal may consolidate issues relating to objections to jurisdiction (and/or admissibility) alone, and, to the extent that it rejects those objections, leave the remainder of the dispute to the Article 1120 Tribunals.[52]

> (i)    The term "a question of law or fact in common"

109.    The notion of "question" in the term "a question of law or fact in common" as appearing in Article 1126(2) means a factual or legal issue that requires a finding to dispose of a claim. That meaning follows from the wording and structure of Article 1126(2). It refers to "claims [that] have been submitted to arbitration under Article 1120" and then to those claims "hav[ing] a question of law or fact in common."

---

[51]    Such a consolidation seems less likely since claims under Articles 1102, 1103, 1105 and 1110 of the NAFTA are regularly in the alternative on the basis of the same facts and it would not be in the interests of fair and efficient resolution of the claims to do so.

110.  An issue to which the invocation of a provision of Section A of Chapter 11 of the NAFTA gives rise,[53] should, therefore, be in common in the Article 1120 arbitrations. The mere invocation of the same provision of the NAFTA is not sufficient.

111.  Furthermore, a fact may be in common in the Article 1120 arbitrations, but here again there should also be an issue concerning that fact that is in common.

112.  However, the distinction is not as black or white as the previous paragraphs may suggest since there is often an interaction between legal and factual issues. Thus, it may be that, in all Article 1120 arbitrations, the fact that a State has adopted a certain measure is not disputed, and hence there would not be a factual issue, but it may also be that the issue in those arbitrations is whether that measure constitutes a violation of a provision of the NAFTA.

113.  Another question is whether one or several questions of law or fact are necessary to justify an order under Article 1126(2). The English and equally authentic French texts of Article 1126(2) are phrased in the singular.[54] In contrast, the

---

[52]     *See* Sub-section V.A(l) (page 56) *infra* (discussing *seriatim* consolidation).

[53]     Which may also include an alleged breach under Articles 1503(2) and 1502(3)(a) of the NAFTA. *See* Articles 1116(1) and 1117(1). Article 1503(2) (State Enterprises) provides: "Each Party shall ensure, through regulatory control, administrative supervision or the application of other measures, that any state enterprise that it maintains or establishes acts in a manner that is not inconsistent with the Party's obligations under Chapters Eleven (Investment) and Fourteen (Financial Services) wherever such enterprise exercises any regulatory, administrative or other governmental authority that the Party has delegated to it, such as the power to expropriate, grant licenses, approve commercial transactions or impose quotas, fees or other charges." Article 1502(3)(a) (Monopolies and State Enterprises) provides: "Each Party shall ensure, through regulatory control, administrative supervision or the application of other measures, that any privately owned monopoly that it designates and any government monopoly that it maintains or designates: (a) acts in a manner that is not inconsistent with the Party's obligations under this Agreement wherever such a monopoly exercises any regulatory, administrative or other governmental authority that the Party has delegated to it in connection with the monopoly good or service, such as the power to grant import or export licenses, approve commercial transactions or impose quotas, fees or other charges."

[54]     French text: "*un même point de droit ou de fait.*"

equally authentic Spanish text is phrased in the plural.[55]  Pursuant to Article 33(4) of the Vienna Convention on the Law of Treaties of 1969, a meaning has to be adopted which best reconciles the texts, having regard to the object and purpose of the treaty.[56]  The object and purpose of the relevant part of the NAFTA are mainly related to procedural economy. Within that perspective, the presence of one common question of either law or fact in two or more Article 1120 arbitrations will serve that object and purpose under given circumstances.

114.    As is rightly pointed out by the United States,[57] the question need not be purely a quantitative one, but a qualitative one as well.  The determination that one question of law or fact is in common, requires a further determination that resolution of that question is in the interests of fair and efficient resolution of the claims.  Thus, at least one question of law or fact in common may present itself, but resolution of that question by an Article 1126 Tribunal may not serve the fair and efficient resolution of the claims advanced before the Article 1120 Tribunals. Whether that is so depends entirely on the circumstances of the cases and cannot be answered in the abstract.

115.    The Consolidation Tribunal notes that the qualitative aspect mentioned in the preceding paragraph is basically not much different from what Tembec argues: "the common questions of law or fact must be material to the disposition of an award.  A 'material' common question is one which is '[i]mportant' to or 'having influence or effect' on the ultimate outcome of a case."[58] However, the Tribunal prefers not to use in this context qualifiers such as "material" and "important" –

---

[55]    Spanish text: "*cuestiones en común de hecho o de derecho.*"

[56]    *See* n. 43 *supra.*

[57]    United States PHB at 7-8.

[58]    Tembec PHB at 29, quoting *Black's Law Dictionary* at 674 (abridged 6th ed. 1991); *see also* Tembec R-PHB at 17-19.

which are not expressed in the language of Article 1126 – as they could be interpreted to unduly curtail the explicit discretionary power given to an Article 1126 Tribunal when determining whether to issue an order under paragraph 2 of that Article.

*(j)    Anticipated questions*

116.    Another query is whether "a question of law or fact in common" should already have been presented to the Article 1120 Tribunals, or whether the alleged anticipation that such a question will arise, comes within the purview of Article 1126(2).  The Consolidation Tribunal needs to address that question because the United States contends:

> Finally, although the United States is not in a position at this time to comprehensively articulate its defences to the merits of claimants' claims, given the similarities and factual allegations and claims of breach, the United States anticipates that should these cases proceed to the merits, it would raise many, if not all, of the same legal defenses to all three claims.[59]

117.    Canfor and Terminal assert that anticipation for the purposes of consolidation is insufficient and that the Consolidation Tribunal must only be satisfied on the basis of evidence or pleadings, not mere anticipation or expectation.[60]

118.    The Consolidation Tribunal agrees with Canfor and Terminal that a "mere anticipation or expectation" is insufficient for satisfying the condition of Article 1126(2) that there exist "a question of law or fact in common."  However, where an issue has been raised in one or more Article 1120 proceedings that a party shows that it is with a degree of certainty to raise in other Article 1120

---

[59]    Tr. at 32:13-20; United States' Submission of 3 June 2005 at 12 and n. 28.

[60]    Canfor & Terminal PHB ¶¶ 11-12.

proceedings that are the subject of the request for consolidation, an Article 1126 Tribunal may legitimately take such anticipated issue into account. That result should particularly apply where the stages of the proceedings are not fully aligned.

119.   The consideration of an anticipated issue in the aforementioned manner may serve the purpose of procedural economy and the expediency with which Article 1126(2) requests must be addressed. If it were otherwise, an Article 1126(2) request would suffer delay until the Article 1120 arbitrations were substantially pleaded.

120.   Usually, such an anticipated issue is to be taken into account if there are one or more common issues that have already in fact been raised in the Article 1120 arbitrations. The anticipated issue will then serve as an additional factor in the determination whether an order under Article 1126(2) is merited within the discretionary power of the Article 1126 Tribunal.

(k)     The term "in the interests of fair and efficient resolution of the claims"

121.   The United States contends that the term "in the interests of fair and efficient resolution of the claims" sets forth an absolute, and not a relative, standard. It argues that Article 1126(2) does not provide that consolidation is available only when it is the most fair and efficient means of resolving the claims, or that consolidation must be more fair and efficient than proceeding separately before Article 1120 Tribunals. Rather, according to the United States, under the plain terms of Article 1126, a Tribunal's role is to determine, at the time that the request is made, whether an order under paragraph 2 would be fair and efficient. In that respect, the status of the ongoing Article 1120 proceedings is relevant. The United

States asserts that the three elements of fairness and efficiency under Article 1126 are: (i) time; (ii) costs; and (iii) the avoidance of conflicting decisions.[61]

122.    Canfor and Terminal take the position that fairness and efficiency must be considered relative to the positions of the individual disputing parties in their respective Article 1120 proceedings, and that the words "fairness and efficiency" cannot be interpreted in the abstract.  According to Canfor and Terminal, the considerations which must be weighed by an Article 1126 Tribunal in evaluating the fairness and efficiency of the proceedings include factors such as: costs to all parties; length of hearings; procedural complexity; the parties' wishes; the parties' conduct or representation to each other; the impact on party autonomy; the importance and complexity of confidentiality; the timing of the consolidation application; and the progress that has been made in the parties' Article 1120 arbitrations.  Canfor and Terminal add that the fact that there are a small number of claims is another factor to be taken into account in refusing consolidation.[62]

123.    Tembec argues that the term "in the interests of fair and efficient resolution of the claims" is to be interpreted not in isolation but in comparison to the existing Article 1120 arbitrations.  Although Tembec does not list separately specific factors to be taken into account, it appears to rely on factors such as: costs; abusive and disruptive litigation techniques; no impairment of the ability to present one's case;  party autonomy (including parties' preferences on the issue of consolidation); procedural inefficiency; delay; and confidentiality.[63]

124.    The Consolidation Tribunal notes that the text of Article 1126(2) neither expresses nor implies that a comparison must be made between the Article 1120 arbitrations

---

[61]    United States PHB at 5-6.

