## ANNEXES

ANNEX 1A     Softwood Lumber Products

ANNEX 1B     Table of Concordance re Canadian and U.S. Customs Classification

ANNEX 2      Assignment By Importers of Records and Details re Funds

ANNEX 3A     "No Injury" Letters from the U.S. Industry

ANNEX 3B     Finding of Department of Commerce

ANNEX 4      Framing Lumber Composite Price

ANNEX 5      Calculation of Region's Share Under Option B

ANNEX 6      Remanufacturers Certification Process

ANNEX 7      Data Sources and Calculations for Purposes of Third Country Adjustment

ANNEX 8      Excluded Companies

ANNEX 9      Mandate and Proposed Operation of the Working Groups

**Annex 1A**

**Softwood Lumber Products**

1.    The products covered by this agreement are softwood lumber, flooring and siding ("Softwood Lumber Products"). Softwood Lumber Products: include all products classified under subheadings 4407.1000, 4409.1010, 4409.1020, and 4409.1090, respectively, of the HTSUS, and any softwood lumber, flooring, and siding described below. These Softwood Lumber Products include:

   (a)    Coniferous wood, sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or finger-jointed, of a thickness exceeding six millimeters;

   (b)    Coniferous wood siding (including strips and friezes for parquet flooring, not assembled) continuously shaped (tongued, grooved, rabbeted, chamfered, v-jointed, beaded, molded, rounded, or the like) along any of its edges or faces, whether or not planed, sanded, or finger-jointed;

   (c)    Other coniferous wood (including strips and friezes for parquet flooring, not assembled) continuously shaped (tongued, grooved, rabbeted, chamfered, v-jointed, beaded, molded, rounded, or the like) along any of its edges or faces (other than wood moldings and wood dowel rods) whether or not planed, sanded, or finger-jointed;

   (d)    Coniferous wood flooring (including strips and friezes for parquet flooring, not assembled) continuously shaped (tongued, grooved, rabbeted, chamfered, v-jointed, beaded, molded, rounded, or the like) along any of its edges or faces, whether or not planed, sanded, or finger-jointed; and

   (e)    Coniferous drilled and notched lumber and angle cut lumber.

   Other merchandise that shall be included in the definition of Softwood Lumber Products are:

   (f)    Any product entering under HTSUS 4409.10.05 which is continually shaped along its end and/or side edges which otherwise conforms to the written definition of the scope; and

   (g)    Lumber products that USCBP may classify as stringers, radius cut box-spring-frame components, and fence pickets, not conforming to the criteria listed in Paragraph 4 below, as well as truss components, pallet components, and door and window frame parts, which may be classified under HTSUS subheadings 4418.90.45.90, 4421.90.70.40, and 4421.90.97.40.

2.    Although the HTSUS subheadings are provided for convenience and U.S. Customs purposes, the written description of the merchandise subject to this Agreement is dispositive.

36

3.    The following Softwood Lumber Products are excluded from the scope of this Agreement:

    (a)    Trusses and truss kits, properly classified under HTSUS 4418.90;

    (b)    I-Joist beams;

    (c)    Assembled box spring frames;

    (d)    Pallets and pallet kits, properly classified under HTSUS 4415.20

    (e)    Garage doors;

    (f)    Edge-glued wood, properly classified under HTSUS 4421.90.97.40;

    (g)    Properly classified complete door frames;

    (h)    Properly classified complete window frames;

    (i)    Properly classified furniture;

    (j)    Articles brought into the United States temporarily and claimed to be exempt from duty under Chapter 98, Subchapter XIII, of the HTSUS;

    (k)    Household and Personal Effects; and

    (l)    Temporary Importation under Bond (TIB).

4.    The following Softwood Lumber Products are excluded from the scope of this Agreement provided that they meet the specified requirements detailed below:

    (a)    Stringers (pallet components used for runners); if they have at least two notches on the side, positioned at equal distance from the center, to properly accommodate forklift blades, properly classified under HTSUS 4421.90.97.40;

    (b)    Box-spring frame kits, if they contain the following wooden pieces – two side rails; two end (or top) rails; and varying numbers of slats. The side rails and the end rails should be radius-cut at both ends. The kits should be individually packaged, they should contain the exact number of wooden components needed to make a particular box spring frame, with no further processing required. None of the components exceeds one (1) inch in actual thickness or eighty-three (83) inches in length;

    (c)    Radius-cut box-spring-frame components, not exceeding one (1) inch in actual thickness or eighty-three (83) inches in length, ready for assembly without further processing. The radius cuts must be present on both ends of the boards and must be substantial cuts so as to completely round one corner;

    (d)    Fence pickets requiring no further processing and properly classified under HTSUS 4421.90.70, one (1) inch or less in actual thickness, up to eight (8) inches wide, and six (6) feet or less in length, and have finials or decorative cuttings that clearly identify them as fence pickets. In the case of dog-eared fence pickets, the corners of the boards should be cut off so as to remove pieces of wood in the

37

shape of isosceles right angle triangles with sides measuring three-quarters (3/4) of an inch or more.

(e) U.S. origin lumber shipped to Canada for minor processing and imported into the United States, is excluded from the scope of this Agreement if the following conditions are met:(1) The processing occurring in Canada is limited to kiln drying, planing to create smooth-to-size board, and sanding, and 2) if the importer establishes to the satisfaction of USCBP that the lumber is of US Origin.

(f) In addition, all softwood lumber products entered claiming non-subject status based on U.S. country of origin will be treated as excluded under this Agreement, provided that these softwood lumber products meet the following condition: upon entry, the importer, exporter, Canadian processor and/or original U.S. producer establish to USCBP's satisfaction that the softwood lumber entered and documented as U.S. origin-softwood Lumber was first produced in the United States as a lumber product satisfying the physical parameters of the softwood lumber scope.

5.    Softwood Lumber Products contained in single and multi-family home] packages or kits, regardless of tariff classification, are excluded from the scope of this Agreement if the importer certifies to items (a), (b), (c), and (d) and requirement (e) is met:

(a) The imported home package or kit constitutes a full package of the number of wooden pieces specified in the plan, design or blueprint necessary to produce a home of at least 700 square feet produced to a specified plan, design or blueprint;

(b) The package or kit must contain all necessary internal and external doors and windows, nails, screws, glue, sub floor, sheathing, beams, posts, connectors, contract decking, trim, drywall and roof shingles specified in the plan, design or blueprint;

(c) Prior to importation the package or kit must be sold to a retailer in the U.S. of complete home packages or kits pursuant to a valid purchase contract referencing the particular home design plan or blueprint, and signed by a customer not affiliated with the importer;

(d) Softwood Lumber Products entered as part of a single family home package or kit, whether in a single entry or multiple entries on multiple days, will be used solely for the construction of the single family home specified by the home design matching the USCBP import entry; and

(e) For each entry into the US, the following documentation must be retained by the importer and made available to USCBP upon request:

(i) A copy of the appropriate home design plan, or blueprint matching the customs entry in the U.S;

(i) A purchase contract from a retailer of home kits or packages signed by a customer not affiliated with the importer; and

38

(ii)    A listing of inventory of all parts of the package or kit being entered into the U.S. that conforms to the home design package being imported.

