# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TEMBEC INC., TEMBEC INVESTMENTS INC., TEMBEC INDUSTRIES INC., )<br><br>Petitioners, )<br><br>v. )<br><br>UNITED STATES OF AMERICA, )<br><br>Respondent. ) | No. 05-CV-2345 (RMC) |

## NOTICE OF REINSTATEMENT OF ACTION OR IN THE ALTERNATIVE RULE 60(b) MOTION TO SET ASIDE STIPULATION OF DISMISSAL

Petitioners, Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc. (collectively "Tembec") submit this notice to inform the Court that Tembec is exercising the condition set forth in the Stipulation of Dismissal executed on October 12, 2006 to withdraw the stipulation and proceed with this action. In the alternative, Tembec moves this Court to set aside the stipulation of dismissal pursuant to F.R.Civ.P. Rule 60(b). A memorandum and proposed order are attached.

Respectfully submitted,

_____/s/_____

Elliot J. Feldman (D.C. Bar No. 418501)
Mark A. Cymrot (D.C. Bar No. 164673)
Michael S. Snarr (D.C. Bar No. 474719)
BAKER & HOSTETLER LLP
1050 Connecticut Ave. N.W.
Suite 1100
Washington D.C. 20036-5304
Tel: (202) 861-1679
Fax: (202) 861-1783
*Counsel for Petitioners*

Dated: November 8, 2006

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TEMBEC INC., TEMBEC INVESTMENTS INC., TEMBEC INDUSTRIES INC.,** ) ) ) ) **Petitioners,** ) ) **v.** ) ) **UNITED STATES OF AMERICA,** ) ) **Respondent.** ) ) ) | **No. 05-CV-2345 (RMC)** |

### NOTICE OF REINSTATEMENT OF ACTION OR IN THE ALTERNATIVE MEMORANDUM IN SUPPORT OF RULE 60(b) MOTION TO SET ASIDE STIPULATION OF DISMISSAL

Petitioners, Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc. (collectively "Tembec"), submit this notice to inform the Court that Tembec is exercising the condition set forth in the Stipulation of Dismissal executed on October 12, 2006 to withdraw the stipulation and proceed with this action. In the alternative, Tembec moves this Court to set aside the Stipulation of Dismissal and Order of the Court dated October 17, 2006 pursuant to F.R.Civ.P. Rule 60(b).

### FACTUAL BACKGROUND

On September 12, 2006, the United States and Canada entered into the Softwood Lumber Agreement ("SLA") between the Government of Canada and the Government of the United States (collectively "Governments").[1] Article II, Entry into Force, provided conditions precedent to the entry into force of the SLA, including the

---

[1] Article II of the SLA and Annex 2A are attached hereto as Exhibit A. The full text of the SLA may be found at http://www.dfait-maeci.gc.ca/eicb/softwood/pdfs/SLA-en.pdf.

termination of litigation as set forth in Annex 2A of the SLA. Among the actions enumerated in Annex 2A were this lawsuit and Tembec's NAFTA Chapter 11 arbitration claim against the United States ("Covered Actions"). At the time, Tembec's motion to vacate was fully briefed and awaiting a hearing.[2]

Tembec was not a party to the SLA, but at the request of the Government of Canada and the Government of the United States, on September 20, 2006, Tembec executed two Termination of Litigation Agreements pursuant to Annex 2A of the SLA: one for this lawsuit, and one for Tembec's NAFTA Chapter 11 claim.[3] Annex 2A of the SLA provided that the United States' representatives in each of the Covered Actions would co-sign the Termination of Litigation Agreements. The Termination of Litigation Agreements contained a provision under which each party would bear its own costs and attorneys' fees with respect to the terminated litigation.

