# Baker Hostetler

Baker&Hostetler LLP

Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304

T 202.861.1500
F 202.861.1783
www.bakerlaw.com

Elliot J. Feldman
direct dial: 202.861.1679
efeldman@bakerlaw.com

October 6, 2006

**VIA HAND-DELIVERY AND E-MAIL**

Professor Albert Jan van den Berg
Mr. Davis R. Robinson
Professor Armand de Mestral
c/o
Mr. Gonzalo Flores
ICSID
1818 H Street, N.W.
Washington D.C. 20433

Re:   *Tribunal's Request For Tembec Submission On Costs*

Dear Members of the Tribunal:

On behalf of Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc. ("Tembec"), we write in response to the Tribunal's letter of September 22, 2006 regarding submissions on the costs of the arbitration proceedings. As explained below, any allocation of arbitration costs and expenses should be governed by a recent agreement between Tembec and the United States, which provides that neither party shall seek to recover its costs and expenses from the other party.

The Governments of the United States of America and Canada entered into a Softwood Lumber Agreement ("SLA") on September 12, 2006. A copy of the final text of the SLA may be found on the Internet at http://www.dfait-maeci.gc.ca/eicb/softwood/SLA-main-en.asp. The SLA provides for the implementation of restrictions on lumber trade, the refund of approximately eighty percent of estimated duties paid by Canadian lumber companies, and the termination of all litigation listed by the two governments as "Covered Actions" under Annex 2A of the SLA.

Annex 2A of the SLA is a "Termination of Litigation Agreement," ("Termination Agreement") according to which the parties to various legal actions in the *Softwood Lumber* dispute have agreed to terminate those actions. The Governments of the United States and Canada requested Counsel for Tembec to sign a Termination Agreement on behalf of Tembec with respect to Tembec's NAFTA Chapter 11 claim and its lawsuit in D.C. District Court seeking to vacate the Tribunal's decision of September 7, 2005. We signed the Termination Agreement on Tembec's behalf for

both actions and returned the signed copies to the Governments of the United States and Canada as instructed on September 20, 2006. Copies of the Termination Agreement are attached hereto as Exhibit A.

We have not yet seen signed copies of the Termination Agreement from Counsel for the United States with respect to the two Tembec actions. However, all indications are that the United States will sign in furtherance of implementing the SLA. The Termination Agreement provides that it may be signed in counterparts, so it is possible that Counsel for the United States already have signed. We are unaware of whether Canfor or Terminal have signed a Termination Agreement with respect to their NAFTA Chapter 11 claims. Their decision whether to sign should have no effect on Tembec for purposes of allocating costs in the Consolidation Tribunal's proceedings.

Paragraph 5 of the Termination Agreement states: "No party to this Termination Agreement shall seek to hold any other party liable to pay its costs and expenses of litigation relating to the Covered Action." Tembec's NAFTA Chapter 11 claim and D.C. District Court action are "Covered Actions" under the terms of the SLA. The scope of Paragraph 5 is broad. It extends to both the costs of the arbitration such as the fees of the arbitral tribunal, travel and other expenses incurred by the arbitrators, or ICSID administrative fees, as well as expenses incurred by the parties in their own representation, including legal fees.

Tembec and the United States should bear their own costs and expenses in accordance with the terms of their Termination Agreement pursuant to the SLA. Accordingly, the Tribunal should make no award of costs for expenses under UNCITRAL Rules Article 38(c), costs of expert advice; 38(d) travel and other expenses of witnesses; or 38(e) reasonable costs for legal representation.

With respect to Article 38(a), fees of the arbitral tribunal; 38(b), travel and other expenses incurred by the arbitrators; and 38(f), expenses of the administering authority; Tembec and the United States each should bear their own respective shares of those costs during the proceedings for this Tribunal until December 7, 2005. Those costs should be divided by the parties with 50% to be paid by the United States, and 50% to be divided evenly among the three Claimants, as proposed by the Tribunal in its letter of November 22, 2005. The costs should be offset by the $50,000 advance deposits paid by each of the parties.

Tembec should have no liability for any costs or expenses after December 7, 2005 when it notified all parties to the proceedings that it had removed its claim from the Consolidated Proceedings and began proceedings in U.S. District Court for the District of Columbia to vacate the Tribunal's September 7, 2005 decision. To the extent that there were any costs under Article 38(a), (b) or (f) associated with Tembec after December 7, 2005, those costs were incurred by the United States to protest to the Tribunal that Tembec should not be allowed to remove its claim from the proceedings when it already had done so. In accordance with the terms of Paragraph 5 of the executed Termination Agreement, Tembec should not be required to pay any of those costs and expenses, as they were incurred solely for the benefit of, and therefore properly belong to, the United States.

