IN THE CONSOLIDATED ARBITRATION PURSUANT TO ARTICLE 1126
OF THE NORTH AMERICAN FREE TRADE AGREEMENT
AND THE UNCITRAL ARBITRATION RULES
BETWEEN

CANFOR CORPORATION, TERMINAL FOREST
PRODUCTS LTD., AND TEMBEC INC. *ET AL.*,

                            *Claimants/Investors,*

         *-and-*

UNITED STATES OF AMERICA,

                            *Respondent/Party.*

## WITNESS STATEMENT OF MARY T. REDDY

1.       My full name is Mary Theresa Reddy and my address is c/o Office of the Legal Adviser, L/EX, Rm. 5519, U.S. Department of State, Washington, D.C. 20520-6419. I am a Personnel Officer and the Attorney Recruitment Coordinator in the Office of the Executive Director in the Legal Adviser's Office at the United States Department of State. I am familiar with the salaries and benefits for employees in the Legal Adviser's Office, including the attorneys and full-time paralegals in the NAFTA Arbitration Division of the Office of International Claims and Investment Disputes. The statements I make herein are based on my personal knowledge and the records ordinarily consulted by me and other members of the human resources team at the Legal Adviser's Office.

2.       Compensation for attorneys in the Legal Adviser's Office at the United States Department of State is determined based on experience (usually, the number of years since graduation from law school) and using the General Schedule (GS). In my

experience as Attorney Recruiting Coordinator, attorneys' salaries on the GS scale are substantially below the level of compensation offered at private law firms. For example, an attorney in the Legal Adviser's Office who has just graduated from law school would typically receive compensation at grade 11, step 10 on the GS scale. In the salary table for 2006, GS 11 step 10 corresponds to an annual salary of $70,558 for the Washington, D.C. area. The typical law firm salary of a first year associate at Washington, D.C. law firms is around $135,000. Similarly, at other levels of experience, attorney compensation on the GS scale tends to be about one-half the typical annual salary in the private sector for lawyers with equivalent experience.

3.      The average value of annual benefits provided to employees compensated in accordance with the GS scale is 25.6% of the annual salary. Although individual employees' selections of benefits options create variations in the exact value of benefits, the Department of State uses 25.6% of salary as the value of benefits in its own internal accounting, for example, when funds are allocated for a new hire.[1]

4.      To derive an hourly wage using the annual salary on the GS scale, the annual salary is divided by 2087 hours per year. This is the standard number of hours per year used for internal accounting purposes.

5.      The value of salary and benefits for the attorneys and full-time paralegals working on the *Canfor*, *Tembec*, and Softwood Lumber consolidation cases has been derived using the appropriate salary tables on the GS for the relevant years, using 25.6% of salary as the average value of benefits, and dividing by 2087 hours per year to obtain

---

[1] The Submission on Costs in the *Canfor* arbitration mistakenly calculated benefits as 7.5% of salaries. *See* Submission on Costs of Respondent United States of America (Jan. 14, 2005), appended hereto at Exhibit A. The correct figure is 25.6%. That figure is regularly used by the Department of Resource Management in estimating the cost of hiring civil service employees in the State Department, such as the attorneys and full-time paralegals in the Legal Adviser's Office.

an hourly value of salary and benefits.  According to our records, the following were the costs to the United States Government of the salaries and benefits for the following attorneys and paralegals in the Legal Adviser's Office in the years indicated:

| 2002 | | | | |
|---|---|---|---|---|
| Name | Salary | Benefits (25.6%) | Annual Total | Hourly Total |
| Barton Legum | $110,474 | $28,281 | $138,755 | **$66.49** |
| Andrea J. Menaker | $98,198 | $25,139 | $123,337 | **$59.10** |
| Jennifer I. Toole | $55,694 | $14,258 | $69,952 | **$33.52** |

| 2003 | | | | |
|---|---|---|---|---|
| Name | Salary | Benefits (25.6%) | Annual Total | Hourly Total |
| Barton Legum | $115,184 | $29,487 | $144,671 | **$69.32** |
| Andrea J. Menaker | $105,586 | $27,030 | $132,616 | **$63.54** |
| Mark S. McNeill | $95,987 | $24,573 | $120,560 | **$57.77** |
| Jennifer I. Toole | $58,070 | $14,866 | $72,936 | **$34.95** |

| 2004 | | | | |
|---|---|---|---|---|
| Name | Salary | Benefits (25.6%) | Annual Total | Hourly Total |
| Barton Legum | $123,622 | $31,647 | $155,269 | **$74.40** |
| Andrea J. Menaker | $110,256 | $28,226 | $138,482 | **$66.35** |
| Mark S. McNeill | $103,573 | $26,515 | $130,088 | **$62.33** |
| Jennifer I. Toole | $72,108 | $18,460 | $90,568 | **$43.40** |
| Michelle G. Boyle | $60,638 | $15,523 | $76,161 | **$36.49** |

