ANNEX 2A

## Termination of Litigation Agreement

1.     This Termination of Litigation Agreement (Termination Agreement) is a full and complete settlement of the issues raised by all of the parties in the following actions (the "Covered Actions"):

*Certain Softwood Lumber Products from Canada (Original AD Investigation)*, Secretariat File No. USA-CDA-2002-1904-02;

*Certain Softwood Lumber Products from Canada (CVD 1ˢᵗ Administrative Review)*, Secretariat File No. USA-CDA-2005-1904-01;

*Certain Softwood Lumber Products from Canada (Section 129 Threat-of-Injury Determination)*, Secretariat File No. USA-CDA-2005-1904-03;

*Certain Softwood Lumber Products from Canada (Section 129 AD Determination)*, Secretariat File No. USA-CDA-2005-1904-04;

*Certain Softwood Lumber Products from Canada (AD 2ⁿᵈ Administrative Review)*, Secretariat File No. USA-CDA-2006-1904-01;

*Certain Softwood Lumber Products from Canada (CVD 2ⁿᵈ Administrative Review)*, Secretariat File No. USA-CDA-2006-1904-02;

*Certain Softwood Lumber Products from Canada (Final Scope Ruling Regarding Entries Made Under HTSUS 4409.10.05)*, Secretariat File No. USA-CDA-2006-1904-05;

*Certain Softwood Lumber Products from Canada*, Secretariat File No. ECC-2006-1904-01USA;

*Tembec v. United States* (Consol. Ct. No. 05-00028 (CIT)) and the cases consolidated therein;

*West Fraser v. United States* (Consol. Ct. No. 05-00079 (CIT)) and the cases consolidated therein;

*Ontario Forest Industries Association et al. v. United States* (Court No. 06-00156 (CIT));

*West Fraser v. United States* (Consol. Court No. 06-00157 (CIT)) and the cases consolidated therein;

*Ontario Forest Industries Association et al. v. Canada* (Court No. 06-168 (CIT));

*Tembec et al. v. United States* (Civil Action No. 05-2345 (U.S. District Ct. for the District of Columbia));

*Coalition for Fair Lumber Imports Executive Committee v. United States* (Civil Action No. 05-1366 (D.C. Cir.));

*CLTA v. United States* (Civil Action No. 05-1369 (D.C. Cir.));

*Ontario Forest Industries Association et al. v. Canada et al.* (Civil Action No. 06-989 (U.S. District Ct. for the District of Columbia));

*Ontario Forest Industries Association et al. v. United States* (Civil Action No. 06-1171 (D.C. Cir.));

NAFTA Chapter 11 claim of *Tembec Inc., Tembec Investments Inc. and Tembec Industries Inc. v. United States of America* (collectively "Tembec"); and

The *Consolidated Arbitration Pursuant to Article 1126 of the North American Free Trade Agreement (NAFTA) and the UNCITRAL Arbitration Rules between Canfor Corporation v. United States of America and Terminal Forest Products Ltd. v. United States of America.*

2.      The parties irrevocably consent to the termination of the Covered Actions by the filing of the documents referenced in paragraph 3 on the date the 2006 Softwood Lumber Agreement Between the Government of Canada and the Government of the United States of America ("SLA 2006") enters into force, provided that on that date:

     (a)     the Countervailing Duty Order regarding Certain Softwood Lumber from Canada, 67 Fed. Reg. 36,070 (May 22, 2002), as amended, and the Antidumping Duty Order regarding Certain Softwood Lumber from Canada, 67 Fed. Reg. 36,068 (May 22, 2002), as amended (the "Orders"), are retroactively revoked in their entirety as of May 22, 2002 without the possibility that they could be reinstated;

     (b)     the U.S. Department of Commerce ("USDOC") terminates all USDOC proceedings related to the Orders; and

     (c)     USDOC has prepared the liquidation instructions attached as Annex 3 to the SLA 2006 and has committed to provide them to USCBP within 3 days after the date the SLA 2006 enters into force to ensure that no cash deposits are collected on the basis of the Orders on or after the date the SLA 2006 enters into force.

3.      Canada or the United States, as the case may be, shall file consent motions for termination or notices of dismissal of the Covered Actions on the date the SLA 2006 enters into force. This Termination Agreement and a letter from the United States certifying the full satisfaction of the preconditions for termination listed in subparagraphs 2(a) through 2(c) shall constitute proof of unanimous consent to the termination of the Covered Actions.

4.      Canada and the United States shall request dismissal of any new lawsuits concerning the same subject matter as the Covered Actions that are filed before the date of entry into force of the SLA 2006.

5.      No party to this Termination Agreement shall seek to hold any other party liable to pay its costs and expenses of litigation relating to the Covered Actions.

6.      This Termination Agreement is without prejudice to the position of any party on any issue in the Covered Actions.

7.      The parties shall not re-file any of the Covered Actions.

8.     For purposes of paragraphs 4, 5, and 7, *Certain Softwood Lumber Products from Canada (Original CVD Investigation),* Secretariat File No. USA-CDA-2002-1904-03 shall be treated in the same manner as a Covered Action.

9.     This Termination Agreement may not be altered, amended, modified, or otherwise changed other than through the written agreement of all parties hereto.

10.     This Termination Agreement shall bind the parties, their officers, directors, employees, predecessors, subsidiaries, heirs, executors, administrators, agents, successors, and assigns.

11.     As evidence of their consent to this Termination Agreement, the parties, through their duly-authorized Representatives, have signed below with respect to each of the actions to which they are a party.

12.     This Termination Agreement may be executed in counterparts, each one of which shall be deemed an original and all of which together shall constitute one and the same Termination Agreement.

By:

**Signature Pages for Termination of Litigation Agreement**

By: _____    Dated: _____, 2006
**Donald B. Cameron**
Kaye Scholer, LLP
901 15th Street, NW.
Suite 1100
Washington, DC 20005-2327

Counsel for 46501 BC Ltd., A.J. Forest Products Ltd.,
Allmac Lumber Sales Ltd., Aquila Cedar Products Ltd., Arbutus Manufacturing Ltd.,
Canfor Corporation, Carrier Forest Products Ltd., Carrier Lumber Ltd., Cheslatta
Forest Products Ltd., Stuart Lake Lumber Company Ltd., Stuart Lake Marketing
Corporation (aka Stuart Lake Marketing Inc.),West Chilcotin Forest Products, B&L
Forest Products Ltd., Bakerview Forest Products Inc., Bridgeside Forest Industries,
Ltd. (Bridgeside Higa Forest Industries Ltd.), Canyon Lumber Company Ltd.,
Cardinal Lumber Manufacturing & Sales Inc., Central Cedar Ltd., Centurion Lumber
Manufacturing (1983) Ltd., Chasyn Wood Technologies Inc., City Lumber Sales and
Services Ltd., Coast Clear Wood Ltd., Cooper Creek Cedar Ltd., Dakeryn Industries
Ltd., Davron Forest Products Ltd., Delta Pacific Lumber Sales Inc., Doubletree Forest
Products Ltd., ER Probyn Export Ltd., Errington Cedar Products Ltd., Faulkner
Wood Specialties Limited (Faulkener Wood Specialities Limited), Forwest Wood
Specialties Inc., Fraser Pacific Lumber Company, Fraser Pulp Chips Ltd., Fraserview
Cedar Products Ltd., Goldwood Industries Ltd., Greenwood Forest Products (1983)
Ltd., Hilmoe Forest Products Ltd., Howe Sound Forest Products (2005) Ltd.,
Galloway Lumber Ltd., Hudson Mitchell & Sons Lumber Inc., J.H. Huscroft Ltd.,
Jones Ties & Poles (1978) Ltd., Kalesnnikoff Lumber Co., Ltd., Pope & Talbot Inc.
(and its wholly owned subsidiary Pope & Talbot Ltd.), Sigurdson Bros. Logging
Company Ltd. (aka Sigurdson Brothers Logging Company Ltd.), Hyak Specialty Wood
Products Ltd., Jasco Forest Products Ltd., Jazz Forest Products Ltd., Kenwood
Lumber Ltd., Kootenay Innovative Wood Ltd., Lakeside Timber Ltd., Landmark
Truss & Lumber Inc., Leslie Forest Products Ltd., Lindal Cedar Homes Company,
Mid Valley Lumber Specialties Ltd., Mountain View Specialty Products Ltd., North
Shore Timber Ltd., North Star Wholesale Lumber Ltd., Olympic Industries Inc.,
Oregon-Canadian Holdings Inc., Pacific Lumber Remanufacturing Inc., Pacific
Specialty Wood Products Ltd. (formerly Clearwood Industries Ltd.), Pallan Timber
Products (2000) Ltd., Paragon Industries Ltd., Paragon Ventures Ltd. (Vernon Kiln
and Millwork, Ltd. and 582912 BC, Ltd.), Pat Power Forest Products Corporation,
Peak Forest Products Ltd., Porcupine Wood Products Ltd., Port Moody
Timber Ltd., Power Wood Corp., 637537 B.C. Ltd., Quadra Wood Products Ltd.,
Raintree Lumber Specialties Ltd., Rielly Industrial Lumber Inc., Sawarne Lumber Co.
Ltd., Seed Timber Co. Ltd., Seymour Creek Cedar Products Ltd., Shawood Lumber
Inc., Sylvanex Lumber Products Inc., Top Quality Lumber Ltd., Teal Cedar Products
Ltd., Teal-Jones Group and Teal-Jones Sales Ltd., Terminal Forest Products Ltd.,
TFL Forest Ltd. (aka TimberWest Forest Corp. and TimberWest Forest Company),
TPI Timber Products International (1975) Ltd., Twin Rivers Cedar Products Ltd.,
Uphill Wood Supply Inc., Vancouver Specialty Cedar Products Ltd. (aka Vancouver
Specialty Cedar Products), Vandermeet Forest Products (Canada) Ltd., Visscher
Lumber Inc., Welco Lumber Corporation, and West Bay Forest Products and
Manufacturing Ltd. (aka West Bay Forest Products & Mfg. Ltd. and West Bay Forest
Products & Manufacturing Ltd.), Wynndel Box & Lumber Co. Ltd.

