# Baker Hostetler

Baker&Hostetler LLP

Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304

T 202.861.1500
F 202.861.1783
www.bakerlaw.com

Elliot J. Feldman
direct dial: 202.861.1679
efeldman@bakerlaw.com

November 16, 2006

**VIA E-MAIL**

Professor Albert Jan van den Berg
Professor Armand de Mestral
Mr. Davis R. Robinson
c/o Mr. Gonzalo Flores
ICSID
1818 H Street, N.W.
Washington D.C., 20433

    Re:    <u>Tembec's Response to United States' October 13, 2006 Letter</u>

Dear Members of the Tribunal:

    When Tembec wrote to the Tribunal on October 6, 2006 to say that Tembec and the United States should bear their own costs and fees, Tembec expected that this issue might be the only non-controversial one with which the United States would agree in the history of Tembec's Chapter 11 dispute. The idea that "No party ... shall seek to hold any other party liable to pay its costs and expenses of litigation relating to the [Softwood Lumber litigation]"[1] did not originate with Tembec, but instead with the Governments of the United States and Canada, who were the two Parties to the Softwood Lumber Agreement ("SLA"). They wrote the costs and expenses provision into the Termination of Litigation Agreement contained in Annex 2A of the SLA.[2] The

---

[1] See Annex 2A, Paragraph 5 of the 2006 Softwood Lumber Agreement at http://www.dfait-maeci.gc.ca/eicb/softwood/pdfs/SLA-en.pdf, last visited November 16, 2006.

[2] That provision likely was introduced by the United States because it was much more in the interests of the United States than Canada to limit exposure to opponents' legal fees and costs. The United States was the defendant in almost all of the Softwood Lumber litigation and Canadian parties repeatedly won decisions from both NAFTA Chapter 19 panels (composed predominantly of American panelists) and the U.S. Court of International Trade, holding that the U.S. antidumping and countervailing duty orders serving as the basis for collecting nearly $5 billion from Canadian lumber producers since May 2002, were unsupported by valid, legal determinations. *See Certain Softwood Lumber Products from Canada: Final Affirmative Threat of Injury Determination*, Secretariat File No. 2002-1904-07 (upholding the International Trade Commission's negative threat of injury determination); *Certain Softwood Lumber Products from Canada, Opinion and Order of the Extraordinary Challenge Committee*, Secretariat File No. ECC-2004-1904-01USA (affirming the Chapter 19 Panel's decision to uphold the ITC's negative threat of injury determination); *Tembec v. United States*, 30 CIT ___, Slip Op. 06-109 (July 21,

Professor Albert Jan van den Berg
Professor Armand de Mestral
Mr. Davis R. Robinson
November 16, 2006
Page 2

two Governments drafted the Termination of Litigation Agreements on their own terms, without Tembec's input, and delivered those agreements for signature by Tembec and a substantial number of other parties to pending litigation that the Governments wanted terminated in connection with the SLA. Tembec was expected by the two Governments to adhere to the terms of the SLA in order to recover from the United States hundreds of millions of dollars in antidumping and countervailing duty deposits in a timely fashion.

Tembec signed two Termination of Litigation Agreements that are relevant to the Tribunal's present inquiry. In one, Tembec agreed to withdraw its NAFTA Chapter 11 arbitration claims against the United States, and neither Tembec nor the United States, by the agreement's terms as authored by the United States, would seek to recover its costs and fees. In the second, Tembec agreed to dismiss its D.C. District Court lawsuit seeking to vacate this Tribunal's September 7, 2005 decision, and again, neither Tembec nor the United States would seek to recover from each other their costs and legal fees for that action. Tembec signed and returned the Governments' Termination of Litigation Agreements, to both Governments, on September 20, 2006.

On October 6, 2006, Tembec reported to the Tribunal that it had signed and returned those agreements; provided executed copies of them; and stated that it had not yet seen executed copies from the United States, but expected they had been signed or would be soon. Tembec had no reason to believe that the United States had not signed or would not sign the agreements that it had prepared and demanded Tembec to sign.

