UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                                )
**TEMBEC INC., TEMBEC INVESTMENTS** )
**INC., TEMBEC INDUSTRIES INC.,**          )
                                                                )
                **Petitioners,**         )
                                                                )
**v.**                                                      )        No. 05-CV-2345 (RMC)
                                                                )
**UNITED STATES OF AMERICA,**        )
                                                                )
                **Respondent.**        )
_____)


**PETITIONERS' SUPPLEMENTAL BRIEF IN SUPPORT OF
NOTICE OF REINSTATEMENT OF ACTION OR IN THE ALTERNATIVE
<u>RULE 60(b) MOTION TO SET ASIDE STIPULATION OF DISMISSAL</u>**

        The United States has told this Court that the United States' demand for arbitration costs and fees is consistent with the terms and conditions of the Softwood Lumber Agreement 2006 ("SLA").  Petitioners have contested that view.  Petitioners also have argued that, even were the demand consistent with the terms and conditions of the SLA, this case should be reinstated by the Court due to the United States' misrepresentation and misconduct in obtaining Petitioners' signature to the Settlement of Claims Agreement ("SCA") of the SLA.  The Government of Canada is now on record that Tembec's interpretation of the SLA and SCA is correct:  the SLA does not authorize a claim for costs and fees against Tembec from the NAFTA Chapter 11 arbitration proceedings.

        On December 14, 2006, Petitioners received a letter from Andrea Lyon, Chief Trade Negotiator: North America on behalf of the Government of Canada, a copy of which is attached hereto as Exhibit A.  In that letter, the Government of Canada "set

out its understanding of the October 12, 2006 Softwood Lumber Agreement … in particular with respect to certain provisions of the Settlement of Claims Agreement….” *See* Exh. A at 1.  Canada and the United States are the only two Parties to the SLA. The two governments were responsible for negotiating the terms of the SLA and drafting ancillary documents, including both the SCA that was required to be signed by Petitioners on October 11, and the original Termination of Litigation Agreement ("TLA") that Petitioners had signed on September 20, agreeing to dismiss this case and the NAFTA Chapter 11 claims against the United States on condition that neither Petitioners nor the United States would seek costs and fees from each other.

       Canada explains in its December 14 letter to Petitioners that, contrary to the United States' assertions to this Court, the United States' demand for costs and fees in the arbitration between Tembec and the United States is precluded by the SLA.  The right to seek costs and fees indisputably had been precluded in the original TLA signed by Tembec.  When Canada and the United States negotiated revisions to replace the TLA with the SCA, also signed by Tembec, "the United States never raised with Canada the suggestion that those parties who did sign the TLA should receive less favourable treatment under the SCA than they would have received under the TLA." Exh. A at 1.

       Although the United States claims that the SCA lacks a specific reference to Tembec's NAFTA Chapter 11 claim, and therefore the United States may seek arbitration costs and fees for that action, Canada disagrees:

> Paragraph 8 of the SCA provides that 'No party to this Claims Settlement Agreement shall seek to hold any other party liable to pay its costs and expenses of this litigation relating to any <u>action</u> referenced in this claims Settlement Agreement".  The consolidated NAFTA Chapter 11 proceeding is an <u>action</u> specifically listed in paragraph 1 of the SCA.  In Canada's

view, this was sufficient to ensure that no claim for costs would be made against any party in the consolidated proceeding, including Tembec.

*Id.* at 2 (emphasis in original).  See also SCA at Exh. E of Notice of Reinstatement.

Canada is explicit that "[t]he renegotiation was not an attempt to modify the understanding reflected in the TLA that no costs would be sought for covered actions." See Exh. A at 1-2.  "The absence of the separate Tembec reference in the SCA does not reflect a change in the terms of settlement for Tembec." *Id.* at 2.

The United States' conduct toward the two other Canadian claimants in the consolidated NAFTA Chapter 11 proceedings conforms to Canada's understanding. Not only has the United States agreed not to seek costs and fees against Canfor Corp., who signed the SCA;  the United States now also has agreed not to seek costs and fees against Terminal Forest Products Ltd.  *See* Letter from P. John Landry to Professor Albert Jan van den Berg et al. (Jan. 22, 2007), attached hereto as Exhibit B.  The United States has abandoned its prior request for costs from those two claimants even though the United States claims to have incurred a much higher amount of costs and fees than it incurred from Tembec over the course of the various NAFTA Chapter 11 arbitration proceedings.  Moreover, the United States has abandoned its request for costs and fees against Terminal, even though Terminal never signed either the TLA or the SCA and is not specifically referenced in the SCA.

