

Foreign Affairs and                  Affaires étrangères et
International Trade Canada            Commerce international Canada

December 14, 2006

Mr. James Lopez
President and CEO
Tembec
10, chemin Gatineau
Témiscaming, Québec
J0Z 3R0

Dear Mr. Lopez:

This letter is in response to your request of December 11, 2006, that the Government of Canada set out its understanding of the October 12, 2006 Softwood Lumber Agreement (the "Agreement"), in particular with respect to certain provisions of the Settlement of Claims Agreement ("SCA").

The version of the Agreement signed on September 12, 2006 contemplated complete termination of all softwood lumber related litigation. The vehicle for terminating the litigation was the Termination of Litigation Agreement ("TLA"), incorporated into the Agreement as Annex 2A. Among other things, the TLA provided for the termination of listed actions without costs. In order to expedite entry into force of the Agreement, Canada and United States found it necessary to negotiate, amongst other things, revisions to the TLA, beginning October 4, 2006. The objective of the renegotiation of the TLA was to settle a sufficient number of claims to satisfy the United States that it had legal authority to revoke the duty orders on softwood lumber.

In the negotiation of these revisions, the costs provision in the TLA (paragraph 5) was simply carried over to what became paragraph 8 in the SCA, albeit reflecting the change in name from TLA to SCA and changing the reference to "Covered Actions" to read "any action referenced in this Claims Settlement Agreement". Canada and the United States both recognized that the SCA would be signed by fewer parties than the TLA, but the United States never raised with Canada the suggestion that those parties who did sign the TLA should receive less favourable treatment under the SCA than they would have received under the TLA.

In short, the replacement of the TLA with the SCA reflected the decision by Canada and the United States to seek to dismiss only those actions necessary for the United States to exercise its authority to revoke the anti-dumping and countervailing duty orders in order to permit entry-into-force of the Agreement. The renegotiation was not an attempt to modify the understanding reflected in the TLA that no costs would be sought for covered actions.



- 2 -

Paragraph 8 of the SCA provides that "No party to this Claims Settlement Agreement shall seek to hold any other party liable to pay its costs and expenses of litigation relating to any <u>action</u> referenced in this Claims Settlement Agreement". The consolidated NAFTA Chapter 11 proceeding is an <u>action</u> specifically listed in paragraph 1 of the SCA. In Canada's view, this was sufficient to ensure that no claim for costs would be made against any party in the consolidated proceeding, including Tembec.

The TLA included a specific reference to the Tembec Chapter 11 claim that was not carried over into the SCA. It was necessary in the TLA because, at the time the TLA was negotiated (May-June 2006), Tembec's NAFTA claim had not matured (or reverted) into an independent action, but there was a possibility that this would occur before the entry into force of the SLA 2006 as a result of the U.S. District Court proceeding where Tembec was seeking the re-establishment of the original NAFTA Tribunal. The inclusion of a stand-alone reference to Tembec's NAFTA claim in the TLA covered off that possibility. However, such a possibility disappeared when the U.S. District Court issued an indefinite stay order on September 24, 2006.

The absence of the separate Tembec reference in the SCA does not reflect a change in the terms of settlement for Tembec. Rather, it reflects a change in the status of the claim at the time the SCA was negotiated, that is, that it would not become an independent action prior to the intended date for entry-into-force of the revised Agreement on October 12, 2006. At no point in the negotiation of the SCA did the United States raise any suggestion that the SCA as redrafted should alter the terms of settlement for Tembec.

Sincerely,

*Lyon*

Andrea Lyon
Chief Trade Negotiator: North America


cc: Mr. Paul Krabbe