UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEMBEC INC., TEMBEC INVESTMENTS INC., TEMBEC INDUSTRIES INC.,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | No. 05-CV-2345 (RMC) |

### RESPONDENT'S RESPONSE TO PETITIONERS' SUPPLEMENTAL BRIEF

Pursuant to this Court's Order, Respondent, the United States of America, submits this response to the supplemental brief filed by Petitioners, Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc. (collectively "Tembec"). Tembec's filing seeks: (i) to bolster its motion with a letter from Canada's Chief Trade Negotiator, which Tembec now adopts as its latest position on the Settlement of Claims Agreement ("SCA") of the Softwood Lumber Agreement 2006 ("SLA"), *see* Pet. Supp. Br. at 1-5; and (ii) to clarify and correct that Tembec, in fact, had notice from a confidential Canadian source of the possibility that the SCA would replace the earlier Termination of Litigation Agreement ("TLA"), *see id.* at 4 & n.1. At bottom, nothing in Tembec's supplemental brief alters the conclusion that this Court should deny the motion to reopen the judgment. Tembec still points to nothing in the SLA or the SCA that prevents the United States from seeking costs in the NAFTA Chapter Eleven arbitration proceedings initiated by Tembec against the United States, and has provided no basis to reopen the judgment.

Tembec's argument remains, without any foundation, that it was somehow misled by the

1

United States into signing the SCA. There is no evidence of that, and, indeed, the facts in this case demonstrate the contrary. Tembec was given the SCA to sign by the Government of Canada, not by the United States. *See* Transcript of January 31, 2007 Hearing before Consolidated Tribunal at 78:5-84:11, attached as Exhibit A hereto (describing the October 11, 2006 transmission of the SCA by Canada). The United States could not have misled Tembec with respect to the content of the SLA or the SCA. Because the United States was negotiating the SLA and its related documents with Canada—and not with any Canadian stakeholders—the United States had no reason to know whether and to what extent Canada was sharing information about the proposed agreement with its stakeholders on behalf of whom it was negotiating.

In any event, Tembec clearly had time to review the SCA. The SCA is not a lengthy document and its terms are not complex. *See* SCA, Exh. E to USG Opp. to Mtn to Reopen at 7-11. Indeed, Tembec expressed concerns about the terms of the SCA. *See* Exh. E to Pet. Mot. (Oct. 11, 2006 Letter suggesting "very very modest[]" changes). Although Tembec's NAFTA Chapter Eleven claim is clearly not listed in the SCA, even though it had been in the TLA, Tembec raised no concern over this exclusion. *See id.*

Furthermore, the revelation contained in Tembec's supplemental brief concerning discussions it had with a so-called confidential Canadian source, provides further evidence that Tembec had reason to know that the TLA would be replaced by the SCA. Despite this acknowledgement, Tembec provides no evidence whatsoever that, when faced with this information, it asked anyone in the Government of Canada about the status of the TLA, the documents that it created and refers to as the "TLAs," the SCA, or the relationship between those documents. Nor did Tembec make any inquiries of the United States concerning the SCA after having heard from this confidential source.

Finally, it is now clear that Tembec's counsel was instructed by its client to sign the SCA on its behalf, regardless of whether counsel understood the terms of the agreement. *See* Transcript of January 31, 2007 Hearing before Consolidated Tribunal at 91:21-92:12; 85:7-15. That Tembec is now disappointed with its bargain—which gave Tembec more than $240 million, (*see id.* at 93:1-14) and did nothing to prohibit the United States from seeking costs in the Chapter Eleven action—is not proof of misrepresentation or other misconduct. Tembec had the means, the opportunity, and the ability to determine the legal effects of the SCA and the stipulation of dismissal and has provided no basis to reopen the judgment.

Despite these facts, Tembec nevertheless argues that the post hoc December 14, 2006 Letter from Andrea Lyon supports its interpretation of the SLA and SCA. That is plainly not the case.[1] In its earlier submissions, Tembec argued that it believed that the SCA "supplement[ed]" the unexecuted TLA, which never entered into force. *See* Pet. Mot. to Reopen at 4. The Lyon Letter shows that the Government of Canada does not agree with Tembec's supplementation theory and that the Government of Canada plainly understood that the SCA replaced the TLA. *See* Exh. A to Pet. Supp. Br. (noting "the *replacement* of the TLA with the SCA . . . .")

