January 29, 2007

*By E-Mail*

Dr. Albert Jan van den Berg
Mr. Davis R. Robinson
Prof. Armand de Mestral
c/o Mr. Gonzalo Flores
Senior Counsel, ICSID
1818 H Street, N.W.
Washington, D.C. 20433

      Re:    *Tembec Inc. et al. v. United States of America*

Dear Members of the Tribunal:

      In accordance with the Tribunal's January 22, 2007 letter, the United States hereby briefly answers the questions directed to it. The United States welcomes the opportunity to elaborate on these answers, and to answer any other questions the Tribunal may have, at the hearing scheduled for January 31, 2007.

| Question No. | Question | To Be Addressed By |
|---|---|---|
| 1. | (a)  Are there any observations regarding the Tribunal's jurisdiction to decide on the costs of arbitration within the meaning of Articles 38 – 40 of the UNCITRAL Arbitration Rules?<br><br>**The UNCITRAL Rules provide the Tribunal with jurisdiction to assess the costs of arbitration.**<br><br>(b)  Does the Termination Order of 10 January 2006 call for any comments in that regard?<br><br>**In the Termination Order, the Tribunal explicitly retained its jurisdiction to decide the issue of costs at a later date, after the parties had made submissions on the issue.** | Tembec and United States |

-2-

| Question No. | Question | To Be Addressed By |
|---|---|---|
| 2. | What is the relevance, if any, of the provisions of Article 40(3) of the UNCITRAL Arbitration Rules for the present question of the costs of arbitration?<br><br>**An award of costs in this case, the prospect of which was expressly reserved by the Tribunal's order of 10 January 2006, is consistent with Article 40(3).** | Tembec and United States |
| 3. | Please provide a copy of the TLA as it was enclosed with the letter of 8 September 2006 from DFAIT and USTR to Tembec (Exh. A to the United States' submission of 4 December 2006).<br><br>**A copy is enclosed as Tab A.** | United States |
| 4. | What effect, if any, is the Tribunal to give to the letter of 14 December 2006 from the Chief Trade Negotiator North America of the Canadian Government to Tembec?<br><br>**None. In our letter of 6 December 2006, the United States objected to Tembec's introducing any witness testimony that would not be subject to cross-examination. The United States maintains that objection. The United States also notes that its chief negotiator with respect to the TLA and SCA, Mr. Jeff Weiss of USTR's Office of General Counsel, does not recall having any discussions with Ms. Lyon regarding the TLA or the SCA. All discussions between Canada and the United States regarding the TLA and SCA were handled on Canada's side by lawyers from Canada's Trade Law Bureau.** | Tembec and United States |
| 5. | The TLA lists as one of the "Covered Actions": "NAFTA Chapter 11 claim of *Tembec Inc., Tembec Investments Inc. and Tembec Industries Inc. v. United States of America* (collectively 'Tembec')." The SCA does not mention that | United States |

| Question No. | Question | To Be Addressed By |
|---|---|---|
| | SCA is given in the letter of 14 December 2006 from the Chief Trade Negotiator North America of the Canadian Government to Tembec, which explanation appears to have been adopted by Tembec in its submission to the Tribunal of 15 December 2006.<br><br>(a)  Does the United States agree with that explanation?<br><br>**No.  In the view of the United States, the explanation offered in the 14 December 2006 letter and, apparently, adopted by Tembec makes no sense.  In any event, even if that explanation represents the understanding that Canada's negotiators had at the time of the negotiations, that understanding was never communicated to the United States.**<br><br>(b)     If not, what is, according to the United States, the reason for the aforementioned difference between the TLA and SCA?<br><br>**Upon reviewing the TLA in greater detail to determine which actions ought to be included in the SCA (*see also* answer to Ques. 13(b)), the United States realized that a reference to Tembec's NAFTA Chapter Eleven proceeding had erroneously been included among the actions to be terminated.  The United States concluded that the reference should be removed because it was unnecessary given the fact that Tembec's claim was the subject of a previously-entered order of termination.** | |

