UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TEMBEC INC., *et al.*, ) | ) |
| Petitioners, ) | ) |
| v. ) | Civil Action No. 05-2345 (RMC) |
| UNITED STATES OF AMERICA, ) | ) |
| Respondent. ) | ) |

## MEMORANDUM OPINION

This case was dismissed pursuant to the parties' stipulation after the United States and Canada executed the Softwood Lumber Agreement of 2006 ("SLA"), which, *inter alia*, resolved the antidumping and countervailing duty claims of Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc. ("Tembec") against the United States. Tembec filed a motion to reopen this case titled "Notice of Reinstatement or, In the Alternative, Motion Under Rule 60(b)."[1] In the motion Tembec seeks to withdraw from the stipulation of dismissal or to set it aside under Rule 60(b)(3) because "[t]he United States knowingly misled Tembec." Reply at 3. The United States opposed the motion. The Court held a hearing on March 23, 2007, and took this matter under advisement. As explained below, the Court finds no evidence that the United States knowingly misled Tembec and no basis to reopen the case. The motion to reopen will be denied.

### I. BACKGROUND

Because U.S. timber interests believed that Canadian companies were "dumping"

---

[1] Although Tembec implies they have a right to reinstate this action by titling their pleading as a "notice," the pleading in fact is a motion seeking relief from the Court.

cheap timber into U.S. markets, the U.S. Department of Commerce and the International Trade Commission imposed various costs on Canadian imported soft woods through a series of antidumping, countervailing duty, and other determinations.  Three Canadian softwood producers – Tembec, Canfor Corporation, and Terminal Forest Products Ltd. – filed claims against the United States under the North American Free Trade Agreement ("NAFTA") Chapter Eleven provisions for arbitration.  This case initially concerned Tembec's challenge to a September 2005 Consolidation Order by a tribunal constituted under Article 1126 of NAFTA ("Tribunal"), which consolidated the cases of the three Canadian companies.  On December 7, 2005, Tembec informed the Tribunal that it "does not recognize that this Tribunal has lawfully assumed jurisdiction over Tembec's Statement of Claim" and that it was removing its claim from the consolidated proceedings.  Tembec filed a petition with this Court on the same day, seeking to vacate the Consolidation Order.  The Tribunal released Tembec on January 10, 2006.

While a forest may be silent when no one is there to hear, the softwood lumber dispute between the two countries created an uproar.  After lengthy discussions, the United States and Canada signed the Softwood Lumber Agreement ("SLA") on September 12, 2006, and set a target date of October 1, 2006, for making it effective.  Certain conditions precedent had to be met before the SLA would come into force.  One such condition precedent was that a "Termination of Litigation Agreement" ("TLA") would be signed by all parties to the "Covered Actions" identified specifically in the TLA.  The TLA was set forth in Annex 2A of the SLA.  It expressly stated that all parties to the Covered Actions would bear their own costs.

The TLA did not meet with universal applause from the parties to the 20-odd disputes it was designed to terminate.  Some parties signed; some dithered; some re-wrote parts of the TLA;

and some refused altogether. Tembec chose to attempt to revise the TLA to make it more to its liking, including a provision requiring the Government of Canada to pay Tembec 90% of what it was due under the SLA no later than 60 days after the SLA became effective. On September 20, 2006, Tembec signed and submitted individual copies of its revised TLA, separately providing for the settlement of the 11 Covered Actions to which it was a party, including its NAFTA arbitration claim and this lawsuit.

When it became apparent to Canada and the United States that the conditions precedent would not all be met by the target effective date for the SLA, those parties extended that date to no-later-than November 1, 2006. The two governments also negotiated modifications to the SLA to change some of the conditions precedent so that the SLA could go into force by November 1. As a result, the TLA was replaced with a more limited Settlement of Claims Agreement ("SCA") that addressed the termination of only four actions, including Canfor's NAFTA Chapter Eleven claim before the Tribunal and this lawsuit. Tembec's NAFTA Chapter Eleven claim was not listed. According to Tembec, counsel for Canada presented the SCA to Tembec at 6:00 P.M. on October 11, 2006, and Tembec was "informed by Canada's counsel that if the SCA were not executed that night . . . , Tembec would be the cause of the failure of the SLA negotiations." Reply at 3. *See also* Reply at 16 ("Knowing that Tembec had endorsed the Softwood Lumber Agreement, the Government of Canada advised that the agreement would not go forward without counsel's immediate signature.").

