**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| In the Matter of the Arbitration between | ) |
| | ) |
| TEMBEC INC., TEMBEC INVESTMENTS INC., and TEMBEC INDUSTRIES INC. | ) |
| | ) |
| 800 René Lévesque Boulevard Ouest Suite 1050 Montréal, Québec H3B 1X9 | ) |
| | ) |
| Petitioners, and | ) Case No._____ |
| | ) |
| THE UNITED STATES OF AMERICA; CANFOR CORPORATION; and TERMINAL FOREST PRODUCTS LTD. | ) |
| | ) |
| Respondents. | ) |

---

## PETITION TO VACATE ARBITRATION AWARD

1. Petitioners, Tembec Inc., Tembec Investments Inc., and Tembec Industries, Inc. ("Tembec"), located at 800 René Lévesque Boulevard Ouest, Suite 1050, Montréal, Québec H3B 1X9, bring this Petition to vacate an arbitration award issued against Tembec in favor of the United States of America ("United States"), Canfor Corporation ("Canfor"), and Terminal Forest Products Limited ("Terminal") (collectively the "Respondents") in accordance with 9 U.S.C. § 1 et seq.

2. Tembec provided a "Notice Of Filing Of Petition To Vacate Arbitration Award" to the Respondents, which notified Respondents in accordance with 9 U.S.C. § 12 that Tembec will file a "Motion to Vacate the Arbitration Award" ("Motion to Vacate"), pursuant to 9 U.S.C. §§ 10 and 12 of the Federal Arbitration Act ("FAA"). In the Motion to Vacate, Petitioner will move for an order vacating the final award of the

North American Free Trade Agreement ("NAFTA") Article 1126 tribunal delivered on August 2, 2007 in *Canfor Corporation v. United States of America, Tembec Inc. et al v. United States of America, and Terminal Forest Products Ltd. v. United States of America* in favor of the Respondents (the "Award").

      3.    Tembec respectfully requests that the Court convene a status conference within thirty days of the filing of this Petition in order to set a briefing schedule for filing and responses to Tembec's Motion to Vacate.

      4.    This Petition and its accompanying Notice were filed and served on October 19, 2007, less than three months from the delivery of the Award, and therefore were timely submitted pursuant to 9 U.S.C. § 12.

## FACTUAL BACKGROUND

      5.    Tembec submitted to a NAFTA Article 1120 tribunal claims for arbitration against the United States for violating its obligations to Tembec and its U.S. investments under Chapter 11 of NAFTA.

      6.    Tembec alleged in its NAFTA Chapter 11 claims that the United States applied its antidumping and countervailing duty laws to Tembec and its investments in an arbitrary, unfair, and discriminatory manner in violation of Articles 1102, 1103, 1105 and 1110 of NAFTA.

      7.    The United States' breached its NAFTA Chapter 11 obligations to Tembec when, on May 22, 2002, it issued unlawful antidumping and countervailing duty orders on softwood lumber imported from Canada, authorizing the collection of duty deposits ranging up to 29% *ad valorem*.

8. The collection of these duty deposits was found to be unlawful by the World Trade Organization, NAFTA appeal tribunals and the U.S. Court of International Trade. Tembec initiated the arbitration proceedings to recover more than $200 million in damages caused to Tembec and its investments by these unlawful duties.

9. At Tembec's request, a NAFTA Article 1120 tribunal was formed on August 4, 2004, to adjudicate Tembec's NAFTA Chapter 11 claims in the matter of *Tembec Inc. et al. v. United States.* Tembec appointed Professor James Crawford of Australia, the United States appointed Professor Kenneth Dam of the United States of America, and ICSID appointed Judge Florentino Feliciano of the Philippines with the consent of both the United States and Tembec. Neither Tembec nor the United States had objections as to any of the Article 1120 tribunal members or the formation of the tribunal.

10. On the eve of the jurisdictional hearing, the United States sought to terminate the Article 1120 tribunal by submitting a request to the International Centre for the Settlement of Investment Disputes ("ICSID") to consolidate Tembec's NAFTA Chapter 11 claims with claims by Canfor and Terminal, two other Canadian softwood lumber producers.