[62]    Canfor & Terminal PHB ¶¶ 68-70.

[63]    Tembec PHB at 37-56.

and an Article 1126 arbitration when applying the term "in the interests of fair and efficient resolution of the claims." The Tribunal is of the view that efficiency in the sense of procedural economy is the operative goal of consolidation under Article 1126. That is basically an objective, fact-driven standard which an Article 1126 Tribunal can apply as it deems appropriate under the circumstances. Determining what is efficient under Article 1126(2) is not an accounting exercise of drawing up a matrix of comparative advantages and disadvantages and applying relative weighing factors. It suffices that the Article 1126 Tribunal is convinced that efficiency in the resolution of the claims will, under the circumstances before it, be served by a consolidation.

125.    In making that determination, an Article 1126 Tribunal is also to consider what is "fair." That requirement indicates that the interests of all parties involved should be balanced in determining what is the procedural economy in the given situation. For example, a balance needs to be struck between a hearing that is longer for one party but at the same time shorter for another. It may also happen that what is procedurally less efficient for one party is procedurally more efficient for another. In that respect, the procedural economy that will redound to the benefit of a disputing State Party is another relevant factor, for the reasons explained earlier.[64] The necessary balancing further includes the consideration that all parties shall continue to receive the fundamental right of due process as it is set forth in Article 15(1) of the UNCITRAL Arbitration Rules (". . . the parties are treated with equality and each party is given a full opportunity of presenting his case").

126.    While the standard of efficiency is an objective one, a guiding test is a comparison with the situation as it exists, and would continue to exist, if no consolidation were ordered. Factors to take into account in making such a comparison are: (i) time;

---

[64]    See Sub-section V.A(b) (page 27) supra.

(ii) costs; and (iii) avoidance of conflicting decisions.  These factors correspond textually with the factors listed by the United States but factor (i) in particular comprises more than what the United States has argued.  Factor (i), time, includes consideration of the status of the Article 1120 arbitrations for which a party seeks consolidation and of the delay, if any, that might result in the resolution of the claims.  In that connection, the differences in stages in the Article 1120 proceedings may constitute a relevant aspect.  Factor (ii), costs, involves an assessment of the costs to all parties involved.  Factor (iii), avoidance of conflicting decisions, requires a consideration of whether conflicting decisions on common questions of law or fact, that are before the 1120 Tribunals, can arise.

127.    While factor (ii) does not call for additional comment, factors (i) and (iii) merit further observations.

128.    With respect to factor (i), the Consolidation Tribunal notes that a request under Article 1126(2) is not subject to a specific time limit.  An initial draft provided for a time limit,[65] but that provision was abandoned in subsequent drafts.  However, the principle of procedural economy includes the general proposition that the more advanced the separate proceedings are, the less likely it is that consolidation will be ordered.

129.    It is likely that, if consolidated, the proceedings may take more time than required for individual Article 1120 arbitrations.  Thus, an Article 1120 arbitration may be more efficient for an individual disputing investor in terms of time than an Article 1126 arbitration.  In contrast, an Article 1126 proceeding may be more efficient for a respondent State Party.  These competing positions require an Article 1126 Tribunal to balance the interests of all parties when considering the issuance of an order under Article 1126(2), rather than to deny an Article 1126 application for the

---

[65]    *See* ¶¶ 65 and 67 *supra.*

49

sole reason that the proceedings would be more time consuming for individual disputing investors.

130.    With respect to factor (iii), the parties have debated at length whether the avoidance of inconsistent decisions is one of the goals of Article 1126 of the NAFTA.  The United States argued in favor of that proposition.  Claimants, and in particular Tembec,[66] contend that concerns of consistency are immaterial to the question of consolidation.

131.    It is true that arbitral awards, including in the context of the NAFTA, do not constitute binding precedent.  It is also true that to the extent that they constitute persuasive precedent, certain cases are distinguishable on the facts.   But that circumstance leaves unaltered the fact that an effective administration of justice, which is demanded by efficient proceedings as referred to in Article 1126(2), requires the *avoidance* of conflicting results.  Such avoidance will occur if claims are wholly or partially consolidated.  If a total consolidation under sub-paragraph (a) of Article 1126(2) occurs, no conflicting decisions can arise. But if a partial consolidation under that provision occurs, no conflicting decisions can arise either since a decision by an Article 1126 Tribunal must be deemed to be binding on the Article 1120 Tribunals to the extent of the questions chosen for determination in the partial consolidation.[67]

132.    It may be added that experience has shown that inconsistent results do occur as was unfortunately demonstrated by the conflicting outcomes in the cases of *CME/Lauder v. The Czech Republic*.[68]   These cases are the more regrettable

---

[66]    Tembec Submission of 10 June 2005 at 52-56; R-PHB at 39-41.

[67]    *See* ¶ 157 *infra.*

[68]    *CME Czech Republic B.V. v. Czech Republic* (UNCITRAL, The Netherlands-Czech Republic BIT), Partial Award of 13 September 2001, available at http://www.investmentclaims.com/decisions/CME-Czech-PartialAward-13Sept2001.pdf, and Final Award, 14 March 2003, available

(footnote cont'd)

because, for all practical purposes, the parties and the claims were the same (even though the bilateral investment treaties in those cases were partly between different State Parties).

133.    The desirability of avoiding conflicting results is not limited to cases where the parties are the same.  Cases with different parties may present the same legal issues arising out of the same event or related to the same measure.  Conflicting results then may take place if the findings with respect to those issues differ in two or more cases.

134.    Other factors mentioned by the parties are less or not relevant for the purposes of applying the term "in the interest of fair and efficient resolution of the claims."

135.    As analyzed before,[69] party autonomy (to which Claimants also refer as the consensual nature of the process or as the parties' wishes) is not relevant for considering a consolidation request under Article 1126.

136.    The number of claims that are involved is not relevant either.  Canfor asserts that the fact that there are only a small number of claims is a factor to be taken into consideration in refusing consolidation.[70]  It appears that the drafters of Article 1126 mainly had situations in mind where numerous claims would be brought against a State Party arising out of the same event or related to the same measure.  However, the text of Article 1126 does not impose such a quantitative requirement nor does it imply it.  According to the text of Article 1126(2), consolidation can occur when there are but two Article 1120 arbitrations.

---

at  http://www.investmentclaims.com/decisions/CME-Czech-FinalAward-14Mar2003.pdf;  *Lauder v. Czech Republic* (UNCITRAL, United States-Czech Republic BIT), Final Award of 3 September 2001,  available  at  http://www.investmentclaims.com/decisions/Lauder-Czech-FinalAward-3Sept2001.pdf

[69]    *See* Sub-section V.A(c) (page 29) *supra*.

137.    The alleged presence of abusive and disruptive litigation techniques, such as making a request for alleged tactical reasons or for the alleged purpose of forum shopping,[71] are equally irrelevant, unless a party can show that the party requesting consolidation is guilty of an abuse of right under international law (a matter that is neither alleged nor proven in the present proceedings).[72]

138.    Finally, concerns over confidentiality are, in the view of the Consolidation Tribunal, not relevant when considering a request for consolidation, save for exceptional cases where consolidation would defeat efficiency of process or would infringe the principle of due process enunciated in Article 1115 of the NAFTA. The Tribunal is aware that confidentiality vis-à-vis competitors was the main ground on which consolidation was denied in the *Corn Products* case, for reasons that the Tribunal in that case saw fit under the given circumstances.

139.    The general trend in investor-State arbitration is transparency of process, a trend to which the Consolidation Tribunal subscribes.  Within the perspective of that trend, the issue of confidentiality must be approached with caution.

140.    The Consolidation Tribunal further notes that the States Party to the NAFTA have specifically addressed concerns over confidentiality in the *Notes of Interpretation of Certain Chapter 11 Provisions*, issued by the NAFTA Free Trade Commission on 31 July 2001.[73]  The relevant provisions are:

---

[70]    Canfor & Terminal PHB ¶ 69.

[71]    These allegations are made by Tembec in particular in the present case: PHB at 57-60; R-PHB at 14-16.