(iii)    In the case of multiple shipments on the same contract, all items listed in (iii) which are included in the shipment at issue shall be identified as well.

39

**Annex 1B**

**Canadian Table of Concordance - Harmonized Tariff Schedule of the United States (2006) with Canadian Tariff Equivalent\*[4]**

This table contains a listing of classification provisions for all products covered under paragraphs 1(a) to 1(g), paragraphs [4](a) to 1(j) and paragraph 4 of Annex 1A. Finalization of this concordance is subject to USA review by the date of entry into force of this Agreement.

## I     TABLE RELATIVE TO HTSUS REFERENCES IN ANNEX 1A (1) (a)-(g)

| Heading/Subheading Harmonized Tariff System of the U.S.(HTSUS) | Stat. Suffix | Article Description | Canadian Customs Tariff (CCT) |
|---|---|---|---|
| 4407.10.00 | | Wood sawn or chipped lengthwise, sliced or peeled, sanded or end-jointed, of a thickness exceeding 6mm Coniferous | 4407.10.00 |
| | 01 | Finger-jointed | 4407.10.00.11 |
| | | Other | |
| | 02 | Treated with paint, stain, creosote, or other preservative | 4407.10.00.12 |
| | | Not treated | |
| | 15 | Mixtures of spruce, pine, and fir ("S-P-F") | 4407.10.00.13 |
| | 16 | Mixtures of western hemlock and amabilis fir (hem-fir) | 4407.10.00.14 |
| | | Other: | |
| | 17 | Sitka Spruce (Picea sitchensis) Rough | 4407.10.00.32 |
| | 18 | Other | 4407.10.00.22 |
| | 19 | Other Spruce Rough | 4407.10.00.33 |
| | 20 | Other | 4407.10.00.23 |
| | 42 | Eastern White pine (Pinus Strobus) and red pine (Pinus resinosa): Rough | 4407.10.00.52, 4407.10.00.53 |

---

[4]     Customs Tariff, S.C. 1997, c36, Sch 1.

| | | |
|---|---|---|
| | 43 | Other | 4407.10.11.42, 4407.10.00.43 |
| | 44 | Lodgepole pine (Pinus contorta): Rough | 4407.10.00.54 |
| | 45 | Other | 4407.10.00.44 |
| | 46 | Southern yellow pine (Loblolly pine (Pinus taeda)), long leaf pine (Pinus palustris), pitch pine (Pinus rigida), short leaf pine (Pinus echinata), slash pine (Pinus elliottii) and Virginia pine (Pinus virginiana)<br><br>Rough | 4407.10.00.55, 4407.10.00.56 |
| | 47 | Other | 4407.10.00.45 4407.10.00.46 |
| | 48 | Ponderosa pine (Pinus ponderosa): Rough | 4407.10.00.51 |
| | 49 | Other | 4407.10.00.41 |
| | 52 | Other pine Rough | 4407.10.00.59 |
| | 53 | Other | 4407.10.00.49 |
| | 54 | Douglas-fir (Pseudotsuga menziesii) Rough Having a minimum dimension of less than 5.1 cm | 4407.10.00.81 |
| | 55 | Douglas-fir Rough Having a minimum dimension 5.1 cm or more but less than 12.7 cm | 4407.10.00.82 |
| | 56 | Douglas-fir Rough Having a minimum dimension of 12.7 cm or more | 4407.10.00.83 |
| | 57 | Other  (Douglas-fir) | 4407.10.00.89 |
| | 58 | Fir (Abies spp.) Rough | 4407.10.00.36 |
| | 59 | Other | 4407.10.00.26 |
| | 64 | Hemlock  (Tsuga spp.) Rough | 4407.10.00.35 |
| | 65 | Other | 4407.10.00.25 |
| | 66 | Larch (Larix spp.) Rough | 4407.10.00.31 |
| | 67 | Other | 4407.10.00.21 |

41

| | | | |
|---|---|---|---|
| | | Western Red Cedar | 4407.10.00.71 |
| | 68 | Rough | |
| | 69 | Other | 4407.10.00.61` |
| | 74 | Yellow Cedar (Chamaecyparis nootkanensis) Rough | 4407.10.00.72 |
| | 75 | Other | 4407.10.00.62 |
| | 76 | Other Cedar (Thuja spp., Juniperus spp., Chamaecyparis spp., Cupressus spp. and Libocedrus spp.) Rough | 4407.10.00.79 |
| | 77 | Other | 4407.10.00.69 |
| | 82 | Redwood (Sequois sempervirens) Rough | 4407.10.00.34 |
| | 83 | Other | 4407.10.00.24 |
| | 92 | Other Rough | 4407.10.00.92 |
| | 93 | Other | 4407.10.00.91 |
| 4409.10.10 | 20 | Wood siding Resawn bevel siding: Western red cedar | 4409.10.00.40 |
| | 40 | Other | 4409.10.00.40 |
| | 60 | Other: Western red cedar | 4409.10.00.40 |
| | 80 | Other | 4409.10.00.40 |
| | | | |

42

| 4409.10.90. | | Other Coniferous Wood | |
| | 20 | Western Red Cedar | 4409.10.00.90 |
| | 40 | Other | 4409.10.00.90 |
| | | | |
| 4409.10.20 | 00 | Wood flooring | 4409.10.00.20 |
| | | | |
| 4409.10.05 | 00 | Wood continuously shaped along any of its ends, whether or not also continuously shaped along any of its edges or faces, all the foregoing whether or not planed sanded or end-jointed | 4409.10.00.90 |
| | | | |
| | | Builders' joinery and carpentry of wood, including cellular wood panels and assembled parquet panels; shingles and shakes | |
| 4418.90.45 | 90 | Other, Other, Other | 4418.90.00.99 |
| | | | |
| | | Other Articles of Wood | |
| 4421.90.70. | | Pickets, palings, posts and rails, the foregoing which are sawn; assembled fence sections | 4421.90.90.60 |
| | 40 | Other | |
| 4421.90.97. | | Other | 4421.90.90.99 |
| | 40 | Other | |
| | | | |

\* 1.(e) Drilled and notched lumber and angle cut lumber – No concordance of HS numbers is possible under this provision as it applies to all softwood lumber products covered under the agreement, regardless of their classification.