On September 22, 2006 – just two days after Tembec executed the Termination of Litigation Agreements – the NAFTA Chapter 11 Consolidation Tribunal, on its own initiative, issued an order which said that, in light of press reports of a settlement of the Softwood Lumber dispute, it would issue an award with respect to costs.[4] The Consolidation Tribunal's January 10, 2006 order granting Tembec's voluntary termination of the arbitration – which was submitted in order to bring to this Court a motion to vacate the Tribunal's order of consolidation – reserved the right to resolve the issue of costs at a later date. The remaining parties in the consolidated

---

[2] The Court stayed this case on September 24, 2006 and requested a joint status report from the parties no later than December 22, 2006 "concerning the status of the international agreement between the United States and Canadian governments."

[3] Tembec's Termination of Litigation Agreements are attached as Exhibit B.

[4] The Tribunal's order dated September 22, 2006 is attached as Exhibit C.

proceedings (the United States, Canfor and Terminal) had completed briefing that issue in April 2006, but the Tribunal had not issued an award on costs.  The September 20 order indicated an intent to consider costs against Tembec and invited Tembec to submit a pleading with respect to costs.[5]

On October 6, 2006, Tembec informed the Consolidation Tribunal of the SLA, the Termination of Litigation Agreements that Tembec had executed at the request of the two Governments, and the provision relating to costs in those agreements. Tembec suggested that Tembec and the United States each should bear their own costs of the NAFTA Chapter 11 arbitration as provided by the SLA and the Termination of Litigation Agreements.[6]

On October 11, 2006, the two Governments presented Tembec with another version of SLA Annex 2A, entitled a "Settlement of Claims Agreement," and demanded that Tembec sign it the same day.  The new Settlement of Claims Agreement retained the language about each party bearing its own costs and attorneys' fees, but did not make specific reference to Tembec's NAFTA Chapter 11 Claim. Tembec was not given an explanation for this new document, and its counsel's protests about the lack of explanation were ignored by the Governments.[7]  At the Governments' insistence, Tembec executed this additional document.  At the time that Tembec

---

[5] The parties to NAFTA proceedings – including Tembec – had made deposits against costs.  The Consolidation Tribunal's order was for the purpose of collecting unpaid costs and the assessment of attorneys' fees, but was proposing to redistribute the costs that had already been paid for the proceedings by the parties, after the Governments had announced a settlement of the claims that included an agreement on costs and fees.  It is difficult to attribute an innocent motive to the Tribunal (particularly when President Bush's cousin sits as a Tribunal member).

[6] Letter of October 6, 2006, from Elliot J. Feldman to Tribunal is attached as Exhibit D.

[7] See Letter of October 11, 2006 from Elliot J. Feldman to Hugh Cheetham, DFAIT, and Jeff Weiss of USTR, and "Settlement of Claims Agreement", attached as Exhibit E.

executed this document, it reasonably believed that it was supplemental to, and not in place of, the earlier Termination of Litigation Agreements.

At 5:42 p.m. on October 12, 2006, the United States and Tembec reached agreement to dismiss this action "with prejudice, subject to the terms and conditions of the Softwood Lumber Agreement of 2006." The exchange of emails between counsel make it clear that the "subject to" provision was intended to be a condition on and modify "with prejudice."[8]

At 11:00 p.m. on October 12, 2006, the United States and Canada announced 19 pages of amendments to the SLA that the Governments entered into without consulting with or obtaining the agreement of Tembec ("SLA Amendments").[9] Article I of the amendments replaced the Termination of Litigation Agreements with the Settlement of Claims Agreement, and effectively removed the provision that each party bear its own costs and attorneys' fees with respect to Tembec's Chapter 11 claim. No one had warned Tembec of this proposed amendment or asked its agreement, and no one then or since has explained the reason for it.

On October 13, 2006, the United States informed the Consolidation Tribunal that Tembec had attempted to "mislead" the Tribunal by directing it to the original SLA and contending that the United States had agreed that each party would bear its own costs and attorneys' fees.[10] The United States submitted to the Tribunal the SLA Amendments and took the position that Tembec should bear the entire costs,

---

[8] Series of emails between Elliot J. Feldman, counsel to Tembec, and Alexander Haas, counsel to the United States, on October 12, 2006, attached as Exhibit F.