The Tribunal should take no action with respect to the Article 1120 proceedings between Tembec and the United States as each party continues to bear its own expenses under Article 38(c), (d), and (e). The costs and expenses for the proceedings under Article 38(a), (b), and (f) already have been divided evenly between the United States and Tembec and assessed against their initial advance deposits to ICSID.

Respectfully submitted,

Elliot J. Feldman
Mark A. Cymrot
Michael S. Snarr
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington D.C. 20036
Tel: 202-861-1600

Counsel to Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc.

# EXHIBIT A

## ANNEX 2A

## TERMINATION OF LITIGATION AGREEMENT

1.   This Termination of Litigation Agreement (Termination Agreement) is a full and complete settlement of the issues raised by Tembec Inc. in the following action (the "Covered Action"):

   NAHA Chapter 11 claim of *Tembec Inc., Tembec Investments Inc. and Tembec Industries Inc. v. United States of America* (collectively "Tembec").

2.   The parties irrevocably consent to the termination of the Covered Action by the filing of the documents referenced in paragraph 3 on the date the 2006 Softwood Lumber Agreement Between the Government of Canada and the Government of the United States of America ("SLA 2006") enters into force, provided that on that date:

   (a)   the Countervailing Duty Order regarding Certain Softwood Lumber from Canada, 67 Fed. Reg. 36,070 (May 22, 2002), as amended, and the Antidumping Duty Order regarding Certain Softwood Lumber from Canada, 67 Fed. Reg. 36,068 (May 22, 2002), as amended (the "Orders"), are retroactively revoked in their entirety as of May 22, 2002 without the possibility that they could be reinstated;

   (b)   the U.S. Department of Commerce ("USDOC") terminates all USDOC proceedings related to the Orders;

   (c)   USDOC has prepared the liquidation instructions attached as Annex 3 to the SLA 2006 and has committed to provide them to USCBP within 3 days after the date the SLA 2006 enters into force to ensure that no cash deposits are collected on the basis of the Orders on or after the date the SLA 2006 enters into force; and

   (d)   The Government of Canada irrevocably commits to pay to Tembec Inc., no later than 60 days after the date that the SLA 2006 enters into force, at least 90 percent of the amount to be paid to Tembec Inc. and its subsidiaries, including, but not limited to, Tembec Industries Inc., Excel Forest Products Inc., Marks Lumber Ltd. and Spruce Falls Inc., pursuant to the Agreement of Purchase and Sale described in Annex 2C of SLA 2006.

3.   Canada or the United States, as the case may be, shall file consent motions for termination or notices of dismissal of the Covered Action on the date the SLA 2006 enters into force. This Termination Agreement, along with termination agreements covering all other parties to the Covered Action, and a letter from the United States certifying the full satisfaction of the preconditions for termination listed in subparagraphs 2(a) through 2(c) shall constitute proof of unanimous consent to the termination of the Covered Action.

4.    Canada and the United States shall request dismissal of any new lawsuits concerning the same subject matter as the Covered Action that are filed before the date of entry into force of the SLA 2006.

5.    No party to this Termination Agreement shall seek to hold any other party liable to pay its costs and expenses of litigation relating to the Covered Action.

6.    This Termination Agreement is without prejudice to the position of any party on any issue in the Covered Action.

7.    The parties shall not re-file the Covered Action.

8.    For purposes of paragraphs 4, 5, and 7, *Certain Softwood Lumber Products from Canada (Original CVD Investigation)*, Secretariat File No. USA-CDA-2002-1904-03 shall be treated in the same manner as a Covered Action.

9.    This Termination Agreement may not be altered, amended, modified, or otherwise changed other than through the written agreement of all parties hereto.

10.    This Termination Agreement shall bind the parties, their officers, directors, employees, predecessors, subsidiaries, heirs, executors, administrators, agents, successors, and assigns.

11.    As evidence of their consent to this Termination Agreement, the parties, through their duly-authorized Representatives, have signed below.

12.    This Termination Agreement may be executed in counterparts, each one of which shall be deemed an original and all of which together shall constitute one and the same Termination Agreement.