| 2005 | | | | |
|---|---|---|---|---|
| Name | Salary | Benefits (25.6%) | Annual Total | Hourly Total |
| Andrea J. Menaker | $117,809 | $30,159 | $147,968 | **$70.90** |
| Mark S. McNeill | $110,878 | $28,385 | $139,263 | **$66.73** |
| Jennifer I. Toole | $103,947 | $26,610 | $130,557 | **$62.56** |
| Michelle G. Boyle | $64,981 | $16,635 | $81,616 | **$39.11** |
| Renee M. Gardner | $35,452 | $9,076 | $44,528 | **$21.34** |

| 2006 | | | | |
|---|---|---|---|---|
| **Name** | **Salary** | **Benefits (25.6%)** | **Annual Total** | **Hourly Total** |
| Andrea J. Menaker | $121,856 | $31,195 | $153,051 | **$73.34** |
| Mark S. McNeill | $118,272 | $30,278 | $148,550 | **$71.18** |
| Jennifer I. Toole | $107,521 | $27,525 | $135,046 | **$64.71** |
| Michelle G. Boyle | $67,216 | $17,207 | $84,423 | **$40.45** |
| Renee M. Gardner | $36,671 | $9,388 | $46,059 | **$22.07** |

I affirm under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Mary T. Reddy

Washington, D.C.
April 7, 2006

# Exhibit A

IN THE ARBITRATION UNDER CHAPTER ELEVEN
OF THE NORTH AMERICAN FREE TRADE AGREEMENT
AND THE UNCITRAL ARBITRATION RULES
BETWEEN

CANFOR CORPORATION,

Claimant/Investor,

-and-

UNITED STATES OF AMERICA,

Respondent/Party.

# SUBMISSION ON COSTS OF
# RESPONDENT UNITED STATES OF AMERICA

Mark A. Clodfelter
 *Assistant Legal Adviser for International
 Claims and Investment Disputes*
Andrea J. Menaker
 *Chief, NAFTA Arbitration Division, Office
 of International Claims and Investment
 Disputes*
Mark S. McNeill
Jennifer I. Toole
 *Attorney-Advisers, Office of International
 Claims and Investment Disputes*
UNITED STATES DEPARTMENT OF STATE
Washington, D.C. 20520

January 14, 2005

# CONTENTS

I.    COSTS PRESUMPTIVELY BORNE BY THE UNSUCCESSFUL PARTY ............................................... 2

II.   COSTS OF LEGAL REPRESENTATION .................................................................................... 3

    A.   Organizational Phase ..................................................................................... 6

    B.   Document Production Phase ........................................................................... 7

    C.   Jurisdictional Objection Phase ...................................................................... 8

CONCLUSION .......................................................................................................... 9

IN THE ARBITRATION UNDER CHAPTER ELEVEN
OF THE NORTH AMERICAN FREE TRADE AGREEMENT
AND THE UNCITRAL ARBITRATION RULES
BETWEEN

CANFOR CORPORATION,

              *Claimant/Investor,*

     *-and-*

UNITED STATES OF AMERICA,

              *Respondent/Party.*

## SUBMISSION ON COSTS OF
## RESPONDENT UNITED STATES OF AMERICA

In accordance with the Tribunal's order at the conclusion of the hearing on December 9, 2004,[1] and pursuant to Articles 38 and 40 of the UNCITRAL Arbitration Rules, respondent United States of America respectfully makes this submission on the quantification of its costs. In accordance with the Tribunal's instructions, this submission addresses the amount of costs incurred by the United States at each phase of these proceedings.[2] As detailed below, the total cost incurred by the United States in these proceedings is $471,962.93.

Article 38 of the UNCITRAL Arbitration Rules lists six categories of expenses to be included in the "costs" of arbitration: (a) fees of the arbitral tribunal; (b) travel and other expenses incurred by the arbitrators; (c) costs of expert advice; (d) travel and other expenses of witnesses; (e) reasonable costs for legal representation; and (f) fees and

---

[1] *See* Hearing Transcript ("Hrg. Tr.") Vol. 3 (Dec. 9, 2004) at 762-69.

[2] *See id.* at 766. A chart reflecting the breakdown of the United States' costs, by phase, is attached at Annex I.

-2-

expenses of the appointing authority.  Article 40 provides that costs in categories (a) through (d) and (f) are presumptively to be borne by the unsuccessful party in the arbitration.  Costs in category (e) may be apportioned at the tribunal's discretion.

The United States details below the expenses it incurred in defending against Canfor's claim.  Section I addresses costs that are presumptively to be borne by the unsuccessful party.  Section II addresses expenses that may be apportioned at the Tribunal's discretion.  The United States has been exceptionally conservative in calculating these costs and has not included costs that could not be ascertained with reasonable precision.  Accordingly, if the United States prevails in this arbitration and Canfor's claim is dismissed, the Tribunal should award the United States the full amount requested herein.

## I.    COSTS PRESUMPTIVELY BORNE BY THE UNSUCCESSFUL PARTY

### A.  Tribunal Expenses

Expenses of the Tribunal, referred to in Article 38(a) and (b) of the UNCITRAL Arbitration Rules, are presumptively to be borne by the losing party.  As the Tribunal is aware, the parties have been asked to deposit advances towards the Tribunal's costs.  To date, the advances to be paid by the United States total $350,000.