By: _____     Dated: _____, 2006
**Michael T. Shor**
Arnold & Porter, LLP
555 Twelfth Street, NW.
Washington, DC 20004-1206

Counsel for Abitibi-Consolidated, Inc., Abitibi-Consolidated Company of Canada, Buchanan Lumber Sales Inc. et al , Dunkley Lumber Ltd., Produits Forestiers La Tuque Inc., Produits Forestiers Petits Paris Inc., Produits Forestiers Saguenay Inc., Societe En Commandite Opitciwan, Abitibi-LP Engineered Wood Inc., Alberta Spruce Industries Ltd., Buchanan Lumber, a division of Gordon Buchanan Enterprises Ltd., Treeline Wood Products Ltd., Gestofor Inc., Northland Forest Products Ltd., La Crete Sawmills Ltd., and Vanderwell Contractors (1971) Ltd.

By: _____     Dated: _____, 2006
**George R. Tuttle**
Law Offices of George R. Tuttle
Three Embarcadero Center
Suite 1160
San Francisco, CA 94111

Counsel for Anderson Wholesale Inc., North Pacific Trading, Western Rail Ltd.

By: _____     Dated: _____, 2006
**Elliot J. Feldman**
Baker & Hostetler, LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, NW.
Washington, DC 20036-5304

Counsel for Apex Forest Products Inc., Aspen Planers Ltd., Buchanan Lumber Sales Inc. and the Buchanan affiliated mills (including Atikokan Forest Products Ltd., Buchanan Forest Products Ltd., Buchanan Northern Hardwood Inc., Dubreuil Forest Products Limited, Great West Timber Limited, Long Lake Forest Products Inc., McKenzie Forest Products Inc., Nakina Forest Products Limited, Northern Sawmills Inc., Northern Wood, and Solid Wood Products Inc.), Devlin Timber (1992) Ltd., Domtar Inc., Downie Timber Ltd., Federated Co-operatives Limited, Gorman Bros. Lumber Ltd., Haida Forest Products Ltd., Kenora Forest Products Ltd., Lecours Lumber Co. Limited, Liskeard Lumber Limited, Manitou Forest Products Ltd., Midway Lumber Mills Ltd., Mill & Timber Products Ltd., Nickel Lake Lumber, North Enderby Distribution Ltd., North Enderby Timber Ltd., Olav Haavaldsrud Timber Company Limited, R. Fryer Forest Products Limited, Selkirk Specialty Wood Ltd., Tall Tree Lumber Co., Tembec Inc., and Tyee Timber Products Ltd., Canadian American Business Council, Free Trade Lumber Council, Long Lake Forest Products Inc., Ontario Forest Industries Association and its members, Ontario Lumber Manufacturers Association and its members

By: _____     Dated: _____, **2006**
**B. Thomas Peele, III**
Baker & McKenzie, LLP
815 Connecticut Avenue, NW.
Suite 900
Washington, DC 20006-4078

Counsel for Apollo Forest Products Limited,
Buchanan Lumber Sales Inc. et al, Canadian Forest Products Ltd., Canfor Corporation
and its affiliates, Canfor Wood Products Marketing Ltd., Lakeland Mills Ltd.,
Nechako Lumber Co., Ltd.; Slocan Forest Products Ltd., Winton Global Lumber Ltd.
The Pas Lumber Co. Ltd. (Winton Global Lumber Ltd.), Bois Daaquam Inc., Sinclair
Enterprises, Ltd., T'loh Forest Products Limited Partnership, and Crystal Forest
Industries Ltd.

By: _____     Dated: _____, **2006**
**Christopher F. Corr**
White & Case, LLP
701 Thirteenth Street, NW.
Washington, DC 20005-3807

Counsel for Buchanan Distribution Inc., Buchanan  Forest Products Ltd., Buchanan
Lumber Sales Inc., Buchanan Northern Hardwood Inc., Atikokan Forest Products
Ltd., Northern Sawmills Inc., Great West Timber Limited, McKenzie Forest Products
Inc., Northern Wood, Dubreuil Forest Products, Long Lake Forest Products Inc. .
(including the Nakina division (Nakina Forest Products)), Solid Wood Products Inc.

By: _____     Dated: _____, **2006**
**Catherine Curtiss**
Hughes Hubbard & Reid
1775 I Street N.W.
Suite 600
Washington, D.C. 20006

Counsel for Bois Daaquam Inc., Bois Omega Limitee, Fontaine Inc., Maibec Industries
Inc., Materiaux Blanchet Inc., St. Pamphile and Scierie West Brome Inc.

By: _____     Dated: _____, 2006
**Robert C. Cassidy, Jr.**
Wilmer, Cutler, Pickering, Hale & Dorr, LLP
2445 M Street, NW.
Washington, DC 20037-1420

Counsel for Bowater Incorporated and Its Canadian Subsidiaries et al., Quebec Lumber Manufacturers Association ("QLMA") and certain Quebec lumber producers, including Armand Duhamel & Fils Inc.; Bardeaux et Cedres St-Honore Inc. (also known as Bardeaux et Cedres); Barrette-Chapais Ltée.; Beaubois Coaticook Inc.; Blanchette et Blanchette Inc.; Boisaco Inc.; Bois Cobodex (1995) Inc.; Bois Daaquam Inc. (also known as Daaquam Lumber Inc.) Bois d'oeuvre Cedrico Inc. (also known as Cedrico Lumber Inc.); Bois de l'Est F.B. Inc.; Bois Granval G.D.S. Inc.; Bois Kheops Inc.; Bois Marsoui G.D.S. Inc.; Bois Nor Que Wood Inc.; Boscus Canada Inc.; Byrnexco Inc.; Careau Bois Inc; Carrier & Begin Inc.; Commonwealth Plywood Company Ltd. doing business as Bois Clo-Val (formerly Bois Clo-Val Inc.), W.C. Edwards Lumber (formerly The W.C. Edwards Co., Ltd.) and Enterprises Atlas (formerly Les Enterprises Atlas (1985) Inc.); Domexport, Inc.; Domtar Inc.; E. Tremblay Et Fils Ltée.; Fenclo Ltée.; G.D.S. Valoribois Inc.; Industries G.D.S. Inc.; Industries Maibec Inc. (also known as Maibec Industries Inc.); Industries Perron Inc.; Les Bois S&P Grondin Inc.; Les Chantiers de Chibougamau Ltée.; Les Produits Forestiers D.G. Ltée.; Les Produits Forestiers Dubé Inc.; Les Produits Forestiers F.B.M. Inc.; Les Produits Forestiers Maxibois Inc.; Les Produits Forestiers Miradas Inc. (also known as Miradas Forest Products Inc.); Les Produits Forestiers Portbec Ltée. (also known as Portbec Forest Products Ltd.); Les Scieries Du Lac St.-Jean Inc.; Lulumco Inc.; Marcel Lauzon Inc.; Matériaux Blanchet Inc.; Max Meilleur et Fils Ltée.; Mobilier Rustique (Beauce) Inc.; Optibois Inc.; Paul Vallée Inc.; Précibois Inc.; Produits Forestiers Arbec Inc. (also known as Arbec Forest Products Inc.); Promobois G.D.S. Inc.; Rembos Inc.; Rocam Lumber Inc. (also known as Bois Rocam Inc.); Scierie Gauthier Ltée.; Scierie Leduc, Division of Stadacona Inc.; Scierie Nord-Sud Inc. (also known as North-South Sawmill Inc.). Uniforêt Inc.; and Uniforêt Scierie-Pâte

By: _____     Dated: _____, 2006
**Mark A. Moran**
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW.
Washington, DC 20036-1795

Counsel for British Columbia Lumber Trade Council and its constituent associations, the Coast Forest Products Association (formerly known as the Coast Forest & Lumber Association) and the Council of Forest Industries, and their members, Canadian Lumber Trade Alliance and its constituent associations

By: _____     Dated: _____, 2006
**W. George Grandison**
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW.
Washington, DC 20036-1795

British Columbia Lumber Trade Council and its constituent associations, The Coast Forest Products Association (formerly known as the Coast Forest & Lumber Association) and the Council of Forest Industries, and their members (Abitibi CIT action)

By: _____    Dated: _____, 2006
**Randolph J. Stayin**
Barnes & Thornburg
750 17th Street, NW.
Suite 900
Washington, DC 20006

Counsel for Canadian Lumber Remanufacturers Alliance ("CLRA") Alpa Mills, Inc.,
American Bayridge Corporation, Bois Neos Inc., Britannia Lumber Company Limited,
Falcon Lumber Limited, Finmac Lumber Limited, Great Lakes MSR Lumber Ltd.,
Hughes Lumber Specialties Inc., Les Bois d'Ouevre Beaudoin & Gauthier Inc., Mid
America Lumber, Monterra Lumber Mills Limited, Nicholson and Cates Limited,
Palliser Lumber Sales Ltd., Phoenix Forest Products Inc., Weston Forest Corp.

By: _____    Dated: _____, 2006
**Matthew M. Nolan**
Arent Fox Kintner Plotkin & Kahn, PLLC
1050 Connecticut Avenue, NW.
Washington, DC 20036-5339

Counsel for International Forest Products Limited

By: _____    Dated: _____, 2006
**Harry L. Clark**
Dewey Ballantine, LLP
1775 Pennsylvania Avenue, NW.
Washington, DC 20006-4605

Counsel for Coalition for Fair Lumber Imports Executive Committee

By: _____    Dated: _____, 2006
**Keith Richard Marino**
Arent Fox Kintner Plotkin & Kahn, PLLC
1050 Connecticut Avenue, NW.
Washington, DC 20036-5339

Counsel for Commonwealth Plywood Co., Ltd.

By: _____    Dated: _____, 2006
**Joel R. Junker**
Joel R. Junker & Associates
1191 Second Avenue
Suite 1800
Seattle, WA 98101

Counsel for Delta Cedar Products Ltd., Kispiox Forest Products; Millco Wood
Products Ltd., Olympic Industries Inc.; Patrick Lumber Company; Sauder Industries
Ltd., Sauder Mouldings, Inc. (Ferndale), Sunbury Cedar Sales Ltd.; and W.I.
Woodtone Industries Inc.