It was surprising, therefore, when the United States, on October 13, 2006, accused Tembec of trying to mislead the Tribunal on October 6 as to the status of Tembec's NAFTA Chapter 11 claim, by claiming there was an agreement on costs and fees. The Termination of Litigation Agreements attached to Tembec's October 6 letter were the only such agreements in existence at that time (whether in draft or executed form) with respect to Tembec's litigation relating to its NAFTA Chapter 11 claim. The terms of those agreements, as the United States knows very well, were exactly and precisely as Tembec presented them to this Tribunal on October 6, the date set by this Tribunal for Tembec's submission. For the United States to assert that Tembec did not provide a "true and correct copy" of settlement terms on October 6 is a shameful misrepresentation, an act of bad faith, because the document that the United States claims is a "true and fully executed copy of the Settlement of Claims Agreement dated October 12, 2006" had not been provided to Tembec, even in draft form, until October 11, five days after Tembec's submission to the Tribunal.

---

2006) (holding that the USTR had no authority to order Commerce to amend the antidumping and countervailing duty order); *Tembec v. United States*, 30 CIT ___, Slip Op. 05-152 at 20 ("Accordingly, all of Plaintiffs' unliquidated entries…must be liquidated in accordance with the final negative decision of the NAFTA panel."); *Certain Softwood Lumber Products from Canada: Final Affirmative Countervailing Duty Determination*, Decision of the Panel on the Fifth Remand Determination, Secretariat File No. USA-CDA-2002-1904-03 (upholding the Department of Commerce's *de minimis* subsidy rate calculation).

Professor Albert Jan van den Berg
Professor Armand de Mestral
Mr. Davis R. Robinson
November 16, 2006
Page 3

The United States did not explain in its October 13 letter that, on October 11, 2006, the two Governments presented Tembec with a document entitled "Settlement of Claims Agreement," and demanded that Tembec sign it the same day. The Settlement of Claims Agreement retained the language about each party bearing its own costs and attorneys' fees, but did not make specific reference to Tembec's NAFTA Chapter 11 Claim. Tembec was provided no explanation for this new document, and its counsel's protests about the lack of explanation were ignored by the Governments.[3] Tembec executed this additional document at the Governments' insistence, advised that Tembec's signature on this document stood between execution and abandonment of the Softwood Lumber Agreement. At that time, Tembec reasonably believed that the document was supplemental to, and not in place of, the earlier Termination of Litigation Agreements.[4]

At 5:42 p.m. on October 12, 2006, the United States and Tembec reached agreement on a stipulation to dismiss Tembec's D.C. District Court action to vacate this Tribunal's September 7, 2005 decision on consolidation, and thus effectively end Tembec's ability to pursue its original NAFTA Chapter 11 claims against the United States. The stipulation provided for dismissal of the D.C. District Court action, "with prejudice, subject to the terms and conditions of the Softwood Lumber Agreement of 2006."

At 11:00 p.m. on October 12, 2006, the United States and Canada announced 19 pages of amendments to the SLA that the Governments entered into without consulting with or obtaining the agreement of Tembec ("SLA Amendments"). Article I of the amendments replaced the Termination of Litigation Agreements with the Settlement of Claims Agreement. The Settlement of Claims Agreement became the amended Annex 2A of the SLA, although it had not been labeled as such when signed by Tembec a few hours earlier. Tembec is unaware of any signed or official version of the SLA Amendments incorporating the October 12, 2006 Settlement of Claims Agreement.[5] By contrast, the Annex 2A submitted to this Tribunal by Tembec on October 6, 2006 was part of the SLA signed by both the United States and Canada on September 12, 2006. Were there a dispute over authenticity, only the documents submitted by Tembec would qualify.

---

[3] *See* Letter of October 11, 2006 from Elliot J. Feldman to Hugh Cheetham, DFAIT, and Jeff Weiss of USTR, and "Settlement of Claims Agreement", attached as Exh. A.

[4] Attached as Exh. A is an authentic copy of the "Settlement of Claims Agreement" executed by counsel for Tembec. Contrary to the United States' assertion, the copy of the "Settlement of Claims Agreement" presented in the United States' October 13, 2006 letter to the Tribunal is not a "true" copy of the Settlement of Claims Agreement executed by Tembec: the document presented by the United States is labeled at the top of page 1 as "ANNEX 2A," but the document Tembec received was not. *Compare* Exh. A of this letter with the attachment to the United States' October 13, 2006 letter to the Tribunal.

[5] The October 12, 2006 SLA Amendments may be found at http://www.dfait-maeci.gc.ca/eicb/softwood/pdfs/SLA-en.pdf, last visited November 16, 2006. As posted on the Government of Canada's website, the page 6 signature page remains unsigned.