The United States appears to have singled out Tembec as the only NAFTA Chapter 11 claimant against whom it would seek to extract arbitration costs and fees, notwithstanding the terms and conditions of the SLA.  Whatever its reasons, the United States carefully avoided disclosing to Tembec its intent to amend the SLA and construe the SCA in such a way that it could justify an attempt to extract arbitration

costs and fees from Tembec alone once this case had been dismissed by Tembec's stipulated consent.

Petitioners stated previously in their motion for reinstatement and reply brief that Tembec had never been warned or informed that the SCA that Tembec signed on the night of October 11 would replace the TLA.  *See, e.g.,* Notice of Reinstatement at 4; Reply Memorandum at 3.  Those statements should be clarified and corrected.  No one in the United States Government—whether counsel for the United States in this case, counsel for the United States in the NAFTA Chapter 11 arbitration, or counsel for the United States in any one of the many other *Softwood Lumber* litigation proceedings in which Petitioners and their counsel participated—ever warned or informed Petitioners that the signed SCA would constitute an amendment of the SLA, and would replace the TLA prior to the United States' October 13, 2006 letter to the arbitration tribunal reasserting a right to recover costs and fees in spite of the SLA.  And more specifically, no one in the United States Government, despite Tembec's October 6, 2006 letter to the arbitration tribunal before the SCA ever was drafted, a letter that unmistakably explained Tembec's belief that recovery of costs and fees was to be waived, ever warned or informed Petitioners that the United States would seek costs and fees against Tembec after the SLA had been implemented.  And no one—either from the United States or Canada—warned Tembec that by executing the SCA, Tembec would expose itself to a claim for costs and fees in the consolidation proceedings.[1]

---

[1] Tembec has found, in searching its records to answer twenty-nine questions issued on January 23, 2007 by the arbitration tribunal reviewing the cost and fees issue, that a Canadian source asking for confidentiality indicated to Mr. Feldman on the evening of October 11 that Canada and the United States could not satisfy certain conditions of the TLA as a condition precedent to the SLA's entry into force, and that they would take other action enabling entry into force, including a possible substitution of the SCA. The amendment enabling the SCA to replace the TLA was not revealed.  The source did not indicate that
(continue)

Canada's December 14 letter confirms that Tembec's interpretation of the SCA is reasonable and correct.  The letter is very clear that throughout the SLA negotiations "the United States never raised with Canada the suggestion that those parties who did sign the TLA should receive less favourable treatment under the SCA than they would have received under the TLA. … At no point in the negotiation of the SCA did the United States raise any suggestion that the SCA as redrafted should alter the terms of settlement for Tembec." Exh. A at 1-2.

The United States obtained Tembec's stipulated consent to dismissal of this case knowing that Tembec believed that the terms of the TLA that it previously had submitted to the United States—that Tembec would not pursue its NAFTA Chapter 11 claim any longer and that neither side would seek costs or fees from the other—would be in effect once the SLA had been implemented.  Tembec had received an unconfirmed indication that the TLAs might be replaced by the SCA, but it was never told that its commitment to abandon its Chapter 11 claim or the mutual commitments not to seek costs would be altered by such a substitution.

Canada's letter of December 14 confirms that Canada had the same understanding as Tembec.  The e-mail exchange between Mr. Elliot Feldman, counsel for Tembec, and Mr. Alexander Haas, counsel for the United States, demonstrates that the United States knew Tembec believed the TLA language was operative and part of

---

(continued)
the Governments would not use the signed TLAs that had been submitted, could not show Mr. Feldman any documents, and could not confirm the report.  The source also understood that Tembec had committed to abandoning its NAFTA Chapter 11 claim with each party bearing its own costs and fees, and gave no indication that the SCA would alter the TLA commitments as to Tembec or that the United States might try to seek costs and fees from Tembec after implementation of the SLA.  Tembec's argument that the United States misled it is unaltered by this additional information from its records.

the SLA when the language of the dismissal was negotiated.  *See e.g.,* Reply Memorandum at 6, and Exh. F of Notice of Reinstatement.  Tembec's understanding was in fact correct because the SLA was not amended until after Tembec consented to the Stipulation of Dismissal at 5:42 p.m. on October 12, 2006.

For the foregoing reasons, including the additional evidence presented here, and based on all of the moving papers before the Court, Petitioners request that their Notice of Reinstatement and Rule 60(b) motion be granted.

Respectfully submitted,

_____/s/_____
Elliot J. Feldman (D.C. Bar No. 418501)
Mark A. Cymrot (D.C. Bar No. 164673)
Michael S. Snarr (D.C. Bar No. 474719)
BAKER & HOSTETLER LLP
1050 Connecticut Ave. N.W.
Suite 1100
Washington D.C. 20036-5304
Tel: (202) 861-1679
Fax: (202) 861-1783

Dated: January 30, 2007            *Counsel for Petitioners*