---

[1] What the Lyon Letter does illustrate is the constantly shifting nature of Tembec's theory as it attempts to support this motion. Tembec initially argued here that the SCA supplemented the TLA and that both the Government of Canada and the United States misled it. *See* Pet. Mot. to Reopen at 4, 9. Now Tembec argues, in light of the Lyon Letter, that its Chapter Eleven claim is covered by the SCA because it is part of the consolidated NAFTA action. At the NAFTA Chapter Eleven costs hearing, held on January 31, 2007, Tembec argued that the United States was precluded from seeking costs because the reference to the district court proceeding in the SCA encompassed or subsumed its Chapter Eleven claim. *See* Transcript of January 31, 2007 Hearing before Consolidated Tribunal at 158:2-8. This argument is inconsistent with Tembec's argument that it was misled into signing the SCA and is also inconsistent with its claims of misconduct. Aside from these inconsistent theories of the case, Tembec has not provided any evidence of: (i) any misrepresentation on the part of the United States; or (ii) any effort on Tembec's part to inquire whether the United States could seek costs given the plain terms of the SCA, which it had in its possession and was free not to sign.

3

(emphasis added).  Similarly, the United States' prior submission showed it would have been unreasonable for anyone to conclude that the SCA supplemented, rather than replaced, the TLA because (i) the TLA was never executed by all parties,[2] (ii) the terms of the TLA and SCA were contradictory and treated cases differently, and (iii) where the cases were treated the same in both the TLA and SCA—*e.g.*, Canfor's Chapter Eleven claim and Tembec's district court case—there would have been no need to reference those same cases in the SCA if the SCA supplemented the TLA.[3]

---

[2] Notably, Tembec relies on a document that it inaccurately refers to as "the original TLA signed by Tembec," a document that differed from the actual TLA agreed to by the United States and Canada. Moreover, Tembec does not dispute that the instruments that it created and signed were never countersigned by the United States. Neither the TLA nor the documents created by Tembec's counsel ever came into force and the Lyon Letter does not contend otherwise.

[3] Indeed, Tembec's own actions also demonstrate that it did not believe that the SCA supplemented the TLA; instead, its actions show that it knew that the TLA had no legal effect whatsoever. Tembec, in fact, took advantage of the different treatment granted to cases under the TLA and SCA, respectively. For example, under the TLA, the consolidated Tembec action pending before the Court of International Trade ("CIT") was to be terminated, while the SCA provided only that the two Governments would jointly move to seek to dismiss that action. *Compare* TLA ¶1, *with* SCA ¶2. Dismissal was not assured, because private parties are parties to that action. Thus, after the United States moved for a stay of that consolidated action given the negotiation of the SLA, Tembec renewed its opposition to a stay and advised the Court that a settlement was not imminent. *See* October 5, 2006 Letter from Tembec to the CIT, attached hereto as Exhibit B. Although Tembec filed that letter with the CIT over two weeks after it had created and it alone signed a modified "TLA" purporting to terminate that action, it did not bring the modified "TLA" to the CIT's attention. *See id.*; *see* Exh. D to USG Opp. to Reopen (providing all of Tembec's created instruments). Further, when the two Governments moved to dismiss the consolidated action on the day the SLA entered into force, and when the United States later moved to vacate the CIT judgment issued the day after the SLA entered into force on grounds of mootness, Tembec opposed those motions as well. Once again, Tembec did not mention to the Court that the "TLA" document it alone had signed, in its view, purportedly terminated that action. *See* Tembec's Opposition to the Governments' Motion to Dismiss the CIT action & Tembec's Opposition to the United States' Motion for Reconsideration, both attached as Exh. C (arguing that the case was not moot). Tembec's conduct before the CIT clearly shows that Tembec does not believe the documents that it created and executed by it alone have any legal effect.

Tembec's claim that the e-mail correspondence exchanged in the course of negotiating the stipulation of dismissal of this case evidences the United States' awareness that Tembec believed that its so-called "TLAs" were legally effective is baseless. *See* Pet. Supp. Br. at 5-6. All this e-mail exchange establishes is that in the course of negotiating a stipulation (i) Tembec's counsel requested that a sentence from a separate document be included in the stipulation, and (ii) that suggestion was rejected. The e-mail exchange says nothing about whether the United States considered the TLA or the documents created by Tembec's counsel to be operative or whether the United States was of the view that Tembec considered any of these documents to be operative. Indeed, the e-mail exchange makes clear that Tembec's purpose in proposing the language was to clarify that the dismissal with prejudice was "subject to" the SLA. *See* Exh. F to Pet. Mot. to Reopen.