-4-

| Question No. | Question | To Be Addressed By |
|---|---|---|
| 6. | (a) The SCA mentions: "Canfor shall withdraw its claim against the United States . . . ." If Tembec was of the opinion that it still had a (latent) NAFTA Chapter 11 claim against the United States, did it request from DFAIT and/or USTR similar language to be included in the SCA?<br>(b) If it did not do so, why not? | Tembec |
| 7. | (a) What are precisely the differences as to form and content between the TLA as proposed by DFAIT and USTR on 8 September 2006 and the versions sent by Mr. Feldman on 20 September 2006?<br>**Please see pages 3-4 of the United States' letter of December 4, 2006. We will be prepared to elaborate on this answer at the hearing.**<br>(b) What is the legal relevance, if any, of those differences?<br>**Please see above.** | Tembec and United States |
| 8. | (a) Has Tembec, via Mr. Feldman or otherwise, discussed with any representative of Canada and/or the United States the TLA sent on 8 September 2006 and/or the versions returned on 20 September 2006?<br>**During the negotiations, the United States discussed the SLA generally, and the TLA and SCA in particular, with members of U.S. government agencies and U.S. stakeholders. Presumably, the Government of Canada similarly discussed the agreement and its provisions with Canadian government officials and Canadian industry stakeholders. To the best of our knowledge, no one from the United States Government engaged in any discussions with Tembec or its counsel concerning either the TLA sent on 8 Sept. 2006 or the versions of the TLA sent by Mr. Feldman on 20 Sept. 2006.**<br>(b) If so, with whom, when, and what was discussed?<br>**Please see above.** | Tembec and United States |

| Question No. | Question | To Be Addressed By |
|---|---|---|
|  | changes made as reflected in the versions sent by Tembec on 20 September 2006? If so, when and how?<br>    **The United States did not consent. To the best of our knowledge, Canada did not consent either. To the best of our knowledge, there were no discussions between Canada and the United States regarding Tembec's documents sent on 20 Sept. 2006.** |  |
| 9. | Can Tembec explain the difference between its statement to the CIT of 5 October 2006: ". . . no settlement has been finalized, and resolution of the remaining settlement issues is not imminent" and its statement to this Tribunal of 6 October 2006: ". . . all indications are that the United States will sign in furtherance of implementing the SLA"? | Tembec |
| 10. | Is it common ground that the SCA attached to Mr. Feldman's letter of 11 October 2006 is the same as the one attached to the SLA Amendments as Annex 2A?<br>    **Yes.** | Tembec and United States |
| 11. | (a)  Is Tembec arguing that it executed the SCA under a misrepresentation, undue influence, duress, coercion, or a similar lack of consent?<br>(b)  If so, on what basis in fact and law is that argument made?<br>(c)  If so, what are the legal consequences for the question of the costs of arbitration? | Tembec |
| 12. | Did the negotiations regarding the stipulation to withdraw the setting aside action before the US District Court for the District of Columbia involve consideration of the TLA as proposed on 8 September 2006 and/or the version(s) submitted on 20 September 2006? | Tembec and United States |

| Question No. | Question | To Be Addressed By |
|---|---|---|
|  | action did not have any discussions with Tembec or its counsel concerning the content of the TLA as proposed on 8 Sept. 2006 or the versions of the TLA submitted by Mr. Feldman on 20 Sept. 2006. The only reference to the TLA during those negotiations was made in an e-mail sent by Mr. Feldman where he proposed language for the stipulation of dismissal. That proposal was rejected by the United States. All of the negotiations regarding the stipulation were conducted by e-mail. Those e-mails have been provided to the Tribunal. |  |
| 13. | (a) What are precisely the differences between the TLA as proposed on 8 September 2006 and the SCA?<br><br>    **Cases are treated differently under the TLA and SCA. Several actions that would have been terminated pursuant to the TLA were not even mentioned in the SCA and, thus, would not be terminated under the SCA. Moreover, Canada and the United States agreed in the SCA merely to seek dismissal of several actions that would have been terminated by agreement of all parties under the TLA. Furthermore, the NAFTA CVD case, which was not a "referenced" or "covered" action under the TLA or SCA, was treated differently under the two agreements.**<br><br>    **In addition to treating pending litigation/arbitration differently, the TLA and SCA also differed with respect to actions to be taken after entry into force. While the TLA required, among other things, that the Department of Commerce ("DOC") instruct Customs and Border Protection ("CBP") to cease collecting deposits and liquidate all covered entries, under the SCA this provision was altered to require DOC to instruct CBP to cease collecting deposits and liquidate all covered entries that were not currently enjoined. This was a significant change in that, pursuant to the SCA, the United States was not committing to liquidate entries from the first** | Tembec and United States |