In the meantime, counsel for the United States and Tembec had been negotiating a stipulated dismissal of this lawsuit. On October 12, 2006, Tembec and the United States filed a stipulation of dismissal, agreeing to dismiss this action "with prejudice, subject to the terms of the

conditions of the Softwood Lumber Agreement of 2006." Stipulation of Dismissal [Dkt. # 25] (hereinafter "Stipulation of Dismissal"). The following day, the United States took the position before the Tribunal that Tembec should bear the entire cost of Tembec's NAFTA Claim, including the United States' attorneys' fees. Tembec objected, and now seeks to set aside the Stipulation of Dismissal and reopen this case.

## II. ANALYSIS

### A. Stipulation of Dismissal

Tembec first relies on the language of the Stipulation of Dismissal, arguing that the Stipulation was expressly subject to the terms of the SLA, the SLA was changed without Tembec's agreement or knowledge in a way that allows the United States to seek costs from Tembec, and thus Tembec should not be bound by the Stipulation. This argument holds no water because Tembec is bound by the plain meaning of the Stipulation of Dismissal. When presented with a contract, the duty of a court is to give effect to the mutual intentions of the parties. *NRM Corp. v. Hercules Inc.*, 758 F.2d 676, 681 (D.C. Cir. 1985). "Where the language of a contract is clear and unambiguous on its face, a court will assume that the meaning ordinarily ascribed to those words reflects the intentions of the parties. Only if the court determines as a matter of law that the agreement is ambiguous will it look to extrinsic evidence of intent to guide the interpretive process." *Id*. at 681-82 (citations omitted) (applying federal common law which "dovetails precisely with general principles of contract law"); *accord Mittal Steel USA ISG, Inc. v. Bodman*, 435 F. Supp. 2d 106, 108-09 (D.D.C. 2006) (applying general principals of contract law adopted by D.C. law).

The Stipulation of Dismissal is unambiguous; it states that it is "subject to the terms and conditions of the Softwood Lumber Agreement [SLA] of 2006." It does not state "subject to

the terms of the SLA *as known to Tembec*." Like the Stipulation, the SLA also is unambiguous. It expressly incorporates the terms of the SCA, not the TLA.[2] *See* Resp.'s Opp'n Ex. E, Amendment to the SLA, Art. XI (substitutes the SCA for the TLA at Annex 2A). Paragraph 8 of the SCA provides that "[n]o party to this Claims Settlement Agreement shall seek to hold any other party liable to pay its costs and expenses of litigation relating to any action referenced in this Claims Settlement Agreement." *Id*. Ex. E, SCA ¶ 8. Because Tembec's NAFTA Claim is not referenced in the SCA, it is not subject to the paragraph 8 limitation. The Stipulation of Dismissal, the SLA, and the SCA are clear and unambiguous; they do not preclude the United States from seeking costs related to Tembec's NAFTA Claim.

Tembec contends that the United States knowingly misled Tembec. Tembec argues that the SCA signed by Tembec was not labeled "Annex 2A" at the time of Tembec's signature. If it had been, Tembec implies, Tembec would have been on notice that the SCA replaced the TLA. Because it was not, Tembec claims it was misled into believing that the SCA supplemented, but did not replace, the TLA.

Tembec has not submitted clear and convincing evidence of fraud or misconduct by the United States. First, Canada presented the SCA to Tembec for signature, not the United States. The United States had no reason to know whether or to what extent Canada was sharing information with stakeholders like Tembec. Second, the United States had no duty to explain the terms of the

---

[2] It is uncontested that Tembec revised the TLA, Tembec executed this revised version, and the United States did not execute the TLA. There was no meeting of the minds, and thus the TLA never became a binding contract. *Ekedahl v. COREStaff, Inc.*, 183 F.3d 855, 858 (D.C. Cir. 1999) (applying D.C. law, court noted that party asserting existence of enforceable contract has the burden of proving there has been an agreement, a meeting of the minds).