11. ICSID complied with the request for consolidation despite Tembec's objections that the United States' request had been made too late, was inconsistent with past practice, and was inappropriate considering the differences in the cases. ICSID appointed a new Article 1126 "consolidation" tribunal who stayed Tembec's Article 1120 arbitration proceedings, even though the appointment of two of the Article 1126 tribunal

members still was subject to challenge under the governing UNCITRAL Rules of Arbitration. The Article 1126 tribunal violated the UNCITRAL Rules when it proceeded with the arbitration while the arbitrators were subject to challenge by the parties.

12. Tembec objected to the appointment of Mr. Davis Robinson to the Article 1126 tribunal on the bases that (a) his wife is a Walker and near cousin to the President of the United States, and the President has been personally and directly involved in the softwood lumber actions against Canada; (b) Mr. Robinson previously served as head of the legal office representing the United States in the arbitration; and (c) his selection by ICSID was made from a small list of arbitrators officially appointed by the United States. These factors raised "justifiable doubts" under Article 10 of the UNCITRAL Rules as to Mr. Robinson's ability to remain impartial and independent in adjudicating Tembec's claims against the United States.

13. Tembec requested that Mr. Robinson withdraw from the Article 1126 tribunal, and was joined in that request by Canfor and Terminal. Mr. Robinson, however, refused to withdraw from the tribunal even though all parties except the United States had objected.

14. Mr. Robinson had been selected for the Article 1126 tribunal by ICSID from a small, pre-screened list of candidates chosen by the United States, even though none of the members of the Article 1126 tribunal had been selected by Tembec. The Article 1126 tribunal unfairly represented the United States' preferences for arbitrators to determine whether Tembec's Article 1120 arbitration proceedings should be terminated, and to adjudicate Tembec's NAFTA Chapter 11 claims against the United States.

15. The Article 1126 tribunal refused to stay its own proceedings or lift its stay of Tembec's Article 1120 proceedings while the challenge to Mr. Robinson remained pending.

16. The Article 1126 tribunal required a hearing and the submission of briefs, then decided on September 7, 2005 to consolidate the claims of Tembec, Canfor and Terminal, to assume jurisdiction over all of the claims, and to terminate Tembec's Article 1120 tribunal.

17. Tembec saw that it would be futile to proceed with its claims before the biased Article 1126 tribunal and requested, pursuant to Article 34 of the UNCITRAL Rules, that the consolidated arbitration proceedings be terminated with respect to Tembec.

18. At the same time, Tembec initiated an action in the U.S. District Court for the District of Columbia seeking to vacate the Article 1126 tribunal's September 7, 2005 decision to consolidate the claims of Tembec, Canfor and Terminal against the United States and to terminate Tembec's Article 1120 tribunal.

19. The United States objected to Tembec's request and sought to keep Tembec in the consolidated proceedings so that the Article 1126 tribunal could issue a decision against Tembec.

20. On January 10, 2006, the tribunal granted Tembec's request to terminate the proceedings and concluded that it did not have authority to rule whether the termination was with or without prejudice to Tembec's claims. In its order, the tribunal said that it would not decide the allocation of arbitration costs until a later date.

21. During the summer of 2006, as Canadian softwood lumber companies continued to win legal victories against the United States concerning the unlawfulness of the antidumping and countervailing duty orders, the United States and Canada reached an agreement intended to settle all of the claims against the United States. Pursuant to the 2006 Softwood Lumber Agreement ("SLA"), the United States refunded all of the five billion dollars of antidumping and countervailing duty deposits collected on softwood lumber, and Canada returned one billion dollars of those deposits to the United States and the U.S. lumber industry.

22. Canada and the United States also agreed that all of the pending softwood lumber litigation (more than thirty separate cases involving hundreds of Canadian companies) would be terminated without costs or fees to be claimed by either side.

23. In accordance with these SLA terms, Tembec stipulated, in an agreement with the United States, to dismiss its action in U.S. District Court for the District of Columbia to vacate the Article 1126 tribunal's September 7, 2005 consolidation award prior to any decision being issued on the merits.

24. Subsequently however, the United States contended that Tembec's NAFTA Chapter 11 claim was the sole exception to the SLA, which was represented to be a universal settlement agreement, and pressed its claim for arbitration costs from Tembec before the NAFTA Article 1126 tribunal.