[72]    *See* Bin Cheng, GENERAL PRINCIPLES OF LAW AS APPLIED BY INTERNATIONAL COURTS AND TRIBUNALS (1987) 121-36.

[73]    Available at http://www.dfait-maeci.gc.ca/tna-nac/NAFTA-Interpr-en.asp.

A.  Access to documents

1.  Nothing in the NAFTA imposes a general duty of confidentiality on the disputing parties to a Chapter Eleven arbitration, and, subject to the application of Article 1137(4),[74] nothing in the NAFTA precludes the Parties from providing public access to documents submitted to, or issued by, a Chapter Eleven tribunal.

2.  In the application of the foregoing:

(a)  In accordance with Article 1120(2),[75] the NAFTA Parties agree that nothing in the relevant arbitral rules imposes a general duty of confidentiality or precludes the Parties from providing public access to documents submitted to, or issued by, Chapter Eleven tribunals, apart from the limited specific exceptions set forth expressly in those rules.

(b)  Each Party agrees to make available to the public in a timely manner all documents submitted to, or issued by, a Chapter Eleven tribunal, subject to redaction of:

(i)  confidential business information;

---

[74]  Article 1137(4) of the NAFTA provides: "Annex 1137.4 applies to the Parties specified in that Annex with respect to publication of an award."  Annex 1137.4 (Publication of an Award) provides:

**Canada**

Where Canada is the disputing Party, either Canada or a disputing investor that is a party to the arbitration may make an award public.

**Mexico**

Where Mexico is the disputing Party, the applicable arbitration rules apply to the publication of an award.

**United States**

Where the United States is the disputing Party, either the United States or a disputing investor that is a party to the arbitration may make an award public.

[75]  Article 1120(2) of the NAFTA provides: "The applicable arbitration rules shall govern the arbitration except to the extent modified by this Section."

(ii)     information which is privileged or otherwise protected from disclosure under the Party's domestic law; and

(iii)     information which the Party must withhold pursuant to the relevant arbitral rules, as applied.

(c)  The Parties reaffirm that disputing parties may disclose to other persons in connection with the arbitral proceedings such unredacted documents as they consider necessary for the preparation of their cases, but they shall ensure that those persons protect the confidential information in such documents.

(d)  The Parties further reaffirm that the Governments of Canada, the United Mexican States and the United States of America may share with officials of their respective federal, state or provincial governments all relevant documents in the course of dispute settlement under Chapter Eleven of NAFTA, including confidential information.

3.   The Parties confirm that nothing in this interpretation shall be construed to require any Party to furnish or allow access to information that it may withhold in accordance with Articles 2102 or 2105.[76]

141.  Furthermore, in general, the fact that parties to proceedings are competitors is not unique to consolidation proceedings.   One sees that situation in arbitrations between a single claimant and a single respondent, including Article 1120 arbitrations.   It has never been seriously suggested that arbitration cannot proceed

---

[76]     Article 2102 (National Security) is to the effect that nothing in the NAFTA shall be construed: to require any State Party to furnish or allow access to any information the disclosure of which it determines to be contrary to its essential security interests; to prevent any State Party from taking any actions that it considers necessary for the protection of its essential security interests; or to prevent any State Party from taking action in pursuance of its obligations under the United Nations Charter for the maintenance of international peace and security.  Article 2105 (Disclosure of Information) provides that nothing in the NAFTA shall be construed to require a State Party to furnish or allow access to information the disclosure of which would impede law enforcement or would be contrary to the State Party's law protecting personal privacy or the financial affairs and accounts of individual customers of financial institutions.

in those cases for the mere reason that the parties are competitors and that disclosure of confidential information is purportedly bound to occur.

142.   Article 1111(2) of the NAFTA carries the distinct implication that the drafters of the NAFTA considered that confidential business information can be protected from prejudicial disclosure, at least as far as a State Party is concerned:

> Notwithstanding Articles 1102 or 1103, a Party may require an investor of another Party, or its investment in its territory, to provide routine information concerning that investment solely for informational or statistical purposes. *The Party shall protect such business information that is confidential from any disclosure that would prejudice the competitive position of the investor or the investment.* Nothing in this paragraph shall be construed to prevent a Party from otherwise obtaining or disclosing information in connection with the equitable and good faith application of its law. (emphasis added)

143.   There are sufficient measures available to arbitral tribunals to ensure confidential treatment of information (including: protective orders; imposition of confidentiality undertakings; partially separate hearings *in camera*; classifying submissions, documents and testimony; appointment of a confidentiality advisor; redaction of award for public access), while ensuring that each party is afforded a full opportunity of presenting its case.  In many international arbitrations, parties negotiate and execute an appropriate confidentiality agreement among themselves.

144.   The matter of enforceability of confidentiality obligations is not unique to Article 1126 arbitrations either; it may also arise under Article 1120 arbitrations.

145.   The fact that confidentiality issues may increase if the Article 1120 arbitrations are consolidated is inherent in the consolidation process, but that factor is not in and of itself a reason not to consolidate.

146.   The fact that confidentiality measures may make the proceedings more complex is not a reason not to conduct consolidated proceedings either.  Tribunals operating

at a level of the NAFTA and of other multilateral or bilateral investment treaties should be, and are as a rule, capable of dealing with procedurally complex cases with difficult confidentiality issues without an appreciable decline in efficiency or without any impairment of due process.

147.  The exceptional cases where confidentiality would defeat efficiency of process or would infringe the principle of due process enunciated in Article 1115 of the NAFTA, if proceedings were consolidated, are not likely often to occur.  Such a situation may be present in the event that clearly identified and significant confidentiality issues are bound to arise in the proceedings, if consolidated; that these issues outweigh all three factors (time, cost and avoidance of conflicting results); and that these issues are such that, if the proceedings are consolidated, they are manifestly counterproductive to an effective administration of justice.

### (l)    Seriatim consolidation

148.  A question that was raised at the 16 June 2005 hearing was whether an Article 1126 Tribunal may order consolidation in a *seriatim* fashion.  For example, there is an issue as to whether it would be permissible for an Article 1126 Tribunal to consolidate issues relating to objections to jurisdiction (and/or admissibility) and to retain the power to order consolidation of other aspects of the Article 1120 arbitrations after the Article 1126 Tribunal has rendered its ruling on the jurisdictional objections.

149.  The United States submits that consolidation in a *seriatim* fashion is possible under Article 1126 of the NAFTA.  It argues that "[n]othing in the text of Article 1126 suggests that the Tribunal's powers are limited to making a single decision on consolidation" and that the State Parties left the text of Article 1126

"nonspecific so as to grant consolidation tribunals flexibility to fashion a proceeding to fit the circumstances."[77]

150.   Canfor and Terminal disagree.  They argue that the "Consolidation Tribunal's only powers are those set out in Article 1126(2).  Those powers do not include the right to reserve judgment on whether to subsequently assume jurisdiction over further aspects of the proceedings at a later date."  Moreover, Canfor and Terminal argue that such treatment is not what the United States is asking the Tribunal to do in any event.[78]

151.   The Consolidation Tribunal is of the view that the text of Article 1126 does not leave room for reserving judgment concerning consolidation at some moment in the future.  The text of Article 1126 demands a decision on a consolidation request "after hearing the disputing parties."  That indicates that one proceeding, and one order, concerning a consolidation request are contemplated.[79]  Moreover, once an Article 1126 Tribunal has issued an order on consolidation, its mandate transforms from deciding whether or not to consolidate into one of hearing and determining claims.

*(m)   Where consolidated proceedings are to begin*

152.   The United States submits that if the relevant Article 1120 claims were consolidated, this Tribunal would start anew procedurally.[80]  Canfor and Terminal take the position that consolidated proceedings must pick up at the stage at which

---

[77]   United States PHB at 8-9.

[78]   Canfor & Terminal PHB ¶¶ 76-78 and R-PHB ¶ 7.  Tembec does not address the question in its PHB; *see also* Tembec's argument at ¶ 181 *infra*.

[79]   Another question is whether, subsequent to the disposition of a consolidation order, a disputing party may again request consolidation.  As it is not an issue before the Tribunal, the Tribunal will not consider that question in the present Order.

[80]   United States PHB at 26-27.

those proceedings left off.  Canfor argues that, if a jurisdictional award had been issued in *Canfor*, and the proceedings were subsequently consolidated, Canfor could not be compelled to revisit jurisdiction, although a different claimant, who has not had the opportunity to address jurisdiction, could not be deprived of its right to raise that issue.  Similarly, Canfor and Terminal argue, Terminal cannot be deprived of its right to articulate a claim in a statement of claim.[81]  Tembec contends that, were the Tribunal to consolidate jurisdictional questions, those questions would have to be taken from the Article 1120 Tribunals at the *status quo ante*.[82]

153. The Consolidation Tribunal is of the opinion that it has discretionary power to determine where consolidated proceedings are to begin.  The possible exception is the untimely raising of an objection to jurisdiction, as is explained at ¶ 103 above.  If an Article 1126 Tribunal assumes jurisdiction, it is in a position that is not much different from the situation in which one or more arbitrators in a case are replaced.  In that respect, Article 14 of the UNCITRAL Arbitration Rules offers guidance: "If under articles 11 to 13 the sole or presiding arbitrator is replaced, any hearings held previously shall be repeated; if any other arbitrator is replaced, such prior hearings may be repeated at the discretion of the arbitral tribunal."  Once consolidated by order, this Tribunal has, under this rationale, the discretion to determine the conduct and sequence of the consolidated proceedings, but will naturally exercise that discretion in consultation with the parties.

154. The Consolidation Tribunal need not address the question whether a decision by an Article 1120 Tribunal on its jurisdiction, or a partial award on liability by such

---

[81]    Canfor & Terminal PHB ¶ 116.

[82]    Tembec PHB at 25-26. In addition, Tembec argues, were the Tribunal simply to "start over" substantially, it could not begin with the pending jurisdictional objections, for it has no authority to address them.  The Consolidation Tribunal disagrees with that argument, for the reasons stated in Sub-section V.A(g) (page 38) *supra*.

a Tribunal, would be binding in the consolidation proceedings since in none of the three Article 1120 arbitrations in question has such a decision or award been issued. Hence, there is no question of a "*de facto* appeal process" by the United States as is argued by Canfor and Terminal.[83] In any event, it would seem that this question is theoretical because, if an Article 1120 Tribunal has rendered a decision on liability, there may no longer be a question of law or fact in common with another Tribunal insofar as liability is concerned.

### (n)    The position of the Article 1120 Tribunals

155. As mentioned, Article 1126(8) of the NAFTA provides: "A Tribunal established under Article 1120 shall not have jurisdiction to decide a claim, or a part of a claim, over which a Tribunal established under this Article has assumed jurisdiction."

156. If an Article 1126 Tribunal orders consolidation in full, the Article 1120 Tribunals cease to function because of the dictates of Article 1126(8).

157. If an Article 1126 Tribunal orders consolidation in part, then the relevant Article 1120 Tribunals no longer have jurisdiction over the part over which the Article 1126 Tribunal has assumed jurisdiction. The decision that the Article 1126 Tribunal gives with respect to the part over which it has assumed jurisdiction must be deemed to be binding on the Article 1120 Tribunals that are subject to the consolidation. It is not only a logical inference, but it also follows from the text of Article 1136(1): "An award made by a Tribunal shall have no binding force *except between the disputing parties and in respect of the particular case.*" (emphasis

---

[83]    Canfor & Terminal R-PHB ¶ 30.

added).[84] It follows that if, for example, an Article 1126 Tribunal has decided liability as part of the claims, the decision is binding on the Article 1120 Tribunals deciding on damages.

158.    Partial consolidation further raises the question whether, and if so, to what extent, the Article 1120 Tribunals should adjourn the proceedings before them, pending resolution by the Consolidation Tribunal.  Article 1126 does not expressly deal with that question.  It does, in Article 1126(9), address explicitly the matter of a stay pending the decision of the Consolidation Tribunal on the consolidation.  As it is not an issue before the Consolidation Tribunal and in light of its decision on the consolidation request in the present case, the Tribunal will refrain from deciding on the above question relating to partial consolidation.

### B.    Conduct of the Present Proceedings

159.    Canfor objects to the United States' request for consolidation, arguing that the United States has not satisfied the requirement under NAFTA Article 1126(3) for the presentation of particularized submissions.  Canfor further objects to the United States' reliance on materials that are allegedly not accessible to Canfor, such as the pleadings in the *Corn Products* case, the only other NAFTA case considering the question of consolidation.[85]

160.    Canfor's objections lack merit.  The consolidation request of the United States of 7 March 2005 contained the information required by Article 1126(3), which stipulates that a disputing party "shall specify in the request: . . . (c) the grounds on which the order is sought."  Those grounds were specified in the request of 7 March 2005.  The United States particularized the grounds in its submission of 3

---

[84]    The term "Tribunal" means "an arbitration tribunal established under Article 1120 or 1126" (Article 1139).

[85]    Canfor Submission of 10 June 2005 ¶¶ 5, 8, 11, 37-40.

June 2005, to which Canfor and the other Claimants responded in their submissions of 10 June 2005.

161. As to the materials in the *Corn Products* case,[86] these materials were available on the website of the Government of Mexico soon after submission of the consolidation request by the United States.[87]  The Order of the Consolidation Tribunal in that case of 20 May 2005 was also soon thereafter published on the website of the Government of Mexico.  A simple search, with an adequate search engine on the Internet, would have revealed the existence of these published materials.  Moreover, it appears that Claimants wished to have access to these materials in order to show that Article 1126 of the NAFTA requires an agreement of the parties once an order under Article 1126(2) is sought.  As is explained earlier, such an agreement is not required.[88]

162. Here, all parties have had a full opportunity to present their case on the issue of consolidation.  Like in the *Corn Products* case, this Consolidation Tribunal is of the opinion that a request under Article 1126(2) of the NAFTA should be disposed of within the shortest possible time in order to minimize delay in the Article 1120 arbitrations if the request is denied and also in the Article 1126 arbitration if the request is granted.  Thus, Claimants have had a full opportunity to present their case in their submissions of 10 June 2005, at the hearing held on 16 June 2005, in the post-hearing briefs of 12 July 2005 and in the reply post-hearing briefs of 12 August 2005.  The sequence and length of the briefing schedule after the hearing

---

[86]    Tembec also alleges that the United States withholds information regarding the *Corn Products* case, *see* PHB at 8.

[87]    Available at http://www.economia-snci.gob.mx/sphp_pages/importa/sol_contro/consultoria/Casos_Mexico/Corn/Corn.htm.

[88]    *See* ¶ 85 *supra.* The same applies to Claimants' request for materials in the *Cases Regarding the Border Closure Due to BSE Concerns*, available at http://www.state.gov/s/l/c14683.htm.

were the result of an agreement reached among all the parties to the present proceedings.

### C.    Alleged Laches and Estoppel against the United States

163.    Tembec asserts that the United States' request for consolidation should be barred by the doctrines of laches and estoppel.[89]  According to Tembec, the United States had notice of both Canfor's and Tembec's claims but delayed in requesting consolidation while Claimants heavily invested in the prosecution of their claims before the Article 1120 Tribunals.  Canfor and Terminal do not rely upon these doctrines, arguing that it is unnecessary to pursue them because allegations of delay or misrepresentations made by a party fall within the terms fairness and efficiency.[90]  While the Tribunal does not disagree with Canfor and Terminal, it deems it more appropriate to deal with the issue of laches and estoppel separately.

164.    The Consolidation Tribunal notes that the general principle underlying the Anglo-American doctrine of laches has been invoked before international tribunals, and that a number of international legal scholars have argued for its existence in international law.[91]  However, the Tribunal questions the application of the doctrine in the context of the present request for consolidation.

165.    Laches is an equitable defense asserted to bar the adjudication of stale claims.  The doctrine is premised on the theory that a claim that is plagued with undue delay prejudices a defendant because evidence is no longer available to defend against

---

[89]    See Tembec Submission of 10 June 2005 at 28–32; Tembec PHB at 8-15; Tembec R-PHB at 12-14.

[90]    Canfor & Terminal PHB at 25-26.

[91]    See Ashraf Ray Ibrahim, *The Doctrine of Laches in International Law*, 83 VA. L. REV. 647 (April 1997) (surveying history of *laches* in international law); US RESTATEMENT 3rd #902 Comment c. ("*Lapse of time:* No general rule of international law limits the time within which a claim may be made. However, international tribunals have barred claims because of a delay in presentation to the respondent state if the delay was due to the negligence of the claimant state.").

the claim.[92]  Although Tembec defines *laches* as prohibiting a party's "exercise of a right that has been delayed,"[93] the authorities cited by Tembec all refer to the application of the principle in the context of claims, and refer to cases in which tribunals have applied the doctrine to claims.  The Tribunal is not convinced that under international law this doctrine is appropriately invoked by a claimant to bar a procedural request for consolidation of claims.  The Tribunal notes that, in some legal systems, laches may bar requests for consolidation, as, for example, under New York law.[94] However, the forms of equity known to Anglo-American common law do not form part of the corpus of public international law.  While there is a borrowing of principles derived from domestic legal systems in public international law, this takes the form of general principles of law that do not necessarily replicate the rules of domestic law from which they derive their common origin.[95]

166.     Even if it were appropriate to apply the doctrine of laches under principles of international law in this context, the Tribunal concludes that laches would not bar the United States' present request.  The timeline under scrutiny is not so lengthy as to render the request for consolidation stale.  Tembec argues that the United States delayed making its request for 12 to 18 months.  A notion akin to laches has been applied by international tribunals primarily in cases where the delay involves decades (20 to 80 years), not months.[96]  In any event, in the context of a request for consolidation, the *Tembec* Tribunal had not even held a hearing on the

---

[92]      Ibrahim, n. 91 *supra*, at 676 – 83.

[93]      Tembec Submission of 10 June 2005 at 28.

[94]      *See* David D. Siegel, New York Practice, 3d Edition §128 (1999) ("Laches, determined on a sui generis basis, can be an enemy.").

[95]      *See* Bin Cheng, General Principles of Law as Applied by International Courts and Tribunals (1987) 377.

[96]      *See* Ibrahim, n. 91 *supra*.

jurisdictional challenge when the United States filed its Article 1126 request. Consequently, the Tribunal cannot conclude that the *Tembec* arbitration had proceeded to the point of rendering a request for consolidation stale. Further, the United States has provided a reasonable justification for the course of events – the sudden resignation of an arbitrator and the resulting sudden procedural alignment of the Article 1120 cases. The Tribunal notes that the United States acted promptly by filing the Article 1126 request within a week after the resignation. Finally, the contention that the United States has filed its request for tactical or strategic reasons is of no relevance to the application of the doctrine of laches and confuses this doctrine with other forms of equitable relief.

167.   Tembec also asserts that the United States' delay in requesting consolidation should be barred on the theory of estoppel. Tembec argues that the United States misrepresented its intention not to seek consolidation, and that, in reliance on the United States' assurances, Tembec proceeded in the Article 1120 Tribunal.

168.   The Tribunal accepts that, as amply demonstrated by the parties in their post-hearing briefs, estoppel is a recognized general principle of law that has been applied by many international tribunals.[97]   Of the essence to the principle of estoppel is detrimental reliance by one party on statements of another party, so that reversal of the position previously taken by the second party would cause serious injustice to the first party.[98]

169.   In the Tribunal's view, Tembec has attached undue weight to the United States' indications that it did not intend at a given time to seek consolidation by

---

[97]     *See* Tembec PHB at 8-15; United States PHB 22 July 2005 at 9-11; *e.g.*, *Pope & Talbot, Inc. v. Canada*, (NAFTA–UNCITRAL) Interim Award of 26 June 2000, at 39-41, available at http://www.investmentclaims.com/decisions/Pope-Canada-InterimAward-26June2000.pdf.

[98]     *See* D.W. Bowett, *Estoppel Before International Tribunals and Its Relation to Acquiescence*, 33 Brit. Y.B. Int'l L. (1957) 176 at 183-84.

classifying them as misrepresentations warranting equitable relief. In light of the various exchanges between the Claimants and the United States, it is not possible to say that the United States wholly abandoned its rights under Article 1126, or led the Claimants reasonably to rely to their detriment that the United States would never invoke such rights.[99] During the first 18 months of defending against Tembec's claims, the United States may very well have intended not to seek consolidation. However, there is no denying that the *Canfor* and *Tembec* cases were filed 18 months apart, but proceeded at different paces with Tembec's claim catching up to Canfor's by March 2005 when one of the *Canfor* arbitrators recused himself. As mentioned, the United States at that point wasted no time in deciding to exercise its right to request consolidation. The Tribunal does not view such decision as having been made in bad faith. Therefore, the Tribunal declines to bar the consolidation request by operation of the doctrine of estoppel.

### D.    Commonality

170.    Having regard to the analysis of Article 1126 in Section A above, and in particular in Sub-section A(i) (page 42), the Consolidation Tribunal concludes that the United States has shown to the satisfaction of the Tribunal that the claims submitted to arbitration under Article 1120 in these cases have questions of law and fact in common within the meaning of the text of Article 1126(2), considering the following.

171.    To aid the Tribunal in making its commonality determination, the Tribunal requested that the parties submit charts, setting forth the purported questions of

---

[99]    For example, as Tembec pointed out in its PHB at 13, in response to Tembec's request to the United States as to whether it would seek consolidation, the United States informed Tembec and Canfor that the United States might revisit its intention with regard to consolidation were another Chapter 11 claim filed in the *Softwood Lumber* proceedings.

law and fact in common among the relevant Article 1120 arbitrations, in conjunction with their post-hearing briefs.

172.    The Tribunal notes that the chart submitted by the United States was helpful.

173.    The Tribunal further notes that Tembec submitted a chart to prove that the questions of law material to the determination of Tembec's claims were not material to the resolution of either Canfor's claims or Terminal's claims, as well as a chart demonstrating the particular factual differences between the softwood lumber industry in eastern and western Canada.  However, the test for the Tribunal is whether there exist common questions of law or fact among the claims asserted by the Claimants, not whether the legal and factual theories can be exported from one arbitration to another in order to determine liability in the latter dispute.

174.    The chart submitted by Canfor and Terminal identifies a host of common legal questions among the parties' claims.  The fact that the Tribunal will evaluate evidence particular to each Claimant in assessing some of the claims or parts thereof, as described by Canfor and Terminal, does not negate the commonality among the underlying legal issues.

> *(a)    Jurisdiction*

175.    The United States objects to the jurisdiction of the Chapter 11 Tribunals over the claims asserted by the Claimants.  The United States bases its jurisdictional objections over the *Canfor* claims on two grounds, and over the *Tembec* claims, on the same two grounds, plus a third ground.

176.    Although the *Terminal* proceedings have not reached this phase, the United States confirms in its request for consolidation that it will object to jurisdiction over the

claims asserted by Terminal on the same grounds.[100] Having also regard to the position taken by the United States in the *Canfor* and *Tembec* proceedings, there is indeed a degree of certainty that the United States will raise the same objection to jurisdiction in the *Terminal* proceedings.[101]  The Tribunal accepts that also with respect to the defenses that the United States anticipates to make against liability and damages contentions in connection with Terminal's claims.

177.    In April 2002, the Canadian Government and other parties, including Tembec and Canfor, filed requests for panel proceedings under Chapter 19 of the NAFTA to review Commerce's final affirmative antidumping and countervailing duty determinations.

178.    The United States first objects to the jurisdiction of the three Article 1120 Tribunals in these cases because it contends that NAFTA provides for specialized bi-national panels constituted under Chapter 19 to have exclusive jurisdiction over claims that seek to impose obligations on a State Party with respect to its antidumping and countervailing duty laws.  Thus, according to the United States, it has rejected investor-State arbitration of Canfor, Tembec and Terminal's claims because of the express terms of the NAFTA.  The United States argues that the Chapter 11 proceedings would impose obligations on the United States outside the Chapter 19 proceedings against the express terms of Article 1901(3),[102] and that Chapter 19 has provided for an exclusive forum for resolution of claims relating to the United States' antidumping and countervailing duty laws.[103]  Both Canfor and

---

[100]    United States' Request of 7 March 2005 at 3.

[101]    *See* ¶¶ 116-118 *supra.*

[102]    Article 1901(3) provides: "Except for Article 2203 (Entry into Force), no provision of any other Chapter of the Agreement shall be construed as imposing obligations on a Party with respect to the Party's antidumping law or countervailing duty law."

[103]    In its R-PHB at 12, Tembec contends that "Article 1901(3) objections are not the same between Tembec and Canfor" and that "The United States indeed presented the issues differently,

(footnote cont'd)

Tembec oppose those arguments of the United States in the Article 1120 proceedings.

179.    The United States next argues that the three Article 1120 Tribunals do not have jurisdiction over these claims because the Claimants have not sufficiently alleged that they are "investors" with "investments" in the United States, as defined in, and required by, NAFTA Article 1101(1).  With respect to Canfor's claims, the United States agrees that this is not an issue that should be addressed as a preliminary question, rather that it is intertwined with Canfor's evidence on the merits and should be considered along with the merits of the claims.  The United States does not so qualify its argument with respect to Tembec.

180.    The commonality between the issues raised by the first two objections to jurisdiction (or, depending on the characterization, admissibility) supports a decision to consolidate.  That is not altered by the fact that the United States asserts an additional ground for objecting to the jurisdiction of the *Tembec* Tribunal. The United States points out that NAFTA Article 1121 requires that any party must submit a waiver promising not to initiate or continue any other proceedings with respect to a breach of Section A of Chapter 11 of the NAFTA. The United States recognizes that Tembec provided the requisite waivers, but the United States contends that Tembec is not honoring those waivers by pursuit of its claims in the Chapter 19 proceedings.  The existence of this additional ground is not such as to override the commonality of the other above mentioned two issues relating to jurisdiction that exist among the three cases.

181.    The Tribunal declines to decide the issue on the basis of "judicial economy" as advocated by Tembec.  Tembec argues: "The Tribunal should decide only those

---

and briefing was not the same."  A different presentation of the issues or a different briefing does not take away a commonality of the issues relating to Article 1901(3).

matters that are essential to be decided in accordance with the doctrine of judicial economy. [footnote omitted] It need not decide matters that may be mooted by the Tribunal's decisions on other issues. [footnote omitted]"[104]  Tembec argues that the Consolidation Tribunal should lift the stay of the Article 1120 proceedings and let the Article 1120 Tribunals complete their decisions on the jurisdictional objections of the United States.

182.    In support of its argument, Tembec refers to the doctrine of judicial economy as developed by the WTO.  At the WTO, however, the doctrine of judicial economy means that panels are not required to address all the legal claims that the complainant makes if the challenged measure violates different WTO provisions in either the same or various covered agreements. If the panel has already found that the challenged measure is inconsistent with a particular provision of a covered agreement, it is generally not necessary to proceed to examine whether the same measure is also inconsistent with other provisions that the complainant invokes. Panels have the discretion to decline to rule on these further claims, but they must do so explicitly.[105]

183.    The doctrine of judicial economy in the sense as used by the WTO may be applied by an Article 1120 Tribunal or by an Article 1126 Tribunal when considering claims.  An Article 1126 Tribunal cannot apply the doctrine in that sense when determining whether to issue an order under Article 1126(2).  An Article 1126 Tribunal has not to decide whether it will hear and determine certain claims and not others.  Rather, it has to determine whether it assumes jurisdiction over all or part of the claims or over one or more of the claims the determination of which it believes would assist in the resolution of the others.  In that respect, the

---

[104]    Tembec Submission of 10 June 2005 at 27-28; *see also* R-PHB at 6-7.

[105]    *See* http://www.wto.org/english/tratop_e/dispu_e/disp_settlement_cbt_e/c10s4p1_e.htm.

Consolidation Tribunal does not apply the doctrine of "judicial economy" but rather that of procedural economy in the sense of an effective administration of justice.[106] Moreover, a consolidation in a *seriatim* fashion is not possible under Article 1126.[107]

184.    Tembec's argument based on Article 21(3) of the UNCITRAL Arbitration Rules was addressed earlier in this Order.[108]

   *(b)    Liability*

185.    With respect to a determination of the United States' liability on the merits of the claims should Claimants prevail on the issue of jurisdiction, consolidation is warranted by the common questions of law and fact present in most of the claims. A review of the claims reveals that not only did the Claimants plead their allegations of the United States' unlawful determinations as against the softwood lumber industry as a whole, but that few of the claims are specific to any of the Claimants or their business or call for company-specific information.

186.    All of the claims relate to certain determinations that the United States made after receiving a petition from the members of the United States lumber manufacturing industry with regard to the Canadian softwood lumber producers.   All of the Claimants allege that the petition was deficient and, thus, the investigation unlawfully initiated.

187.    The Claimants all allege that the United States, in making its determinations: did not provide the Canadian softwood lumber producers the best level of treatment that it provides to analogous producers based in the United States operating in the

---

[106]    *See* ¶ 76 *supra.*

[107]    *See* Sub-section V.A(l) (page 56) *supra.*

[108]    *See* Sub-section V.A(g) (page 38) *supra.*

same industry and under the same circumstances (Article 1102); did not accord to Canadian investors and their investments treatment no less favorable than that which is available to any other foreign investor or its investment under a similar treaty (Article 1103); and did not accord to investments of Canadian investors treatment in accordance with international law (Article 1105). As a result, it is alleged that the United States engaged in expropriation of the property of the Canadian softwood lumber producers' investments in the United States (Article 1110).

188.    *(i)    Subsidy Determinations.*    All of the Claimants allege that Commerce's preliminary and final determinations that there was a subsidy in Canada favoring softwood lumber producers were unlawful determinations. The United States allegedly evaluated the provincial stumpage program in Canada and determined that it constituted a subsidy. All three Claimants attack the methods employed by the United States in making its determination, including the use of cross-border benchmarks, and all three allege that Commerce made its determination under political pressure and to achieve a certain political result.

189.    In stating its claim, Canfor provides detailed allegations as to the method that Commerce employed to determine the existence of a subsidy. A review of Commerce's determination involves consideration of whether the stumpage program constituted a financial contribution to producers in the softwood lumber industry; whether the stumpage program was specific to an enterprise or industry; and whether it provided a benefit to those within the industry. None of these factors, in the judgment of the Tribunal, involves a claimant-specific evaluation that would render consolidation of this issue a problem.

190.    Tembec, on the other hand, supports its claim with detailed allegations of the political influence and pressure exerted on Commerce to make a particular determination that favored the United States lumber industry and hurt the

Canadian industry. While also questioning the methods employed by Commerce, Tembec focuses on why Commerce was motivated to make the determination that it did.

191. Terminal's submission generally includes the same allegations as those put forward by Canfor and Tembec.

192. Tembec argues that the different allegations asserted by Canfor and Tembec in support of their claims regarding Commerce's subsidy determination constitute different questions of fact and law prohibiting consolidation. The Consolidation Tribunal disagrees. NAFTA Article 1126(2) requires that there be common questions of law and fact at issue, which there clearly are, not that the legal strategy, the evidence in support of the claims or the presentation of counsel be similar. If ever there was a fluid, changing creature, it would be the legal strategy of counsel. At this point in the proceedings, counsel can only speculate as to what its strategy and that of the other Claimants' counsel will be. This uncertainty does not constitute a basis to prohibit or to require consolidation.

193. *(ii)    Duty Determination.* Having determined that a subsidy exists, the United States then imposed a duty on Canadian softwood lumber producers' exports to the United States. Canfor and Tembec allege that the United States ignored their requests for a company-specific duty and imposed a countrywide rate that caused further harm to Claimants. Tembec alleges that a company-specific rate would have been lower than the countrywide rate it is paying. Canfor alleges that had Commerce accepted its application for a company-specific rate, it would have paid less than the countrywide rate. The Consolidation Tribunal considers that there is commonality with respect to the questions of the United States' rejection of Claimants' requests for a company-specific duty and of the legitimacy of imposing a countrywide rate for all of the Claimants.

194.  *(iii)   Critical Circumstances Determination.*  All three Claimants allege that the United States made a determination that "critical circumstances" existed with respect to the alleged Canadian softwood lumber subsidies and dumping activities. If critical circumstances are determined to be present, then under United States countervailing and antidumping duty law, retroactive duties may be applied to softwood lumber imports that occurred up to 90 days prior to the determination. To make such a determination, Commerce was required to find that a relevant and applicable export subsidy actually existed, and that there were massive imports over a relatively short period of time.

195.  Canfor and Terminal dispute that the export subsidy that Commerce identified in its analysis, a subsidy program employed by the Province of Quebec for its producers, was an export subsidy.  All three Claimants dispute the method employed by Commerce to calculate the amount of exports of softwood lumber that it deemed qualified as "massive exports" over a "relatively short time." Tembec additionally pleads specific allegations that Commerce coordinated with other branches of the United States government to bring about this predetermined result favorable to United States industry.

196.  None of Claimants' allegations on this issue requires a claimant-specific determination.    All three Claimants object to the critical circumstances determination as unlawful and identify at least one common way in which the determination was unlawfully made.  Additionally, Canfor relies upon the effect of the critical circumstances determination on the softwood industry as a whole to establish damages, arguing that the United States' determination created "a potential retroactive liability for Canadian exporters including Canfor exceeding $300 million," but such an additional allegation is insufficient to deny consolidation in light of the commonality of the other issues.

197.   *(iv)   Antidumping Determinations.*  Claimants all contend that the United States made preliminary and final determinations that Canadian softwood lumber producers were dumping softwood lumber in the United States market in an unlawful manner.    All Claimants attack the methodologies employed by Commerce to determine that dumping existed and the manner in which Commerce calculated company-specific weighted average dumping margins, including use of unfair price comparisons and of the technique called "zeroing."

198.   Tembec additionally alleges that certain United States Senators pressured Commerce to make findings on the dumping issue that were favorable to United States' industry, and that Commerce failed to take into account the Softwood Lumber Agreement in making its antidumping determination.    While these allegations are particular to Tembec on this particular issue, Canfor and Terminal have put forth general allegations of political influence in stating their claims, and have identified Commerce's failure to take the Softwood Lumber Agreement into account in making its subsidy determination and critical circumstances determination, respectively.

199.   While Claimants all object to the methodologies employed by Commerce to calculate the dumping margin, the determination is company-specific, requiring an analysis of company-specific cost and sales data.  This is an area where Canfor, and the other Claimants, will have to produce individual, potentially confidential information.  The analysis of the Tribunal will be partly company-specific. However, given the number of common objections relating to the dumping determination, such a company-specific analysis does not to pose a barrier to consolidation, also because of the protections that the Tribunal will craft in consultation with the parties.

200.   *(v)   The ITC Determinations.*    The ITC made preliminary and final determinations relating to whether there was a reasonable indication that the

domestic industry producing the competing product had been materially injured or threatened with material injury by reason of unfairly traded imports of the subject merchandise. In both its preliminary and final determinations, the ITC concluded that, with the expiration of the Softwood Lumber Agreement between the United States and Canada, Canadian softwood lumber exports to the United States would surge, constituting a threat of material injury.

201.    While all Claimants refer to the ITC's determinations, Tembec argues that the determination improperly was not based on any facts, and that the ITC was improperly influenced by United States political considerations in making its determinations. Tembec also alleges that the ITC determination was reached in an arbitrary, capricious and unfair manner.

202.    *(vi)    Expropriation.*  All Claimants allege that as a result of the United States' determinations, preliminary and final, with respect to countervailing and antidumping duties and critical circumstances, the United States expropriated the United States' investments of Claimants in violation of the NAFTA Article 1110 and denied the Claimants due process. Tembec and Canfor also allege that in making its determinations, Commerce held *ex parte* meetings with the petitioning members of the United States' lumber manufacturing industry, without disclosing details of such meetings or putting meeting memoranda on the record. Determining the United States' liability under this Article will require an analysis of whether the United States provided full, fair and effective compensation to investors, and whether investors have been compensated if the government action substantially interfered with the use or enjoyment of the investment. This appears to be a claimant-specific analysis which, however, would not bar consolidation having regard to the many other common questions.

203.    *(vii)    Byrd Amendment.*  The Byrd Amendment, passed in 2000, provides that duties assessed pursuant to countervailing duty or antidumping orders shall be

distributed annually to affected United States' domestic producers. Claimants all allege that the Byrd Amendment, in its adoption by the United States, and the United States' application or intended application of the amendment to softwood lumber countervailing and antidumping duties, violates NAFTA. This claim is not specific to any Claimant and, given the potential problems with inconsistent findings regarding the Byrd Amendment, supports consolidation of the claims.

204.    *(viii) Tembec's Claim Relating to Class/Kind Determination.* Based on certain facts unique to Tembec, Tembec has one additional claim that it argues prohibits a finding of commonality supporting consolidation. Tembec's business relates in part to Eastern White Pine and Finger-Jointed Flangestock. These types of lumber are unique to Tembec in this case. Tembec alleges that it asked the ITC to perform separate analyses of these products with respect to its material injury determination, but that the ITC refused to do so. Tembec also alleges that it asked Commerce to treat these products as separate classes or kinds of merchandise in its countervailing duty and antidumping determinations because of their distinct characteristics. According to Tembec, a separate class or kind finding would have required Commerce to terminate its investigation as to Eastern White Pine and Finger-Jointed Flangestock because the petitioners made no allegations and provided no evidence as to this type of wood in their petition. Tembec alleges that, instead, Commerce lumped these wood types together with all types of softwood lumber in its evaluation of the petitions, and ended up limiting supply, creating market uncertainty and forcing Tembec to close its investments in the United States and Canada for these types of wood.

205.    While this is a claim not common among Claimants, it is only one issue that is uncommon out of many that are common. The presence of this one claim does not destroy the commonality of the issues arising out of the other claims among the Claimants so as to prohibit consolidation within the meaning of Article 1126(2).

(c)    *Damages*

206.    Tembec and the United States agree, and Canfor does not expressly oppose, that the same Tribunal that considers liability with respect to the claims should also consider damages.[109]  Since the Consolidation Tribunal determines that all claims will be consolidated, there is no need to examine the commonality of issues relating to damages.  In any event, after determining the liability phase of consolidated proceedings, if any, the Consolidation Tribunal agrees that a determination of damages by this Tribunal will further the interests of efficiency.

E.    Fair and Efficient Resolution of the Claims

207.    Having regard to the analysis of Article 1126 in Section A above, and in particular in Sub-section A(k) (page 46), the Consolidation Tribunal concludes that consolidation of all claims submitted to the three relevant Article 1120 arbitrations is in the interests of the fair and efficient resolution of those claims, considering the following.

208.    It may be recalled that the three factors to be considered in relation to the term "in the interests of fair and efficient resolution of the claims" are: (i) time; (ii) costs; and (iii) avoidance of conflicting decisions.[110]

209.    With respect to factor (i), in none of the relevant Article 1120 proceedings has the arbitral tribunal issued a decision on jurisdictional objections, let alone on liability or damages.

---

[109]    Tr. at 51:5-8 (United States arguing that "it is efficient for the same Tribunal to handle both the liability and damages phases, should these cases advance that far."); Tr. at 137:6-16 (Tembec stating, "First, generally, liability and damages need to be addressed separately, but they must be addressed in each instance by the same Tribunal.").  Tembec took a different position in its Submission of 10 June 2005 at 47-48 where it stated: "Damages could be addressed only in separate tribunals."

[110]    *See* ¶ 126 *supra.*

210.   The fact that the United States could have made the request earlier is a risk that the United States took since, as mentioned before, the principle of procedural economy includes in general the proposition that the more advanced the separate proceedings are, the less likely it is that consolidation will be ordered.[111] However, that risk to the United States did not materialize as none of the Article 1120 proceedings has advanced to such a stage that consolidation would no longer serve procedural economy.[112]

211.   If consolidated, Canfor will have some delay, but it would also face delay in the Article 1120 proceeding in getting a new arbitrator up to speed.  Tembec will equally face some delay, but would still have to argue the jurisdictional issue and have to wait for a decision on that issue from the Article 1120 Tribunal.  Terminal will actually have to prosecute its claim, but will not thereby suffer from delay.

212.   Terminal asserts that delay will occur on account of the fact that it is represented by the same counsel as counsel for Canfor, and that, if consolidated, Terminal will have to retain separate counsel who will require to familiarize himself or herself with the case.[113]   Counsel for Canfor and Terminal was unable to give a convincing explanation at the 16 June 2005 hearing as to why no conflict had arisen when Canfor and Terminal were represented by the same counsel in separate Article 1120 arbitrations while at the same time a conflict would arise if the arbitrations were consolidated.[114]   In any event, it is a problem (if it is one) for Canfor and Terminal of their own making, which cannot form part of the

---

[111]   *See* ¶ 128 *supra.*.

[112]   A different question is whether the United States' request under Article 1126(2) is barred by the doctrines of laches and estoppel.  The Consolidation Tribunal has concluded that it is not.  *See* Section V.C (page 62) *supra.*

[113]   Terminal Submission of 10 June 2005 at ¶¶ 3-5.

[114]   Tr. at 206:10 – 212:8.

consideration of whether consolidation would be in the interests of the fair and efficient resolution of the claims.[115]

213.   Canfor contends that it should not be required to reargue jurisdiction.[116] Yet, such an eventuality may become a consequence of consolidation.[117] In the present case, if not consolidated, Canfor may have been required to reargue jurisdiction in light of the resignation of one of the arbitrators after the hearing on jurisdiction in *Canfor* and in light of the provisions of Article 14 of the UNCITRAL Arbitration Rules.[118]

214.   More in general, the Consolidation Tribunal has concerned itself with ensuring that there not be an unfair delay in the Claimants' proceedings.

215.   With respect to factor (ii), the Consolidation Tribunal has considered the cost estimates submitted by each of the parties. While appreciating that cost estimates of the pursuit of any litigation are notoriously difficult to make, the Tribunal concludes that consolidated proceedings will be less expensive than three separate

---

[115]   Tembec is not entirely correct when it argues that this Tribunal "has no authority to force a claimant to submit a statement of claim." Tembec R-PHB at 42. The Article 1126 proceedings are conducted on the basis of the UNCITRAL Arbitration Rules. *See* Article 1126(1). According to Article 18(1) of the UNCITRAL Rules: "Unless the statement of claim was contained in the notice of arbitration, within a period of time to be determined by the arbitral tribunal, the claimant shall communicate his statement of claim in writing to the respondent and to each of the arbitrators . . . ." Article 28(1) of the UNCITRAL Rules further provides: "If, within the period of time fixed by the arbitral tribunal, the claimant has failed to communicate his claim without showing sufficient cause for such failure, the arbitral tribunal shall issue an order for the termination of the arbitral proceedings . . . ." In this connection it may be pointed out that a filing of a statement of claim is not a condition precedent to raising a plea that an arbitral tribunal does not have jurisdiction. Article 21(3) of the UNCITRAL Rules provides: "A plea that the arbitral tribunal does not have jurisdiction shall be raised not later than in the statement of defence . . ." An objection to jurisdiction, therefore, can be filed prior to a statement of claim.

[116]   Canfor Submission of 10 June 2005 at ¶¶ 77-78.

[117]   *See* ¶¶ 103 and 153 *supra*.

[118]   Article 14 of the UNCITRAL Rules provides: "If under articles 11 to 13 the sole or presiding arbitrator is replaced, any hearings held previously shall be repeated; if any other arbitrator is replaced, such prior hearings may be repeated at the discretion of the arbitral tribunal."

arbitrations for the United States[119] and that, for each of the Claimants, costs will increase but not excessively.

216.  It is not correct, as Canfor argues, that "the money spent on the Canfor Tribunal is simply thrown away"[120] since a fair amount of the work product submitted in the *Canfor* proceedings to date can be used again in the consolidation proceedings.

217.  With respect to factor (iii), in light of the numerous common questions of law and fact in the three Article 1120 arbitrations, there is a risk that, if not consolidated, their Tribunal decisions will be inconsistent.

218.  It may be recalled that, in the view of the Consolidation Tribunal, confidentiality is not a factor to be taken into account when considering "the interests of fair and efficient resolution of the claims," save for exceptional cases where consolidation would defeat efficiency of process or would infringe the principle of due process enunciated in Article 1115 of the NAFTA.  Claimants' arguments on this subject lack, in the view of the Tribunal, relevance for the reasons stated earlier in this Order.[121]  The arguments of the Claimants have not convinced the Consolidation Tribunal that an exceptional case will arise if the proceedings are consolidated.[122]

219.  Nor are the due process rights of the Claimants curtailed due to confidentiality issues (assuming that they would arise to any appreciable extent) if the proceedings are consolidated. In particular, Claimants are mistaken when they argue that the United States will have an advantage by having confidential information: the United States will also have that information if the proceedings

---

[119]    In which the mathematical error of the calculation by the United States as identified by Tembec in its R-PHB at 34 is taken into account.

[120]    Canfor Submission of 10 June 2005 at ¶ 82.

[121]    *See* ¶¶ 138-146 *supra.*

[122]    *See* ¶ 147 *supra.*

are not consolidated.  Furthermore, the Tribunal will craft the necessary measures to assure fairness and efficiency in the protection of proprietary information.

220.    Considering these factors, the Consolidation Tribunal concludes that, on balance and in fairness, procedural economy counsels in favor of the Consolidation Tribunal assuming jurisdiction over all the claims in the three Article 1120 arbitrations as contemplated by Article 1126(2)(a).

F.    Conclusion

221.    The Consolidation Tribunal concludes that all four conditions of Article 1126(2) of the NAFTA are met in the present proceedings.  First, it is common ground that the claims in question have been submitted to arbitration under Article 1120. Second, the Tribunal has found that many questions of law and fact are common in the three Article 1120 arbitrations.  Third, the Tribunal has also found that the interests of fair and efficient resolution of the claims merit the assumption of jurisdiction over all of the claims. And fourth, the parties to the present proceedings have been heard.

222.    The result in the present case differs from the one in the *Corn Products* case. There are several reasons for the different outcome, which include the following. First, the Order on Consolidation in *Corn Products* is silent about what Article 1126(2) requires for satisfying the term "a question of law or fact in common." The Tribunal there wrote, without any further inquiry expressed in the Order, in ¶ 6: "The Consolidation Tribunal accepts that the claims submitted to arbitration do have certain questions of law or fact in common for purposes of Article 1126(2)," and at ¶ 15: "The Tribunal is persuaded that notwithstanding certain common questions of law and fact, the numerous distinct issues of state responsibility and

quantum further confirm the need of separate proceedings."[123]   Second, as a general proposition, the present Tribunal disagrees with the statements found in ¶ 9 of the *Corn Products* Order: "Two tribunals can handle two separate cases more fairly and efficiently than one tribunal where the two claimants are direct and major competitors, and the claims raise issues of competitive and commercial sensitivity,"  and in ¶ 10: "However, confidential information among competitors is much more easily protected in separate proceedings, which in turn also permit a far  more efficient arbitration process under such circumstances."[124]   Third, in ¶ 14, the *Corn Products* Tribunal notes: "Yet, as CPI pointed out in its written submission, Mexico did not indicate, apart from jurisdiction, common defenses it intends to raise to the claims."   While the present case involves also common questions of law and fact relating to jurisdiction, the same applies to liability as well, in respect of which the United States has raised, and intends to raise, common questions of law and fact.[125]   Moreover, in the judgment of the present Tribunal, anticipated questions may also be taken into account if there is a degree of certainty that they will be raised.[126]   Fourth, while acknowledging the risk of inconsistent awards, in ¶ 16 of the *Corn Products* Order, it is stated that: "This Tribunal does not have before it a large number of identically or very similarly situated claimants. . . . The tax could, for example, constitute an expropriation as to one claimant, but not another."  This fact pattern does not apply to the present case.  Lastly, in ¶ 19, the *Corn Products* Order emphasizes that the cases there "are not close to procedural alignment," which is not applicable in the present case either.

---

[123]     *See* Sub-section V.A(i) (page 42) and Section V.D (page 65) *supra.*

[124]     *See* ¶¶ 138-147 and 219-220 *supra.*

[125]     *See* Section V.D (page 65) *supra.*

[126]     *See* Sub-section V.A(j) (page 45) and ¶ 176 *supra.*

223.    The consequence of the decision of the present Consolidated Tribunal is that the Article 1120 Tribunals cease to function.[127]

224.    The next step in the proceedings will be for the Tribunal to consult with the parties about the conduct and sequence of the proceedings, having regard to the observations made in Sub-section A(m) above (page 57).

225.    The Tribunal reserves the decision on the award of costs of the present proceedings as referred to in Articles 38-40 of the UNCITRAL Arbitration Rules to a subsequent order, decision or arbitral award, having regard to the fact that none of the parties has made submissions on costs.  Reservation of the decision on costs is also appropriate in light of the alternative relief sought by Canfor and Terminal in their reply post-hearing brief to the effect that, if consolidation is ordered, "the United States should be ordered to pay Canfor and Terminal's costs that have been thrown away by virtue of the United States having been dilatory in bringing this consolidation application,"[128] to which relief the United States has not had an opportunity to respond because of the timing of the relief sought.

---

[127]    *See* Sub-section V.A(n) (page 59) *supra.*

[128]    Canfor & Terminal R-PHB ¶ 32.

## VI.    DECISION OF THE CONSOLIDATION TRIBUNAL

226.    For the foregoing reasons, the Consolidation Tribunal by order:

(1)    ASSUMES JURISDICTION over all claims in the Article 1120 arbitrations *Canfor Corporation v. United States of America, Tembec Inc., Tembec Investments Inc. and Tembec Industries Inc. v. The United States of America*, and *Terminal Forest Products Ltd. v. The United States of America*, within the meaning of Article 1126(2)(a) of the NAFTA;

(2)    DENIES Tembec's Motion to Dismiss of 27 June 2005; and

(3)    RESERVES the decision on the costs of the present proceedings to a subsequent order, decision or arbitral award.

Made in Washington, D.C., 7 September 2005,

THE CONSOLIDATION TRIBUNAL:

_____          _____
Professor Armand L.C. de Mestral                Davis R. Robinson, Esq.
          Arbitrator                                        Arbitrator

_____
Professor Albert Jan van den Berg
      Presiding Arbitrator

84