## II.    TABLE RELATIVE TO HTSUS REFERENCES IN ANNEX 1A (3) (a)-(n)

| HTSUS | Excluded Product | Canadian Customs Tariff |
| --- | --- | --- |
| | | |
| 4418.90 | (a) trusses and truss kits | 4418.90 |
| N/A | (b) I-Joist beams | 4418.90 |
| N/A | (c) Assembled box spring frames | 4421.90 |

43

| 4415.20 | (d) Pallets and pallet kits | 4415.20 |
| N/A | (e) Garage doors | 4418.20 |
| 4421.90.97.40 | (f) Edge-glued wood | 44.18.90.00.99 (check) |
| N/A | (g) Complete Door Frames | 4418.20 |
| N/A | (h) Complete Window frames | 4418.10 |
| N/A | (i) Furniture | Chapter 44, Chapter 94 |
| Chapter 98 Subchapter XIII | (j) Articles brought into the United States temporarily and claimed to be exempt from duty under Chapter 98, Subchapter XIII of the HTSUS | Chapter 98,99 |
| N/A | (k) Household and Personal Effects and TIB | (Too broad in Scope, not possible to Concord) |

## III.    HTSUS REFERENCES IN ANNEX 1A (4)

HTSUS 4421.90.97.40 (Stringers)  (See above:  TABLE RELATIVE TO HTSUS REFERENCES IN ANNEX 1A (1) (a)-(g))

HTSUS 4418.90.70  (Fence Pickets) (See above:  TABLE RELATIVE TO HTSUS REFERENCES IN ANNEX 1A (1) (a)-(g))

Annex 2A

**Assignment of Cash Deposits and Disbursement of**
**Payments to Importers of Record**

1.      To qualify as an Escrow Importer, an importer of record must:

   (i)      provide USCBP Headquarters with a ACH Agreement, a bank routing
            number, and a bank account number for a designate of the Escrow Importer;

   (ii)     conclude Irrevocable Powers of Attorney and an Escrow Agreement with the
            designate of the Escrow Importer (both in a form satisfactory to the United
            States and Canada and its agent); and

   (iii)    conclude with Canada or its agent agreements including Irrevocable
            Directions to Pay and other documentation (all of which will be in a form
            satisfactory to the United States and Canada and its agent) as required by
            Canada or its agent for the purchase of the amount of cash deposits with
            accrued interest for Covered Entries of the Escrow Importer.

   USCBP shall provide Canada with information and documentation demonstrating that
   USCBP has received the documentation in sub-paragraphs 1(i) and (ii) for Escrow
   Importers that account for not less than 95 percent of the total amount of the cash
   deposits to be refunded and the interest accrued as of the Effective Date.

2.      As of June 30, 2006 USCBP shall provide upon request to Canada or its agent in 2 week
        intervals information and documentation for the purchases described in paragraph 3,
        including a list of the importers of record, and for each importer of record the amount of
        cash deposits and the amount of accrued interest for each Covered Entry. No later than
        10 days after Effective Date, USCBP shall provide Canada or its agent with a final and
        complete list of the amount of cash deposits and the amount of accrued interest for each
        Escrow Importer. Canada or its agent may provide to each importer of record the
        information specific to that importer.

3.      The United States understands that Canada or its agent shall purchase the rights to the
        amount of cash deposits stated in USCBP records and the interest payable on those cash
        deposits. Payments by Canada or its agent in respect of purchases in these amounts may
        be made in installments. Canada will seek to ensure that 90 percent of cash deposits and
        accrued interest owed will be disbursed no later than 6 weeks from the receipt of the final
        list of the cash deposits and accrued interest referred to in paragraph 2. In the Agreements
        of Purchase and Sale between Escrow importers and Canada or its agent, each Escrow
        importer shall irrevocably direct Canada or it agent to pay a portion of each installment to
        the specified accounts as set out in paragraph 4 in an amount that is proportionate to the
        $US 1 billion divided by the total amount of cash deposits to be refunded to all importers
        of record and the interest accrued as of the Effective Date. The Irrevocable Direction to

45

Pay in the Agreement of Purchase and Sale shall not be subject to amendment without the consent of the United States. Canada shall pay the difference between US$ 1 billion and the aggregate amount paid by the importers of record into these specified accounts.

4.    At least 30 days before the Effective Date, the United States shall provide Canada or its agent information identifying three escrow accounts whose beneficiaries are the Coalition for Fair Lumber Imports, a binational industry council, and meritorious initiatives in the United States identified by the United States in consultation with Canada as described in Article XIII. Canada or its agent shall distribute $US 1 billion of the refunds pursuant to the Irrevocable Directions to Pay to those escrow accounts in the following amounts: $US 500 million to the Coalition for Fair Lumber Imports, $US 50 million to the binational industry council, and $US 450 million for the aforementioned meritorious initiatives.

5.    The United States shall liquidate Covered Entries starting with entries that are or will become more than 4 years old during the first 6 months of the liquidation process and followed by entries that become more than 4 years old during any subsequent extension under 19 U.S.C. § 1504(b) and 19 C.F.R. § 159.12.

6.    The United States shall not consider the payments to Escrow Importers under Article IV and this Annex to be a prohibited, actionable, or countervailable subsidy and shall neither consider such payments to be a basis for initiating a countervailing duty investigation nor investigate such payments in the course of such investigation.

Annex 3A

**Template for "No Injury" Letters from U.S. Domestic Interested Parties**

Dear USTR Schwab and Secretary Gutierrez:

Entity A commends the spirit of cooperation in which the United States and Canada negotiated the 2006 Softwood Lumber Agreement (the Agreement). Entity A makes the following representations and commitments to the U.S. Government:

1.    Entity A is a U.S. producer of softwood lumber. The softwood lumber production of Entity A in 2005 was [ ], which represents [ ] percent of total U.S. softwood lumber production in 2005.

[3.    [Name/Title] of Entity A serves on the executive committee of the Coalition for Fair Lumber Imports.]

4.    Entity A represents that the Agreement removes any alleged material injury or threat of material injury, within the meaning of 19 U.S.C. §1677(7), to the U.S. softwood lumber industry from imports of softwood lumber from Canada. This representation is made taking into account all relevant facts, including possible changes in market conditions, and the consequences that the representations will have for the term of the Agreement, including the intentions of the U.S. Department of Commerce (Commerce), described in paragraph [4]. The representation is also made with an understanding of the possible effects of the Agreement's provisions while the Agreement remains in force, given the various market conditions that may prevail in both countries during that time.

5.    If a petition is filed with respect to imports of softwood lumber from Canada under Title VII of the Tariff Act of 1930, as amended, while the Agreement is in effect, Entity A recognizes and accepts that, in determining whether the allegation of material injury or threat thereof meets the requirements of 19 U.S.C. §1671a or §1673a, as the case may be, Commerce has agreed to rely on the representation in paragraph [4] made by Entity A and other domestic interested parties as conclusive evidence of an insufficient allegation of material injury or threat thereof and will dismiss the petition.

6.    Entity A agrees that it will not file a petition, and will oppose initiation of any investigation, pursuant to Title VII of the Tariff Act of 1930, as amended, or §§ 301-305 of the Trade Act of 1974, as amended, with respect to imports of softwood lumber from Canada.

7.    Entity A agrees that it will not, in a petition filed under §§ 201-204 of the Trade Act of 1974, as amended, allege that the growth rate of imports of softwood lumber from

47

Canada contributes importantly to the serious injury or threat of serious injury to the U.S. lumber industry.

8.    Entity A agrees that it will ensure that the commitments in this letter are undertaken by and remain binding on any entities that are successors in title of Entity A.

9.    The representations and commitments contained in this letter shall have no force or effect after the Agreement is terminated or expires, or if an arbitral tribunal finds that Canada has breached an obligation under the Agreement, and neither Party promptly takes action that addresses the breach.

48

## Annex 3B

### Finding of Department of Commerce

Re:     Agreement Between the United States and Canada Concerning Trade in Softwood
        Lumber – Representations on Injury by the U.S. Industry

Dear

The Softwood Lumber Agreement Between the United States and Canada (the
Agreement) is intended to ensure that there is no material injury or threat thereof to an industry
in the United States from imports of softwood lumber from Canada, and to avoid litigation under
Title VII of the Tariff Act of 1930, as amended (the Act), on this issue.

In the Agreement the United States is agreeing that it will not self-initiate an investigation
under Title VII with respect to softwood lumber from Canada and that, if a petition for such an
investigation is filed, the Department of Commerce (Commerce) will dismiss the petition.

When a petition is filed under Title VII, Commerce is required to examine, on the basis
of sources readily available to it, the accuracy and adequacy of the evidence provided in the
petition and to determine whether the petition alleges the elements necessary for the imposition
of a duty and that the evidence in the petition is sufficient to justify initiation of an investigation.
19 U.S.C. 55 §§ 1671a and 1673a and Statement of Administration Action at 861. Commerce is
also required to determine if the petition has been filed by or on behalf of the industry (i.e.,
whether producers or workers supporting the petition account for (1) at least 25% of total
production of the domestic like product and (2) more than 50% of such production by that
portion of the industry expressing support for or opposition to the petition). *Id.*

Domestic interested parties within the meaning of 19 U.S.C. §§ 1671a (c) (4) (D) and
1673a (C) (4) (D), accounting for greater than 60 percent of the total U.S. production of
softwood lumber, and worker representatives that represent U.S. softwood lumber workers have
represented to the Department that, while the Agreement is in effect, it removes any alleged
injury. Specifically, the U.S. domestic interested parties have made the following
representations:

o   The Agreement removes any alleged material injury or threat of material injury, within
    the meaning of 19 U.S.C. § 1677 (7), to the U.S. softwood lumber industry from imports
    of softwood lumber from Canada.

o   This representation concerning injury is made taking into account all relevant facts,
    including an understanding of the possible effects of the Agreement's provisions over the

49

life of the Agreement given the various market conditions that may prevail in both countries during that time, and the consequences that the representations will have throughout the term of the Agreement.

o   The representations and commitments contained in this letter shall have no force or effect after the Agreement is terminated, or if an arbitral tribunal finds that Canada has breached an obligation under the Agreement, and neither Party promptly takes action that addresses the breach.

These industry representations have been made by individual producers, by trade associations on behalf of their members, a majority of whom are U.S. producers of softwood lumber, by other domestic interested parties including the Carpenters and Joiners Union. The trade associations, established between 1908 and 1964, have represented the industry, on average, for more than 50 years. Consequently, they are a repository of substantial expertise concerning the U.S. softwood lumber industry and its markets. The representations by the trade associations have been approved by resolution or vote as required by their by-laws.

The producers and associations also represent the vast majority of the active members of the Coalition for Fair Lumber Imports (Coalition). Since its establishment in 1985, the Coalition is the association through which U.S. producers have assessed the economic condition of the U.S. industry and have taken trade action when the industry has deemed it necessary. The Coalition is a repository of substantial expertise concerning the North American softwood lumber market. The Coalition and its association members were the petitioners in the 1985-86 action of softwood lumber under Title VII, and represented the U.S. industry in the 1991-92 action and 2001-2003 action that was self-initiated by the U.S. Commerce Department. Officials of some of the individual companies that have made these representations also serve as officers in the Coalition and the Coalition's constituent associations.

The confidence of the companies, the associations and the unions in their representations is evidenced by their commitment that, absent termination of the Agreement or suspension of the United States' obligations, they and any successor entities, will not file a petition, will not authorize their representatives or advisors to prepare a petition, and will oppose the initiation of any investigation pursuant to Title VII of the Act with respect to imports of softwood lumber from Canada.

The Department has reviewed these representations and finds that, if a petition is filed with respect to imports of softwood lumber from Canada under Title VII of the Act while these representations are in effect, in determining whether the petition meets the requirements of 19 U.S.C. § 1671a or § 1673a, these representations will constitute conclusive evidence of an insufficient allegation of material injury or threat of material injury and the Department of Commerce will dismiss the petition.

This finding does not limit the Department's authority to dismiss the petition on other grounds pursuant to 19 U.S.C. § 1671(a) or § 1673a (c).]

50

**Annex 3C**

**Supplemental Letter from the Members of the U.S. Industry Which have filed letters as described in Annex 3A**

Dear USTR Schwab and Secretary Gutierrez:

Company A agrees that, if the United States exercises it right to terminate the Agreement pursuant to Article XX(1), it will not file a petition, and will oppose initiation of an investigation, pursuant to Title VII of the Tariff Act of 1930, as amended, or §§301-305 of the Trade Act of 1974, as amended, with respect to imports of softwood lumber from Canada. Company A further agrees that the commitment in this letter survives for a period of 3 months after the termination of the Agreement.

Company A agrees that it will ensure that the commitments in this letter are undertaken by and remain binding on any entities that are successors in title of Company A.

**Annex 4**

**Framing Lumber Composite Price**

6.    Subject to paragraph 3 below, the framing lumber composite (FLC) price used for determining export measures will be the framing lumber composite price produced by Random Lengths Publications Incorporated of Eugene, Oregon according to the method of weighting used as of April 27, 2006.

7.    The Random Lengths Publications Incorporated FLC price is a weighted average of the following fifteen structural lumber prices:

(a)    2x4 Standard and Better Hem-Fir (Spokane)

(b)    2x4 #2 Southern Pine (Westside)

(c)    2x4 #2 and Better Western S-P-F

(d)    2x4 #1 and #2 Eastern S-P-F (Boston)

(e)    2x4 Standard and Better Green Douglas Fir (Portland)

(f)    2x10 #2 and Better Hem-Fir (Redding)

(g)    2x10 #2 Southern Pine (Westside)

(h)    2x10 #2 and Better Western S-P-F

(i)    2x10 #2 and Better Green Douglas Fir (Portland)

(j)    Studs Hem-For (Coast)

(k)    Studs Fir and Larch

(l)    Studs Southern Pine (Westside)

(m)    Studs Western S-P-F

(n)    Studs Eastern S-P-F (Boston)

(o)    Studs Green Douglas Fir (Portland)

8.    If, while the Agreement is in force, Random Lengths Publications Incorporated changes the weights used in calculating the Random Lengths Framing Lumber Composite Price, the weights in effect as of April 27, 2006 shall be used to calculate a composite price separately from the new Random Lengths Framing Lumber Composite Price as posted on the Government of Canada website. If Random Lengths Publications Incorporated stops producing the framing lumber composite price or any of the price series listed in paragraph 2 then the parties will select a mutually agreeable replacement series or data source.

9.     For the purposes of establishing the export measure in Article VII, the Prevailing Monthly Price will be the four-week average of the weekly FLC prices available at least twenty-one days prior to the start of the month to which the Prevailing Monthly Price will be applied. When the Prevailing Monthly Price is determined it will be rounded to the nearest whole dollar.

**Annex 5**
**Calculation of Quota Volumes**

1.    This annex specifies the methods that will be used to determine the quota volumes for Regions selecting Option B. Quota volume will be established on a monthly basis, with limited ability to carry-forward or carry-back quota amounts.

2.    The formula for calculating a Region's monthly quota volume is:

$$RQV = EUSC \times RS \times PAF$$

where  RQV  = the region's monthly quota volume;
         EUSC = expected monthly US consumption (as calculated in Annex 8);
         RS    = the region's share of US consumption from Table 1; and,
         PAF   = the price adjustment factor from Table 2.

3.    A Region is permitted to carry-back (or borrow) from the next month a volume equal to twelve percent of its monthly quota volume. For example, if a Region's calculated quota volume for June is 500 MMBF, the Region is permitted to carry-back (or borrow) from July 60 MMBF of the Region's July quota volume, thereby increasing the Region's June quota volume by 60 MMBF and decreasing the Region's July quota volume by 60 MMBF.

4.    A Region is permitted to carry-forward to the next month a volume equal to 12 percent of its monthly quota volume. For example, if a Region's calculated quota volume for June is 500 MMBF and the Region ships only 440 MMBF in that month, the Region is permitted to carry-forward to July the 60 MMBF of unused quota volume, thereby increasing the Region's July quota volume by 60 MMBF.

5.    A Region may increase its calculated period quota volume by a maximum of 12 percent via carry-forward or carry-back, or both.

6.    No quota volume carry-back or carry-forward may involve a month in which there was no quota. That is, both months involved in any carry-back or carry-forward mechanism must be months in which a quota existed. If a carry-back is performed within a month for which no quota is determined to exist, then the carry-back volume shall be removed from the calculated monthly quota volume for the next month for which a quota exists. If a carry-forward is performed within a month for which no quota is determined to exist, then the carry-forward volume shall be added to the calculated monthly quota volume for the next month for which a quota exists.

7.    If the forecasted level of U.S. consumption during any three month period is more than 5 percent different from the actual level of U.S. consumption during that three month period, then an adjustment shall be made to the forecasted U.S. consumption levels moving forward. Specifically, the MBF difference between the forecasted level of U.S. consumption during the three month period and the actual level of U.S. consumption during the three month period will be divided by three and then added to (or subtracted

54

from) the forecasted monthly consumption amounts for the next three months for which quotas are determined. This process shall be continuous and repetitive.

8.    The share of US consumption for each region shown in Table 1 is calculated as the product of 34% and that region's share of the volume of Canadian exports of softwood lumber products to the United States from April 1, 2001 to December 31, 2005 as reported under Canada's Softwood Lumber National Export Monitoring System.

9.    The shares of excluded companies listed in Annex 9 have been deducted from the shares of the regions in which they are located. Should there be a change in company-specific exclusions, pursuant to Article X of this Agreement, the regional shares in Table 1 would be recalculated to reflect that change.

TABLE 1

| Region | Percent Share of US Consumption |
|---|---|
| BC Coast | 1.79 |
| BC Interior | 16.59 |
| Alberta | 2.63 |
| Saskatchewan | 0.46 |
| Manitoba | 0.31 |
| Ontario | 3.34 |
| Quebec | 4.86 |

TABLE 2

| FLC Price | Price Adjustment Factor |
|---|---|
| Over $US 335 | 1 |
| $US316-335 | (32/34) |
| Under US$316 | (30/34) |

**Annex 6**

**Re-manufacturers Certification Process and Export Charge Administration**

Under the terms of the Softwood Lumber Agreement, Independent Manufacturer of Remanufactured Softwood Lumber Products shall be subject to an export charge on the basis of the value of the softwood lumber used ("export price") in the manufacture of the exported product.

The Canada Revenue Agency (CRA) shall, in the course of administering the export charge, administer, control and verify the requirements associated with qualification as an independent re-manufacturer.

To qualify as an independent re-manufacturer, companies shall apply to CRA to be registered as an independent re-manufacturer. Companies shall provide CRA with:

(a)   provincial certification that they do not hold Crown tenure rights and, after entry into force of the Agreement, have not acquired standing timber directly from the Crown, in provinces other than the Maritimes or other excluded regions,

(b)   certification that they are not an "associated person" as defined Article XX with companies which hold provincial Crown tenure rights or which have acquired standing timber directly from the Crown, and

(c)   a list of products (within the scope of the agreement) that they will or expect to produce in the next year.

Canada and the United States may agree to appropriate amendments to this Agreement with respect to the border measures, enforcement or other matters with respect to Remanufactured Products based on an assessment of the overall affect of the Agreement.

Only after Canada has notified the United States in accordance with Article ___ that, in its view, a re-manufacturer qualifies as an Independent Manufacturer of Remanufactured Softwood Lumber, will the export charge on exports of Remanufactured Softwood Lumber from that re-manufacturer be calculated on a first mill basis. Such exports will no longer qualify for such treatment if the manufacturer is no longer certified by CRA as an Independent Manufacturer of Remanufactured Softwood Lumber, or an arbitration panel under Article ___ finds that the remanufacturer is not an Independent Manufacturer of Remanufactured Softwood Lumber or that the product being exported is not a Remanufactured Softwood Lumber product.

**Annex 7**

**Calculation of Regional Trigger Volumes**

1.    This annex specifies the methods that will be used to determine the Regional Trigger Volumes for Regions selecting Option A.

2.    A Region's Trigger Volume is calculated as expected monthly U.S. consumption, as calculated in Annex 8, multiplied by the Region's percent share of U.S. consumption multiplied by 1.1. Percent shares of U.S. consumption for each Region for the purposes of calculating a Trigger Volume are given in Table 1.

3.    The formula for calculating a Region's Trigger Volume is:

$$RTV = EUSC \times RS \times 1.1$$

where   RTV   = the Region's Trigger Volume
   EUSC  = expected monthly U.S. consumption
   RS    = the region's share of U.S. consumption from Table 1.

4.    The share of US consumption for each region shown in Table 1 is calculated as the product of 34% and that region's share of the volume of Canadian exports of softwood lumber products to the United States as reported under Canada's Softwood Lumber National Export Monitoring System for January 1, 2004 to December 31, 2005.

5.    For purposes of these share calculations, the companies listed in Annex 9 are not included in the volume of regional exports. Should there be a change in company-specific exclusions pursuant to Article X of this Agreement, the regional shares provided for in Table 1 would be recalculated to reflect that change.

TABLE 1

| Region | Percent Share of US Consumption |
|---|---|
| BC Coast | 1.86 |
| BC Interior | 17.43 |
| Alberta | 2.49 |
| Saskatchewan | 0.42 |
| Manitoba | 0.29 |
| Ontario | 3.15 |
| Quebec | 4.39 |

**Annex 8**

**Calculation of US Softwood Lumber Consumption and Market Shares**

1.  Softwood lumber means the products included in the scope of the agreement as specified in Annex 1. For the purposes of measuring US consumption in this annex, Canadian softwood lumber exports to the United States will be defined by the following Statistics Canada Standard Classification of Goods (SGC) codes: 4407.10.00, 4409.10.11, 4409.10.19, 4409.10.91 and 4409.10.99. For the purposes of measuring US softwood lumber exports, US softwood lumber imports from countries other than Canada, and US domestic shipments will each be defined by the following Harmonized Tariff System of the United States (HTSUS) codes: 4407.10.00, 4409.10.10, 4409.10.20, and 4409.10.90.

2.  If the scope of products covered by the agreement is modified as a result of mutual agreement of the Parties, the United States will provide the additional data required to modify HTSUS code data to reflect the modification and Canada will provide the data required to modify the SGC code data to reflect the changed scope of the Agreement.

3.  US softwood lumber consumption will be calculated as the sum of 1) Canadian softwood lumber exports to the US, 2) US offshore softwood lumber imports, and 3) US shipments of softwood lumber, minus 4) US exports of softwood lumber.

4.  Canadian market share will be calculated as Canadian softwood lumber exports to the US divided by US softwood lumber consumption.

5.  Third country market share will be calculated as US offshore softwood lumber imports divided by US softwood lumber consumption. US offshore softwood lumber imports means US imports of softwood lumber from all countries except Canada.

6.  US producer's market share will be calculated as US shipments of softwood lumber less US exports of softwood lumber divided by US consumption.

7.  Data sources for the calculations will be:

    *   Canadian softwood lumber exports to the US - Statistics Canada
    *   US softwood lumber offshore imports - US Census Bureau
    *   US softwood lumber exports - US Census Bureau
    *   US softwood lumber shipments – Western Wood Products Association (WWPA) monthly publication "Lumber Track."

8.  US shipments of softwood lumber will be calculated as the sum of softwood lumber shipments from the Western (Coast, Inland and California Redwood) region, the Southern region and the Northern region. Northern region shipments will be constructed by taking the sum of Western and Southern region Shipments and multiplying by 6.25%.

9.    Conversion factors used to translate metric units to board foot measure will be:

- $m^3$: MBF = 0.423776 x $m^3$
- $m^2$: MBF = 0.010764 x $m^2$

10.    Expected U.S. consumption means the volume of softwood lumber that is expected to be consumed within the U.S. in the month for which Quota Volumes and Regional Trigger Volumes are being established as contained in Annexes 5 and 7.

11.    Expected monthly U.S. consumption will be calculated as follows:

- Historical U.S. consumption will be calculated for the 12-month period ending three months prior to the month for which expected U.S. consumption is being calculated.
- U.S. consumption during that twelve month period will then be divided by twelve to produce a monthly average.

- The monthly average U.S. consumption is then multiplied by the seasonal adjustment factor for the relevant month as specified in Table 1.

12.    The formula for calculating the expected monthly US consumption is:

$$EUSC = [USCR \div 12] \times SAF$$

where   EUSC = expected monthly US consumption
USCR = US consumption for the latest twelve-month period
SAF    = the seasonal adjustment factor for the month being established as given in Table 1.

**Table 1**

| Month | Seasonal Adjustment Factors | |
|---|---|---|
| | BC Coast | All Other Regions |
| January | 0.7212 | 0.9288 |
| February | 0.9767 | 0.8944 |
| March | 0.9025 | 1.0014 |
| April | 1.3557 | 1.0707 |
| May | 1.1461 | 1.0679 |
| June | 1.1771 | 1.0405 |
| July | 0.9213 | 1.0508 |
| August | 1.0719 | 1.0501 |
| September | 1.0584 | 0.9953 |
| October | 0.9477 | 1.0636 |
| November | 0.8466 | 0.9435 |

| December | 0.8746 | 0.8930 |

**Annex 9**

**Excluded Companies**

| | Companies | Location | Address |
|---|---|---|---|
| 1 | Armand Duhamel et Fils Inc. | QC St.-Ignace-de-Stanbridge | 778, rang de l'Église Nord, Saint-Ignace-de-Stanbridge, Québec, Canada, J0J 1Y0 |
| 2 | Bardeaux et Cèdres St-Honoré Inc. | QC St.-Honoré-de-Shenley | 935, route 269, Saint-Honoré-de-Schenley, Québec, Canada, G0M 1V0 |
| 3 | Scierie Coaticook Inc. | QC Coaticook | 1129, chemin Ladd's Mills, CP 130, Coaticook, Québec, Canada, J1A 2S9 |
| 4 | Busque & Laflamme Inc. | QC St. Benoit BCE. | 51, route du Lac Poulin, CP 1009, Saint-Benoît-Labre, Québec, Canada, G0M 1P0 |
| 5 | Carrier & Bégin Inc. | QC St.-Honoré-de-Shenley | 484, route Grand Shenley, Saint-Honoré-de-Schenley, Québec, Canada, G0M 1V0 |
| 6 | Clermond Hamel Ltée | QC St.-Éphrem-de-Beauce | 25, rang 7 Sud, Saint-Éphrem-de-Beauce, Québec, Canada, G0M 1R0 |
| 7 | J.D. Irving Ltd. | QC Pohenegamook | 300, rue Union, Saint-John, New Brunswick, Canada,  E2L 4M3 |
| 8 | Les Produits Forestiers D.G., Ltée. | QC Ste-Foy | 2600, boulevard Laurier, Tour de la Cité, bureau 960, Québec, Québec, Canada, G1V 4W2 |
| 9 | Marcel Lauzon Inc. | QC East Hereford | 129, route 253 Sud, East Hereford, Québec, Canada, J0B 1S0 |
| 10 | Mobilier Rustique (Beauce) Inc. | QC St.-Martin | 50, 1re Rue, CP 220, Saint-Martin, Québec, Canada, G0M 1B0 |
| 11 | Paul Vallée Inc. | QC St-Isidore-de-Clifton | 5, chemin du moulin de Clifton, Saint-Isidore-de-Clifton, Québec, Canada, J0B 2X0 |
| 12 | René Bernard Inc. | QC Beauceville West | 88, avenue Lambert, Beauceville, Québec, Canada, G5X 3N4 |
| 13 | Roland Boulanger & Cie Ltée. | QC Warwick | 235, rue St-Louis, Warwick, Québec, Canada, J0A 1M0 |
| 14 | Scierie Alexandre Lemay & Fils Inc. | QC St.-Bernard | 1010, rue Saint-Georges, CP 189, Saint-Bernard, Québec, Canada, G0S 2G0 |
| 15 | Scierie La Patrie Inc. | QC La Patrie | 70, rue Principale, CP 150, La Patrie, Québec, Canada, J0B 1Y0 |
| 16 | Scierie Tech Inc. | QC Lac Drolet | 126, rue du Moulin, CP 99, Lac-Drolet, Québec, Canada, G0Y |

| | | | 1C0 |
|---|---|---|---|
| 17 | Wilfrid Paquet et Fils Ltée. | QC St.-Théophile | 403, route 173, Saint-Théophile, Québec, Canada, G0M 2A0 |
| 18 | Sault Forest Products Ltd. | ON Sault Ste. Marie | 464 Gran Avenue, Sault Ste. Marie, Ontario, Canada, P6A 4X8 |
| 19 | Boccam Inc. | QC St-Georges | 9200, 25e Avenue, Saint-Georges de Beauce, Québec, Canada, G6A 1L6 |
| 20 | Indian River Lumber | ON Scarborough | 248 Sylvan Avenue, Scarborough, Ontario, Canada, M1E 1A6 |
| 21 | Interbois Inc. | QC Beaucenord | 305, du Parc CP 9, St-Odilon, Québec, Canada, G0S 3A0 |
| 22 | Jacomeau Inc. | QC St. Jean-de-la-Lande de Beauce | 245, rue Cloutier, St-Jean-de-la-Lande, Québec, Canada, G0M 1E0 |
| 23 | Richard Lutes Cedar Inc. | ON Norwood | 29 Queen Street, P.O. Box 275, Norwood, Ontario, Canada, K0L 2V0 |
| 24 | Séchoirs de Beauce Inc. | QC Beauceville | 201, 134E Rue, Beauceville, Québec, Canada, G5X 3H9 |
| 25 | Scierie West Brome Inc. | QC Ville du Lac Brome | 15, chemin West Brome, Lac-Brome, Québec, Canada, J0E 2P0 |
| 26 | Matériaux Blanchet Inc.'s St-Pamphile Mill | QC Saint-Pamphile | 1030, rue Elgin Sud, CP 430, Saint-Pamphile, Québec, Canada, G0R 3X0 |
| 27 | Bois Daaquam Inc. | QC Sainte-Foy | 2600, boul. Laurier, Bureau 2640, Québec, Québec, Canada, G1V 4M6 |
| 28 | Bois Omega Ltée | QC Lac Supérieur | 226, Chemin David, Lac Supérieur, Québec, Canada, J0T 1P0 |
| 29 | Fontaine Inc. (J.A. Fontaine et Fils Inc.) | QC Wobum | 850, rue Fontaine, Saint-Augustin-de-Wobum, Québec, Canada, G0Y 1R0 |
| 30 | Industries Maibec Inc. | QC Sainte-Foy | 660, rue Lenoir, Québec, Québec, Canada, G1X 3W3 |
| 31 | Les Produits Forestier Dubé Inc. | QC Isle-Verte-Ouest | 89, rue Villeray, L'Isle-Verte, Québec, Canada, G0L 1L0 |
| 32 | Scierie Nord-Sud Inc. | QC Saint-Prosper | 784, 8e Rue, Saint-Prosper, Québec, Canada, G0M 1Y0 |

**Annex 10**

**Mandate and Proposed Operation of the Working Groups**

1.  As provided in Article XII of this Agreement, the Parties shall establish a Working Group on Provincial Exemption from Border Measures (the "Working Group") for developing substantive criteria and procedures for establishing if and when a Region utilizes market-determined timber pricing and management systems and therefore qualifies for exemption from the border measures set forth in this Agreement. The Parties agree to establish the Working Group to function as a forum for resolving differences of view between the Parties concerning timber pricing and management systems, and to contribute to the elimination of tensions in softwood lumber trade between the Parties.

2.  The Parties shall undertake best efforts to ensure that the Working Group is established within three months of the entry into force of this Agreement. The Working Group shall be composed of representatives of the Parties and of interested Canadian Provinces. Upon mutual agreement of the Parties, representatives of Canadian and U.S. entities with an interest in the operation of this Agreement may be appointed to the Working Group. The Working Group may engage recognized experts in fields related to the operation of this Agreement to prepare factual or analytic reports, and may establish technical sub-groups as the Working Group deems necessary for the timely completion of its work.

3.  The Working Group shall, upon agreement, provide joint recommendations to the Parties within 18 months of entry into force of this Agreement concerning the development of the Addendum, described in Article XII of this Agreement. The recommendations shall include substantive criteria for determining if and when a Region qualifies for exemption from the border measures set forth in this Agreement. The recommendations of the Working Group shall also include recommendations for procedures, to be set forth, as the Parties may agree in the Addendum, governing the form and content of Regions' applications to be exempt from the border measures under this Agreement.

4.  Any dispute as to whether a Region has implemented or complied with the substantive criteria and procedures jointly agreed by the Parties that would establish that such Region utilizes market-determined timber pricing and management systems may be submitted to dispute settlement under Article ___ .

ANNEX 10bis

## TERMINATION OF LITIGATION AGREEMENT

This Termination of Litigation Agreement is a full and complete settlement of the issues raised by all of the parties in the following actions (the "Covered Actions")[5]:

*Certain Softwood Lumber Products from Canada (Original AD Investigation)*, Secretariat File No. USA-CDA-2002-1904-02;

*Certain Softwood Lumber Products from Canada (CVD 1st Administrative Review)*, Secretariat File No. USA-CDA-2005-1904-01;

*Certain Softwood Lumber Products from Canada (Section 129 Threat-of-Injury Determination)*, Secretariat File No. USA-CDA-2005-1904-03;

*Certain Softwood Lumber Products from Canada (Section 129 AD Determination)*, Secretariat File No. USA-CDA-2005-1904-04;

*Certain Softwood Lumber Products from Canada (AD 2nd Administrative Review)*, Secretariat File No. USA-CDA-2006-1904-01;

*Certain Softwood Lumber Products from Canada (CVD 2nd Administrative Review)*, Secretariat File No. USA-CDA-2006-1904-02;

*Certain Softwood Lumber Products from Canada (Final Scope Ruling Regarding Entries Made Under HTSUS 4409.10.05)*, Secretariat File No. USA-CDA-2006-1904-05;

*Certain Softwood Lumber Products from Canada*, Secretariat File No. ECC-2006-1904-01USA;

*Tembec v. United States* (Consol. Ct. No. 05-00028 (CIT)) and the consolidated cases;

*West Fraser v. United States* (Consol. Ct. No. 05-00079 (CIT)) and the consolidated cases;

*Abitibi v. United States* (Ct. No. 06-00048 (CIT));

*Ontario Forest Industries Association et al. v. United States* (Court No. 06-00156 (CIT));

---

[5]    For the purposes of paragraphs 4, 5 and 7 of this Termination Agreement, *Certain Softwood Lumber Products from Canada (Original CVD Investigation)*, Secretariat File No. USA-CDA-2002-1904-03 will be treated in the same manner as a Covered Action.

65

*West Fraser v. United States* (Court No. 06-00157 (CIT));

*Buchanan Lumber Sales Inc. et al v. United States* (Court No. 06-00164 (CIT));

*Ontario Forest Industries Association et al. v. Canada* (Court No. 06-168 (CIT));

*Terminal Forest Products Ltd. v. United States* (Court No. 06-00169 (CIT));

*Teal-Jones Group et al v. United States* (Court No. 06-00170 (CIT));

*Tolko Industries Ltd. et al v. United States* (Court No. 06-00171 (CIT));

*Galloway Lumber Ltd. et al v. United States* (Court No. 06-00172 (CIT));

*Leggett & Platt Canada Co. et al v. United States* (Court No. 06-00176 (CIT));

*Domtar Inc. et al v. United States* (Court No. 06-00186 (CIT));

*A.J. Forest Products Ltd., et al. v. United States* (Court No. 06-00193 (CIT));

*Aspen Planers Ltd. et al v. United States* (Court No. 06-00198 (CIT));

*Gorman Bros. Lumber Ltd. v. United States* (Court No. 06-00201 (CIT));

*Tembec et al. v. United States* (Civil Action No. 05-2345 (District Ct. for the District of Columbia));

*Coalition for Fair Lumber Imports Executive Committee v. United States* (Civil Action No. 05-1366 (D.C. Cir.));

*CLTA v. United States* (Civil Action No. 05-1369 (D.C. Cir.));

*Ontario Forest Industries Association et al. v. Canada et al.* (Civil Action No. 06-989 (D.C. Cir.)); and

*Ontario Forest Industries Association et al. V. United States* (Civil Action No. 06-1171 (D.C. Cir.)).

NAFTA Chapter 11 claim of Tembec Inc., Tembec Investments Inc. and Tembec Industries Inc. (collectively "Tembec")

The *Consolidated Arbitration Pursuant to Article 1126 of the North American Free Trade Agreement (NAFTA) and the UNCITRAL Arbitration Rules between Canfor*

66

*Corporation v. United States of America and Terminal Forest Products Ltd. v. United States of America*

the parties agree to the following terms and conditions:

1.      The parties irrevocably consent to the termination of the Covered Actions by the filing of the documents referenced in paragraph 2 on the date the Agreement between Canada and the United States on Trade in Softwood Lumber ("SLA2006") enters into force, provided that on that date:

       a.      the Countervailing Duty Order regarding Certain Softwood Lumber from Canada, 67 Fed. Reg. 36,070 (May 22, 2002), as amended and the Antidumping Duty Order regarding Certain Softwood Lumber from Canada, 67 Fed. Reg. 36,068 (May 22, 2002), as amended (the "Orders") are retroactively revoked in their entirety as of May 22, 2002 without the possibility that they could be reinstated

       b.      the U.S. Department of Commerce ("USDOC") terminates all USDOC proceedings related to the Orders;

And further provided that:

       c.      The USDOC has prepared the liquidation instructions attached as Annex [X]to SLA 2006 and has committed to provide them to the USCBP within three days of the date the SLA2006 enters into force to ensure that no cash deposits are collected on the basis of the Orders on or after the date the SLA2006 enters into force.

2.      The Governments of Canada or the United States shall file consent motions for termination or notices of dismissal of the covered actions on the date the SLA 2006 enters into force. This agreement and a letter from the Government of the United States certifying the full satisfaction of the preconditions for termination listed in sub-paragraphs 1a through c, above shall constitute proof of unanimous consent for the termination of the covered actions.

4.      Canada and the United States will request dismissal of any new lawsuits concerning the same subject matter as the Covered Actions that are filed prior to the entry into force of the SLA 2006.

5.      No party to this Termination Agreement will seek to hold any other party to this Termination Agreement liable to pay its costs and expenses of litigation relating to the Covered Actions.

6.      This Termination Agreement is without prejudice to the position of any party on any issue in the Covered Actions.

7.      The parties will not re-file any of the Covered Actions.

8.    The parties agree that this Termination Agreement may not be altered, amended, modified, or otherwise changed except in writing by or on behalf of all parties to this Termination Agreement.

9.    This Termination Agreement shall bind the parties hereto, their officers, directors, employees, predecessors, subsidiaries, heirs, executors, administrators, agents, successors and assigns.

10.    As evidence of their consent to this Termination Agreement, the parties, through their duly-authorized Representatives, sign below.

By:

68

**Annex [11]**

**UNITED STATES — PRELIMINARY DETERMINATIONS WITH RESPECT TO CERTAIN SOFTWOOD LUMBER FROM CANADA (DS236);**

**UNITED STATES — PROVISIONAL ANTI-DUMPING MEASURE ON IMPORTS OF CERTAIN SOFTWOOD LUMBER FROM CANADA (DS247);**

**UNITED STATES — FINAL COUNTERVAILING DUTY DETERMINATION WITH RESPECT TO CERTAIN SOFTWOOD LUMBER FROM CANADA (DS257);**

**UNITED STATES — FINAL DUMPING DETERMINATION ON SOFTWOOD LUMBER FROM CANADA (DS264);**

**UNITED STATES — INVESTIGATION OF THE INTERNATIONAL TRADE COMMISSION IN SOFTWOOD LUMBER FROM CANADA (DS277); AND**

**UNITED STATES — REVIEWS OF COUNTERVAILING DUTY ON SOFTWOOD LUMBER FROM CANADA (DS311).**

Notification of Mutually Agreed Solution

The Governments of Canada and the United States notify the Dispute Settlement Body in accordance with Article 3.6 of the DSU that they have reached a mutually agreed solution to the matters raised by Canada in document WT/DS236/1 dated 27 August 2001, 247/1 dated 12 March 2002, 257/1 dated 13 May 2002, 264/1 dated 19 September 2002, 277/1 dated 7 January 2003; and 311/1 dated 19 April 2004. This solution has taken the form of a comprehensive agreement between Canada and the United States, resolving all disputes related to trade in softwood lumber between our two countries. A copy of the agreement is attached.

This mutually agreed solution is without prejudice to the WTO rights and obligations of Canada and the United States except with respect to the disputes listed above.

We ask that you to circulate this notification to the relevant Councils and Committees, as well as to the Dispute Settlement Body.

Don Stephenson
Ambassador and Permanent Representative
of Canada to the World Trade Organization

Peter F. Allgeier
Ambassador of the United States to
the World Trade Organization

**Annex 12**

**The North American Initiative on Lumber**

6.    This Agreement is an opportunity to promote increased cooperation between the softwood lumber industries of the United States and Canada and to strengthen and increase the market for softwood lumber products in both countries.

(iv)    The United States and Canada encourage the formation of a binational industry council which shall receive US$ 50 million pursuant to Article XIII of the Softwood Lumber Agreement.

(v)    The objectives of the binational industry council could be to:

- Strengthen the North American lumber industry by increasing the market for its products; and
- Build stronger cross-border partnerships and trust at all levels of the softwood lumber industry.

(vi)    Initiatives to benefit the North American lumber market could include projects to:

- Expand the market for wood products in the non-residential construction market;
- Develop new methods and markets for the use of wood in raised wood-floor systems;
- Defend wood use in existing residential markets;
- Build on the sustainability of wood products to demonstrate their desirability as an environmentally preferable building and finishing material; and

Promote the use of wood in Green Building Standards.

70