[9] The SLA Amendments are attached hereto as Exhibit G.

[10] The United States' statement was disingenuous because only the September 20, 2006 SLA, without the SLA Amendments, existed on October 6, 2006 when Tembec informed the Consolidation Tribunal that the parties agreed to bear their own costs and fees of the arbitration proceedings.

including the United States' attorneys' fees, with respect to Tembec's NAFTA Chapter 11 arbitration proceedings.

When Tembec queried the Government of Canada, on October 16, 2006, about the United States' demand for costs and attorneys' fees from the Consolidation Tribunal, the Government spokesman said that it understood Tembec and Canfor would be treated equally and that the United States' demand for costs and attorneys' fees was inconsistent with the SLA.

On November 3, 2006, the United States informed the Consolidation Tribunal that it had reached agreement with Canfor that each party would bear its own costs and attorneys' fees.[11]

On November 7, 2006, the Secretary of the Tribunal informed counsel to Tembec by telephone that the Tribunal would invite Tembec to respond to the United States' latest pleading on costs and ordered a hearing on the costs issue for November 15, 2006.

Tembec has been left in the position of litigating, before the very Tribunal it has accused of bias and overreaching, the issue of costs that it was led to believe by the United States and Canada had been resolved through the SLA. The United States informed Tembec of the change in SLA terms subsequent to Tembec's signature on the stipulation filed with this Court. That stipulation was conditioned on terms that, according to the United States, no longer apply.

---

[11] *See* Letter of November 3, 2006 from Andrea J. Menaker to the Tribunal, attached hereto as Exhibit H.

## **ARGUMENT**

I.  The Stipulation Of Dismissal Was Subject To The Terms Of The SLA, But The Terms Of The SLA Were Changed Without Tembec's Agreement Or Knowledge

Tembec's motion to vacate should be reinstated, allowing Tembec to continue with its NAFTA Chapter 11 claims against the United States. The Stipulation of Dismissal states that this action shall be dismissed "with prejudice, subject to the terms and conditions of the Softwood Lumber Agreement of 2006." The "subject to" language was a negotiated condition of the dismissal. Tembec insisted upon the condition in case the SLA was not executed or not executed in the form in which it had been disclosed to Tembec when it signed the Stipulation of Dismissal. The condition has not been satisfied because the United States and Canada amended the SLA in a manner material to Tembec as the amendment apparently is interpreted by the United States.

The United States has claimed to the Consolidation Tribunal that the conditions for the SLA's entry into force are different from those conditions to which Tembec initially agreed in connection with the parties' Stipulation of Dismissal in this case. The United States is seeking costs and attorneys' fees for the NAFTA Chapter 11 arbitration proceedings, despite the provisions in the SLA and Termination of Litigation Agreements that no party shall seek costs and fees from another in connection with the terminated litigation. The stipulation to dismissal of this case was conditional, subject to the terms of the SLA as known to Tembec when it signed. Tembec has not agreed to a change in the terms of the SLA that would allow the United States to seek fees and costs against Tembec for the NAFTA Chapter 11 arbitration.

- 6 -

Tembec, therefore, withdraws its agreement to dismiss this action. This withdrawal of the Stipulation of Dismissal is pursuant to the very terms of the stipulation, which make it subject to an SLA that no longer exists and never became effective. On this basis, the Court should order the motion to vacate reinstated.

II.    Tembec Alternatively Moves For Relief From The Dismissal Order Pursuant To Rule 60(b) Based On The United States' Misrepresentation And Misconduct Regarding The Applicable Terms Of The SLA

Tembec also is entitled to withdraw its Stipulation of Dismissal pursuant to Rule 60(b), F.R.Civ.P. because Tembec was misled by the Government of the United States and the Government of Canada regarding the applicable terms of the SLA.

A.    Rule 60(b)(3) Standard Of Review

Rule 60(b) provides for relief from a final judgment for "misrepresentation, or other misconduct of an adverse party" or for "any other reason justifying relief from the operation of the judgment." Rule 60(b)(3) and (6). Proof of misrepresentation or misconduct must be shown by clear and convincing evidence, *See Shepherd v. American Broadcasting Cos.,* 62 F.3d 1469, 1477 (D.C. Cir. 1995), but the movant need not prove that the misconduct was intentional. *See Canady v. Erbe Elektromedizin GMBH,* 99 F.Supp.2d 37, 49 n. 26 (D.D.C. 2000). The court must balance "the interest in justice with the interest in protecting the finality of judgments." *Summers v. Howard University*, 374 F.3d 1188, 1193 (D.C. Cir. 2004). The movant must demonstrate actual prejudice from the misrepresentation or misconduct, and the Court has discretion to grant the motion. *See id.*

Tembec submits this motion in the alternative to the Court "within a reasonable time" of the judgment entered.  Not even a month has passed since the Court entered judgment pursuant to the stipulation of the parties in this case.[12]

> B.    Tembec Was Misled As To The Applicable Terms Of The SLA

The Government of the United States misled Tembec to believe that no party could or would claim reimbursement of costs or attorneys' fees with respect to any of the softwood lumber litigation terminated pursuant to the SLA.  As evidenced by the timing of events surrounding the SLA amendments and the timing of the Stipulation of Dismissal required by the United States, the terms of the SLA and the terms for terminating litigation were changed after Tembec executed the Stipulation of Dismissal without notice to Tembec and without its agreement on a key material point.

Tembec had agreed to terminate this action and its NAFTA Chapter 11 arbitration claim, based in significant part on the terms of the SLA, which stated that no party would seek to hold any other party liable with respect to the costs and fees of the terminated litigation.  Tembec would be prejudiced were the United States allowed to seek costs and fees in connection with the NAFTA Chapter 11 arbitration proceeding while this case was dismissed.  Tembec would be foreclosed from pursuing the merits of its NAFTA Chapter 11 claims on terms to which it did not agree.  Moreover, Tembec would be litigating the issue of costs and fees before the very tribunal it challenged for bias and overreaching.  It would be effectively subjected to a decision of the Consolidation Tribunal dismissing for lack of jurisdiction the claims of Canfor and Terminal when Tembec was not present in the proceedings.  A favorable decision from

---

[12] A Rule 60(b)(3) motion must be made "not more than one year after the judgment, order, or proceeding was entered or taken."

this Court on Tembec's motion to vacate was always essential to the continuation of Tembec's NAFTA Chapter 11 claims.

The two Governments pulled a last minute "bait-and-switch" of the SLA's Annex 2A documents and, after obtaining Tembec's stipulation to dismissal, the United States has claimed that the Termination of Litigation Agreements previously executed by Tembec were invalid, and misconstrued an ambiguity in the new documents in order to return to the Consolidation Tribunal seeking to recover fees and costs from Tembec. The United States has agreed not to seek any costs or fees against Canfor Corp., another Canadian lumber company whose NAFTA Chapter 11 claims had been consolidated with Tembec's, yet the United States has construed the SLA amendments differently as to Tembec.

The United States' actions are inconsistent with the terms pursuant to which Tembec stipulated dismissal, and even were that inconsistency an unintended consequence of the last minute amendments – which Tembec doubts – unintentional misconduct is sufficient ground for the Court to reinstate this case.

Respectfully submitted,

_/s/_____
Elliot J. Feldman (D.C. Bar No. 418501)
Mark A. Cymrot (D.C. Bar No. 164673)
Michael S. Snarr (D.C. Bar No. 474719)
BAKER & HOSTETLER LLP
1050 Connecticut Ave. N.W.
Suite 1100
Washington D.C. 20036-5304
Tel: (202) 861-1679
Fax: (202) 861-1783
*Counsel for Petitioners*

Dated: November 8, 2006