By:

By: _/s/ Elliot Feldman_____ Dated: Sept. 20, 2006
Elliot J. Feldman
Baker & Hostetler, LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, NW.
Washington, DC 20036-5304

*Counsel for Tembec Inc.*

By: _____ Dated: _____, 2006
Andrea J. Menaker
Chief, NAFTA Arbitration
Division Office of the Legal
Adviser
U.S. Department of State
Washington, D.C.

Counsel for the United States with respect to the NAFTA Chapter 11 claim of *Tembec Inc., Tembec Investments Inc. and Tembec Industries Inc. v. United States of America* (collectively "Tembec")

ANNEX 2A

**TERMINATION OF LITIGATION AGREEMENT**

1.      This Termination of Litigation Agreement (Termination Agreement) is a full and complete settlement of the issues raised by Tembec Inc. in the following action (the "Covered Action"):

*Tembec et al. v. United States* (Civil Action No. 05-2345 (U.S. District Ct. for the District of Columbia)).

2.      The parties irrevocably consent to the termination of the Covered Action by the filing of the documents referenced in paragraph 3 on the date the 2006 Softwood Lumber Agreement Between the Government of Canada and the Government of the United States of America ("SLA 2006") enters into force, provided that on that date:

(a)     the Countervailing Duty Order regarding Certain Softwood Lumber from Canada, 67 Fed. Reg. 36,070 (May 22, 2002), as amended, and the Antidumping Duty Order regarding Certain Softwood Lumber from Canada, 67 Fed. Reg. 36,068 (May 22, 2002), as amended (the "Orders"), are retroactively revoked in their entirety as of May 22, 2002 without the possibility that they could be reinstated;

(b)     the U.S. Department of Commerce ("USDOC") terminates all USDOC proceedings related to the Orders;

(c)     USDOC has prepared the liquidation instructions attached as Annex 3 to the SLA 2006 and has committed to provide them to USCBP within 3 days after the date the SLA 2006 enters into force to ensure that no cash deposits are collected on the basis of the Orders on or after the date the SLA 2006 enters into force; and

(d)     The Government of Canada irrevocably commits to pay to Tembec Inc., no later than 60 days after the date that the SLA 2006 enters into force, at least 90 percent of the amount to be paid to Tembec Inc. and its subsidiaries, including, but not limited to, Tembec Industries Inc., Excel Forest Products Inc., Marks Lumber Ltd. and Spruce Falls Inc., pursuant to the Agreement of Purchase and Sale described in Annex 2C of SLA 2006.

3.      Canada or the United States, as the case may be, shall file consent motions for termination or notices of dismissal of the Covered Action on the date the SLA 2006 enters into force. This Termination Agreement, along with termination agreements covering all other parties to the Covered Action, and a letter from the United States certifying the full satisfaction of the preconditions for termination listed in subparagraphs 2(a) through 2(c) shall constitute proof of unanimous consent to the termination of the Covered Action.

1

4.      Canada and the United States shall request dismissal of any new lawsuits concerning the same subject matter as the Covered Action that are filed before the date of entry into force of the SLA 2006.

5.      No party to this Termination Agreement shall seek to hold any other party liable to pay its costs and expenses of litigation relating to the Covered Action.

6.      This Termination Agreement is without prejudice to the position of any party on any issue in the Covered Action.

7.      The parties shall not re-file the Covered Action.

8.      For purposes of paragraphs 4, 5, and 7, *Certain Softwood Lumber Products from Canada (Original CVD Investigation),* Secretariat File No. USA-CDA-2002-1904-03 shall be treated in the same manner as a Covered Action.

9.      This Termination Agreement may not be altered, amended, modified, or otherwise changed other than through the written agreement of all parties hereto.

10.     This Termination Agreement shall bind the parties, their officers, directors, employees, predecessors, subsidiaries, heirs, executors, administrators, agents, successors, and assigns.

11.     As evidence of their consent to this Termination Agreement, the parties, through their duly-authorized Representatives, have signed below.

12.     This Termination Agreement may be executed in counterparts, each one of which shall be deemed an original and all of which together shall constitute one and the same Termination Agreement.

By:

By: _____ Dated: Oct. 20, 2006
**Elliot J. Feldman**
Baker & Hostetler, LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, NW.
Washington, DC 20036-5304

*Counsel for Tembec Inc.*

By: _____ Dated: _____, 2006
**Alexander Kenneth Haas**
U.S. Department of Justice
20 Massachusetts Avenue,
NW Washington, D.C.

Counsel for the United States in *Tembec et al. v. United States* (Civil Action No. 05-2345 (U.S. District Ct. for the District of Columbia))

2