The attached Witness Statement of John Rinaldi ("Rinaldi Statement") details those expenses by fiscal year.  The spreadsheets attached to the Rinaldi Statement compile entries for expenses in the *Canfor* case that were extracted from the database maintained by the Office of the Executive Director in the Legal Adviser's Office at the United States Department of State.  The $150,000 already paid as an advance appears on

-3-

the first spreadsheet attached to the Rinaldi Statement at line 2. The additional advance of $200,000 requested by the Tribunal is currently being processed by the United States and is expected to be deposited in approximately one month. This advance payment appears on line 6 of the first spreadsheet attached to the Rinaldi Statement. If Canfor's claim is dismissed, Canfor should bear the full amount of the Tribunal's costs.

### B. Fees and Expenses of the Appointing Authority

Fees and expenses of the appointing authority, referred to in Article 38(f) of the UNCITRAL Arbitration Rules, are also presumptively to be borne by the unsuccessful party. NAFTA Article 1124(1) designates the Secretary-General of ICSID as the appointing authority for arbitrations under Chapter Eleven. In January 2003, the United States provided notice of its challenge to the arbitrator originally appointed by Canfor. The United States paid $3,500 to ICSID as the fee for making this challenge. That expense is recorded in the first spreadsheet attached to the Rinaldi Statement at line 1. After multiple rounds of briefing and immediately prior to ICSID's rendering a decision on the challenge, Canfor's appointed arbitrator resigned. Canfor should bear the full amount of the fees paid by the United States to ICSID for making this challenge.

## II.    COSTS OF LEGAL REPRESENTATION

Pursuant to Article 40 of the UNCITRAL Arbitration Rules, the Tribunal may impose costs of legal representation and assistance on the unsuccessful party if such an apportionment is reasonable. If Canfor's claims are dismissed for lack of jurisdiction, Canfor should be assessed the entire amount of the United States' legal costs.

We address below the United States' costs for legal representation for each of the following phases of this arbitration: (a) the organizational phase (including the United States' challenge to Canfor's appointed arbitrator and the disputes concerning bifurcation and place of arbitration); (b) document production; and (c) the United States' jurisdictional objection.

As discussed in more detail in the attached Witness Statement of Andrea J. Menaker ("Menaker Statement"), the United States' cost estimates are conservative in many respects. For example, some State Department attorneys who devoted significant time to this case have not been included in this calculation, including Deputy Legal Adviser Ronald Bettauer, and Assistant Legal Adviser for International Claims and Investment Disputes, Mark Clodfelter.

The United States' calculation also excludes the significant amount of time spent by attorneys at other U.S. Government agencies, including the Department of Commerce, the International Trade Commission, the Office of the United States Trade Representative and the Department of the Treasury. Several of those attorneys spent substantial amounts of time providing relevant factual background to the State Department attorneys working on this case. These attorneys from other agencies also devoted considerable time to reviewing and commenting on the United States' submissions and providing assistance at the jurisdictional hearing.

This calculation also excludes significant administrative support services provided by paralegals, secretaries, interns and law clerks employed by the State Department. Only the cost for the time of one paralegal, currently dedicated full-time to work for the NAFTA Arbitration Division, has been included.

-5-

Moreover, unlike a private law firm, the Office of the Legal Adviser does not account for administrative services, such as the cost of in-house copying. Similarly, no record is kept for the costs of telephone charges, facsimile charges, electronic research charges, local travel, and overtime meals. Consequently, these costs have not been sought.

Photocopying costs have been included only where the United States engaged the assistance of an outside vendor. For all other copying, Office of the Legal Adviser support staff performed the services and no estimate of the costs of their labor or of supplies has been made.

Finally, with respect to the individuals for whom legal expenses have been included, the amounts sought are reasonable. The attorneys and paralegals in the Office of the Legal Adviser do not record the number of hours that they devote to any particular matter. In calculating costs for attorney and paralegal time related to each phase of this arbitration, the United States thus employed the following methodology. Andrea Menaker, Chief of the NAFTA Arbitration Division, estimated the number of hours spent by the attorneys and paralegal assigned to the *Canfor* case during each phase of these proceedings during each calendar year. (*See* Menaker Statement ¶ 9.) The hourly value of these attorneys' and paralegal's salaries and benefits for each year were obtained from the Executive Director's Office in the Legal Adviser's Office at the Department of State. (*See* Witness Statement of Mary Reddy ("Reddy Statement") ¶ 5.) Multiplying the appropriate number of hours spent by each employee during each phase of the proceedings by the hourly cost of salary and benefits for that attorney or paralegal and then adding the results yields the total estimated cost of legal representation by the United

States for the relevant phase. (*See* Rinaldi Statement ¶ 2.) Pursuant to the Tribunal's instructions, the United States has provided a breakdown of these costs, by phase, at Annex I.

Employing this methodology yields a result that is far less than would have been realized were other methods used. For example, if the United States had calculated attorney fees by using the hourly billable rate for attorneys in the market with the experience of the attorneys and paralegal in the NAFTA Arbitration Division, rather than out-of-pocket expenses, the costs for legal representation in this case would have been significantly higher. (*See* Menaker Statement ¶ 10; *see also* Reddy Statement ¶¶ 2-3.)

For all of these reasons, the amount the United States seeks for its costs of legal representation and assistance is reasonable and, in fact, very conservative.

### A.    Organizational Phase

The organizational phase of this arbitration included work entailed in challenging the arbitrator originally appointed by Canfor; argument on bifurcation and the place of arbitration; and preparation for, and attendance at, the first organizational meeting. As detailed below, the total cost incurred by the United States during the organizational phase is $23,607.99.

For the organizational phase, the United States' costs for legal representation and assistance comprise two categories: (1) travel expenses; and (2) attorney and paralegal time. The travel expenses in this phase consist of transportation costs incurred for the attorneys to attend the Tribunal's First Organizational Hearing on October 28, 2003, in New York. Attorneys who traveled in connection with this case did so by economy class

-7-

at government rates.  The total amount of these travel expenses is $1,235.80.  Attorney

travel costs are detailed in the attachment to the Rinaldi Statement at lines 8-13.

The United States has also calculated the cost for attorney and paralegal time

attributable to the organizational phase.  This amount is $18,872.19.  Support for this cost

can be found in the witness statements of Andrea Menaker, Mary Reddy and John

Rinaldi.

The United States prevailed during this phase, with regard to challenging Canfor's

original arbitral appointment, requesting bifurcation, and designating Washington, D.C.

as the place of arbitration.  Therefore, it is reasonable to require the full amount of the

costs of this phase to be born by Canfor.

### B.    Document Production Phase

This phase included briefing on Canfor's request for all documents relating to the

drafting or negotiation of several NAFTA provisions[3] and production of a more limited

range of documents.  As detailed below, the total cost incurred by the United States

during the document production phase is $16,631.04.

Costs in this phase fall into two categories:  (1) costs for the services of an outside

vendor; and (2) costs of attorney and paralegal time.  An outside vendor was engaged to

copy the documents produced by the United States.  The total amount paid for these

services is $3,730.69 and appears at lines 3, 4 and 5 of the first spreadsheet attached to

the Rinaldi Statement.  As the party requesting these documents, Canfor should be

required to pay for the costs of copying them.

---

[3] *See* Letter from Canfor to the United States of March 8, 2004.

The total cost for attorney and paralegal time devoted to the document production phase is $12,900.35. Support for this cost can be found in the witness statements of Andrea Menaker, Mary Reddy, and John Rinaldi.

The United States objected to Canfor's overly broad request for documents that were not shared among the NAFTA Parties and which were of a nature likely to be protected from disclosure. Canfor's request for documents, in large part, was denied by the Tribunal. At considerable expense, the United States complied with the Tribunal's order to produce documents with respect to certain NAFTA provisions that were shared among the three NAFTA Parties. It is reasonable to apportion the costs associated with this phase to the unsuccessful party in the arbitration. Consequently, if Canfor's claim is dismissed, Canfor should bear the full amount of these costs.

### C.    Jurisdictional Objection Phase

The United States devoted a significant amount of time and resources to making its jurisdictional objection. The most significant costs were incurred in consulting with several other government agencies, drafting our Objection to Jurisdiction and Reply, and preparing for and participating in the hearing on jurisdiction. The total cost of attorney and paralegal time for the jurisdictional phase of these proceedings is $81,723.89, support for which can be found in the witness statements of Andrea Menaker, Mary Reddy and John Rinaldi. If the Tribunal dismisses Canfor's claim for lack of jurisdiction, as the United States has requested, all of the United States' costs for this phase ought to be borne by Canfor.

-9-

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Tribunal render an award pursuant to Article 40(1) and (2) of the UNCITRAL Arbitration Rules, ordering that Canfor bear the costs of this arbitration, as well as the United States' costs for legal representation and assistance, in the amount of $471,962.93.

*Respectfully submitted,*

Mark A. Clodfelter
  *Assistant Legal Adviser for International*
  *Claims and Investment Disputes*
Andrea J. Menaker
  *Chief, NAFTA Arbitration Division, Office*
  *of International Claims and Investment*
  *Disputes*
Mark S. McNeill
Jennifer I. Toole
  *Attorney-Advisers, Office of International*
  *Claims and Investment Disputes*
UNITED STATES DEPARTMENT OF STATE
Washington, D.C. 20520

January 14, 2005

ANNEX I

| Expense | Organizational Phase | Document Production Phase | Jurisdictional Objection Phase | Total |
|---|---|---|---|---|
| Tribunal Fees | n/a | n/a | n/a | $350,000.00 |
| ICSID Fees | $3,500.00 | n/a | n/a | $3,500.00 |
| Vendor Fees | n/a | $3,730.69 | n/a | $3,730.69 |
| Travel Expenses | $1,235.80 | n/a | n/a | $1,235.80 |
| Attorney and Paralegal Time | $18,872.19 | $12,900.35 | $81,723.89 | $113,496.44 |
| | | | | |
| Totals | $23,607.99 | $16,631.04 | $81,723.89 | $471,962.93 |

IN THE ARBITRATION UNDER CHAPTER ELEVEN
OF THE NORTH AMERICAN FREE TRADE AGREEMENT
AND THE UNCITRAL ARBITRATION RULES
BETWEEN

CANFOR CORPORATION,

> *Claimant/Investor,*

-and-

UNITED STATES OF AMERICA,

> *Respondent/Party.*

## WITNESS STATEMENT OF JOHN RINALDI

1.      My full name is John Charles Rinaldi and my address is c/o Office of the
Legal Adviser, L/EX, Rm. 5519, U.S. Department of State, Washington, D.C. 20520-
6419.  I am a Budget Analyst in the Office of the Executive Director of the Legal
Adviser's Office at the United States Department of State.  I am familiar with the
financial obligations and expenditures of the Legal Adviser's Office and the record
keeping system for such obligations and expenditures.  The statements I make herein are
based on my personal knowledge and experience and the records ordinarily consulted by
myself and other members of the budget and finance team at the Legal Adviser's Office.

2.      Attached to this statement is a spreadsheet showing expenditures in the
*Canfor* case by fiscal year for 2003 through 2005.  I extracted the line items shown in this
spreadsheet from a database tracking expenditures by the Office of the Legal Adviser,
Office of International Claims and Investment Disputes.  Only those expenditures in the
*Canfor* case were included.  These fall into several categories:  (a) ICSID fees; (b)

-2-

Tribunal expenses (the advances requested by the Tribunal); and (c) payments to an outside vendor for copying services.

3.     Also included in the spreadsheet are travel expenses for the *Canfor* case for fiscal year 2003 (the only year in which travel expenses were incurred). These expenses were also extracted from a larger database and then reviewed for accuracy. These travel costs include only travel by the attorneys in the NAFTA Arbitration Division. For all domestic travel by State Department attorneys in this case, and in accordance with general practice in the Legal Adviser's Office, the costs shown reflect the purchase of economy class tickets at discounted government rates. The total amount of these attorney travel expenses is $1,235.80.

4.     The State Department's accounting system does not track the cost of Federal Express, DHL and courier deliveries, or telephone or fax charges, incurred in connection with a specific matter. Nor does it permit tracking Westlaw, Lexis or other database usage for a specific matter. The same is true for duplicating and binding of documents in-house. Charges for none of these services are included in the attached spreadsheets.

5.     Also included in the attached spreadsheet is a calculation of the value of attorney and paralegal time devoted to the *Canfor* case. The estimated number of hours of each attorney's and paralegal's time in a given year that was devoted to each phase of the *Canfor* case was multiplied by the hourly cost of salary and benefits for that attorney or paralegal in that year. These calculations were made using data from Andrea Menaker, Chief of the NAFTA Arbitration Division of the Office of International Claims and Investment Disputes in the Legal Adviser's Office, and Mary Reddy, Personnel

-3-

Officer in the Office of the Executive Director in the Legal Adviser's Office.  The total

amount of the cost to the United States Government of the attorney time and paralegal

time devoted to the *Canfor* case is $113,496.44.

I affirm under penalty of perjury that
the foregoing is true and correct to
the best of my knowledge,
information and belief.

John C. Rinaldi

Washington, D.C.
January 14, 2005

## VENDOR EXPENSE DETAIL FOR CANFOR CASE

| | A Vendor | B Description of Products / Services | C Date Paid | D Invoice / Requisition Number | E Organizational Phase | F Document Production Phase | G Jurisdictional Objection Phase | H Total |
|---|---|---|---|---|---|---|---|---|
| | | | | **Fiscal Year 2003** | | | | |
| 1 | ICSID | Fee for Challenging an Arbitrator | 02/05/03 | Requisition No. 1004-302020 | $3,500.00 | n/a | n/a | $3,500.00 |
| | | | | **Fiscal Year 2004** | | | | |
| 2 | Shearman & Sterling L.L.P. | Advance Deposit for Arbitration Expenses | 01/12/04 | Requisition No. 1004-402023 | n/a | n/a | n/a | $150,000.00 |
| 3 | Uniscribe Professional Services | Printing Services | 09/22/04 | Invoice No. 60061055 | n/a | $1,804.40 | n/a | $1,804.40 |
| 4 | Uniscribe Professional Services | Printing Services | 12/27/04 | Invoice No. 60046755 | n/a | $1,145.74 | n/a | $1,145.74 |
| 5 | Uniscribe Professional Services | Printing Services | 12/27/04 | Invoice No. 60047531 | n/a | $780.55 | $780.55 | $780.55 |
| | | | | **Fiscal Year 2005** | | | | |
| 6 | Shearman & Sterling L.L.P. | Advance Deposit for Arbitration Expenses | Expected to be paid by 02/14/05 | Requisition No. 1004-504100 | n/a | n/a | n/a | $200,000.00 |
| 7 | TOTALS | | | | $3,500.00 | $3,730.69 | n/a | $357,230.69 |

| | A | B | C | D |
|---|---|---|---|---|
| | | TRAVEL EXPENSES FOR *CANFOR* CASE (Calendar Year 2003, Organizational Phase) | | |
| | Traveler | Itinerary | Date Paid | Amount Paid |
| 8 | Mark A. Clodfelter | Washington, D.C. to N.Y.C. to Washington, D.C., 10/28/03 | 11/04/03 | $268.16 |
| 9 | Barton Legum | Washington, D.C. to N.Y.C. to Washington, D.C., 10/28/03 - 10/29/03 | 11/05/03 | $280.16 |
| 10 | Mark S. McNeill | Washington, D.C. to N.Y.C. to Washington, D.C., 10/28/03 | 08/04/04 | $267.16 |
| 11 | Andrea J. Menaker | Arlington, VA to N.Y.C. to Arlington, VA, 10/28/03 | 11/19/03 | $231.16 |
| 12 | Jennifer I. Toole | Washington, D.C. to N.Y.C. to Washington, D.C., 10/28/03 | 12/03/03 | $189.16 |
| 13 | TOTAL | | | $1,235.80 |

## SALARY EXPENSES FOR CANFOR CASE

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Employee | Salary Annual | Salary Hourly | Benefits Annual | Benefits Hourly | Total Compensation Annual | Total Compensation Hourly | Organizational Hrs. | Organizational Value | Document Production Hrs. | Document Production Value | Jurisdictional Objection Hrs. | Jurisdictional Objection Value | Total Hrs. | Total Value |
| | | | | | | **Calendar Year 2002** | | | | | | | | | |
| 14 | Barton Legum | $110,474 | $52.93 | $8,286 | $3.97 | $118,760 | $56.90 | 12 | $682.86 | n/a | n/a | n/a | n/a | 12 | $682.86 |
| 15 | Andrea J. Menaker | $98,198 | $47.05 | $7,365 | $3.53 | $105,563 | $50.58 | 15 | $758.72 | n/a | n/a | n/a | n/a | 15 | $758.72 |
| 16 | Jennifer I. Toole | $55,694 | $26.69 | $4,177 | $2.00 | $59,871 | $28.69 | 4 | $114.75 | n/a | n/a | n/a | n/a | 4 | $114.75 |
| 17 | Subtotals | | | | | | | 31 | $1,556.32 | | | | | 31 | $1,556.32 |
| | | | | | | **Calendar Year 2003** | | | | | | | | | |
| 18 | Barton Legum | $115,184 | $55.19 | $8,639 | $4.14 | $123,823 | $59.33 | 70 | $4,153.14 | n/a | n/a | 105 | $6,229.71 | 175 | $10,382.86 |
| 19 | Mark S. McNeill | $95,987 | $45.99 | $7,199 | $3.45 | $103,186 | $49.44 | 173 | $8,553.51 | n/a | n/a | 310 | $15,327.10 | 483 | $23,880.61 |
| 20 | Andrea J. Menaker | $105,586 | $50.59 | $7,919 | $3.79 | $113,505 | $54.39 | 60 | $3,263.20 | n/a | n/a | 65 | $3,535.13 | 125 | $6,798.33 |
| 21 | Jennifer I. Toole | $58,070 | $27.82 | $4,355 | $2.09 | $62,425 | $29.91 | 45 | $1,346.01 | n/a | n/a | 23 | $687.96 | 68 | $2,033.97 |
| 22 | Subtotals | | | | | | | 348 | $17,315.87 | n/a | n/a | 503 | $25,779.91 | 851 | $43,095.78 |
| | | | | | | **Calendar Year 2004** | | | | | | | | | |
| 23 | Barton Legum | $123,622 | $59.23 | $9,272 | $4.44 | $132,894 | $63.68 | n/a | n/a | 10 | $636.77 | 5 | $318.39 | 15 | $955.16 |
| 24 | Mark S. McNeill | $103,573 | $49.63 | $7,768 | $3.72 | $111,341 | $53.35 | n/a | n/a | 65 | $3,467.74 | 450 | $24,007.40 | 515 | $27,475.14 |
| 25 | Andrea J. Menaker | $110,256 | $52.83 | $8,269 | $3.96 | $118,525 | $56.79 | n/a | n/a | 35 | $1,987.72 | 305 | $17,321.57 | 340 | $19,309.30 |
| 26 | Jennifer I. Toole | $72,108 | $34.55 | $5,408 | $2.59 | $77,516 | $37.14 | n/a | n/a | 95 | $3,528.52 | 210 | $7,799.89 | 305 | $11,328.40 |
| 27 | Michelle G. Boyle | $60,638 | $29.06 | $4,548 | $2.18 | $65,186 | $31.23 | n/a | n/a | 105 | $3,279.60 | 208 | $6,496.74 | 313 | $9,776.34 |
| 28 | Subtotals | | | | | | | n/a | n/a | 310 | $12,900.35 | 1178 | $55,943.98 | 1488 | $68,844.33 |
| 29 | TOTALS | | | | | | | 379 | $18,872.19 | 310 | $12,900.35 | 1681 | $81,723.89 | 2370 | $113,496.44 |

IN THE ARBITRATION UNDER CHAPTER ELEVEN
OF THE NORTH AMERICAN FREE TRADE AGREEMENT
AND THE UNCITRAL ARBITRATION RULES
BETWEEN

---

CANFOR CORPORATION,

        *Claimant/Investor,*

    *-and-*

UNITED STATES OF AMERICA,

        *Respondent/Party.*

---

## WITNESS STATEMENT OF ANDREA J. MENAKER

1.     My full name is Andrea Jill Menaker and my current address is c/o Office of the Legal Adviser (L/CID), 2430 E Street, N.W., South Building, Suite 203, Washington, D.C. 20037. I am Chief of the NAFTA Arbitration Division of the Office of International Claims and Investment Disputes in the Legal Adviser's Office at the United States Department of State. I am counsel for respondent United States of America in this arbitration. I have supervised the attorneys and paralegal working in the NAFTA Arbitration Division on this matter since I became Chief in July 2004. I previously served as an attorney-adviser in the NAFTA Arbitration Division under the supervision of its former Chief, Barton Legum. The statements I make herein are based on my personal knowledge.

### Cost of Attorney and Paralegal Time

2.     It is my understanding that the Department of State established the NAFTA Arbitration Division (the "Division") in 1999 following the filing of a notice of

-2-

intent to submit a claim to arbitration by Methanex Corp., in June 1999, and the filing of

a notice of arbitration by Mondev International Ltd., in September 1999. The

Department established the Division for the purpose of defending these two cases,

providing assistance to the Department of Justice in defending the case of *Loewen Group,*

*Inc. et al. v. United States of America* (which had been submitted the year before) and

defending any future claims submitted against the United States under the NAFTA

investment chapter.

3.     In 1999, the Department hired five attorneys (including me) to serve in the

Division. It also assigned a contract secretary to work exclusively for the Division.

4.     In late 2001, I was assigned to work on the *Canfor* case, along with Barton

Legum, and another of the Division's attorneys, Jennifer Toole. Other attorneys in the

Division, as well as law clerks and administrative staff, also assisted on the case from

time to time when the workload on the case so demanded.

5.     In January 2003, the Department hired another attorney, Mark S. McNeill,

to replace a departing attorney in the Division, and to assist with the growing caseload.

Mr. McNeill was assigned to the *Canfor* case upon his arrival.

6.     In May 2004, the Department hired an experienced paralegal, Michelle G.

Boyle, to work full-time for the Division. Since she started, she has been primarily

responsible for all paralegal tasks associated with the *Canfor* case, although other

paralegals and interns have assisted on occasion.

7.     Because all of their work is for a single client (the United States

Government), the attorneys and paralegal in the Division do not record the number of

hours they devote to each case. Thus, the hours of attorney and paralegal time indicated in the chart attached to the United States' cost submission are estimates.

8.      In this case, the United States claims only for its out-of-pocket cost for attorney and paralegal time.[1] Such costs can be calculated by multiplying the estimated number of hours devoted by each attorney and paralegal in the Division to each phase of the *Canfor* case by the hourly cost of that attorney's or paralegal's services for the Department (*i.e.*, hourly value of salary and benefits).

9.      The following attorneys and paralegal devoted approximately the following hours to work on each phase of these proceedings:

| 2002 | | | |
|---|---|---|---|
|  | Organizational | Document Production | Jurisdictional |
| Barton Legum | 12 | n/a | n/a |
| Andrea J. Menaker | 15 | n/a | n/a |
| Jennifer I. Toole | 4 | n/a | n/a |
| **2003** | | | |
|  | Organizational | Document Production | Jurisdictional |
| Barton Legum | 70 | n/a | 105 |
| Mark S. McNeill | 173 | n/a | 310 |
| Andrea J. Menaker | 60 | n/a | 65 |
| Jennifer I. Toole | 45 | n/a | 23 |
| **2004** | | | |
|  | Organizational | Document Production | Jurisdictional |
| Barton Legum | n/a | 10 | 5 |
| Mark S. McNeill | n/a | 65 | 450 |
| Andrea J. Menaker | n/a | 35 | 305 |
| Jennifer I. Toole | n/a | 95 | 210 |
| Michelle G. Boyle | n/a | 105 | 208 |

---

[1] This is without prejudice to the United States' right to claim for the market value of the attorney and paralegal time devoted to a case (based on prevailing hourly rates for equivalent legal work) in any future cost submission.

10.     The foregoing calculation is conservative in a number of respects. *First,* as noted above, the calculation is based on out-of-pocket cost to the Department rather than the market value of the attorney time. Before joining the Department, each of the attorneys in the Division, with the exception of Ms. Toole, worked at large, well-respected international law firms. Had the time of the Division's attorneys been valued based on the hourly rates charged by these firms for comparable services, the cost calculated would have been much higher – likely by almost a full order of magnitude.

11.     *Second,* the above calculation does not include the time that other attorneys were required to devote in connection with the defense of this case. Notably, it does not include the time of managing attorneys within the Department's Office of the Legal Adviser, such as Legal Adviser William H. Taft, IV, Deputy Legal Adviser Ronald J. Bettauer or Assistant Legal Adviser Mark A. Clodfelter. Nor does it include the time of attorneys within other offices of the Department or other federal agencies – such as the Department of Commerce, the International Trade Commission, the United States Trade Representative and the Department of Treasury – who spent many hours reviewing and commenting on the United States' submissions in this case and assisting at the jurisdictional hearing.

12.     *Finally,* the above calculation does not include the time of the Division's secretary or other administrative personnel in the Department who worked on the case, with the exception of the full-time paralegal who began working in the Division in May 2004. For example, although the Division outsourced the copying for the document production, it produced all of its other submissions in-house. This was time- and

resource-intensive work that often required the assistance of several other secretaries and paralegals. The above calculation is conservative in this respect as well.

**Travel And Other Costs**

13.     The Department also incurred expenses in the form of travel expenses for lawyers, tribunal expenses, ICSID fees, and copying charges. These costs are detailed in the accompanying witness statement of John Rinaldi, an officer of the Executive Office of the Office of the Legal Adviser (L/EX).

I affirm under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Andrea J. Menaker

Washington, D.C.
January 14, 2005

IN THE ARBITRATION UNDER CHAPTER ELEVEN
OF THE NORTH AMERICAN FREE TRADE AGREEMENT
AND THE UNCITRAL ARBITRATION RULES
BETWEEN

CANFOR CORPORATION,

               *Claimant/Investor,*

    *-and-*

UNITED STATES OF AMERICA,

               *Respondent/Party.*

## WITNESS STATEMENT OF MARY REDDY

1.      My full name is Mary Theresa Reddy and my address is c/o Office of the Legal Adviser, L/EX, Rm. 5519, U.S. Department of State, Washington, D.C. 20520-6419. I am a Personnel Officer and the Attorney Recruitment Coordinator in the Office of the Executive Director in the Legal Adviser's Office at the United States Department of State. I am familiar with the salaries and benefits for employees in the Legal Adviser's Office, including attorneys and the full-time paralegal in the NAFTA Arbitration Division of the Office of International Claims and Investment Disputes. The statements I make herein are based on my personal knowledge and the records ordinarily consulted by myself and other members of the human resources team at the Legal Adviser's Office.

2.      Compensation for attorneys in the Legal Adviser's Office at the United States Department of State is determined based on experience (usually, the number of

-2-

years since graduation from law school) and using the General Schedule (GS). In my

experience as Attorney Recruiting Coordinator, attorneys' salaries on the GS scale are

substantially below the level of compensation offered at private law firms. For example,

an attorney in the Legal Adviser's Office who has just graduated from law school would

typically receive compensation at grade 11, step 10 on the GS scale. In the salary table

for 2004, GS 11 step 10 corresponds to an annual salary of $65,769 for the Washington,

D.C. area. The typical law firm salary of a first year associate at Washington, D.C. law

firms is around $125,000. Similarly, at other levels of experience, attorney compensation

on the GS scale tends to be about one-half the typical annual salary in the private sector

for lawyers with equivalent experience.

3.    The average value of annual benefits provided to employees compensated

in accordance with the GS scale is seven and one-half percent (7.5%) of the annual

salary. Although individual employees' selections of benefits options create variations in

the exact value of benefits, the Department of State uses 7.5% of salary as the value of

benefits in its own internal accounting, for example, when funds are allocated for a new

hire.

4.    To derive an hourly wage using the annual salary on the GS scale, the

annual salary is divided by 2087 hours per year. This is the standard number of hours per

year used for internal accounting purposes.

5.    The value of salary and benefits for the attorneys and the full-time

paralegal working on the *Canfor* case has been derived using the appropriate salary tables

on the General Schedule for the relevant years, using 7.5% of salary as the average value

of benefits, and dividing by 2087 hours per year to obtain an hourly value of salary and

benefits. According to our records, the following were the costs to the United States government of the salaries and benefits for the following attorneys and paralegal in the Legal Adviser's Office in the years indicated:

| 2002 | | | | |
|------|------|------|------|------|
| Name | Salary | Benefits (7.5%) | Annual Total | Hourly Total |
| Barton Legum | $110,474 | $8,286 | $118,760 | $56.90 |
| Andrea J. Menaker | $98,198 | $7,365 | $105,563 | $50.58 |
| Jennifer I. Toole | $55,694 | $4,177 | $59,871 | $28.69 |

| 2003 | | | | |
|------|------|------|------|------|
| Name | Salary | Benefits (7.5%) | Annual Total | Hourly Total |
| Barton Legum | $115,184 | $8,639 | $123,823 | $59.33 |
| Mark S. McNeill | $95,987 | $7,199 | $103,186 | $49.44 |
| Andrea J. Menaker | $105,586 | $7,919 | $113,505 | $54.39 |
| Jennifer I. Toole | $58,070 | $4,355 | $62,425 | $29.91 |

| 2004 | | | | |
|------|------|------|------|------|
| Name | Salary | Benefits (7.5%) | Annual Total | Hourly Total |
| Barton Legum | $123,622 | $9,272 | $132,894 | $63.68 |
| Mark S. McNeill | $103,573 | $7,768 | $111,341 | $53.35 |
| Andrea J. Menaker | $110,256 | $8,269 | $118,525 | $56.79 |
| Jennifer I. Toole | $72,108 | $5,408 | $77,516 | $37.14 |
| Michelle G. Boyle | $60,638 | $4,548 | $65,186 | $31.23 |

I affirm under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

*Mary Reddy*

Mary Reddy

Washington, D.C.
January 14, 2005