By: _____    Dated: _____, 2006
**Charles Owen Verrill, Jr.**
Wiley Rein & Fielding LLP
1776 K Street, N.W.
Washington, D.C. 20006

Counsel for Western Forest Products Inc.


By: _____    Dated: _____, 2006
**Gracia M. Berg**
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, NW.
Suite 900
Washington, DC 20036-5306

Counsel for Doman Industries Limited, Doman Forest Products Limited, and Doman
Western Lumber Ltd. (now doing business as Western Forest Products Inc. and its
subsidiaries, WFP Forest Products Limited, WFP Western Lumber Ltd., and WFP
Lumber Sales Limited), Millar Western Forest Products Ltd., Tolko Industries Ltd.,
Weldwood of Canada Limited, West Fraser Mills Ltd.


By: _____    Dated: _____, 2006
**Daniel J. Plaine**
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, NW.
Suite 900
Washington, DC 20036-5306

Counsel for Weldwood of Canada Limited, West Fraser Mills Ltd., WFP Forest
Products Limited, WFP Lumber Sales Limited, Western Forest Products Inc.


By: _____    Dated: _____, 2006
**Daniel L. Porter**
Willkie, Farr & Gallagher, LLP
1875 K Street, NW.
Washington, DC 20006-1238

Counsel for Dunkley Lumber Ltd.


By: _____    Dated: _____, 2006
**Ned H. Marshak**
Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP
399 Park Avenue
25th Floor
New York, NY 10022-4877

Counsel for East Fraser Fiber Co. Ltd. and Parallel Wood Products Ltd., Jackpine
Group of Companies: Jackpine Forest Products Ltd., Jackpine Engineered Wood
Products Inc., and Redwood Value Added Products Inc.

By: _____    Dated: _____, 2006
**Livingston Wernecke**
Betts, Patterson & Mines, PS
One Convention Place
701 Pike Street
Suite 1400
Seattle, WA 98101-3927


Counsel for Fred Tebb & Sons, Inc.



By: _____    Dated: _____, 2006
**Gregory C. Dorris**
Pepper Hamilton LLP
Hamilton Square, 600 Fourteenth Street, N.W.
Washington, District of Columbia 20005-2004


Counsel for Frontier Mills Inc., Landmark Truss & Lumber Inc.



By: _____    Dated: _____, 2006
**Matthew J. Clark**
Arent Fox Kintner Plotkin & Kahn, PLLC
1050 Connecticut Avenue, NW.
Washington, DC 20036-5339


Counsel for Gouvernement du Québec, Fontaine Inc., Kruger Inc. (and its affiliates
Gerard Crete & Fils, Inc., Scierie Landrienne Inc., Scierie Gallichan, and P. Proulx
Forest Products Inc.), and Scierie Nord-Sud



By: _____    Dated: _____, 2006
**Mark R. Sandstrom**
Law Offices of Mark R. Sandstrom
1400 Sixteenth Street, N.W.
Suite 400
Washington, D.C.


Counsel for Goodfellow Inc.



By: _____    Dated: _____, 2006
**Lawrence A. Schneider**
Arnold & Porter, LLP
555 Twelfth Street, NW.
Washington, DC 20004-1206


Counsel for Government of the Province of Alberta

By: _____    Dated: _____, **2006**
**Spencer S. Griffith**
Akin, Gump, Strauss, Hauer & Feld, LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036

Counsel for Government of the Province of British Columbia


By: _____    Dated: _____, **2006**
**Mark S. McConnell**
Hogan & Hartson, LLP
555 Thirteenth Street, NW.
Washington, DC 20004-1109

Counsel for Government of the Province of Ontario


By: _____    Dated: _____, **2006**
**Michele Sherman Davenport**
Cameron & Hornbostel LLP
818 Connecticut Ave., N.W.
Washington, D.C. 20006-2722

Counsel for the Government of the Province of Manitoba and the Government of the
Province of Saskatchewan


By: _____    Dated: _____, **2006**
**J. E. Corette, III**
DLA Piper Rudnick Gray Cary US LLP
1200 Nineteenth Street, NW.
Washington, DC 20036-2412

Counsel for Governments of the Provinces of New Brunswick, Nova Scotia,
Newfoundland and Labrador, and Prince Edward Island ("Maritime Provinces"),
Maritime Lumber Bureau


By: _____    Dated: _____, **2006**
**Paul C. Rosenthal**
Kelley Drye Collier Shannon
3050 K Street, N.W.
Suite 400
Washington, D.C. 20007-5108

Counsel for Idaho Timber Corporation, Louisiana Pacific Corporation

By: _____    Dated: _____, 2006
**Robert B. Luce**
General Counsel
Idaho Timber Corporation
5401 Kendall Street
P.O. Box 67
Boise, Idaho 83706

Idaho Timber Corporation


By: _____    Dated: _____, 2006
**Juliana M. Cofrancesco**
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Avenue, NW.
Washington, DC 20004-2402

Counsel for J.D. Irving, Limited, the Governments of the Provinces of New
Brunswick, Nova Scotia, Newfoundland and Labrador, and Prince Edward Island
("Maritime Provinces"), Maritime Lumber Bureau


By: _____    Dated: _____, 2006
**William D. Kramer**
DLA Piper Rudnick Gray Cary US LLP
1200 Nineteenth Street, NW.
Washington, DC 20036-2412

Counsel for J.D. Irving, Limited


By: _____    Dated: _____, 2006
**Frank H. Morgan**
White & Case, LLP
701 Thirteenth Street, NW.
Washington, DC 20005-3807

Counsel for Leggett & Platt (B.C.) Ltd., Leggett & Platt, Inc., Leggett & Platt Canada
Co., Leggett & Platt Ltd., Pleasant Valley Remanufacturing Ltd.


By: _____    Dated: _____, 2006
**Donald Harrison**
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, NW.
Suite 900
Washington, DC 20036-5306

Counsel for Lignum Ltd., Tolko Industries Ltd., and its affiliates, Gilbert Smith Forest
Products Ltd., Compwood Products Ltd., and Pinnacle Wood Products Ltd., Tolko
Marketing & Sales Ltd., Riverside Forest Products Ltd.

By: _____    Dated: _____, **2006**
**C. Charles Lumbert**
P.O. Box 454
Jackman, Maine 40945

Moose River Lumber Company


By: _____    Dated: _____, **2006**
**Richard Bennett**
Rt. 1
Box 2L
Grangeville, ID 83530

Shearer Lumber Products


By: _____    Dated: _____, **2006**
**Charles Thomas**
PO Box 25
Shuqualak, MS 31069

Shuqualak Lumber Company


By: _____    Dated: _____, **2006**
**M. Jean Anderson**
Weil, Gotshal & Manges, LLP
1300 Eye Street, NW.
Suite 900
Washington, DC 20005

Counsel for the Government of Canada and the Governments of the Northwest
Territories and the Yukon Territory


By: _____    Dated: _____, **2006**
**Seth P. Waxman**
Wilmer, Cutler, Pickering, Hale & Dorr, LLP
1875 Pennsylvania Avenue, NW.
Washington, DC 20006-3642

Counsel for the Government of Canada


By: _____    Dated: _____, **2006**
**W.J. Rusty Wood**
PO Drawer E
Perry, Georgia 31069

Tolleson Lumber Company, Inc.

By: _____    Dated: _____, **2006**
**Pierre Moreau**
8000 Boulevard Langelier
Bureau 506
Saint-Léonard, Québec  H1P 3K2

Uniforet Inc.


By: _____    Dated: _____, **2006**
**Reginald T. Blades, Jr.**
U.S. Department of Justice
Commerical Litigation Branch - Civil Division
1100 L Street, NW.
8th Floor
Washington, DC 20530

Counsel for the United States in W*est Fraser v. United States* (Consol. Ct. No. 05-00079 (CIT)) and the cases consolidated therein


By: _____    Dated: _____, **2006**
**Stephen C. Tosini**
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
1100 L Street, NW.
Room 12020
Washington, DC 20530
Counsel for the United States in *Tembec v. United States* (Consol. Ct. No. 05-00028 (CIT)) and the cases consolidated therein; *Ontario Forest Industries Association et al. v. United States* (Court No. 06-00156 (CIT)); *West Fraser v. United States* (Consol. Court No. 06-00157 (CIT)) and the cases consolidated therein; and *Ontario Forest Industries Association et al. v. Canada* (Court No. 06-168 (CIT))


By: _____    Dated: _____, **2006**
**Alexander Kenneth Haas**
U.S. Department of Justice
20 Massachusetts Avenue, NW
Washington, D.C.

Counsel for the United States in *Tembec et al. v. United States* (Civil Action No. 05-2345 (U.S. District Ct. for the District of Columbia)); and *Ontario Forest Industries Association et al. v. Canada et al.* (Civil Action No. 06-989 (U.S. District Ct. for the District of Columbia))

By: _____    Dated: _____, 2006
**Douglas N. Letter**
Litigation Counsel
U.S. Department of Justice
Civil Division, Appellate Staff
950 Pennsylvania Avenue N.W.
Room 7513
Washington, D.C. 20530-0001

Counsel for the United States in *Coalition for Fair Lumber Imports Executive Committee v. United States* (Civil Action No. 05-1366 (D.C. Cir.)); *CLTA v. United States* (Civil Action No. 05-1369 (D.C. Cir.)); and *Ontario Forest Industries Association et al. v. United States* (Civil Action No. 06-1171 (D.C. Cir.))


By: _____    Dated: _____, 2006
**John D. McInerney**
U.S. Department of Commerce
14th & Constitution Avenue, N.W.
Room 3622
Washington, D.C. 20230

Counsel for United States Department of Commerce in *Certain Softwood Lumber Products from Canada (Original AD Investigation)*, Secretariat File No. USA-CDA-2002-1904-02; *Certain Softwood Lumber Products from Canada (Original CVD Investigation)*, Secretariat File No. USA-CDA-2002-1904-03; *Certain Softwood Lumber Products from Canada (CVD 1st Administrative Review)*, Secretariat File No. USA-CDA-2005-1904-01; *Certain Softwood Lumber Products from Canada (Section 129 AD Determination)*, Secretariat File No. USA-CDA-2005-1904-04; *Certain Softwood Lumber Products from Canada (AD 2nd Administrative Review)*, Secretariat File No. USA-CDA-2006-1904-01; *Certain Softwood Lumber Products from Canada (CVD 2nd Administrative Review)*, Secretariat File No. USA-CDA-2006-1904-02; and *Certain Softwood Lumber Products from Canada (Final Scope Ruling Regarding Entries Made Under HTSUS 4409.10.05)*, Secretariat File No. USA-CDA-2006-1904-05


By: _____    Dated: _____, 2006

**Andrea J. Menaker**
Chief, NAFTA Arbitration Division
Office of the Legal Adviser
U.S. Department of State
Washington, D.C.
Counsel for the United States with respect to the NAFTA Chapter 11 claim of *Tembec Inc., Tembec Investments Inc. and Tembec Industries Inc. v. United States of America* (collectively "Tembec"); and The *Consolidated Arbitration Pursuant to Article 1126 of the North American Free Trade Agreement (NAFTA) and the UNCITRAL Arbitration Rules between Canfor Corporation v. United States of America and Terminal Forest Products Ltd. v. United States of America*

By: _____    Dated: _____, **2006**
**James M. Lyons**
Office of the General Counsel
USITC
500 E Street S.W.
Washington, D.C. 20436

Counsel for United States International Trade Commission in *Certain Softwood Lumber Products from Canada (Section 129 Threat-of-Injury Determination)*, Secretariat File No. USA-CDA-2005-1904-03

By: _____    Dated: _____, **2006**
**William Busis**
Office of the United States Trade Representative
600 – 17th Street, N.W.
Washington, D.C. 20508

Counsel for the United States in *Certain Softwood Lumber Products from Canada*, Secretariat File No. ECC-2006-1904-01USA

By: _____    Dated: _____, **2006**
**John R. Shane**
Wiley, Rein & Fielding, LLP
1776 K Street, NW.
Washington, DC 20006-2304

Counsel for Western Forest Products Inc.

By: _____    Dated: _____, **2006**
**James B. Altman**
Miller & Chevalier Chartered
655 Fifteenth Street, NW.
Suite 900
Washington, DC 20005-5701

Counsel for Weyerhaeuser Company, Weyerhaeuser Company Limited, Weyerhaeuser Saskatchewan Limited

## ANNEX 2B

**United States - Preliminary Determinations with respect to Certain Softwood Lumber from Canada (DS236);**

**United States - Provisional Anti-Dumping Measure on Imports of Certain Softwood Lumber from Canada (DS247);**

**United States - Final Countervailing Duty Determination with respect to Certain Softwood Lumber from Canada (DS257);**

**United States - Final Dumping Determination on Softwood Lumber from Canada (DS264);**

**United States - Investigation of the International Trade Commission in Softwood Lumber from Canada (DS277); and**

**United States - Reviews Of Countervailing Duty on Softwood Lumber from Canada (DS311).**

Notification of Mutually Agreed Solution

The Governments of the United States and Canada hereby notify the Dispute Settlement Body in accordance with Article 3.6 of the DSU that they have reached a mutually agreed solution to the matters raised by Canada in document WT/DS236/1 dated 27 August 2001, WT/DS247/1 dated 12 March 2002, WT/DS257/1 dated 13 May 2002, WT/DS264/1 dated 19 September 2002, WT/DS277/1 dated 7 January 2003, and WT/DS311/1 dated 19 April 2004. This solution has taken the form of a comprehensive agreement between the United States and Canada, resolving all disputes related to trade in softwood lumber between our two countries. A copy of the Softwood Lumber Agreement is attached.

This mutually agreed solution is without prejudice to the WTO rights and obligations of the United States and Canada except with respect to the disputes listed above.

We ask that you circulate this notification to the relevant Councils and Committees, as well as to the Dispute Settlement Body.

Peter F. Allgeier
Ambassador and Permanent Representative
of the United States to the World Trade
Organization

Don Stephenson
Ambassador and Permanent Representative
of Canada to the World Trade
Organization

## ANNEX 2C

### Assignment of Cash Deposits and
### Disbursement of Payments

1.    To qualify as an Escrow Importer, an Importer of Record must:

    (a)    provide USCBP Headquarters with an ACH Agreement, a bank routing number, and a bank account number for a designate of the Importer of Record;

    (b)    conclude Irrevocable Powers of Attorney and an Escrow Agreement with its designate (both in a form satisfactory to the United States and Canada and its agent); and

    (c)    conclude with Canada or its agent an Agreement of Purchase and Sale that includes Irrevocable Directions to Pay and other documentation (all of which shall be in a form satisfactory to the United States and Canada and its agent) that Canada or its agent requires to purchase its rights to the amounts of cash deposits and accrued interest for Covered Entries.

2.    USCBP shall provide Canada with information and documentation demonstrating that USCBP has received the documentation described in sub-paragraph 1(a) for Importers of Record that collectively account for not less than 95% of the total amount of the cash deposits on Covered Entries and accrued interest as of the Effective Date.

3.    Beginning on June 30, 2006, USCBP shall provide to Canada or its agent in 2-week intervals information and documentation for the purchases described in paragraph 6, including a list of the Importers of Record, and for each Importer of Record the amount of cash deposits and the amount of accrued interest for each Covered Entry in both aggregate and entry-by-entry formats. No later than 10 days after the Effective Date, USCBP shall provide Canada or its agent with a final and complete list of the amount of cash deposits and the amount of accrued interest for each Covered Entry for each Escrow Importer. Canada or its agent may provide each Importer of Record with the information and documentation that USCBP provides to Canada in respect of that Importer of Record.

4.    By the Effective Date, the United States shall provide Canada or its agent with information identifying 3 separate accounts whose beneficiaries are respectively:

    (a)    the members of the Coalition for Fair Lumber Imports;

    (b)    a binational industry council described in Annex 13; and

    (c)    meritorious initiatives in the United States identified by the United States in consultation with Canada as described in Article XIII(A).

5.    Canada or its agent shall distribute $US 1 billion pursuant to the Irrevocable Directions to Pay to the accounts referred to in paragraph 4 in the following amounts: $US 500 million to the members of the Coalition for Fair Lumber Imports, $US 50 million to the binational industry council, and $US 450 million for the meritorious initiatives account.

6.    The United States understands that Canada or its agent shall purchase from the Escrow Importers the rights to the amount of cash deposits stated in USCBP records and accrued interest for the Covered Entries. The purchase price[9] paid to an Escrow Importer shall not exceed the amount of cash deposits and accrued interest on its Covered Entries on the purchase date less the amounts directed to accounts specified in paragraph 4. Canada or its agent may make payments in installments in respect of these purchases. Each Escrow Importer in the Agreements of Purchase and Sale shall irrevocably direct Canada or its agent to pay a portion of each installment to the specified accounts in paragraph 4 in an amount that is proportionate to $US 1 billion divided by the total amount of cash deposits to be refunded to all Importers of Record and the interest accrued as of the Effective Date. Canada shall pay the difference between $US 1 billion and the aggregate amount directed by the Escrow Importers into these specified accounts. Canada shall seek to ensure that an amount equal to 90% of the amount of cash deposits and accrued interest is disbursed no later than 6 weeks after Canada or its agent receives the final list of the cash deposits and accrued interest referred to in paragraph 3, with the remaining 10% to be disbursed within 6 months of the Effective Date.

7.    The Irrevocable Direction to Pay in the Agreement of Purchase and Sale shall not be subject to amendment without the written consent of the United States.

8.    The United States shall liquidate Covered Entries starting with entries that are or will become more than 4 years old during the first 6 months of the liquidation process and followed by entries that will become more than 4 years old during any subsequent extension under 19 U.S.C. § 1504(b) and 19 C.F.R. § 159.12.

9.    The United States shall not consider the payments to Escrow Importers under Article IV and this Annex to be a prohibited, actionable, or countervailable subsidy and shall neither consider such payments to be a basis for initiating a countervailing duty investigation nor investigate such payments in the course of any such investigation.

---

[9]    Canada or its agent shall assume administrative costs associated with the purchase of the rights to the amount of cash deposits and accrued interest.

ANNEX 3

**USDOC Liquidation Instructions to USCBP**

RE: NOTICE OF REVOCATION OF THE ANTIDUMPING DUTY ORDER AND
TERMINATION OF ANTIDUMPING DUTY REVIEWS RELATED TO CERTAIN
SOFTWOOD LUMBER FROM CANADA FOR THE PERIOD 05/22/2002
THROUGH XX/XX/XXXX ([A-122-838])

1. THE DEPARTMENT OF COMMERCE HAS REVOKED THE ANTIDUMPING
DUTY ORDER AND TERMINATED ALL REVIEWS ON CERTAIN SOFTWOOD
LUMBER FROM CANADA PURSUANT TO THE SOFTWOOD LUMBER
AGREEMENT BETWEEN THE GOVERNMENT OF CANADA AND THE
GOVERNMENT OF THE UNITED STATES. THE EFFECTIVE DATE OF
REVOCATION IS 05/22/2002.

2. THEREFORE, CBP IS DIRECTED TO CEASE COLLECTION OF CASH
DEPOSITS AND TERMINATE IMMEDIATELY THE SUSPENSION OF
LIQUIDATION FOR ALL SHIPMENTS OF CERTAIN SOFTWOOD LUMBER
FROM CANADA ENTERED, OR WITHDRAWN FROM WAREHOUSE, FOR
CONSUMPTION ON OR AFTER MAY 22, 2002. ALL UNLIQUIDATED
ENTRIES OF THE SUBJECT MERCHANDISE THAT WERE ENTERED OR
WITHDRAWN FROM WAREHOUSE FOR CONSUMPTION, ON OR AFTER
MAY 22, 2002, THE LIQUIDATION OF WHICH IS SUSPENDED, SHOULD BE
LIQUIDATED WITHOUT REGARD TO ANTIDUMPING DUTIES (I.E.,
RELEASE ALL BONDS AND REFUND ALL CASH DEPOSITS) AND ALL
DEPOSITS SHALL BE REFUNDED WITH ACCRUED INTEREST TO THE
IMPORTERS OF RECORD OR THEIR DESIGNATES.

3. THE ASSESSMENT OF ANTIDUMPING DUTIES BY CUSTOMS AND
BORDER PROTECTION ON ENTRIES OF THIS MERCHANDISE IS SUBJECT
TO THE PROVISIONS OF SECTION 778 OF THE TARIFF ACT OF 1930.
SECTION 778 REQUIRES THAT CBP PAYS INTEREST ON OVERPAYMENTS,
OR ASSESS INTEREST ON UNDERPAYMENTS OF THE REQUIRED AMOUNTS
DEPOSITED AS ESTIMATED ANTIDUMPING DUTIES. INTEREST SHALL BE
CALCULATED FROM THE DATE OF PAYMENT OF ESTIMATED
ANTIDUMPING DUTIES THROUGH THE DATE OF LIQUIDATION. THE
RATE AT WHICH SUCH INTEREST IS PAYABLE IS THE RATE IN EFFECT
UNDER SECTION 6621 OF THE INTERNAL REVENUE CODE OF 1954 FOR
SUCH PERIOD.

4. IF THERE ARE ANY QUESTIONS REGARDING THIS MATTER BY CBP
OFFICERS, THE IMPORTING PUBLIC OR INTERESTED PARTIES, PLEASE
CONTACT DAVINA HASHMI OR RON TRENTHAM AT OFFICE OF AD/CVD
OPERATIONS, IMPORT ADMINISTRATION, INTERNATIONAL TRADE
ADMINISTRATION, U.S. DEPARTMENT OF COMMERCE, AT (202) 482-0984
OR (202) 482-3577 RESPECTIVELY (GENERATED BY O(Office Number):

Analyst's Initials (Example: O2:RL)).

5. THERE ARE NO RESTRICTIONS ON THE RELEASE OF THIS
INFORMATION.
                    CATHY SAUCEDA

RE: NOTICE OF REVOCATION OF THE COUNTERVAILING DUTY ORDER AND TERMINATION OF COUNTERVAILING DUTY REVIEWS RELATED TO CERTAIN SOFTWOOD LUMBER FROM CANADA FOR THE PERIOD 05/22/2002 THROUGH XX/XX/XXXX ([C-122-839])

1. THE DEPARTMENT OF COMMERCE HAS REVOKED THE COUNTERVAILING DUTY ORDER AND TERMINATED ALL REVIEWS, ON CERTAIN SOFTWOOD LUMBER FROM CANADA PURSUANT TO THE SOFTWOOD LUMBER AGREEMENT BETWEEN THE GOVERNMENT OF CANADA AND THE GOVERNMENT OF THE UNITED STATES.  THE EFFECTIVE DATE OF REVOCATION IS 05/22/2002.

2. THEREFORE, CBP IS DIRECTED TO CEASE COLLECTION OF CASH DEPOSITS AND TERMINATE IMMEDIATELY THE SUSPENSION OF LIQUIDATION FOR ALL SHIPMENTS OF CERTAIN SOFTWOOD LUMBER FROM CANADA ENTERED, OR WITHDRAWN FROM WAREHOUSE, FOR CONSUMPTION ON OR AFTER MAY 22, 2002.  ALL UNLIQUIDATED ENTRIES OF THE SUBJECT MERCHANDISE THAT WERE ENTERED OR WITHDRAWN FROM WAREHOUSE FOR CONSUMPTION, ON OR AFTER MAY 22, 2002, THE LIQUIDATION OF WHICH IS SUSPENDED, SHOULD BE LIQUIDATED WITHOUT REGARD TO COUNTERVAILING DUTIES (I.E., RELEASE ALL BONDS AND REFUND ALL CASH DEPOSITS) AND ALL DEPOSITS SHALL BE REFUNDED WITH ACCRUED INTEREST TO THE IMPORTERS OF RECORD OR THEIR DESIGNATES.

3. THE ASSESSMENT OF COUNTERVAILING DUTIES BY CUSTOMS AND BORDER PROTECTION ON ENTRIES OF THIS MERCHANDISE IS SUBJECT TO THE PROVISIONS OF SECTION 778 OF THE TARIFF ACT OF 1930. SECTION 778 REQUIRES THAT CBP PAYS INTEREST ON OVERPAYMENTS, OR ASSESS INTEREST ON UNDERPAYMENTS OF THE REQUIRED AMOUNTS DEPOSITED AS ESTIMATED COUNTERVAILING DUTIES.  INTEREST SHALL BE CALCULATED FROM THE DATE OF PAYMENT OF ESTIMATED COUNTERVAILING DUTIES THROUGH THE DATE OF LIQUIDATION.  THE RATE AT WHICH SUCH INTEREST IS PAYABLE IS THE RATE IN EFFECT UNDER SECTION 6621 OF THE INTERNAL REVENUE CODE OF 1954 FOR SUCH PERIOD.

4. IF THERE ARE ANY QUESTIONS REGARDING THIS MATTER BY CBP OFFICERS, THE IMPORTING PUBLIC OR INTERESTED PARTIES, PLEASE CONTACT DAVINA HASHMI OR RON TRENTHAM AT OFFICE OF AD/CVD OPERATIONS, IMPORT ADMINISTRATION, INTERNATIONAL TRADE ADMINISTRATION, U.S. DEPARTMENT OF COMMERCE, AT (202) 482-0984 OR (202) 482-3577 RESPECTIVELY (GENERATED BY O(Office Number):

Analyst's Initials (Example: O2:RL)).

5. THERE ARE NO RESTRICTIONS ON THE RELEASE OF THIS INFORMATION.
                    CATHY SAUCEDA

ANNEX 5A

Template for "No Injury" Letters from
U.S. Domestic Interested Parties

Dear USTR Schwab and Secretary Gutierrez:

Company A commends the spirit of cooperation in which the United States and Canada negotiated the Softwood Lumber Agreement Between the Government of Canada and the Government of the United States of America (the SLA 2006). Company A makes the following representations and commitments to the U.S. Government:

1.  Company A is a U.S. producer of softwood lumber. The softwood lumber production of Company A in 2005 was [ ], which represents [ ] percent of total U.S. softwood lumber production in 2005.

[2.  [Name/Title] of Company A serves on the executive committee of the Coalition for Fair Lumber Imports.]

3.  Company A represents that the SLA 2006 removes any alleged material injury or threat of material injury, within the meaning of 19 U.S.C. § 1677(7), to the U.S. softwood lumber industry from imports of Softwood Lumber Products from Canada. This representation is made taking into account all relevant facts, including possible changes in market conditions, and the consequences that the representations will have for the term of the SLA 2006, including the intentions of the U.S. Department of Commerce (Commerce), described in paragraph [4]. The representation is also made with an understanding of the possible effects of the provisions of the SLA 2006 while it remains in force, given the various market conditions that may prevail in both countries during that time.

4.  If a petition is filed with respect to imports of Softwood Lumber Products from Canada under Title VII of the *Tariff Act of 1930*, as amended, while the SLA 2006 is in force, Company A recognizes and accepts that, in determining whether the allegation of material injury or threat thereof meets the requirements of 19 U.S.C. § 1671a or § 1673a, as the case may be, Commerce has agreed to rely on the representation in paragraph [3] made by Company A and other domestic interested parties as conclusive evidence of an insufficient allegation of material injury or threat thereof and will dismiss the petition.

5.  Company A agrees that it will not file a petition, and will oppose initiation of any investigation, pursuant to Title VII of the *Tariff Act of 1930*, as amended, or §§ 301-305 of the *Trade Act of 1974*, as amended, with respect to imports of Softwood Lumber Products from Canada.

6.  Company A agrees that it will not, in a petition filed under §§ 201-204 of the *Trade Act of 1974*, as amended, allege that the growth rate of imports of Softwood Lumber Products from Canada contributes importantly to the serious injury or threat of serious injury to the U.S. lumber industry.

7.  Company A agrees that it will ensure that the commitments in this letter are undertaken by and remain binding on any entities that are successors in title of Company A.

8.   The representations and commitments contained in this letter shall have no force or effect after the SLA 2006 is terminated or expires, or if an arbitral tribunal finds that Canada has breached an obligation under the SLA 2006, and neither Party promptly takes action that addresses the breach.

Draft Union Letter

Dear USTR Schwab and Secretary Gutierrez:

The [Union] commends the spirit of cooperation in which the United States and Canada negotiated the Softwood Lumber Agreement Between the Government of Canada and the Government of the United States of America (the SLA 2006).

1.      The [Union] endorses the representations made by U.S. producers of softwood lumber and the trade associations in letters to you that the SLA 2006 removes any alleged material injury or threat of material injury to the U.S. softwood lumber industry from imports of Softwood Lumber Products from Canada.

2.      The [Union] also makes the following commitments.  The [Union] will not file a trade case, and will oppose the initiation of any investigation, pursuant to U.S. trade laws, with respect to imports of Softwood Lumber Products from Canada.  These commitments apply to petitions and investigations under Title VII of the *Tariff Act of 1930*, as amended, §§ 301-305 of the *Trade Act of 1974*, as amended, and §§ 201-204 of the *Trade Act of 1974*, as amended.

3.      The [Union] agrees that it will ensure that the commitments in this letter are undertaken by and remain binding on any entities that are successors in interest to the [Union] with respect to its representation of workers in the U.S. softwood lumber industry.

4.      The endorsements and commitments in this letter will have no force and effect after the SLA 2006 is terminated or expires, or if an arbitral tribunal finds that Canada has breached an obligation under the SLA 2006, and neither Party promptly takes action that addresses the breach.

Draft Association Letter

Dear USTR Schwab and Secretary Gutierrez:

The [Association] commends the spirit of cooperation in which the United States and Canada negotiated the Softwood Lumber Agreement Between the Government of Canada and the Government of the United States of America (the SLA 2006).

1.      The [Association] is a trade association and a majority of our members are U.S. producers of softwood lumber.  The softwood lumber production of the members of [Association] in 2005 was [ ], which represented []% of total U.S. softwood lumber production in 2005.

2.      The [Association] represents that the SLA 2006 removes any alleged material injury or threat of material injury to the U.S. softwood lumber industry from imports of Softwood Lumber Products from Canada.  This representation is made taking into account all relevant facts, including possible changes in market conditions, and the consequences that the representations will have for the term of the SLA 2006, including the intentions of the U.S. Department of Commerce (Commerce), described in paragraph 3.  The representation is also made with an understanding of the possible effects of the provisions of the SLA 2006 while it remains in force, given the various market conditions that may prevail in both countries during that time.

3.      If a petition is filed with respect to imports of Softwood Lumber Products from Canada under Title VII of the *Tariff Act of 1930*, as amended, while the SLA 2006 is in force, the [Association] recognizes and accepts that, in determining whether the allegation of material injury or threat thereof meets the requirements of 19 U.S.C. § 1671a or § 1673a, as the case may be, Commerce has agreed to rely on the representation in paragraph 2 made by the [Association] and other domestic interested parties as conclusive evidence of an insufficient allegation of material injury or threat thereof and will dismiss the petition.

4.      The [Association] agrees that it will not file a petition, and will oppose initiation of any investigation, pursuant to Title VII of the *Tariff Act of 1930*, as amended, or §§ 301-305 of the *Trade Act of 1974*, as amended, with respect to imports of Softwood Lumber Products from Canada.

5.      The [Association] agrees that it will not, in a petition filed under §§ 201-204 of the *Trade Act of 1974*, as amended, allege that the growth rate of imports of Softwood Lumber Products from Canada contributes importantly to the serious injury or threat of serious injury to the U.S. lumber industry.

6.      The representations and commitments in this letter have been approved by the [Association board of directors. . .], and the members of the [Association] will be so notified.

7.      The [Association] agrees that it will ensure that the commitments in this letter are undertaken by and remain binding on any successor including where:  (a) the Association undergoes a name change; or (b) the Association is absorbed by another association.  The Association also agrees that it will not participate, cooperate, or assist in the formation of a new association that takes a position contrary to the commitments given by the Association in this letter.

8.    The representations and commitments contained in this letter will have no force or effect after the SLA 2006 is terminated or expires, or if an arbitral tribunal finds that Canada has breached an obligation under the SLA 2006, and neither Party promptly takes action that addresses the breach.

## ANNEX 5B

### Finding of the U.S. Department of Commerce

Re:  The Softwood Lumber Agreement Between the Government of the United States of America and the Government of Canada (SLA 2006) – Representations on Injury by the U.S. Industry

Dear

The SLA 2006 is intended to ensure that there is no material injury or threat thereof to an industry in the United States from imports of Softwood Lumber Products from Canada, and to avoid litigation under Title VII of the *Tariff Act of 1930*, as amended (the Act), on this issue.

In the SLA 2006, the United States is agreeing that it will not self-initiate an investigation under Title VII with respect to Softwood Lumber Products from Canada and that, if a petition for such an investigation is filed, the U.S. Department of Commerce (Commerce) will dismiss the petition.

When a petition is filed under Title VII, Commerce is required to examine, on the basis of sources readily available to it, the accuracy and adequacy of the evidence provided in the petition and to determine whether the petition alleges the elements necessary for the imposition of a duty and that the evidence in the petition is sufficient to justify initiation of an investigation. 19 U.S.C. §§ 1671a and 1673a and Statement of Administration Action at 861. Commerce is also required to determine if the petition has been filed by or on behalf of the industry (i.e., whether producers or workers supporting the petition account for (1) at least 25% of total production of the domestic like product and (2) more than 50% of such production by that portion of the industry expressing support for or opposition to the petition). *Id.*

Domestic interested parties within the meaning of 19 U.S.C. §§ 1671a (c) (4) (D) and 1673a (c) (4) (D), accounting for greater than 60% of the total U.S. production of softwood lumber in 2005, and one or more domestic interested parties that are unions, have represented to Commerce that, while the SLA 2006 is in force, it removes any alleged injury. Specifically, domestic interested parties have made the following representations:

o  The SLA 2006 removes any alleged material injury or threat of material injury, within the meaning of 19 U.S.C. § 1677(7), to the U.S. softwood lumber industry from imports of Softwood Lumber Products from Canada.

o  This representation concerning injury is made taking into account all relevant facts, including an understanding of the possible effects of the SLA 2006 over its duration given the various market conditions that may prevail in both countries during that time, and the consequences that the representations will have throughout its duration.

o  The representations and commitments contained in this letter shall have no force or effect after the SLA 2006 is terminated, or if an arbitral tribunal finds that Canada has breached an obligation under the SLA 2006, and neither Party promptly takes action that addresses the breach.

These industry representations have been made by individual producers, by trade associations on behalf of their members, a majority of whom are U.S. producers of softwood lumber, and by one or more unions. The trade associations were established between 1908 and 1964. Consequently, they are a repository of substantial expertise concerning the U.S. softwood lumber industry and its markets. The representations by the trade associations have been approved by resolution or vote as required by their by-laws.

The producers and associations also represent the vast majority of the active members of the Coalition for Fair Lumber Imports (Coalition). Since its establishment in 1985, the Coalition is the association through which U.S. producers have assessed the economic condition of the U.S. industry and have taken trade action when the industry has deemed it necessary. The Coalition is a repository of substantial expertise concerning the North American softwood lumber market. The Coalition was the petitioner in both the 1985-86 action and the 2001-2002 action regarding softwood lumber under Title VII, and represented the U.S. industry in the 1991-92 action that was self-initiated by Commerce. Officials of some of the individual companies that have made these representations also serve as officers in the Coalition.

The confidence of the companies, the associations, and one or more unions in their representations is evidenced by their commitment that, absent termination or expiration of the SLA 2006 or if an arbitral tribunal finds that Canada has breached an obligation under the SLA 2006, and neither Canada nor the United States promptly takes action that addresses the breach, they and any successor entities will not file a petition and will oppose the initiation of any investigation pursuant to Title VII of the Act with respect to imports of Softwood Lumber Products from Canada.

Commerce has reviewed these representations and finds that, if a petition is filed with respect to imports of Softwood Lumber Products from Canada under Title VII of the Act while these representations are in effect, in determining whether the petition meets the requirements of 19 U.S.C. § 1671a or § 1673a, these representations will constitute conclusive evidence of an insufficient allegation of material injury or threat of material injury and Commerce will dismiss the petition.

This finding does not limit Commerce's authority to dismiss the petition on other grounds pursuant to 19 U.S.C. § 1671(a) or § 1673a (c).

## ANNEX 7A

### Prevailing Monthly Price

1.      As used in the SLA 2006, the Prevailing Monthly Price means the most recent four-week average of the weekly framing lumber composite ("FLC") prices available 21 days before the beginning of the month to which the Prevailing Monthly Price shall be applied. The Prevailing Monthly Price shall be rounded to the nearest whole dollar.

2.      Subject to paragraph 4, the weekly FLC price shall be the weekly Framing Lumber Composite Price produced by Random Lengths Publications Incorporated of Eugene, Oregon ("*Random Lengths*").

3.      The *Random Lengths* FLC price is a weighted average of the following fifteen structural lumber prices:

(a)      Green Douglas Fir (Portland rate) #2&Btr 2x10 random;

(b)      Green Douglas Fir (Portland rate) Std&Btr 2x4 8-ft PET;

(c)      Green Douglas Fir (Portland rate) Std&Btr 2x4 random;

(d)      KD Coast Hem-Fir Stud 2x4 8-foot PET;

(e)      KD Eastern Spruce-Pine-Fir (del. Boston) #1&2 2x4 random;

(f)      KD Eastern Spruce-Pine-Fir (del. Boston) Stud 2x4 8-foot PET;

(g)      KD Fir & Larch Stud 2x4 8-foot PET;

(h)      KD Inland Hem-Fir (Redding rate) #2&Btr 2x10 random;

(i)      KD Inland Hem-Fir (Spokane rate) Std&Btr 2x4 random;

(j)      KD Southern Pine (Westside) #2 2x4 random;

(k)      KD Southern Pine (Westside) #2 2x10 random;

(l)      KD Southern Pine (Westside) Stud 2x4 8-foot PET;

(m)      KD Western Spruce-Pine-Fir #2&Btr 2x4 random;

(n)      KD Western Spruce-Pine-Fir #2&Btr 2x10 random; and

(o)      KD Western Spruce-Pine-Fir Stud 2x4 8-foot PET.

4.    If *Random Lengths* changes the weights it uses in calculating the FLC price at any time after April 27, 2006, Canada shall calculate the FLC price based on the weights *Random Lengths* used as of April 27, 2006.  If *Random Lengths* stops producing an FLC price or any of the price series listed in paragraph 3, the Parties shall promptly select a mutually agreeable replacement series or data source.

**ANNEX 7B**

**Calculation of Quota Volumes for Option B**

1.      This Annex specifies the method to be used in determining the quota volumes for Regions electing Option B. Quota volume shall be established on a monthly basis, and a Region may carry forward or carry back monthly quota amounts as described in paragraphs 2 through 7.

2.      The formula for calculating a Region's monthly quota volume shall be,

$$RQV = EUSC \times RS \times PAF$$

where RQV    = the Region's monthly quota volume;

EUSC  = monthly Expected U.S. Consumption (as calculated in Annex 7D);

RS      = the Region's share of U.S. Consumption from Table 1 of this Annex; and,

PAF    = the price adjustment factor from Table 2 of this Annex.

3.      The monthly quota volume for the B.C. Coast shall be multiplied by an additional factor equal to the Region-specific seasonal adjustment factor for that month (Table 3) divided by the corresponding seasonal adjustment factor used for calculating Expected U.S. Consumption (Table 1 of Annex 7D).

4.      A Region may carry back (or borrow) from the next month a volume equal to 12% of its monthly quota volume. For example, if a Region's calculated quota volume for June is 500 MMBF, the Region may carry back (or borrow) 60 MMBF of the Region's July quota volume, thereby increasing the Region's June quota volume by 60 MMBF and decreasing the Region's July quota volume by 60 MMBF.

5.      A Region may carry forward to the next month unused volume equal to 12% of its monthly quota volume. For example, if a Region's calculated quota volume for June is 500 MMBF and the Region ships only 440 MMBF in that month, the Region may carry forward to July the 60 MMBF of unused quota volume, thereby increasing the Region's July quota volume by 60 MMBF.

6.      A Region may increase its calculated monthly quota volume by a maximum of 12% through carry-forward or carry-back, or both.

7.      No quota volume may be carried back or carried forward between any two months unless the Region's exports are subject to a volume restraint in both months. If a Region carries back (borrows) from the following month and its exports in that month are not made subject to a volume restraint, the carry-back volume shall be subtracted from the monthly quota volume calculated for the next month in which the Region's exports are subject to a volume restraint. If a Region seeks to carry forward unused quota volume from a month and the Region's exports in the following month are not subject to a volume restraint, the carry-forward volume shall be added to the monthly quota volume calculated for the next month in which the Region's exports are subject to a volume restraint.

8.    The share of U.S. Consumption for each Region shown in Table 1 of this Annex is calculated as the product of 34% and that Region's share of the volume of Canadian exports of Softwood Lumber Products to the United States from April 1, 2001 to December 31, 2005 as reported under Canada's Softwood Lumber National Export Monitoring System.

9.    A Region's share of U.S. Consumption set out in Table 1 reflects a deduction for exports attributable to any companies listed in Annex 10 that are located in the Region. If the list of excluded companies in Annex 10 is modified pursuant to Article X(2), the Regional shares in Table 1 shall be recalculated to reflect that change.

**TABLE 1**

| Region | Percentage Share of U.S. Consumption |
|---|---|
| B.C. Coast | 1.79% |
| B.C. Interior | 16.59% |
| Alberta | 2.63% |
| Saskatchewan | 0.46% |
| Manitoba | 0.31% |
| Ontario | 3.34% |
| Quebec | 4.86% |

**TABLE 2**

| FLC Price | Price Adjustment Factor |
|---|---|
| $US 336 or over | 1 |
| $US 316-335 | (32/34) |
| $US 315 or under | (30/34) |

**TABLE 3**

| Month | B.C. Coast Seasonal Adjustment Factor |
|---|---|
| January | 0.7212 |
| February | 0.9767 |
| March | 0.9025 |
| April | 1.3557 |
| May | 1.1461 |
| June | 1.1771 |
| July | 0.9213 |
| August | 1.0719 |
| September | 1.0584 |
| October | 0.9477 |
| November | 0.8466 |
| December | 0.8746 |

## ANNEX 7C

### Procedure for Certifying Independent Remanufacturers

1.    The CRA shall administer, control, and verify the requirements associated with certifying a Person as an Independent Manufacturer of Remanufactured Softwood Lumber Products ("Independent Remanufacturer") for purposes of the SLA 2006.

2.    In order to be certified as an Independent Remanufacturer, a company must provide an application to the CRA that includes:

(a)    provincial certification that it does not hold Crown tenure rights and, after the Effective Date, has not acquired standing timber directly from the Crown in any province other than a Maritime province or other excluded province;

(b)    certification that it is not an Associated Person in respect of a company that holds provincial Crown tenure rights or that has acquired standing timber directly from the Crown; and

(c)    a list of Remanufactured Softwood Lumber Products that it expects to produce in the next Year.

3.    A certification shall be valid only for such time as the company satisfies the conditions for certification specified in paragraphs 2(a) and (b).  A company's exports shall only qualify for the treatment referred to in Article VII(7) as of the date that Canada provides notice to the United States that it has certified the company pursuant to paragraph 2.  The exports of a certified Independent Remanufacturer may be disqualified from receiving such treatment if Canada decertifies the company or if an arbitration tribunal pursuant to Article XIV finds that:  (a) a company is not an Independent Remanufacturer or (b) the product that the company is exporting is not a Remanufactured Softwood Lumber Product.

4.    At the request of either Party, the Parties shall consult on whether to amend the SLA 2006 for purposes of further addressing Remanufactured Softwood Lumber Products based on an assessment of the overall effect of the SLA 2006.

5.    No later than 60 days after the end of each Quarter, for each Region that exported Remanufactured Softwood Lumber Products to the United States during the Quarter, Canada shall provide to the United States the weighted-average yield loss percentage used to determine the Export Price for the Softwood Lumber Products incorporated into Remanufactured Softwood Lumber Products exported to the United States from the Region.

ANNEX 7D

## Calculation of U.S. Consumption and Market Shares

1.    For purposes of this Annex:

   (a)    "Canadian softwood lumber exports" refers to products within the following Statistics Canada Standard Classification of Goods (SCG) codes: 4407.10.00, 4409.10.11, 4409.10.19, 4409.10.91 and 4409.10.99; and

   (b)    "U.S. softwood lumber exports" and "U.S. softwood lumber imports from countries other than Canada" refer to products within the following HTSUS codes: 4407.10.00, 4409.10.10, 4409.10.20, and 4409.10.90.

2.    If the Parties amend the scope of Softwood Lumber Products or the scope is clarified as the result of an arbitral award pursuant to Article XIV, Canada shall provide the United States with any information required to modify the SCG code data to reflect the change or clarification and the United States shall provide Canada with any information required to modify the HTSUS code data to reflect the change or clarification.

3.    U.S. Consumption shall be calculated[10] as the sum of:

   (a)    Canadian softwood lumber exports to the United States; plus

   (b)    U.S. softwood lumber imports from countries other than Canada; plus

   (c)    U.S. shipments of softwood lumber; minus

   (d)    U.S. exports of softwood lumber.

4.    Canadian market share shall be calculated as Canadian softwood lumber exports to the United States divided by U.S. Consumption.

5.    Third country market share shall be calculated as U.S. softwood lumber imports from countries other than Canada divided by U.S. Consumption.

6.    U.S. net shipments of softwood lumber shall be calculated as U.S. shipments of softwood lumber less U.S. exports of softwood lumber.

7.    U.S. producers' market share shall be calculated as U.S. net shipments of softwood lumber divided by U.S. Consumption.

---

[10] These calculations shall be based on actual data.

8.    Data sources for these calculations shall be:

   (a)    Statistics Canada (Canadian softwood lumber exports to the U.S.);

   (b)    U.S. Census Bureau (U.S. softwood lumber imports from countries other than Canada and U.S. softwood lumber exports); and

   (c)    Western Wood Products Association's monthly publication "Lumber Track" (U.S. softwood lumber shipments).

9.    U.S. shipments of softwood lumber shall be calculated as the sum of the softwood lumber shipments from the Western (Coast, Inland and California Redwood) region, the Southern region and the Northern region. Northern region shipments shall be calculated by taking the sum of Western and Southern region shipments and multiplying by 6.25%.

10.    Conversion factors used to translate metric units to board foot measure shall be:

   • m³: 1 MBF = 0.423776 m³

   • m²: 1 MBF = 0.010764 m²

11.    Monthly Expected U.S. Consumption means the volume of softwood lumber expected to be consumed in the United States in a particular month.

12.    Monthly Expected U.S. Consumption shall be calculated as follows:

   (a)    first, U.S. Consumption shall be determined for the 12-month period ending 3 months immediately before the month for which monthly Expected U.S. Consumption is being calculated;

   (b)    second, U.S. Consumption during that 12-month period shall be divided by 12 to produce a monthly average; and

   (c)    third, the monthly average U.S. Consumption volume shall be multiplied by the seasonal adjustment factor for the relevant month as specified in Table 1 of this Annex.

13.    The formula for calculating the monthly Expected U.S. Consumption is:

$$EUSC = [USCR \div 12] \times SAF$$

where EUSC = monthly Expected U.S. Consumption

   USCR = U.S. Consumption for the latest 12-month period

   SAF   = the seasonal adjustment factor for the pertinent month based on Table 1 of this Annex.

**TABLE 1**

| Month | Seasonal Adjustment Factor |
|-------|---------------------------|
| January | 0.9288 |
| February | 0.8944 |
| March | 1.0014 |
| April | 1.0707 |
| May | 1.0679 |
| June | 1.0405 |
| July | 1.0508 |
| August | 1.0501 |
| September | 0.9953 |
| October | 1.0636 |
| November | 0.9435 |
| December | 0.8930 |

14.    If U.S. Consumption during a Quarter differs by more than 5% from Expected U.S. Consumption during that Quarter, as calculated under paragraph 12, the calculation of Expected U.S. Consumption for the following Quarter for which quotas are being determined shall be adjusted as follows.  Specifically, the difference (in MBF) between U.S. Consumption and Expected U.S. Consumption for the Quarter shall be divided by 3 and the amount derived shall be added to (if U.S. Consumption was more than expected) or subtracted from (if U.S. Consumption was less than expected) the monthly Expected U.S. Consumption calculated under paragraph 12 for each month in the next Quarter for which quotas are determined.

# ANNEX 8

## Calculation of Regional Trigger Volumes

1.     This Annex specifies the procedures to be used to determine Regional Trigger Volumes for Regions that have elected Option A.

2.     A Region's Trigger Volume for a particular month shall be determined by multiplying the total monthly Expected U.S. Consumption by the Region's U.S. market share, and then multiplying that product by 1.1. Each Region's U.S. market share is set out in Table 1 of this Annex.

3.     Specifically, a Region's Trigger Volume for a particular month shall be calculated as follows:

$$RTV = EUSC \times RS \times 1.1$$

where  RTV    = the Region's Trigger Volume

EUSC = monthly Expected U.S. Consumption, as calculated in accordance with Annex 7D

RS      = the Region's U.S. market share from Table 1 of this Annex.

4.     The Trigger Volume for the B.C. Coast for a particular month shall be multiplied by an additional factor equal to the Region-specific seasonal adjustment factor for that month (Table 2) divided by the corresponding seasonal adjustment factor used for calculating monthly Expected U.S. Consumption (Table 1 of Annex 7D).

5.     Each Region's U.S. market share shown in Table 1 below was derived by multiplying 34% by the Region's share of total Canadian exports of Softwood Lumber Products to the United States during the period January 1, 2004 to December 31, 2005, as reported under Canada's Softwood Lumber National Export Monitoring System.

6.     Exports from companies listed in Annex 10 were not included in determining a Region's exports to the United States for purposes of calculating the Region's U.S. market share reflected in Table 1.  If the list of companies subject to exclusion under Article X should change, the Regional shares in Table 1 shall be recalculated to reflect the change.

## TABLE 1

| Region | Percentage Share of U.S. Consumption |
|---|---|
| B.C. Coast | 1.86 |
| B.C. Interior | 17.43 |
| Alberta | 2.49 |
| Saskatchewan | 0.42 |
| Manitoba | 0.29 |
| Ontario | 3.15 |
| Quebec | 4.39 |

**TABLE 2**

| Month | B.C. Coast Seasonal Adjustment Factor |
|---|---|
| January | 0.7212 |
| February | 0.9767 |
| March | 0.9025 |
| April | 1.3557 |
| May | 1.1461 |
| June | 1.1771 |
| July | 0.9213 |
| August | 1.0719 |
| September | 1.0584 |
| October | 0.9477 |
| November | 0.8466 |
| December | 0.8746 |

## ANNEX 10

## Excluded Companies

| | Companies | Location | Address |
|---|---|---|---|
| 1 | Armand Duhamel & Fils inc. | QC Saint-Ignace-de-Stanbridge | 778, rang de l'Église Nord, Saint-Ignace-de-Stanbridge, Québec, Canada, J0J 1Y0 |
| 2 | Bardeaux & Cèdres St-Honoré inc. | QC Saint-Honoré-de-Shenley | 935, route 269, Saint-Honoré-de-Schenley, Québec, Canada, G0M 1V0 |
| 3 | Scierie Coaticook inc. | QC Coaticook | 1129, chemin Ladd's Mills, CP 130, Coaticook, Québec, Canada, J1A 2S9 |
| 4 | Busque & Laflamme inc. | QC Saint Benoit-Labre | 51, route du Lac Poulin, CP 1009, Saint-Benoît-Labre, Québec, Canada, G0M 1P0 |
| 5 | Carrier & Bégin inc. | QC Saint-Honoré-de-Shenley | 484, route Grand Shenley, Saint-Honoré-de-Schenley, Québec, Canada, G0M 1V0 |
| 6 | Clermond Hamel ltée | QC St.-Éphrem-de-Beauce | 25, rang 7 Sud, Saint-Éphrem-de-Beauce, Québec, Canada, G0M 1R0 |
| 7 | J.D. Irving ltée. | QC Pohénégamook | 300, rue Union, Saint-John, P.O. Box 5777, New Brunswick, Canada, E2L 4M3 |
| 8 | Les Produits Forestiers D.G., ltée. | QC Québec | 2600, boulevard Laurier, Tour de la Cité, bureau 960, Québec, Québec, Canada, G1V 4W2 |
| 9 | Marcel Lauzon inc. | QC East Hereford | 129, route 253 Sud, East Hereford, Québec, Canada, J0B 1S0 |
| 10 | Mobilier Rustique (Beauce) inc. | QC Saint-Martin | 50, 1re Rue, CP 220, Saint-Martin, Québec, Canada, G0M 1B0 |
| 11 | Paul Vallée inc. | QC St-Isidore-de-Clifton | 5, chemin du moulin de Clifton, Saint-Isidore-de-Clifton, Québec, Canada, J0B 2X0 |
| 12 | René Bernard inc. | QC Beauceville | 88, avenue Lambert, Beauceville, Québec, Canada, G5X 3N4 |

| 13 | Roland Boulanger & Cie ltée. | QC Warwick | 235, rue St-Louis, Warwick, Québec, Canada, J0A 1M0 |
| 14 | Scierie Alexandre Lemay & Fils Inc. | QC Saint-Bernard | 1010, rue Saint-Georges, CP 189, Saint-Bernard, Québec, Canada, G0S 2G0 |
| 15 | Scierie La Patrie inc. | QC La Patrie | 70, rue Principale, CP 150, La Patrie, Québec, Canada, J0B 1Y0 |
| 16 | Scierie Tech inc. | QC Lac Drolet | 126, rue du Moulin, CP 99, Lac-Drolet, Québec, Canada, G0Y 1C0 |
| 17 | Wilfrid Paquet & Fils ltée. | QC Saint-Théophile | 403, route 173, Saint-Théophile, Québec, Canada, G0M 2A0 |
| 18 | Sault Forest Products Ltd. | ON Sault Ste. Marie | 484 Gran Avenue, Sault Ste. Marie, Ontario, Canada, P6A 4X8 |
| 19 | Boccam inc. | QC Saint-Georges de Beauce | 9200, 25e Avenue, Saint-Georges de Beauce, Québec, Canada, G6A 1L6 |
| 20 | Indian River Lumber | ON Scarborough | 248 Sylvan Avenue, Scarborough, Ontario, Canada, M1E 1A6 |
| 21 | Interbois inc. | QC Saint-Odilon | 305, du Parc CP 9, Saint-Odilon, Québec, Canada, G0S 3A0 |
| 22 | Jacomeau inc. | QC Saint Jean-de-la-Lande | 245, rue Cloutier, Saint-Jean-de-la-Lande, Québec, Canada, G0M 1E0 |
| 23 | Richard Lutes Cedar inc. | ON Norwood | 29 Queen Street, P.O. Box 275, Norwood, Ontario, Canada, K0L 2V0 |
| 24 | Séchoirs de Beauce inc. | QC Beauceville | 201, 134E Rue, Beauceville, Québec, Canada, G5X 3H9 |
| 25 | Scierie West Brome inc. | QC Lac-Brome | 15, chemin West Brome, Lac-Brome, Québec, Canada, J0E 2P0 |
| 26 | Matériaux Blanchet inc.'s Saint-Pamphile mill | QC Saint-Pamphile | 1030, rue Elgin Sud, CP 430, Saint-Pamphile, Québec, Canada, G0R 3X0 |

| | | | |
|---|---|---|---|
| 27 | Daaquam Lumber Inc. | QC Québec | 2600, boul. Laurier, Bureau 2640, Québec, Québec, Canada, G1V 4M6 |
| 28 | Bois Omega ltée | QC Lac Supérieur | 226, Chemin David, Lac Supérieur, Québec, Canada, J0T 1P0 |
| 29 | Fontaine inc. (J.A. Fontaine & Fils inc.) | QC Saint-Augustin-de-Woburn | 850, rue Fontaine, Saint-Augustin-de-Woburn, Québec, Canada, G0Y 1R0 |
| 30 | Industries Maibec inc. | QC Québec | 660, rue Lenoir, Québec, Québec, Canada, G1X 3W3 |
| 31 | Les Produits Forestiers Dubé inc. | QC L'Isle-Verte | 89, rue Villeray, L'Isle-Verte, Québec, Canada, G0L 1L0 |
| 32 | 9157-9516 Québec inc. (Scierie Nord-Sud inc.) | QC Saint-Prosper | 764, 8e Rue, Saint-Prosper, Québec, Canada, G0M 1Y0 |

## ANNEX 12

### Working Group on Regional Exemptions

1.    The Parties shall establish a Working Group on Regional Exemptions (the "Working Group") to develop substantive criteria and procedures for establishing if and when a Region utilizes market-determined timber pricing and forest management systems and therefore that Softwood Lumber Products manufactured in the Region qualify for an exemption from the Export Measures. The Working Group shall serve as a forum for resolving differences between the Parties concerning timber pricing and forest management systems.

2.    The Parties shall seek to establish the Working Group within 3 months after the Effective Date. The Working Group shall comprise representatives of each Party. Canada may include representatives of interested provinces in its delegation. The Parties may also decide to appoint to the Working Group non-governmental representatives from Canada and the United States with an interest in the operation of the SLA 2006. The Working Group may engage recognized experts in fields related to the operation of the SLA 2006 to prepare factual or analytic reports, and may establish such technical sub-groups as it deems necessary for the timely completion of its work.

3.    The Working Group shall seek to provide recommendations to the Parties within 18 months after the Effective Date concerning the development of an addendum to the SLA 2006, including:

(a)    substantive criteria for determining if and when a Region qualifies for exemption from the Export Measures in Articles VII through IX and Article X(2); and

(b)    procedures, which may be included in the addendum if the Parties so agree, governing the form and content of applications that Regions may submit to the Parties for purposes of seeking an exemption from the Export Measures referenced in subparagraph (a).

4.    Any dispute between the Parties regarding whether a Region has implemented or complied with the substantive criteria and procedures described in subparagraphs 3(a) and (b) may be submitted to arbitration under Article XIV.

## ANNEX 13

### The North American Initiative on Lumber

1.     The Parties seek through the SLA 2006 to promote increased cooperation between the U.S. and Canadian softwood lumber industries and to strengthen and expand the market for Softwood Lumber Products in both countries.

2.     To this end, the Parties shall encourage interested Persons in Canada and the United States to establish before the Effective Date a binational industry council, which shall receive $US 50 million pursuant to Annex 2C.

3.     The objectives of the council shall include:

    (a)     strengthening the North American lumber industry by increasing the market for its products; and

    (b)     building stronger cross-border partnerships and trust at all levels of the industry.

4.     The council shall consider initiatives to benefit the North American softwood lumber market, including:

    (a)     expanding the market for wood products in the non-residential construction market;

    (b)     developing new methods and markets for using wood in raised wood-floor systems;

    (c)     promoting the use of wood in existing residential markets;

    (d)     educating consumers on the sustainability of wood products to demonstrate their desirability as an environmentally preferable building and finishing material; and

    (e)     promoting the use of wood in Green Building Standards.

**ANNEX 18**

**Template for Supplemental Letters from the Members of the U.S. Industry Which Have Filed Letters as Described in Annex 5A**

Re:    Termination of the Softwood Lumber Agreement Between the Government of Canada and the Government of the United States of America (SLA 2006) Pursuant to Article XVIII or Article XX(1)

Dear USTR Schwab and Secretary Gutierrez:

Entity A agrees that, if the United States exercises its right to terminate the SLA 2006 pursuant to Article XX(1), or if the SLA 2006 terminates by operation of Article XVIII, for a period of 12 months after such termination, it will not file a petition, and will oppose initiation of an investigation, pursuant to Title VII of the *Tariff Act of 1930*, as amended, or §§ 301-305 of the *Trade Act of 1974*, as amended, with respect to imports of Softwood Lumber Products from Canada.

Entity A agrees that it will ensure that the commitments in this letter are undertaken by, and remain binding on, any entities that are successors in title of Entity A.