Professor Albert Jan van den Berg
Professor Armand de Mestral
Mr. Davis R. Robinson
November 16, 2006
Page 4

Tembec first learned on October 13, 2006 of the United States' intent to seek costs and attorneys' fees, despite the signed agreements of September 20 and October 12, when the United States claimed that Tembec had attempted to "mislead" the Tribunal by directing it to the original SLA of September 12 and contending that the United States had agreed that each party would bear its own costs and attorneys' fees.[6] The United States submitted to the Tribunal the "Settlement of Claims" document, and took the position that Tembec should bear the entire costs, including the United States' attorneys' fees, with respect to Tembec's NAFTA Chapter 11 arbitration proceedings.

When Tembec queried the Government of Canada, on October 16, 2006, about the United States' demand for costs and attorneys' fees from the Tribunal, the Government spokesman said that Canada understood Tembec and Canfor would be treated equally, and that the United States' demand for costs and attorneys' fees was inconsistent with the SLA.[7]

On November 3, 2006, the United States informed the Tribunal that it had agreed with Canfor that each party would bear its own costs and attorneys' fees in the NAFTA Chapter 11 proceedings.[8] In light of the United States' efforts to seek costs and fees from Tembec with respect to the NAFTA Chapter 11 proceedings, contrary to the "terms and conditions of the Softwood Lumber Agreement" as known to Tembec on October 12, Tembec informed the D.C. District Court on November 9, 2006 that the United States had not lived up to the conditions for the stipulation of dismissal, and moved to reinstate its action in the D.C. District Court to vacate the Tribunal's September 7, 2005 consolidation order.

There is no principled reason for the United States to persist in seeking nearly $166,000 in costs and fees from Tembec in the NAFTA Chapter 11 proceedings, while surrendering its claim to over $537,000 in costs and fees against Canfor.[9] Canfor and Tembec both brought NAFTA Chapter 11 cases against the United States, and the United States wanted them both dismissed as a condition of the SLA. Tembec satisfied in good faith that condition on September 20, 2006 when it executed the Termination of

---

[6] The United States' statement was disingenuous because only the September 12, 2006 SLA, without any amendments, existed on October 6, 2006 when Tembec informed the Tribunal that the parties agreed to bear their own arbitration costs and fees.

[7] The Tribunal may want to inquire with the other party to the SLA, the Government of Canada, and solicit its understanding through an Article 1128 submission as to whether Canfor and Tembec were to be treated differently with respect to costs and fees.

[8] See Letter of November 3, 2006 from Andrea J. Menaker to the Tribunal.

[9] The United States' April 7, 2006 submission on costs claimed costs and fees of $537,401.33 against Canfor, $210,017.14 against Terminal Forest Products, and $165,808.29 against Tembec. Canfor has withdrawn its NAFTA Chapter 11 claim, and the United States has agreed not to seek costs and fees with respect to Canfor. See Letter of Andrea J. Menaker to Tribunal, (Nov. 3, 2006), Exh. B.

Professor Albert Jan van den Berg
Professor Armand de Mestral
Mr. Davis R. Robinson
November 16, 2006
Page 5

Litigation Agreement pursuant to Annex 2A of the SLA between the two Governments for Tembec's NAFTA Chapter 11 claim.

The United States' position is particularly unprincipled because it suggests that, had Tembec continued pressing its claim against the United States before this Tribunal as Canfor had done (which no doubt would have increased the United States' arbitration costs and legal fees), the United States would have agreed to waive those higher costs and fees pursuant to the SLA as it did for Canfor; but because the proceedings before this Tribunal were terminated as to Tembec (and the United States was saved those additional costs and fees that otherwise would have been incurred), the United States is entitled to compensation.

Regardless now whether there ever was a "meeting of the minds" between Tembec and the United States not to seek fees and costs from each other with respect to the NAFTA Chapter 11 arbitration, the Tribunal should deny the United States' request here. The United States comes to its claim with unclean hands. It has acted in bad faith by its "bait and switch" of the SLA documents that it required Tembec to sign, and by its misrepresentation to this Tribunal about the veracity of Tembec's October 6 submission.

And then there are the merits themselves of the claim. The United States appears to expect costs and fees on a theory of being the prevailing party on consolidation, but the United States has not necessarily prevailed on the issue. Tembec maintains its objections to the validity and asserted jurisdiction of this Tribunal. Tembec moved to reinstate its motion to vacate based on the United States' retracted commitment not to seek costs or fees, which means that Tembec's objections to the jurisdiction of this Tribunal are yet to be adjudicated. A final adjudication as to those objections may take years should there be an appeal by the losing party of the D.C. District Court's decision. Should Tembec proceed with its motion to vacate and prevail, the Tribunal's authority to allocate costs would be as invalid as the decision to consolidate. The most prudent action for this Tribunal under the circumstances would be for the Tribunal to leave the parties where they are and forego ruling on this issue.

Even were the Tribunal to insist on proceeding and decide that the United States was the prevailing party as to consolidation, it still would be inappropriate to require Tembec to pay the United States' arbitration costs, let alone its legal fees.[10] Tembec raised the issue of consolidation with the United States from the very first meeting between the parties in January 2004, and proceeded with the appointment of an Article 1120 tribunal and briefing on jurisdictional issues based upon the United States' repeated representations that it did not plan consolidation. The United States, not Tembec, moved for consolidation and invoked the proceeding for which it now expects an allocation of costs and fees. Tembec and the United States already had briefed jurisdiction before the Article 1120 Tribunal, and Tembec was ready to proceed

---

[10] There is no presumption in the UNCITRAL Rules for an unsuccessful party to pay the costs of legal representation and assistance of a successful party. *Compare* Article 40(2) with Article 40(1).

Professor Albert Jan van den Berg
Professor Armand de Mestral
Mr. Davis R. Robinson
November 16, 2006
Page 6

with oral argument, when the United States moved for consolidation in March of 2005. The United States sought a do-over after forum-shopping, and all of the costs of representation that Tembec incurred in contending with the United States over the timely formation of the Article 1120 tribunal (in which Tembec prevailed when the United States refused to appoint an arbitrator) and the briefing of the United States' objection to jurisdiction (which remains unresolved as to Tembec) were lost because the United States changed its mind as to consolidation.

Of the $165,808.29 that the United States seeks to recover from Tembec,[11] $125,086.71 comes from the Article 1120 proceeding that the United States abandoned in favor of consolidation.[12] Of that $125,086.71, the United States claims $75,000 for its deposit for the arbitration costs of that proceeding.[13] Yet most of the deposit paid by Tembec and the United States for the Article 1120 proceeding went unused[14] and both parties are expecting to receive from ICSID a refund of the remaining funds as early as today approximately in the amount of $73,000. There is no logical reason for Tembec to reimburse the United States for the unused and soon-to-be refunded portion of its initial deposit in the Article 1120 proceeding.

The remainder of the $125,086.71 represents the United States' costs of legal representation in the Article 1120 proceeding, which was largely jurisdictional briefing on a motion that was never resolved as to Tembec.. If the United States' theory of recovery were correct—that a party who "abandon[s] its claim and withdraw[s] from the arbitration on the eve of the jurisdictional hearing" should be obliged to pay the other party's legal fees[15]—then the United States should be reimbursing Tembec for its legal representation expenses before the Article 1120 tribunal. Those expenses were wasted when, on the eve of the Tembec tribunal's hearing on jurisdiction, the United States decided that it would prefer starting over with someone else.

The United States argued that its motion for consolidation was for the benefit of the United States, and not that of Tembec or any other Canadian claimant. Although Tembec respectfully disagrees, the Tribunal concluded that the consolidation provision in NAFTA Chapter 11 was intended to "alleviat[e] the resources of the State Parties in defending against multiple claims...."[16] Tembec should not be punished for exercising its NAFTA right to file and pursue a Chapter 11 claim, and should not be compelled to

---

[11] See U.S. Submission on Costs (April 7, 2006) at 7 n.12.

[12] See id. at 5.

[13] See id.

[14] The United States repeatedly told this Tribunal that most of the arbitration expenses in Tembec's Article 1120 proceedings had not occurred (see U.S. June 3, 2005 submission at 16-17 n.49; see also U.S. July 22, 2005 submission at 21-22 n.88), and yet the United States currently requests that Tembec reimburse the United States for the full $75,000 it paid as an advance deposit for arbitration costs in the Article 1120 proceedings.

[15] Letter from Andrea J. Menaker to Tribunal (Oct. 13, 2006) at 2.

[16] Consolidation Order at ¶ 76.

Professor Albert Jan van den Berg
Professor Armand de Mestral
Mr. Davis R. Robinson
November 16, 2006
Page 7

finance its opponents' procedural motions for its opponents' unique interests, particularly where Tembec had inquired and the United States repeatedly denied its intention to consolidate. Tembec opposed the motion as unnecessary and wasteful, as Canfor had done, and as both had every right to do. Were the Tribunal to be consistent with its own interpretation of NAFTA Article 1126, it would deny the request to make Tembec, a private claimant, pay fees and costs for a proceeding initiated by the United States, contrary to its declared intentions, and for its own convenience.

The nature of the consolidation action further counsels against the reallocation of fees and costs, even were the Tribunal to conclude that the United States was the prevailing party.[17] Consolidation under NAFTA Article 1126 presented novel legal issues that had been treated only once before. Tembec should not be penalized for making a good faith effort to defeat a largely untested procedural motion under Chapter 11, particularly where the only instance in which consolidation had been considered, the request to consolidate was denied.[18] Tembec relied on the same principles cited in *HFCS* as grounds for denying Mexico's request for consolidation, but this Tribunal found important principles of the *HFCS* tribunal's decision unpersuasive and declined to follow them.[19] Tembec should not be penalized for opposing consolidation in reliance

---

[17]Tribunals often have refused to award costs and fees in favor of the prevailing party due to the novelty of the arguments involved in the arbitration. *See, e.g., The Loewen Group, Inc. & Raymond L. Loewen v. United States*, ICSID Case No. ARB(AF)/98/3, Award, at ¶ 240 (June 26, 2003) (declining to award fees and costs in favor of the respondent where "the dispute raised difficult and novel questions of far-reaching importance for each party...."); *Mondev Int'l Ltd. v. United States*, ICSID (Additional Facility) Case No. ARB(AF)/99/2, Award, at ¶ 159 (Oct. 11, 2002) (dismissing claims but refusing to award fees and costs to respondent where "the scope and meaning of the various provisions of Chapter 11 is a matter both of uncertainty and of legitimate public interest"); *Compania de Aguas del Aconquija, S.A. & Compagnie Générale des Eaux v. Argentine Republic*, ICSID Case No. ARB/97/3, Award, at ¶¶ 95-96 (deciding that each side should bear arbitral costs equally and pay its own legal fees in part because "the instant case raised a set of novel and complex issues not previously addressed...."). *But see International Thunderbird Gaming Corp. v. United Mexican States*, Arbitral Award, at ¶ 218 (Jan. 26, 2006) (determining that "investment arbitration in general and NAFTA arbitration in particular have become so well known and established as to diminish their novelty as dispute resolution mechanisms" and awarding a portion of fees and costs to Mexico). The *Thunderbird* tribunal rejected the novelty argument, but only because it no longer considered Chapter 11, and international arbitration, a new form of international dispute settlement. However, while the Chapter 11 mechanism itself may be over a decade old, the consolidation provisions of Chapter 11 had been tested only once, and with a contrary result.

[18] *See Corn Products International, Inc. v. United Mexican States and ArcherDaniels Midland Company and Tate & Lyle Ingredients Americas, Inc. v. United Mexican States* ("*HFCS*"), Order Of The Consolidation Tribunal (May 20, 2005).

[19] *See* Consolidation Order at ¶ 222. ("Second, as a general proposition, the present Tribunal disagrees with the statements found in ¶ 9 of the *Corn Products* Order: 'Two tribunals can handle two separate cases more fairly and efficiently than one tribunal where the two claimants are direct and major competitors, and the claims raise issues of competitive and commercial sensitivity,' and in ¶ 10: 'However, confidential information among competitors is much more

Professor Albert Jan van den Berg
Professor Armand de Mestral
Mr. Davis R. Robinson
November 16, 2006
Page 8

on the only existing decision as to Article 1126 because this Tribunal took a different analytical approach.

For the foregoing reasons, the Tribunal should deny the United States' request to recover arbitration costs and fees from Tembec.

Respectfully submitted,

Elliot J. Feldman
Mark A. Cymrot
Michael S. Snarr
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W.
Washington D.C. 20036
Tel: (202) 861-1679
Fax: (202) 861-1783

Counsel to Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc.

---

easily protected in separate proceedings, which in turn also permit a far more efficient arbitration process under such circumstances.'")



# Baker Hostetler

Baker&Hostetler LLP

Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304

T 202.861.1500
F 202.861.1783
www.bakerlaw.com

October 11, 2006

Elliot J. Feldman
direct dial: 202.861.1679
efeldman@bakerlaw.com

**VIA FACSIMILE AND FIRST CLASS MAIL**

Mr. Hugh Cheetham
DFAIT/MAECI -- Trade Law Bureau
Direction générale du droit
   commercial international
125 Sussex Drive
Ottawa, Ontario K1A 0G2
CANADA

Mr. Jeff Weiss
Office of the United States
   Trade Representative
600 17th Street, N.W.
Washington, D.C.  20508

Re:   *Settlement of Claims Agreement - Tembec Inc.*

Dear Hugh and Jeff:

Accompanying this facsimile, and enclosed with the original of this letter, is our signature page to the Settlement of Claims Agreement. I want to raise with you, nonetheless, as counsel to various clients in the *Softwood Lumber* dispute, three particular concerns.

First, this document was presented to us in final form for signature today around 6:00 P.M. We have had virtually no time to study it, and do not understand why we were given no notice that it was being prepared and were not consulted at all about its contents. Some of the drafting problems we believe might have been avoided had we been given notice, and had the Government then been willing to correct errors called to its attention.

Second, among the errors, we note especially the inconsistency between paragraph 6 and paragraph 8 of Annex 2A of the signed Softwood Lumber Agreement. Annex 2A did not apply the contents of paragraph 9 in this agreement to the countervailing duty NAFTA appeal. We had proposed that paragraph 6 be modified, very very modestly, to retain consistency with Annex 2A, but our request was rejected.

Mr. Hugh Cheetham
October 11, 2006
Page 2

We have heard two reasons for rejecting this request. The first is that the contents of paragraph 9 are now "boilerplate," but objections were raised throughout the negotiations over the "without prejudice" clauses, communicating unambiguously to the Government that industry did not regard these clauses as boilerplate. The second is that the intended interpretation of this language is that each party retains their own positions without prejudice.

We believe (our third concern), assuming this intended meaning, that the statement should have read, "A party's signature on this Termination Agreement is without prejudice to the positions of that party in the Covered Actions." On behalf of all of our clients, including here especially Tembec, I am asserting that we interpret paragraph 9 to have this meaning – without prejudice to one's own positions and no one else's -- within this Agreement.

Sincerely,

Elliot J. Feldman
Enclosure

## SETTLEMENT OF CLAIMS AGREEMENT

1.   On the Effective Date of the Softwood Lumber Agreement 2006, this Settlement of Claims Agreement (Claims Settlement Agreement) will constitute a full and complete settlement of the claims asserted in the actions referenced in this paragraph. On the Effective Date, Canada and the United States shall file a joint stipulation of dismissal of Canada's complaint in *Canada v. United States* (Ct. No. 05-00033 (CIT)). Further, on the Effective Date:

>   The United States and Tembec Inc. and its affiliates shall file a joint stipulation of dismissal in *Tembec et al. v. United States* (Civil Action No. 05-2345 (U.S. District Ct. for the District of Columbia));

>   the United States shall withdraw its request for an Extraordinary Challenge in *Certain Softwood Lumber Products from Canada*, Secretariat File No. ECC-2006-1904-01USA; and

>   Canfor Corporation shall withdraw its claim against the United States in *The Consolidated Arbitration Pursuant to Article 1126 of the North American Free Trade Agreement (NAFTA) and the UNCITRAL Arbitration Rules between Canfor Corporation v. United States of America and Terminal Forest Products Ltd. v. United States of America.*

2.   In addition, on the Effective Date, Canada and the United States shall seek to dismiss the following actions:

>   *Certain Softwood Lumber Products from Canada (Original AD Investigation)*, Secretariat File No. USA-CDA-2002-1904-02;

>   *Tembec v. United States* (Consol. Ct. No. 05-00028 (CIT)) and the cases consolidated therein; and

>   *Coalition for Fair Lumber Imports Executive Committee v. United States (Civil Action No. 05-1366 (D.C. Cir.)).*

3.   The United States shall ensure that the following actions are taken:

>   (a)   On the Effective Date, the U.S. Department of Commerce ("USDOC") shall retroactively revoke the Countervailing Duty Order regarding Certain Softwood Lumber from Canada, 67 Fed. Reg. 36,070 (May 22, 2002), as amended, and the Antidumping Duty Order regarding Certain Softwood Lumber from Canada, 67 Fed. Reg. 36,068 (May 22, 2002), as amended (the "Orders"), in their entirety as of May 22, 2002 without the possibility that they could be reinstated;

>   (b)   On the Effective Date, USDOC shall terminate all USDOC proceedings related to the Orders; and

>   (c)   No later than 3 days after the Effective Date, to the extent that USDOC is not enjoined against providing for liquidation, USDOC shall provide the instructions in Annex 3A of the SLA 2006 to U.S. Customs and Border Protection to cease collecting cash deposits and to liquidate entries covered by the Orders described in subparagraph 3(a) without regard to antidumping or countervailing duties and to pay interest in accordance with section 778 of the Tariff Act of 1930, as amended.

4.   Following the Effective Date, Canada and the United States shall continue to seek modification or clarification of the injunctions in *West Fraser v. United States* (Consol. Ct. No. 05-00079 (CIT)) such that the underlying entries may be liquidated without regard to antidumping and countervailing duties. To the extent that USDOC is not enjoined against providing for liquidation, USDOC shall provide the instructions in Annex 3B of the SLA 2006, as amended, to USCBP at such time as the U.S. Court of International Trade modifies or clarifies the injunctions against liquidation issued in *West*

*Fraser v. United States* to permit the United States to liquidate entries covered by the first AD administrative review, the liquidation of which had been enjoined.

5.     As promptly as possible after the Effective Date, Canada and the United States shall file joint motions to dismiss the following actions, if they have not been dismissed already, on the grounds of mootness:

*Certain Softwood Lumber Products from Canada (CVD 1st Administrative Review)*, Secretariat File No. USA-CDA-2005-1904-01; and

*West Fraser v. United States* (Consol. Ct. No. 05-00079 (CIT)).

6.     For purposes of paragraphs 7 through 10, *Certain Softwood Lumber Products from Canada (Original CVD Investigation)*, Secretariat File No. USA-CDA-2002-1904-03 shall be treated in the same manner as an "action referenced in this Claims Settlement Agreement".

7.     Canada and the United States shall request dismissal of any new lawsuits concerning the same subject matter as any action referenced in this Claims Settlement Agreement that are filed before the date of entry into force of the SLA 2006.

8.     No party to this Claims Settlement Agreement shall seek to hold any other party liable to pay its costs and expenses of litigation relating to any action referenced in this Claims Settlement Agreement.

9.     This Claims Settlement Agreement is without prejudice to the position of any party to this Claims Settlement Agreement on any issue in any action referenced in this Claims Settlement Agreement.

10.    Each party to this Claims Settlement Agreement shall not re-file any of the actions that are referenced in paragraph 1 of this Claims Settlement Agreement.

11.    This Claims Settlement Agreement may not be altered, amended, modified, or otherwise changed other than through the written agreement of all parties hereto.

12.    This Claims Settlement Agreement shall bind the parties, their officers, directors, employees, predecessors, subsidiaries, heirs, executors, administrators, agents, successors, and assigns.

13.    As evidence of their consent to this Claims Settlement Agreement, the parties, through their duly authorized Representatives, have signed below.

14.    This Claims Settlement Agreement may be executed in counterparts, each one of which shall be deemed an original and all of which together shall constitute one and the same Claims Settlement Agreement.

By: _____ Dated: _____, 2006
**M. Jean Anderson**
Weil, Gotshal & Manges, LLP
1300 Eye Street, NW.
Suite 900
Washington, DC 20005

Counsel for the Government of Canada in all the referenced proceedings other than *Tembec et al. v. United States* (Civil Action No. 05-2345 (U.S. District Ct. for the District of Columbia)) and the *Consolidated Arbitration Pursuant to Article 1126 of the North American Free Trade Agreement (NAFTA) and the UNCITRAL Arbitration Rules between Canfor Corporation v. United States of America and Terminal Forest Products Ltd. v. United States of America*

By: _____ Dated: _____, 2006
Seth P. Waxman
Wilmer, Cutler, Pickering, Hale & Dorr, LLP
1875 Pennsylvania Avenue, NW.
Washington, DC 20006-3642

Counsel for the Government of Canada in *Coalition for Fair Lumber Imports Executive Committee v. United States* (Civil Action No. 05-1366 (D.C. Cir.))


By: _____ Dated: _____, 2006
Reginald T. Blades, Jr.
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
1100 L Street, NW.
8th Floor
Washington, DC 20530

Counsel for the United States in *West Fraser v. United States* (Consol. Ct. No. 05-00079 (CIT)) and the cases consolidated therein


By: _____ Dated: _____, 2006
Stephen C. Tosini
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
1100 L Street, NW.
Room 12020
Washington, DC 20530

Counsel for the United States in *Tembec v. United States* (Consol. Ct. No. 05-00028 (CIT)) and the cases consolidated therein

By: _____ Dated: _____, 2006
Alexander Kenneth Haas
U.S. Department of Justice
20 Massachusetts Avenue, NW
Washington, D.C.

Counsel for the United States in *Tembec et al. v. United States* (Civil Action No. 05-2345 (U.S. District Ct. for the District of Columbia))


By: _____ Dated: _____, 2006
Douglas N. Letter
Litigation Counsel
U.S. Department of Justice
Civil Division, Appellate Staff
950 Pennsylvania Avenue N.W.
Room 7513
Washington, D.C. 20530-0001

Counsel for the United States in *Coalition for Fair Lumber Imports Executive Committee v. United States* (Civil Action No. 05-1366 (D.C. Cir.))


By: _____ Dated: _____, 2006
John D. McInerney
U.S. Department of Commerce
14th & Constitution Avenue, N.W.
Room 3622
Washington, D.C. 20230

Counsel for United States Department of Commerce in *Certain Softwood Lumber Products from Canada (Original AD Investigation)*, Secretariat File No. USA-CDA-2002-1904-02; *Certain Softwood Lumber Products from Canada (Original CVD Investigation)*, Secretariat File No. USA-CDA-2002-1904-03; *Certain Softwood Lumber Products from Canada (CVD 1st Administrative Review)*, Secretariat File No. USA-CDA-2005-1904-01


By: _____ Dated: _____, 2006
Andrea J. Menaker
Chief, NAFTA Arbitration Division
Office of the Legal Adviser
U.S. Department of State
Washington, D.C.

Counsel for the United States with respect to the *Consolidated Arbitration Pursuant to Article 1126 of the North American Free Trade Agreement (NAFTA) and the UNCITRAL Arbitration Rules between Canfor Corporation v. United States of America and Terminal Forest Products Ltd. v. United States of America*


By: _____ Dated: _____, 2006
William Busis
Office of the United States Trade Representative
600 – 17th Street, N.W.
Washington, D.C. 20508

Counsel for the United States in *Certain Softwood Lumber Products from Canada*, Secretariat File No. ECC-2006-1904-01USA

By: _____  Dated: Oct. 11, 2006
Elliot J. Feldman
Baker & Hostetler, LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, NW.
Washington, DC 20036-5304

Counsel for Tembec Inc. and its affiliates


By: _____  Dated: _____, 2006
P. John Landry
DAVIS & COMPANY
2800-666 Burrard Street
Vancouver, British Columbia
V6C 2Z7

Counsel for Canfor Corporation in the *Consolidated Arbitration Pursuant to Article 1126 of the North American Free Trade Agreement (NAFTA) and the UNCITRAL Arbitration Rules between Canfor Corporation v. United States of America and Terminal Forest Products Ltd. v. United States of America*


By: _____  Dated: _____, 2006
Keith E.W. Mitchell
Harris and Company
14 Floor Bentall 5, 550 Burrard
Vancouver, British Columbia
V6C 2B5

Counsel for Canfor Corporation in the *Consolidated Arbitration Pursuant to Article 1126 of the North American Free Trade Agreement (NAFTA) and the UNCITRAL Arbitration Rules between Canfor Corporation v. United States of America and Terminal Forest Products Ltd. v. United States of America*


By: _____  Dated: _____, 2006
B. Thomas Peele, III
Baker & McKenzie, LLP
815 Connecticut Avenue, NW.
Suite 900
Washington, DC 20006-4078

Counsel for Canadian Forest Products Ltd., Canfor Corporation and its affiliates, Canfor Wood Products Marketing Ltd.