As Tembec notes, the Lyon Letter states that the "renegotiation was not an attempt to modify the understanding reflected in the TLA that no costs would be sought for covered actions." *See* Exh. A to Pet. Supp. Br. That is true, but it is also indisputable that the "covered actions" changed from the TLA to the SCA. The Lyons Letter recognizes as much when it states that the "replacement of the TLA with the SCA reflected the decision by Canada and the United States to seek to dismiss only those actions necessary . . . ." *See id.* While the Tembec Chapter Eleven claim is expressly listed by name in the TLA, there can be no doubt that the Tembec Chapter Eleven claim is not among the actions expressly listed in the SCA. *Compare* TLA ¶1, *with* SCA ¶2. The Lyon Letter does not state otherwise.

Instead, and despite the plain language of the SCA, the Lyon Letter asserts that it was Ms. Lyon's understanding that the United States would not seek costs in the Tembec NAFTA Chapter Eleven arbitration because the *consolidated* NAFTA Chapter Eleven proceeding was among

5

those actions which were referenced in the SCA. *See* Exh. A to Pet. Supp. Br.; Pet. Supp. Br. at 2-3. This post hoc explanation simply does not mesh with the SCA itself or the notable differences between the SCA and the TLA. First, Tembec's Chapter Eleven action is clearly not listed in the SCA. The action referenced in the SCA is titled "*The Consolidated Arbitration Pursuant to Article 1126 of the North American Free Trade Agreement (NAFTA) and the UNCITRAL Arbitration Rules between Canfor Corporation v. United States of America and Terminal Forest Products Ltd. v. United States of America.*" *See* SCA ¶1. No one could reasonably conclude that this case reference included Tembec's NAFTA Chapter Eleven claim because the Consolidation Tribunal modified the caption of the consolidated proceeding to remove reference to Tembec's claim after Tembec withdrew its Chapter Eleven claim in January 2006. *Compare* Caption of Jan. 10, 2006 Tribunal Order, *with* Caption of June 6, 2006 Tribunal Order (both attached as Exhibit D hereto). Second, the Lyon Letter's explanation is inconsistent with the fact that Tembec's NAFTA Chapter Eleven claim was listed separately in the TLA from the consolidated action of Canfor and Terminal. If the actions were one and the same, as the Lyon Letter contends, then the TLA listing of the Tembec Chapter Eleven claim, which Tembec indisputably relies on here, *see* Pet. Mot. to Reopen at 4, would have been superfluous.[4]

Tembec also incorrectly asserts that the United States' conduct towards Canfor and Terminal in the Consolidated Arbitration "conforms to Canada's understanding" of the SCA.

---

[4] Further, as the United States explained to the Consolidation Tribunal considering the cost request, Ms. Lyon was not directly involved in the negotiations regarding the SCA. *See* United States' January 29, 2007 Submission to Consolidation Tribunal at 2 (answer to question 4), attached as Exhibit E hereto; Transcript of January 31, 2007 Hearing before Consolidated Tribunal at 142:16-143:1. And, in any event, even assuming that Canada had this understanding, that understanding was clearly mistaken and was not shared with the United States or its negotiators at the time of the SLA negotiations. *See* United States' January 29, 2007 Submission to Consolidation Tribunal at 3 (answer to question 5).

*See* Pet. Supp. Br. at 3. As to Canfor, that case is specifically listed in the SCA, which required that Canfor withdraw its claim against the United States. *See* SCA ¶1. Tembec's Chapter Eleven claim is not listed, and was not listed when Tembec signed the SCA. These claims are therefore being treated differently, not because the United States "construed" the SLA differently, but because the SCA itself treats those cases differently. As to Terminal, the settlement of that action is not covered by the SCA. Following signature of the SCA, Terminal's claim remained active and was settled, including as to the issue of costs, independently of the SCA. *See* January 22, 2007 Letter from P. John Landry to Consolidation Tribunal, attached as Exhibit F hereto. The United States' "treatment" of the various claimants therefore does not provide confirmation of Canada's ostensible understanding of the SCA as set forth in the Lyon Letter.

In addition to introducing the Lyon Letter, Tembec's supplemental brief seeks to "clarif[y]" and "correct[]" its earlier assertions that it had never been warned or informed that the SCA would replace the TLA. *See* Pet. Supp. Br. at 4. Here, Tembec for the first time reveals that a confidential source informed it on October 11, 2006—before it signed the SCA or the stipulation that dismissed this case—that the SCA might replace the TLA. *See id.* at 4 n.1. Notwithstanding this admission, Tembec inexplicably continues to argue that the United States misled it, even though it now admits it had reason to know that the TLA could be replaced and substituted by the SCA and the means to inquire about that possibility with the Canadian Government, which represented the interests of Canadian stakeholders in the negotiation of the SLA.

The United States was under no duty to explain the terms of the SLA or SCA to Canada, with whom it was negotiating, much less with Tembec, with whom it only negotiated the stipulation of dismissal of this action as required by the SCA and not the SCA itself, even if

7

Tembec had asked the United States to do so. *See Capital Yacht Club v. VESSEL AVIVA*, 409 F. Supp. 2d 1, 7 (D.D.C. 2006) ("the defendants have no duty to inform the plaintiff's attorney of the legal consequences" of executing a document). *See also* Ronald D. Rotunda, Legal Ethics (2006-07 Ed.) § 3.4-1 at 730-31 ("The lawyer for one party does not normally have the duty to volunteer the existence of adverse facts or adverse law to the other party"); Ethical Consideration 5-1 of the ABA Model Code of Professional Responsibility (describing the right of undivided loyalty of one's attorney). *Cf. Conservative Club of Washington v. Finkelstein*, 738 F. Supp. 6, 10 (D.D.C. 1990) (holding that "because an attorney owes no duty to opposing counsel or an adverse party" claims for professional negligence were "patently untenable"); *Morowitz v. Marvel*, 423 A.2d 196, 199-200 (D.C. 1980). Tembec, in any event, apparently made no inquiries of Canada and certainly made no inquiries of the United States, even after having received (according to Tembec) actual notice from its confidential Canadian source, which it apparently received before it signed the SCA and the stipulation. The United States did not misrepresent the terms of any document to Tembec.

Tembec received more than $240 million as a result of the SLA. *See* Transcript of January 31, 2007 Hearing before Consolidated Tribunal at 93:1-14. Despite obtaining the benefits of the SCA, it now wants to rewrite the agreement to prohibit the United States from seeking costs and fees for an action that was not listed in the SCA. That is simply not permissible. *See Choctaw Nation of Indians v. United States*, 318 U.S. 423, 432 (1943) (holding that "even Indian treaties," which are construed more favorably to Indian signatories than other international agreements, "cannot be re-written or expanded beyond their clear terms to remedy a claimed injustice or to achieve the asserted understanding of the parties"). Indeed, having made the considered choice to sign onto the SCA with the aid of counsel, and there being no evidence

of misrepresentation or fraud, there is no basis to reopen the judgment. *See Ackermann v. United States*, 340 U.S. 193, 198 (1950) (stating in a Rule 60(b)(6) context that "There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.").

## CONCLUSION

The United States respectfully requests that the Court deny Tembec's motion to reopen the final judgment in this case.

Dated: February 26, 2007                    Respectfully submitted,

                                                                    PETER D. KEISLER
Of Counsel:                                        Assistant Attorney General

MARK A. CLODFELTER                 JEFFREY A. TAYLOR
*Assistant Legal Adviser*                    United States Attorney

ANDREA J. MENAKER                  VINCENT M. GARVEY
*Chief, NAFTA Arbitration Division*    Deputy Branch Director
*Office of International Claims and*
  *Investment Disputes*                        /s/ Alexander K. Haas
                                                                    ALEXANDER K. HAAS (CA 220932)
United States Department of State     Trial Attorney
Washington, D.C. 20520                   U.S. Department of Justice, Civil Division
Office of the Legal Adviser                Federal Programs Branch
2201 C. Street, N.W.                          Post Office Box 883
Suite 5519                                            Washington, D.C. 20044
                                                                    Tel: (202) 307-3937 – Fax: (202) 616-8470
                                                                    *Attorneys for the United States*