| Question No. | Question | To Be Addressed By |
|---|---|---|
| | and countervailing duty (CVD) orders, covering several hundred million dollars in deposits, until the U.S. Court of International Trade (CIT) clarified or modified the injunctions against liquidation.<br><br>    Finally, there were other miscellaneous changes made, which we can outline at the hearing.<br><br>    (b)  Why were those changes necessary?<br>    The two governments were trying to bring the Agreement into force as quickly as possible, but there were two major issues that threatened to delay the entry-into-force date.  First, certain private parties were unwilling to terminate claims against the United States, or were unwilling to terminate such claims unless the TLA was amended.  Second, the CIT had enjoined the liquidation of entries from the first administrative review period of the AD and CVD orders and, although the two governments had asked the CIT to modify or clarify the injunctions, it was unclear when the CIT would respond to the governments' joint motion.  Most of the changes to Annex 2A were made with these two issues in mind.  To address the first issue, the two governments generally sought to remove cases from Annex 2A that did not need to be terminated in order to bring the SLA into force.  Thus, many of the "covered actions" to be terminated pursuant to the TLA were not carried over to the SCA, and several of those that were carried over were not going to be terminated automatically.  Instead, the two governments committed to filing motions to dismiss those actions.  Further, because the CIT injunctions were still going to be in place on the entry-into-force date, the SCA only provided for the liquidation of non-enjoined entries.<br>(c)  In particular, why contains the TLA a long list of "Covered Actions" while the SCA does not mention "Covered Actions" and contains a much shorter list of referenced actions? | |

| Question No. | Question | To Be Addressed By |
|---|---|---|
| | See answer to (b) above and answer to Ques. No. 5. | |
| 14. | (a)  Has Tembec discussed the draft of the SCA with representative of Canada and/or the United States at any time prior to 11 October 2006, 6:00 pm, when, according to Tembec, it was "presented to us *in final form* for signature" (emphasis added)?<br><br>**The United States engaged in no discussions with Tembec or its counsel concerning the SCA, other than the discussions that ensued between Tembec's counsel and counsel for the United States in Tembec's set aside proceeding in connection with the drafting and filing of the joint stipulation of dismissal of Tembec's set aside action in district court.  The United States negotiated the SLA with Canada; the United States was responsible for explaining the terms of the Agreement to U.S. stakeholders, not to Canadian private parties.**<br><br>(b)  If so, with whom, when, and what was discussed?<br><br>(c)  Please provide copies of pertinent correspondence and documentation. | Tembec and United States |
| 15. | (a)  By what means, by whom and when was Tembec asked to execute the SCA?<br><br>**The Government of Canada was responsible for obtaining signatures from all of the Canadian private parties.  The United States was responsible for obtaining signatures from all of the U.S. government agencies.  As shown in the attached e-mail, Colin Bird from the Canadian Government sent an e-mail to Jean Anderson, of Weil, Gotshal & Manges, LLP, on 11 October 2006, requesting that she "circulate the [SCA] to all counsel for Canadian parties listed therein" and obtain their signatures.**<br><br>(b)  Please provide copies of pertinent correspondence and documentation. | Tembec and United States |

-9-

| Question No. | Question | To Be Addressed By |
|---|---|---|
|  | **Attached as Tab B is a copy of the e-mail referenced above.** |  |
| 16. | (a) Was the inclusion of Article XI in the SLA Amendments ("Annex 2A of the SLA 2006 shall be deleted and replaced by the attached Annex 2A") discussed with Tembec prior to announcing the SLA Amendments in the evening of 12 October 2006?<br><br>**As noted above, the United States did not negotiate or discuss the terms of the SLA, which is an agreement between two governments, with Canadian private parties.  The United States negotiated the amendments to the SLA with the Government of Canada and had discussions concerning those amendments with interested U.S. government agencies and stakeholders.**<br><br>(b) If so, with whom, when, and what was discussed?<br><br>(c) What is the legal relevance of the response(s) to this question?<br><br>**It is not relevant.  There is no question that both Canada and the United States knew that the SCA was to replace the TLA, which had never been executed.  The TLA could only come into effect if it was signed by all of the parties to the TLA.  It is uncontested that the United States never signed the TLA.  In addition, as set forth in Mr. Feldman's 20 Sept. letter, several of Mr. Feldman's clients refused to sign the TLA.  Thus, there was no question that the TLA never became effective and could not become effective.**<br><br>**As noted above, Canada was responsible for obtaining the signatures of the Canadian parties to the SCA.  In the e-mail instructing Canadian counsel to send the SCA to the Canadian parties for their signature, the Canadian government negotiator noted that the SCA should be signed and returned "per the instructions in the original instruction letter for the original TLA"** | Tembec and United States |

-10-

| Question No. | Question | To Be Addressed By |
|---|---|---|
| | **replace the TLA.** | |
| 17. | Does Article XI of the SLA Amendments mean that the TLA was (i) of no force and effect in general or (ii) of no force and effect only between the intended parties who failed to execute the TLA or (iii) neither?  Please explain the answer.<br><br>**The TLA never entered into force between or among any parties.  The TLA could only come into effect if it was signed by all of the parties to the TLA.  Because the TLA was never signed by all parties, it never entered into force.  Article XI of the SLA Amendments did not divest the TLA of force and effect; the TLA by its own terms never entered into force.** | Tembec and United States |
| 18. | (a)  Does Tembec adopt the view as expressed in the letter of 14 December 2006 from the Chief Trade Negotiator North America of the Canadian Government to Tembec that Tembec is included in the "consolidated Nafta Chapter 11 proceeding [which] is an <u>action</u> specifically listed in paragraph 1 of the SCA" (emphasis as in original)?<br>(b)  What is the point of view of the United States in that regard?<br><br>**This is not correct.  Paragraph 1 specifically provides that Canfor will withdraw its claim.  The action referred to in paragraph 1 is Canfor Corp. v. United States of America and Terminal Forest Products Ltd. v. United States of America.  There is no mention of Tembec withdrawing its Chapter Eleven claim in paragraph 1.  Nor is there mention of Tembec in the caption of the consolidated action referenced in paragraph 1.** | Tembec and United States |
| 19. | Please provide a signed copy of the SCA to which Canfor and the United States are a party. An unsigned copy was | United States |

| Question No. | Question | To Be Addressed By |
|---|---|---|
| | on 12 October 2006.<br>**A copy is attached at Tab C.** | |
| 20. | Between 8 September 2006 and 13 October 2006, did the United States (and/or Canada) advise Tembec in any manner that Tembec's NAFTA Chapter 11 claim was, in its view, not a "Covered Action" within the meaning of the TLA because Tembec had withdrawn that claim on 7 December 2005?<br>**The United States engaged in no communications with Tembec or its counsel concerning the TLA, the SCA, or its NAFTA Chapter Eleven claim outside of the submissions exchanged in this arbitration, in Tembec's set aside action in district court, and in the e-mail correspondence exchanged between Tembec's counsel and counsel for the United States for Tembec's set aside action in negotiating the joint stipulation of dismissal of that action. The United States is not privy to communications that may have taken place between Tembec and the Government of Canada. It is clear from the plain terms of the SCA that Tembec's NAFTA Chapter Eleven claim is not among the actions referenced in the SCA.** | United States |
| 21. | What is the relevance, if any, of the setting aside action before the US District Court for the District of Columbia for the present question of the costs of arbitration?<br>**In the view of the United States, it is not relevant. The United States notes, however, that although Tembec has argued to this Tribunal that both it and Canada had the same understanding with respect to the SLA, Tembec has alleged in U.S. district court that it was "misled by the Government of the United States and the Government of Canada regarding the applicable terms of the SLA."** | Tembec and United States |

-12-

| Question No. | Question | To Be Addressed By |
|---|---|---|
| 22. | Please provide a copy of the transaction entered by Mr. Alexander Haas to the US District Court for the District of Columbia on 12 October 2006.<br>**A copy is attached at Tab D.** | United States |
| 23. | Please provide a copy of the "indefinite stay order" issued by the US District Court for the District of Columbia on 24 September 2006 referred to in the penultimate paragraph of the letter of 14 December 2006 from the Chief Trade Negotiator North America of the Canadian Government to Tembec. | Tembec |
| 24. | What is the relevance, if any, of the "indefinite stay order" referred to in question 23 above?<br>**It is not relevant. Cognizant of the negotiation of the SLA and the fact that the Agreement might result in the termination of the action before it, the court exercised its inherent authority to stay the action and directed the parties to jointly report to the court on the status of the Agreement in late December.** | Tembec and United States |
| 25. | More in general, please provide a copy of all notifications, motions, pleadings and orders in the setting aside action before the US District Court for the District of Columbia to date. | Tembec |
| 26. | Please provide a copy of the joint status report filed by the Governments of Canada and the United States with the CIT on 6 October 2006.<br>**A copy is attached at Tab E.** | United States |
| 27. | In its letters to the Tribunal of 6 October 2006 and 16 November 2006, Tembec made no reference to the contents | Tembec |

-13-

| Question No. | Question | To Be Addressed By |
|---|---|---|
| | Governments of Canada and the United States. A copy of that letter was revealed as an attachment to the United States' submission of 4 December 2006. Why did Tembec choose not to disclose the contents of the 20 September letter to the Tribunal? | |
| 28. | (a) What are the answers of the United States to the questions listed in Tembec's submission of 15 December 2006 at page 8?<br><br>    (i)  **As noted above, the United States has never had discussions with Tembec or its counsel concerning the TLA, the modified versions of the TLA that Tembec sent to the two governments, or the SCA. The United States was responsible for discussing these documents with the U.S. stakeholders and U.S. government agencies. It negotiated the SLA with the Government of Canada, and not with Canadian private parties.**<br><br>    (ii)  **The United States has not engaged in any discussions with Tembec or counsel for Tembec concerning the interpretation of the TLA or SCA outside of submissions made before this Tribunal and the submissions made to the federal district court in Tembec's set aside action.**<br><br>    (iii)  **As noted above, the United States had no discussions with Tembec or its counsel concerning the TLA.**<br><br>    (iv)  **The United States and Canada negotiated and agreed on the text of the SCA. As described above, the SCA treated several actions pending in litigation/arbitration differently than those actions were treated under the TLA and, in many instances, actions that were covered by the TLA were not covered in the SCA.**<br><br>    (v)  **The United States did not discuss the amendments to Annex 2A with any Canadian private** | United States |

-14-

| Question No. | Question | To Be Addressed By |
|---|---|---|
| | were some discussions between USG lawyers and counsel for Canadian private parties regarding whether the names and representational relationships in the signature blocks in the original TLA were correct.<br><br>    (vi)  At approximately 11:10 p.m. on 12 October, Canada and the United States signed the SLA Amendment and exchanged letters confirming that the SCA had been signed and that all of the other conditions precedent listed in Article II of the SLA had been met. The SLA was then in force, and 12 October was the "Effective Date."  Between approximately 11:11 p.m. and 11:59 p.m. on 12 October, pursuant to paragraph 1 of Article III of the SLA, Commerce revoked the AD and CVD orders and terminated all Commerce proceedings related to those orders.  In addition, parties to the SCA took the actions specified in paragraphs 1 and 2 of the SCA.  In particular, DOJ filed the stipulation of dismissal of Tembec's set aside action in U.S. district court at approximately 11:17 pm and Canfor filed its letter requesting that this Tribunal enter an order terminating the proceedings with respect to Canfor at approximately 11:27 p.m.  All of the other requests for dismissal and stipulations of dismissal were filed before midnight as well.<br><br>    (vii)  Yes.<br>(b)    What observations does the United States have on the other statements made in Tembec's 15 December submission?<br><br>    The United States will be prepared to comment on Tembec's 15 December letter at the hearing. | |
| 29. | Please explain the accounting of the costs appearing at page 11 of the United States' submission of 4 December 2006 in relation to the United States' cost submission of 7 April 2006. | United States |

-15-

| Question No. | Question | To Be Addressed By |
|---|---|---|
| | submission, the costs sought against Tembec consist of three parts:<br>• The costs incurred in Tembec's Article 1120 proceeding, calculated to be $125,086.71. *See* page 5.<br>• One-third of the costs incurred by the United States in the Consolidated proceeding until the time that Tembec's claim was terminated. This amounted to $40,721.58 (one-third of $122,164.73). *See* page 5.<br>• Any portion of the $300,000 deposit requested by the Tribunal on 29 December 2005 that the Tribunal allocated to outstanding, rather than future, costs of the proceeding. *See* page 6 & n.11.<br>Accordingly, in its submission of 7 April 2006, the United States sought costs against Tembec in the order of $165,808.29 ($125,086.71 + $40,721.58), plus any unspecified portion of the $300,000 deposit that was allocated to outstanding costs.<br>    On page 11 of the United States' 4 December 2006 submission, the United States stated that it had requested $165,808.29 from Tembec, plus any unspecified portion of the $300,000 deposit made by the United States on 29 December 2005. In addition, the United States noted that on 17 November 2006 it had received a refund of $61,800 from ICSID, representing half of the unused deposits made to the *Tembec* Article 1120 tribunal. Thus, the United States deducted $61,800 from its request and is requesting $104,008.29, plus some undetermined share of the $300,000 referenced above. | |

Respectfully submitted,

//s//
Andrea J. Menaker
Chief, NAFTA Arbitration Division
Office of International Claims and
  Investment Disputes

Attachments