SLA or the SCA to Canada, with whom it was negotiating,[3] let alone to Tembec. *See Capital Yacht Club v. VESSEL AVIVA*, 409 F. Supp. 2d 1, 7 (D.D.C. 2006) ("defendants have no duty to inform the plaintiff's attorney of the legal consequences" of signing a document).

Third, Tembec's argument that it believed that the SCA supplemented the TLA, and did not replace it, is disingenuous because Tembec should have known that the TLA was replaced by the SCA. Tembec had the opportunity to review the SCA, which is only two pages long, before signing it. Resp. to Petrs.' Supp. Brief Ex. A, Tr. of 1/31/07 Hearing before Tribunal at 78-84. Tembec was at all times represented by counsel. In fact, Tembec's counsel reviewed the SCA and suggested "very modest" changes. *See* Petrs.' Mot. Ex. E, Oct. 11, 2006 Letter from Tembec's Counsel. Tembec's NAFTA Claim plainly was not referenced by the SCA, and Tembec did not question this.

Fourth, it is unreasonable to interpret the SCA as supplemental to the TLA because the two agreements covered some of the same cases, like Canfor's Chapter Eleven claim and Tembec's district court case, and there would be no need to reference the same cases in the SCA if it merely supplemented the TLA.[4] Finally, Tembec was notified by a confidential Canadian source

---

[3] With its supplemental brief, Tembec submitted a letter from Andrea Lyon, Canada's Chief Trade Negotiator. The letter explains Ms. Lyon's interpretation of the SLA, the TLA, and the SCA. She indicates that while the TLA replaced the SCA, the SCA covers Tembec's NAFTA Claim because it covers the consolidated NAFTA claims. Ms. Lyon is in error, as she overlooks the fact that Tembec had previously withdrawn its arbitration claim from the consolidated action. Because Tembec had withdrawn, its NAFTA Claim was not covered by the SCA. Moreover, Ms. Lyon's interpretation of the SLA is not relevant. The Stipulation of Dismissal and the SLA must be construed according to their plain meaning, and the Court does not consider extrinsic evidence of the parties' intent.

[4] The TLA and the SCA also covered some of the same actions, but treated them differently. For example, the case captioned *Coalition for Fair Lumber Imports Executive Committee v. U.S.*, No. 05-1366 (D.C. Cir.), is terminated under the TLA. Petrs.' Mot. Ex. A,

that the U.S. and Canadian governments "could not satisfy certain conditions of the TLA as a condition precedent to the SLA's entry into force, and that they would take other action enabling entry into force, including a possible substitution of the SCA." Petrs.' Supp. Brief at 4 n.1.

Tembec executed the SCA, and it negotiated the Stipulation of Dismissal in this case thereafter. Pet.'s Mot. Ex. F. Tembec initially objected to the proposed stipulation and suggested revisions. *Id*. Counsel for the United States sent an email explaining various revisions and confirming that the Stipulation of Dismissal was pursuant to the SLA. *Id*. After further emails, counsel for both parties agreed to the Stipulation as it was filed with this Court on October 12, 2006. In sum, Tembec is bound by the plain and express terms of the Stipulation of Dismissal, subject to the unambiguous terms of the SLA (including the SCA). Under these agreements, the United States is not barred from seeking attorneys' fees and costs against Tembec.

Tembec also contends that "the United States and Canada agreed that no party would seek costs or fees against any other party in any of the litigation involving softwood lumber from Canada." Petrs.' Notice of Filing [Dkt. # 33].[5] In support of this claim, Tembec submitted documents indicating that the United States has agreed not to seek costs or fees against West Fraser Mills in settlement negotiations with that company. *See West Fraser Mills Ltd. v. United States*, CIT No. 05-79 (pending in the U.S. Court of International Trade). Similarly, Tembec asserts that the United States agreed not to seek cost or fees in settlement of Canfor's Chapter 11 claim or in settlement of Terminal Forest Products' Chapter 11 claim. Petrs.' Notice of Filing [Dkt. # 33] at 1.

---

TLA at ¶¶ 1-3. Under the SCA, the United States and Canada merely agree to seek dismissal of the same case. Resp.'s Opp'n Ex. E, SCA ¶ 2.

[5] Tembec made this argument at the hearing on this matter, and the Court permitted a supplemental filing.

The fact that other parties were treated differently in other cases is not relevant to the interpretation of the governing documents in this case — the Stipulation of Dismissal, the SLA, or the SCA.[6] Moreover, because the Stipulation of Dismissal, the SLA, and the SCA are clear and unambiguous, the Court must give effect to the intent of the parties and may not examine extrinsic evidence. *NRM Corp.*, 758 F.2d at 681-82. No matter what the agreements were in other cases, the relevant documents in this case do not preclude the United States from seeking fees and costs against Tembec related to Tembec's NAFTA claim.

### B. Request to Set Aside the Judgment under Rule 60(b)(3)

Federal Rule of Civil Procedure 60(b) provides for motions for relief from a judgment or order due to: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct; (4) void judgment; (5) satisfied, released, or discharged judgment; or (6) "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b). Tembec moves to set aside the judgment here due to "fraud, misrepresentation, or other misconduct" under Rule 60(b)(3).

In order to prevail under Rule 60(b)(3), Tembec must establish fraud or misconduct, and resulting actual prejudice, by clear and convincing evidence. *Johnson v. Holway*, 2006 WL 3201877, *1 (D.D.C. Nov. 6, 2006). The burden of proof is high because public policy supports protecting the finality of judgments. *Summers v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir.

---

[6] Canfor and West Fraser's claims were both listed in the SCA and thus both were subject to the cost and fees limitation set forth in paragraph 8 of the SCA. *See* Resp.'s Opp'n Ex. E, SCA ¶ 1 (Canfor), ¶ 5 (West Fraser), ¶ 8 (cost and fees limitation). The settlement of Terminal Forest Products' claim was not covered by the SCA, but was settled separately. Treating these claims in a manner consistent with the terms of the SCA, or in Terminal's case in a manner consistent with the parties' settlement agreement, is not inconsistent with the United States' treatment of Tembec in this case.

2004). "There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackermann v. United States*, 340 U.S. 193, 198 (1950).[7]

Tembec cannot meet this high standard. As described above, Tembec revised the TLA that Canada presented to it and signed the revised version. There is simply no evidence that the United States led Tembec to believe the United States had accepted the revised TLA. Like the TLA, Canada (not the United States) presented the SCA to Tembec. Based on a review of the SCA by Tembec's counsel and information from a confidential Canadian informant, Tembec had reason to know that the SCA replaced the TLA. Thus, Tembec must be charged with knowledge of the plain terms of the SLA and the SCA. Tembec has not met its burden under Rule 60(b)(3) of demonstrating fraud or misconduct by the United States by clear and convincing evidence.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Tembec's motion for reinstatement or to set aside judgment under Rule 60(b) [Dkt. # 26]. The unambiguous terms of the Stipulation of Dismissal are binding. A memorializing order accompanies this Memorandum Opinion.

Date: April 19, 2007

/s/
ROSEMARY M. COLLYER
United States District Judge

---

[7] Tembec does not request relief under the catch all provision, Federal Rule of Civil Procedure 60(b)(6) (relief from judgment may be granted for "any other reason justifying relief from the operation of judgment"). Even if it had, such relief would be inappropriate because Rule 60(b)(6) applies only in extraordinary circumstances. *Kramer v. Gates*, No. 05-5385, slip op. at 6 (D.C. Cir. Mar. 6, 2007) (citing *Ackermann*, 340 U.S. at 199). "Rule 60(b)(6) 'should be only sparingly used' and may not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.'" *Kramer*, slip op. at 7 (quotations omitted) (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)).