25. Tembec submitted evidence to the tribunal that the United States was not entitled to claim costs of arbitration under the SLA from Tembec or any other Canadian party to the softwood lumber litigation, and even provided a statement from

the Government of Canada confirming that there never was any intention to expose Tembec uniquely to a U.S. claim for costs and legal fees.

26. Tembec also pointed out that the United States should not be entitled to recover its costs of arbitration when there never had been any briefing on the substance of Tembec's claims and the Article 1126 tribunal already had declared that it had no authority to declare Tembec's removal from the proceedings "with prejudice."

27. Not only did the Article 1126 tribunal accept all of the United States' demands for costs from Tembec, but the tribunal also entered an award requiring Tembec to pay additional costs to Canfor and Terminal, which had never requested a cost award against Tembec. On August 2, 2007, the tribunal delivered an award ordering Tembec to pay $271,844.24 to the United States, and $32,628.15 to each of Canfor and Terminal.

28. The United States did not seek any arbitration costs or legal fees from Canfor or Terminal, neither of whom challenged the Article 1126 tribunal's authority in U.S. court, nor were they required by the tribunal to pay any arbitration costs or legal fees to the United States even though they continued to litigate their claims against the United States before the tribunal long after Tembec had removed itself from the proceedings.

29. Tembec asked the U.S. District Court to nullify its stipulation to dismiss the action to vacate the September 7, 2005 consolidation award based on the misrepresentations by the United States that the SLA settled all softwood lumber claims, including Tembec's NAFTA Chapter 11 arbitration. The court denied Tembec's request. The Award of costs and fees followed.

30. Thus, the Article 1126 tribunal's Award of costs and fees leaves Tembec in the unique position of being the only one of hundreds of Canadian lumber companies charged with paying the United States' costs and legal fees arising in connection with any and all aspects of the softwood lumber dispute.

31. The Award against Tembec was rendered by a tribunal of arbitrators which included a near cousin of the President of the United States, Tembec's opponent in arbitration, who had been legal counsel to Tembec's opponent, had enjoyed patronage appointments from the President's father, and had been pre-screened for approval by Tembec's opponent while no comparable opportunity had been provided to Tembec.

32. Tembec was the only Canadian company in the NAFTA Chapter 11 proceedings to challenge the authority of the tribunal, and the only company that the tribunal subjected to a punitive award of costs in favor of the United States.

## CLAIM FOR RELIEF

### I. PETITION TO VACATE AWARD

33. The Article 1126 tribunal's Award constitutes a final award under 9 U.S.C. § 10 that is appropriate for judicial review.

34. The Court should find that the Article 1126 tribunal had no authority to conduct the consolidated NAFTA Chapter 11 arbitration proceedings. The grounds to be alleged in Tembec's Motion to Vacate will include evidence of partiality among the arbitrators (9 U.S.C. § 10(2)); arbitrator misconduct or misbehavior prejudicing the rights of a party (9 U.S.C. § 10(3)); that the arbitrators exceeded their powers (9 U.S.C. § 10(4)); and the arbitral award is contrary to public policy, an additional ground upon which courts have vacated arbitral awards. For these reasons, the Article 1126

tribunal's Award, and all of the tribunal's orders leading up to the final arbitration award, should be vacated.

## CONCLUSION

In accordance with 9 U.S.C. § 12, Petitioner has provided "notice of a motion to vacate the arbitration award." In the Motion to Vacate, Petitioner will move for an order vacating and setting aside the Award of the NAFTA Article 1126 tribunal for the reasons set forth in that motion, in addition to the reasons provided above.

Respectfully submitted,

*/s/ Mark A. Cymrot*

Mark A. Cymrot (D.C. Bar No. 164673)
Elliot J. Feldman (D.C. Bar No. 418501)
Michael S. Snarr (D.C. Bar No. 474719)
BAKER & HOSTETLER LLP
1050 Connecticut Ave. N.W.
Suite 1100
Washington D.C. 20036-5304
Tel: (202) 861-1679
Fax: (202) 861-1783

Dated: October 19, 2007

Counsel for Petitioners Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc.